UNITED STATES INTERNATIONAL TRADE COMMISSION

Washington, D.C.

In the Matter of

**CERTAIN SEMICONDUCTOR DEVICES,**
**SEMICONDUCTOR DEVICE PACKAGES,**
**AND PRODUCTS CONTAINING SAME**

Inv. No.  337-TA-1010

**RECOMMENDATION TO THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA TO ISSUE A LETTER OF REQUEST TO**
**SEMICONDUCTOR MANUFACTURING INTERNATIONAL CORPORATION**

(July 8, 2016)

The undersigned Administrative Law Judge finds that the evidence that Complainants

Tessera Technologies, Inc., Tessera, Inc., and Invensas Corporation (collectively "Tessera") seek

from Semiconductor Manufacturing International Corporation pursuant to the Proposed Letter of

Request is relevant to Tessera's claims of a violation of Section 337 of the Tariff Act of 1930, as

amended, 19 U.S.C. § 1337, by infringement of U.S. Patent Nos. 6,856,007, 6,849,946, and

6,133,136, which are being investigated in the above-captioned matter at the United States

International Trade Commission.  Accordingly, the undersigned recommends that the District

Court for the District of Columbia issue, under its seal and signature, the attached Letter of

Request to the Ministry of Justice of China.

A Letter of Request is the appropriate method of gathering the necessary requested

evidence outside the United States.  Tessera must transmit the Letter of Request with a District

Court judge's signature and the District Court's seal to the Ministry of Justice of China,

International Legal Cooperation Center.  Tessera's proposed Letter of Request solicits

international judicial assistance in obtaining relevant information abroad needed for the hearing

in the Investigation into the importation of certain semiconductor devices, semiconductor device packages and products containing the same that allegedly infringe certain of Tessera's U.S. patents. Tessera's Letter of Request meets the standards set forth by the Hague Convention regarding the People's Republic of China. *See* Chinese Central Authority (Art. 2) and practical information, *available at* http://www.hcch.net/index_en.php?act=authorities.details&aid=243 (last visited July 8, 2016).

In order to comply with the statutory time limitations on International Trade Commission investigations, the undersigned respectfully requests the Court to assign a judge and schedule a hearing to expedite the issuance of the Letter of Request.

Respectfully Submitted,

Dee Lord

Dee Lord
Administrative Law Judge
U.S. International Trade Commission
500 E Street, S.W.
Washington, DC 20436

Address for Return of Issued Letter of Request:

Sturgis M. Sobin
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone:    (202) 662-6000

# ATTACHMENT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Tessera Technologies, Inc., Tessera, Inc., and Invensas Corporation | Civil Case No. Misc.: _____ |
| Plaintiffs (Complainants), | |
| v. | |
| Broadcom Limited, et al. | |
| Defendants (Respondents) | |

**LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO THE PEOPLE'S REPUBLIC OF CHINA FOR THE PRODUCTION OF DOCUMENTS AND TESTIMONY FROM SEMICONDUCTOR MANUFACTURING INTERNATIONAL CORPORATION**

**LETTER OF REQUEST**

Request for International Judicial Assistance
Pursuant to the Hague Convention of 18 March 1970 on
the Taking of Evidence in Civil or Commercial Matters
By the United States District Court
For the District of Columbia

The Honorable _____
United States District Judge
United States District Court for the District of Columbia

**TO THE MINISTRY OF JUSTICE OF CHINA:**

The United States District Court for the District of Columbia presents its compliments to the Ministry of Justice of China, the appropriate judicial authority of the People's Republic of China, and requests international judicial assistance to obtain the production of documents and deposition testimony from Semiconductor Manufacturing International Corporation (SMIC). This Court requests the assistance described herein pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters.  The United States District Court for the District of Columbia is a competent court of law and equity which properly has jurisdiction over this proceeding, and has the power to compel the production of documents both within and outside its jurisdiction.

The documentary and testimonial evidence sought from SMIC is intended for use in an administrative proceeding before United States International Trade Commission as approved by this Court in the above captioned matter.  In the proper exercise of its authority, this Court has determined that the evidence sought from SMIC cannot be secured except by the intervention of the Ministry of Justice of China.

# LETTER OF REQUEST

### 1.     Sender

The Honorable _____
United States District Judge
United States District Court for the District of Columbia
333 Constitution Ave., N.W.
Washington, D.C. 20001
United States of America

### 2.     Central Authority of the Requested State

Ministry of Justice of China
International Legal Cooperation Center
No 6, Chaoyangmen Nandajie,
Chaoyang District
Beijing 100020
China

### 3.     Person to whom the Executed Request is to be Returned

Sturgis M. Sobin
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone:     (202) 662-5040

### 4.     Specification of the Date by which the Requesting Authority Requires Receipt of the Response to the Letter of Request

#### Date

Please respond as soon as possible, but in any event please respond no later than September 30, 2016.

#### Reason for Urgency

Under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, investigations in the United States International Trade Commission must be completed "at the earliest practicable time." Expedient treatment of this request will allow the parties to obtain and review the produced documents and obtain testimony before the cutoff of fact discovery in this matter.

5.  **IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:**

a.  **Requesting judicial authority (article 3(a))**

The Honorable _____
United States District Judge
United States District Court for the District of Columbia
333 Constitution Ave., N.W.
Washington, D.C. 20001
United States of America

b.  **To the competent authority of (article 3(a))**

The People's Republic of China

c.  **Name of the case(s) and any identifying number(s)**

In the Matter of Certain Semiconductor Devices, Semiconductor Device Packages and Products Containing the Same, Investigation No. 337-TA-1010

6.  **Names and addresses of the parties and their representatives (including representatives in the requested State) (article 3(b))**

a.  **Plaintiffs (Complainants)**

(Complainants') names are: Tessera Technologies, Inc., Tessera, Inc., and Invensas Corporation.  Plaintiffs may be contacted through their representatives, listed below.

**Plaintiffs' Representatives**

Sturgis M. Sobin
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone:    (202) 662-5040

b.  **Defendants (Respondents)**

Defendants' names are:

Broadcom Limited
Broadcom Corporation
Avago Technologies Limited

Avago Technologies U.S. Inc.
Arista Networks, Inc.
ARRIS International plc
ARRIS Group, Inc.
ARRIS Technology, Inc.
ARRIS Enterprises LLC
ARRIS Solutions, Inc.
Pace Ltd. (formerly Pace plc)
Pace Americas, LLC
Pace USA, LLC
ASUSTeK Computer Inc.
ASUS Computer International
Comcast Cable Communications, LLC
Comcast Cable Communications Management, LLC
Comcast Business Communications, LLC
HTC Corporation
HTC America, Inc.
NETGEAR, Inc.
Technicolor S.A.
Technicolor USA, Inc.
Technicolor Connected Home USA LLC

Defendants may be contacted through their representatives, listed below:

### Defendants' Representatives

David E. Sipiora (Broadcom-TesseraITC@kilpatricktownsend.com)
KILPATRICK TOWNSEND &STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
Telephone: (303) 571-8525

### 7. Nature of the proceedings (article 3(c)) and Summary of facts

This is a proceeding being conducted by the United States International Trade
Commission ("ITC") under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337
("Section 337"), based on a Complaint filed by Tessera on May 23, 2016.  The Complaint
alleges that Respondents, including Broadcom Limited, infringe U.S. Patent Nos. 6,856,007,
6,849,946, and 6,133,136 (collectively, the "Asserted Patents").  The accused products include
but are not limited to Broadcom Corporation's semiconductor devices, semiconductor device
packages, and products containing the same.  The ITC instituted proceedings based on Tessera's
Complaint on June 20, 2016 with publication of the Notice of Investigation in the Federal
Register on June 24, 2016.  Upon institution, the case was assigned to Administrative Law Judge
Dee Lord to preside over pre-hearing matters, conduct an evidentiary hearing, and issue an initial
determination on the merits of the case.  The initial determination is subject to possible review
by the ITC with a right to appeal to the United States Court of Appeals for the Federal Circuit.

Broadcom Corporation is a fabless semiconductor company that relies on third party foundries and independent assembly and packaging subcontractors outside the United States to make the accused semiconductor devices and the accused semiconductor device packages. Complaint at ¶ 62. Based on publically available information, Tessera believes one of such foundries is Semiconductor Manufacturing International Corporation (SMIC).  Therefore, SMIC appears to possess unique documents and information concerning: the manufacturing and fabrication process for the accused Broadcom products that are fabricated by SMIC, the design, structure and technical specifications for the accused Broadcom products that are fabricated by SMIC, and the testing of the accused Broadcom products that are fabricated by SMIC. Accordingly, SMIC is believed to be among the most knowledgeable about, and to have documents in its possession, custody, and control concerning Broadcom's infringement of the patents asserted in this Investigation.

8.

    a.    **<u>Evidence to be obtained or other judicial act to be performed (article 3(d))</u>**

Evidence relating to Broadcom's patent infringement and Broadcom's defenses, as set forth in Attachment A.

    b.    **<u>Purpose of the evidence or judicial act sought</u>**

The requested documents and deposition testimony will provide important evidence related to Broadcom's infringement of Tessera's patents, which may then be introduced at the evidentiary hearing held by the Administrative Law Judge in the above-mentioned Investigation.

**9.    <u>Identity and address of any person to be examined (article 3(e))</u>**

Semiconductor Manufacturing International Corporation (SMIC)
18 Zhangjiang Road, Pudong New Area
Shanghai, 201203
People's Republic of China

**10.    <u>Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined (article 3(f))</u>**

The topics of the deposition questions are set forth in Attachment B.

**11.    <u>Documents or other property to be inspected (article 3(g))</u>**

The documents and other property to be inspected are set forth in Attachment A.

**12.    <u>Any requirement that the evidence be given on oath or affirmation and any special form to be used (article 3(h))</u>**

It is respectfully requested that an examiner or other appropriate judicial officer of the People's Republic of China direct that the witness be duly sworn in accordance with the applicable procedures of the People's Republic of China, and that the testimony be taken and transcribed by a qualified court reporter and videographer chosen by Tessera's representatives. It is further requested that the transcription of the deposition be in the English language. Additionally it is respectfully requested that each document described in Attachment A be produced along with all non-identical drafts thereof in their entirety, without abbreviation or redaction, as maintained in the ordinary course of business.

### 13.   Special methods or procedure to be followed (articles 3(i) and 9)

See Attachment A for details on how SMIC is to produce the requested documents. With regard to the deposition, it is requested that: (a) the examination be conducted orally; (b) the parties' representatives or their designees, attorneys, their interpreters, and a stenographer be permitted to be present during the examination; (c) there be excluded from the examination, if permitted under the law of the People's Republic of China, all persons other than the parties' representatives or their designees, attorneys, their interpreters, and the stenographer, and any judicial official of the People's Republic of China required to be present during such proceedings; (d) the stenographer be permitted to record verbatim the examination; (e) the stenographer be permitted to record the examinations by audiovisual means (f) the attorneys conducting the examinations be permitted to ask questions regarding the topics listed in Attachment B; (g) ten and a half hours (10.5) be allotted for the examination of each witness who requires a translator, and seven (7) hours be allotted for the examination of each English speaking witness; (h) the witnesses be examined as soon as practicable; and (i) the documents and property requested in Attachment A be provided to Respondents no later than twenty-one days before the deposition at a convenient location to be mutually determined.

### 14.   Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (article 7)

This Court request that the following people should be notified of the time and place for the execution of this Request:

Sturgis M. Sobin
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone:     (202) 662-5040

David E. Sipiora (Broadcom-TesseraITC@kilpatricktownsend.com)
KILPATRICK TOWNSEND &STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
Telephone: (303) 571-8525

**15.     Request for attendance or participation of judicial personnel of the
requesting authority at the execution of the Letter of Request (article 8)**

attendance of judicial personnel of the requesting authority is requested.


**16.     Specification of privilege or duty to refuse to give evidence under the law of
the State of origin (article 11, b)**

SMIC may refuse to give evidence insofar as there is a privilege or duty to refuse to give
evidence under the laws of the United States or the laws of the People's Republic of China.

**17.     The fees and costs incurred which are reimbursable under the second
paragraph of art. 14 or under art. 26 of the Convention will be borne by**

Plaintiffs will bear all fees and costs.  Please inform counsel for Tessera if the costs are
expected to exceed US $5,000.00.  Bills may be sent to:

Sturgis M. Sobin
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone:     (202) 662-5040
Signed by:

_____
The Honorable _____
United States District Judge
United States District Court for the District of Columbia
333 Constitution Ave., N.W.
Washington, D.C. 20001
United States of America


Signed in _____, this _____ day of _____, 20_____


[Affix seal of court below:]

## ATTACHMENT A

## DOCUMENTS OR OTHER PROPERTY TO BE PRODUCED BY SMIC

## DEFINITIONS

1.      "Document(s)" has the same meaning as used in United States International Trade Commission Rule 210.30, and includes writings, drawings, graphs, charts, photographs, and other data compilations from which information can be obtained.

2.      The term "Broadcom" means Broadcom Limited and its wholly-owned subsidiaries Broadcom Corporation, Avago Technologies Limited, and Avago Technologies U.S. Inc. and all predecessors, successors, parents, subsidiaries and affiliates.

3.      "Tessera" means Tessera Technologies, Inc., and its wholly-owned subsidiaries Tessera, Inc. and Invensas Corporation.

4.      The term "You" means Semiconductor Manufacturing International Corporation, and all predecessors, successors, parents, subsidiaries and affiliates.

5.      The term "Broadcom Future Product" means any product in development or product ready for release, which is to be fabricated, manufactured, assembled, packaged and/or tested by You on behalf of Broadcom before May 23, 2017.

6.      The term "Broadcom Product" means any and all semiconductor devices, wafers, dies, packages, or assemblies that have been fabricated, manufactured, assembled, packaged and/or tested by You for Broadcom within the last six years.

7.      "Circuit Board" means a sheet of insulating material used for the mounting and interconnection of components in electronic equipment, and broadly includes without limitation any circuit board, printed circuit board (PCB), printed circuit board assembly, circuit panel,

printed circuit assembly, printed circuit board assembly, circuit card assembly, or backplane assembly.

## **INSTRUCTIONS**

1.      These instructions shall be deemed to seek production of documents and things as of the date hereof and to the full extent of the United States International Trade Commission Rules of Practice and Procedure.

2.      In producing documents and things requested, you shall furnish all documents and things known or available to you upon reasonable investigation and inquiry, and within your possession, custody, or control, wherever located, regardless of whether such documents or things are possessed directly by you or by any of your agents, consultants, officers, employees, attorneys, representatives, or those acting on your behalf.

3.      If production of any document is withheld on a basis of a claim of privilege, each withheld document shall be separately identified in a privileged document list. The privileged document list must identify each document separately, specifying for each document at least: (i) the date the information was created or communicated; (ii) author(s)/sender(s); (iii) all recipient(s); and (iv) the general subject matter contained in the document. The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated. If the sender or the recipient is an attorney or a foreign patent agent, he or she shall be so identified. The type of privilege claimed must also be stated, together with a certification that all elements of the claimed privilege have been met and have not been waived with respect to each document.

4.      If any request is objected to as overly broad or unduly burdensome, produce those documents and/or things which are unobjectionable and specifically identify the respect in which the request is allegedly overly broad or burdensome, respectively.

5.      If a document or thing was but is no longer in your possession, custody, or control, or no longer exists, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, or (iv) has been otherwise disposed of. In each instance of such document or thing, please (i) explain the circumstances surrounding and authorization for the unavailability, destruction, or disposition thereof (ii) state the date or approximate date thereof (iii) state the name and title of the author(s), sender(s), and recipient(s) thereof, and (iv) state the name(s) and address(es) of all persons having knowledge regarding the unavailability, destruction or disposition thereof.

6.      All questions regarding the meaning of interpretation of these requests should be directed to counsel for Tessera.

## DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 1:**

Documents sufficient to show each Broadcom Product that You fabricated,

manufactured, assembled, packaged and/or tested, in whole or in part, from 2010 to the present.

**REQUEST FOR PRODUCTION NO. 2:**

Documents sufficient to show each Broadcom Future Product for which You have plans

to fabricate, manufacture, assemble, package and/or test, in whole or in part.

**REQUEST FOR PRODUCTION NO. 3:**

Documents sufficient to show the actual production volume for each of the Broadcom

Products and the estimated production volume for each Broadcom Future Product that You

identified in response to Request for Production Nos. 1 and 2.

**REQUEST FOR PRODUCTION NO. 4:**

Documents sufficient to show the manufacturing process used to fabricate each

Broadcom Product and Broadcom Future Product that You identified in response to Request for

Production Nos. 1 and 2, including:

- Location, composition, and thickness of any material that is deposited on, patterned, or removed from the semiconductor device;

- The manner in which dummy structures are laid out in each metallization layers, and any design rules relating to the use of dummy metal;

- Planarity of each layer of material within the finished semiconductor device and any steps used to improve planarity, including chemical mechanical polishing or planarization;

- Damascene or copper damascene processes;

- The electrical connections between each portion of the semiconductor device; and

- The geographical location and specific facility where the manufacturing process is performed.

**REQUEST FOR PRODUCTION NO. 5:**

Documents sufficient to show the structure, location, shape, thickness, and composition of each solder bump or Controlled Collapsible Chip Connection (C4) contact bumps in each Broadcom Product and Broadcom Future Product that You identified in response to Request for Production Nos. 1 and 2.

**REQUEST FOR PRODUCTION NO. 6:**

Documents sufficient to show cross sectional images of each Broadcom Product and Broadcom Future Product that You identified in response to Request for Production Nos. 1 and 2 including, but not limited to (1) areas near, around, and/or at the Controlled Collapsible Chip Connection (C4) contact bumps within the interconnect structure, and (2) any vias that are electrically connected to the C4 contact bump.

**REQUEST FOR PRODUCTION NO. 7:**

Documents sufficient to show the mounting and assembly of each packaged Broadcom Product and Broadcom Future Product that You identified in response to Request for Production Nos. 1 and 2 on a Circuit Board, including:

- Location and structure of the chip within the package;

- Location and structure of each chip contact;

- Location, structure, and composition of any included chip carrier;

- Location, structure, composition, and size of any included metallic thermal conductors;

- Location, structure, and size of each of the chip carrier's terminals;

- Location, structure, size, and composition of each material on any of the chip carrier's surfaces;

- Location, structure, size, thickness, and composition or any solder or solder-wettable area;

- Any electrical connections between the terminals of the chip carrier and the chip contacts; and

- The geographical location and facility where the assembly and packaging is performed.

**REQUEST FOR PRODUCTION NO. 8:**

For each Broadcom Product and Broadcom Future Product You identified in response to Request for Production Nos. 1 and 2, documents sufficient to show the design, structure, fabrication process, encapsulation process, chemical mechanical polishing process, planarization process, testing process, qualification process, and operation of those products including, but not limited to, technical drawings, specifications, schematics, design rules, analysis reports, manuals, application notes, scanning electron microscopy images, photographs, energy dispersive X-ray spectroscopy analysis, line scan analysis, layer thickness measurements, layout files, Graphic Database System II (GDSII) files, recipes, process flow diagrams, testing protocols, and the like.

**REQUEST FOR PRODUCTION NO. 9:**

For each Broadcom Product and Broadcom Future Product You identified in response to Request for Production Nos. 1 and 2, documents sufficient to show cross sectional, bevel, and top-view images of each of the products.

**REQUEST FOR PRODUCTION NO. 10:**

Documents sufficient to show any contractual relationships or agreements between You and Broadcom regarding Broadcom Products or Broadcom Future Products.

**REQUEST FOR PRODUCTION NO. 11:**

Documents sufficient to show and describe the process by which each Broadcom Product You have fabricated or manufactured is exported from China including, but not limited to, the destinations to which those products are exported, the carriers used to export those products, and the terms on which those products are exported.

**ATTACHMENT B**

**TOPICS AND WRITTEN DEPOSITION QUESTIONS FOR THE DEPOSITION OF SMIC**

**DEFINITIONS AND INSTRUCTIONS**

The definitions and instructions set forth in Attachment A are incorporated by reference.

**TOPICS**

1. Each Broadcom Product that You fabricated, manufactured, assembled, packaged and/or tested, in whole or in part, from 2010 to the present.

2. Each Broadcom Future Product for which You have plans to fabricate, manufacture, assemble, package, and/or test, in whole or in part.

3. The actual production volume for each of the Broadcom Products and the estimated production volume for each Broadcom Future Product that You identified in response to Topic Nos. 1 and 2.

4. The manufacturing process used to fabricate each Broadcom Product and Broadcom Future Product that You identified in response to Topic Nos. 1 and 2, including:

   • Location, composition, and thickness of any material that is deposited on, patterned, or removed from the semiconductor device;

   • The manner in which dummy structures are laid out in each metallization layers, and any design rules relating to the use of dummy metal;

   • Planarity of each layer of material within the finished semiconductor device and any steps used to improve planarity, including chemical mechanical polishing or planarization;

   • Damascene or copper damascene processes;

   • The electrical connections between each portion of the semiconductor device; and

- The geographical location and specific facility where the manufacturing process is performed.

5. The structure, location, shape, thickness, and composition of each solder bump or Controlled Collapsible Chip Connection (C4) contact bumps in each Broadcom Product and Broadcom Future Product that You identified in response to Topic Nos. 1 and 2.

6. The mounting and assembly of each packaged Broadcom Product and Broadcom Future Product that You identified in response to Request for Production Nos. 1 and 2 on a Circuit Board, including:

- Location and structure of the chip within the package;

- Location and structure of each chip contact;

- Location, structure, and composition of any included chip carrier;

- Location, structure, composition, and size of any included metallic thermal conductors;

- Location, structure, and size of each of the chip carrier's terminals;

- Location, structure, size, and composition of each material on any of the chip carrier's surfaces;

- Location, structure, size, thickness, and composition or any solder or solder-wettable area;

- Any electrical connections between the terminals of the chip carrier and the chip contacts; and

- The geographical location and facility where the assembly and packaging is performed.

7. For each Broadcom Product and Broadcom Future Product You identified in response to Topic Nos. 1 and 2, the design, structure, fabrication process, encapsulation process, chemical mechanical polishing process, planarization process, testing process, qualification process, and operation of those products.

8. Any contractual relationships or agreements between You and Broadcom regarding Broadcom Products or Broadcom Future Products.

9. The process by which each Broadcom Product You have fabricated or manufactured is exported from China including, but not limited to, the destinations to which those products are exported, the carriers used to export those products, and the terms on which those products are exported.

10. The identification of all documents relevant to the topics above.

11. The authenticity, source, record-keeping practices, and meaning of the documents produced in response to this subpoena.

12. Facts and circumstances concerning any dissemination, distribution, or disclosure, whether public or otherwise, of any document produced in response to this subpoena.

13. Your search for and collection of documents responsive to this subpoena.

14. The identification of all persons involved in or having knowledge of the topics above.

# ATTACHMENT C

## Protective Order

**UNITED STATES INTERNATIONAL TRADE COMMISSION**

**Washington, D.C.**

| |
|---|
| **In the Matter of** |
| **CERTAIN SEMICONDUCTOR DEVICES, SEMICONDUCTOR DEVICE PACKAGES, AND PRODUCTS CONTAINING SAME** |

**Inv. No.  337-TA-1010**

**ORDER NO. 1:      PROTECTIVE ORDER**

(June 22, 2016)

WHEREAS, documents and information may be sought, produced or exhibited by and among the parties to the above captioned proceeding, which materials relate to trade secrets or other confidential research, development or commercial information, as such terms are used in the Commission's Rules, 19 C.F.R. § 210.5;

IT IS HEREBY ORDERED THAT:

1.      Confidential business information is information which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either (i) impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions; or (ii) causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such

information.  The term "confidential business information" includes "proprietary information" within the meaning of section 777(b) of the Tariff Act of 1930 (19 U.S.C. § 1677f(b)).

2(a).    Any information submitted, in pre-hearing discovery or in a pleading, motion, or response to a motion either voluntarily or pursuant to order, in this investigation, which is asserted by a supplier to contain or constitute confidential business information shall be so designated by such supplier in writing, or orally at a deposition, conference or hearing, and shall be segregated from other information being submitted.  Documents shall be clearly and prominently marked on their face with the legend:  "CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER" or a comparable notice.  Such information, whether submitted in writing or in oral testimony, shall be treated in accordance with the terms of this protective order.

(b).    The Administrative Law Judge or the Commission may determine that information alleged to be confidential is not confidential, or that its disclosure is necessary for the proper disposition of the proceeding, before, during or after the close of a hearing herein.  If such a determination is made by the Administrative Law Judge or the Commission, opportunity shall be provided to the supplier of such information to argue its confidentiality prior to the time of such ruling.

3.    In the absence of written permission from the supplier or an order by the Commission or the Administrative Law Judge, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than:  (i) outside counsel for parties to this investigation, including necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical

personnel thereof; (iii) technical experts and their staff who are employed for the purposes of this litigation (unless they are otherwise employed by, consultants to, or otherwise affiliated with a non-governmental party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of the products, devices or component parts that are the subject of this investigation); (iv) the Commission, the Administrative Law Judge, the Commission staff, and personnel of any governmental agency as authorized by the Commission; and (v) the Commission, its employees, and contract personnel who are acting in the capacity of Commission employees, for developing or maintaining the records of this investigation or related proceedings for which this information is submitted, or in internal audits and investigations relating to the programs and operations of the Commission pursuant to 5 U.S.C. Appendix 3.[1]

4.      Confidential business information submitted in accordance with the provisions of paragraph 2 above shall not be made available to any person designated in paragraph 3(i)[2] and (iii) unless he or she shall have first read this order and shall have agreed, by letter filed with the Secretary of this Commission: (i) to be bound by the terms thereof; (ii) not to reveal such confidential business information to anyone other than another person designated in paragraph 3; and (iii) to utilize such confidential business information solely for purposes of this investigation.

5.      If the Commission or the Administrative Law Judge orders, or if the supplier and all parties to the investigation agree, that access to, or dissemination of information submitted as confidential business information shall be made to persons not included in paragraph 3 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this order, and such persons shall be

---

[1]*See* Commission Administrative Order 97-06 (Feb. 4, 1997).
[2]Necessary secretarial and support personnel assisting counsel need not sign onto the protective order themselves because they are covered by counsel's signing onto the protective order.

considered subject to it, unless the Commission or the Administrative Law Judge finds that the information is not confidential business information as defined in paragraph 1 hereof.

      6.     Any confidential business information submitted to the Commission or the Administrative Law Judge in connection with a motion or other proceeding within the purview of this investigation shall be submitted under seal pursuant to paragraph 2 above. Any portion of a transcript in connection with this investigation containing any confidential business information submitted pursuant to paragraph 2 above shall be bound separately and filed under seal. When any confidential business information submitted in accordance with paragraph 2 above is included in an authorized transcript of a deposition or exhibits thereto, arrangements shall be made with the court reporter taking the deposition to bind such confidential portions and separately label them "CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER." Before a court reporter or translator receives any such information, he or she shall have first read this order and shall have agreed in writing to be bound by the terms thereof. Alternatively, he or she shall sign the agreement included as Attachment A hereto. Copies of each such signed agreement shall be provided to the supplier of such confidential business information and the Secretary of the Commission.

      7.     The restrictions upon, and obligations accruing to, persons who become subject to this order shall not apply to any information submitted in accordance with paragraph 2 above to which the person asserting the confidential status thereof agrees in writing, or the Commission or the Administrative Law Judge rules, after an opportunity for hearing, was publicly known at the time it was supplied to the receiving party or has since become publicly known through no fault of the receiving party.

8.     The Commission, the Administrative Law Judge, and the Commission investigative attorney acknowledge that any document or information submitted as confidential business information pursuant to paragraph 2 above is to be treated as such within the meaning of 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905, subject to a contrary ruling, after hearing, by the Commission or its Freedom of Information Act Officer, or the Administrative Law Judge. When such information is made part of a pleading or is offered into the evidentiary record, the data set forth in 19 C.F.R. § 201.6 must be provided except during the time that the proceeding is pending before the Administrative Law Judge. During that time, the party offering the confidential business information must, upon request, provide a statement as to the claimed basis for its confidentiality.

9.     Unless a designation of confidentiality has been withdrawn, or a determination has been made by the Commission or the Administrative Law Judge that information designated as confidential, is no longer confidential, the Commission, the Administrative Law Judge, and the Commission investigative attorney shall take all necessary and proper steps to preserve the confidentiality of, and to protect each supplier's rights with respect to, any confidential business information designated by the supplier in accordance with paragraph 2 above, including, without limitation:  (a) notifying the supplier promptly of (i) any inquiry or request by anyone for the substance of or access to such confidential business information, other than those authorized pursuant to this order, under the Freedom of Information Act, as amended (5 U.S.C. § 552) and (ii) any proposal to redesignate or make public any such confidential business information; and (b) providing the supplier at least seven days after receipt of such inquiry or request within which to take action before the Commission, its Freedom of Information Act Officer, or the

Administrative Law Judge, or otherwise to preserve the confidentiality of and to protect its rights in, and to, such confidential business information.

10.    If while an investigation is before the Administrative Law Judge, a party to this order who is to be a recipient of any business information designated as confidential and submitted in accordance with paragraph 2 disagrees with respect to such a designation, in full or in part, it shall notify the supplier in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this order.  If prior to, or at the time of such a conference, the supplier withdraws its designation of such information as being subject to this order, but nonetheless submits such information for purposes of the investigation, such supplier shall express the withdrawal, in writing, and serve such withdrawal upon all parties and the Administrative Law Judge.  If the recipient and supplier are unable to concur upon the status of the subject information submitted as confidential business information within ten days from the date of notification of such disagreement, any party to this order may raise the issue of the designation of such a status to the Administrative Law Judge who will rule upon the matter.  The Administrative Law Judge may *sua sponte* question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

11.    No less than 10 days (or any other period of time designated by the Administrative Law Judge) prior to the initial disclosure to a proposed expert of any confidential information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and detailed employment history to the supplier.  If the supplier objects to the disclosure of such confidential business information to such proposed expert as inconsistent with the language or intent of this order or on other grounds, it shall notify the recipient in writing of its objection and the grounds

therefore prior to the initial disclosure. If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the supplier shall submit immediately each objection to the Administrative Law Judge for a ruling by filing a motion for a protective order pursuant to Commission Rule 210.34. If the investigation is before the Commission the matter shall be submitted to the Commission for resolution. The submission of such confidential business information to such proposed expert shall be withheld pending the ruling of the Commission or the Administrative Law Judge. The terms of this paragraph shall be inapplicable to experts within the Commission or to experts from other governmental agencies who are consulted with or used by the Commission.

12.     If confidential business information submitted in accordance with paragraph 2 is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the supplier and the Administrative Law Judge and, without prejudice to other rights and remedies of the supplier, make every effort to prevent further disclosure by it or by the person who was the recipient of such information.

13.     Nothing in this order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Commission, its Freedom of Information Act Officer, or the Administrative Law Judge concerning the issue of the status of confidential business information.

14.     Upon final termination of this investigation, each recipient of confidential business information that is subject to this order shall assemble and return to the supplier all items containing such information submitted in accordance with paragraph 2 above, including all copies of such matter which may have been made. Alternatively, the parties subject to this order

7

may, with the written consent of the supplier, destroy all items containing confidential business information and certify to the supplier (or his counsel) that such destruction has taken place. This paragraph shall not apply to the Commission, including its investigative attorney, and the Administrative Law Judge, which shall retain such material pursuant to statutory requirements and for other recordkeeping purposes, but may destroy those additional copies in its possession which it regards as surplusage.

Notwithstanding the above paragraph, confidential business information may be transmitted to a district court pursuant to Commission Rule 210.5(c).

15.     If any confidential business information which is supplied in accordance with paragraph 2 above is supplied by a nonparty to this investigation, such a nonparty shall be considered a "supplier" as that term is used in the context of this order.

16.     Each nonparty supplier shall be provided a copy of this order by the party seeking information from said supplier.

17.     The Secretary shall serve a copy of this order upon all parties.

**SO ORDERED.**



Dee Lord
Administrative Law Judge

Attachment A

NONDISCLOSURE AGREEMENT FOR REPORTER/STENOGRAPHER/TRANSLATOR

I, _____ , do solemnly swear or affirm that I will not divulge any

information communicated to me in any confidential portion of the investigation or hearing in

the matter of *Certain Semiconductor Devices, Semiconductor Device Packages, and Products*

*Containing Same*, Investigation No. 337-TA-1010, except as permitted in the protective order

issued in this case.  I will not directly or indirectly use, or allow the use of such information for

any purpose other than that directly associated with my official duties in this case.

Further, I will not by direct action, discussion, recommendation, or suggestion to any

person reveal the nature or content of any information communicated during any confidential

portion of the investigation or hearing in this case.

I also affirm that I do not hold any position or official relationship with any of the

participants in said investigation.

I am aware that the unauthorized use or conveyance of information as specified above is a

violation of the Federal Criminal Code and punishable by a fine of up to $10,000, imprisonment

of up to ten (10) years, or both.


Signed

Dated

Firm or affiliation

CERTAIN SEMICONDUCTOR DEVICES,                    Inv. No. 337-TA-1010
SEMICONDUCTOR DEVICE PACKAGES,  AND
PRODUCTS CONTAINNG  SAME

## PUBLIC CERTIFICATE OF SERVICE

    I, Lisa R. Barton, hereby certify that the attached **ORDER** has been served by hand upon the following parties as indicated, on **June 22, 2016**.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC  20436

### On Behalf of Complainants Tessera Technologies, Inc., Tessera, Inc., Invensas Corporation:

Sturgis M. Sobin, Esq.                           ☐ Via Hand Delivery
**COVINGTON & BURLING LLP**                      ☐ Via Express Delivery
One CityCenter, 850 Tenth Street, N.W.           ☒ Via First Class Mail
Washington, DC 20001                             ☐ Other:_____

### Respondents:

Broadcom Limited                                 ☐ Via Hand Delivery
1 Yishun Avenue 7                                ☐ Via Express Delivery
Singapore 768923                                 ☒ Via First Class Mail
                                                 ☐ Other:_____

Broadcom Corporation                             ☐ Via Hand Delivery
5300 California Ave.                             ☐ Via Express Delivery
Irvine, CA 92617                                 ☒ Via First Class Mail
                                                 ☐ Other:_____

Avago Technologies Limited                       ☐ Via Hand Delivery
1 Yishun Avenue 7                                ☐ Via Express Delivery
Singapore 768923                                 ☒ Via First Class Mail
                                                 ☐ Other:_____

Avago Technologies U.S. Inc.                     ☐ Via Hand Delivery
1320 Ridder Park Drive                           ☐ Via Express Delivery
San Jose, CA 95131                               ☒ Via First Class Mail
                                                 ☐ Other:_____

**CERTAIN SEMICONDUCTOR DEVICES,**   Inv. No. 337-TA-1010
**SEMICONDUCTOR DEVICE PACKAGES, AND**
**PRODUCTS CONTAINING SAME**

Certificate of Service – Page 2

Arista Networks, Inc.                           ☐ Via Hand Delivery
5453 Great America Parkway                      ☐ Via Express Delivery
Santa Clara, CA 95054                           ☒ Via First Class Mail
                                                ☐ Other:_____

ARRIS International plc                          ☐ Via Hand Delivery
3871 Lakefield Drive                            ☐ Via Express Delivery
Suwanee, GA 30024                               ☒ Via First Class Mail
                                                ☐ Other:_____

ARRIS Group, Inc.                               ☐ Via Hand Delivery
3871 Lakefield Drive                            ☐ Via Express Delivery
Suwanee, GA 30024                               ☒ Via First Class Mail
                                                ☐ Other:_____

ARRIS Technology, Inc.                          ☐ Via Hand Delivery
101 Tournament Drive                            ☐ Via Express Delivery
Horsham, PA 19044                               ☒ Via First Class Mail
                                                ☐ Other:_____

ARRIS Enterprises, LLC                          ☐ Via Hand Delivery
3871 Lakefield Drive                            ☐ Via Express Delivery
Suwanee, GA 30024                               ☒ Via First Class Mail
                                                ☐ Other:_____

ARRIS Solutions, Inc.                           ☐ Via Hand Delivery
3871 Lakefield Drive                            ☐ Via Express Delivery
Suwanee, GA 30024                               ☒ Via First Class Mail
                                                ☐ Other:_____

Pace Ltd.                                       ☐ Via Hand Delivery
Victoria Road, Saltaire                         ☐ Via Express Delivery
West Yorkshire BD18 3LF                         ☒ Via First Class Mail
England                                         ☐ Other:_____

Pace Americas, LLC                              ☐ Via Hand Delivery
3701 FAU Boulevard, Suite 200                   ☐ Via Express Delivery
Boca Raton, FL 33431                            ☒ Via First Class Mail
                                                ☐ Other:_____

**CERTAIN SEMICONDUCTOR DEVICES,**                    **Inv. No. 337-TA-1010**
**SEMICONDUCTOR DEVICE PACKAGES, AND**
**PRODUCTS CONTAINING SAME**

Certificate of Service – Page 3

Pace USA, LLC                                    ☐ Via Hand Delivery
3701 FAU Boulevard, Suite 200                    ☐ Via Express Delivery
Boca Raton, FL 33431                             ☒ Via First Class Mail
                                                 ☐ Other:_____


ASUSTeK Computer Inc.                            ☐ Via Hand Delivery
No. 15, Li-Te Road,                              ☐ Via Express Delivery
Peitou, Taipei                                   ☒ Via First Class Mail
Taiwan                                           ☐ Other:_____


ASUS Computer International                      ☐ Via Hand Delivery
800 Corporate Way                                ☐ Via Express Delivery
Fremont, CA 94539                                ☒ Via First Class Mail
                                                 ☐ Other:_____


Comcast Cable Communications, LLC                ☐ Via Hand Delivery
1500 Market Street                               ☐ Via Express Delivery
Philadelphia, PA 19102                           ☒ Via First Class Mail
                                                 ☐ Other:_____


Comcast Cable Communications Management, LLC     ☐ Via Hand Delivery
1701 John F. Kennedy Blvd.                       ☐ Via Express Delivery
Philadelphia, PA, 19103                          ☒ Via First Class Mail
                                                 ☐ Other:_____


Comcast Business Communications, LLC             ☐ Via Hand Delivery
1701 John F. Kennedy Blvd.                       ☐ Via Express Delivery
Philadelphia, PA, 19103                          ☒ Via First Class Mail
                                                 ☐ Other:_____


HTC Corporation                                  ☐ Via Hand Delivery
23 Xinghau Road                                  ☐ Via Express Delivery
Taoyuan, 330                                     ☒ Via First Class Mail
Taiwan                                           ☐ Other:_____


HTC America, Inc.                                ☐ Via Hand Delivery
13920 SE Eastgate Way, Suite 200                 ☐ Via Express Delivery
Bellevue, WA 98005                               ☒ Via First Class Mail
                                                 ☐ Other:_____

**CERTAIN SEMICONDUCTOR DEVICES,**
**SEMICONDUCTOR DEVICE PACKAGES, AND**
**PRODUCTS CONTAINING SAME**

**Inv. No. 337-TA-1010**

Certificate of Service – Page 4

NETGEAR, Inc.
350 East Plumeria Drive
San Jose, CA 95134

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other:_____

Technicolor S.A.
1-5, rue Jeanne d'Arc
92130 Issy-Les-Moulineaux
France

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other:_____

Technicolor USA, Inc.
101 West 103 Street
Indianapolis, IN 46290

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other:_____

Technicolor Connected Home USA LLC
101 West 103 Street
Indianapolis, IN 46290

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other:_____

# ATTACHMENT D

## Ground Rules

UNITED STATES INTERNATIONAL TRADE COMMISSION

Washington, D.C.

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN SEMICONDUCTOR DEVICES,**<br>**SEMICONDUCTOR DEVICE PACKAGES,**<br>**AND PRODUCTS CONTAINING SAME** | Inv. No. 337-TA-1010 |

**ORDER NO. 2:       GROUND RULES**

(June 22, 2016)

The conduct of this investigation before the Administrative Law Judge shall be governed by the Commission Rules and the Ground Rules attached hereto.

**SO ORDERED.**

Dee Lord
Administrative Law Judge

## **GROUND RULES FOR SECTION 337 INVESTIGATION**

These Ground Rules supplement the Commission's Rules of Practice and Procedure, 19 C.F.R. Parts 201 and 210 ("Commission Rules"), in order to aid the Administrative Law Judge in the orderly conduct of the section 337 investigation pursuant to the Administrative Procedure Act, 5 U.S.C. § 556(c).

These Ground Rules govern a U.S. patent-based investigation pursuant to 19 U.S.C. § 1337(a)(1)(B).  In the case of an investigation based upon a registered copyright, registered trademark, or registered mask work pursuant to 19 U.S.C. § 1337(a)(1)(B), (C) or (D), additional Ground Rules may govern. In addition, in a case involving a motion for temporary relief pursuant to 19 U.S.C. § 1337(e), additional Ground Rules may also govern.

In case of any conflict between these Ground Rules and any subsequent order issued by the Administrative Law Judge or the Commission in this Investigation, the subsequent order shall control.

# TABLE OF CONTENTS

**1      Address; Requirements for Filing, Service, and Copies; Time ..................................5**
1.1     Address of Administrative Law Judge.................................................................. 5
1.2     Filing Requirement. ............................................................................................. 5
1.3     Service Copy Requirements.................................................................................. 5
1.4     Electronic and Word Processor Copy. .................................................................. 5
1.5     Submission by Fax Disfavored. ............................................................................ 6
1.6     Concurrent Service. .............................................................................................. 6
1.7     Computation of Time. .......................................................................................... 6
1.8     Request for Extension of Time. ............................................................................ 6
1.9     Confidential Submissions. .................................................................................... 6
1.10    Public Versions of Confidential Orders. ............................................................... 6
**2      Procedural Schedule ..................................................................................... 7**
**3      Motions; Deadlines for Responses................................................................. 8**
3.1     Contents; In General. ........................................................................................... 8
3.1.1     Contents; Responses to Motions. ..................................................................... 8
3.1.2     Contents; Reply Briefs. ................................................................................... 9
3.2     Contents; Certification. ........................................................................................ 9
3.3     Contents; Motion for Summary Determination. .................................................... 9
3.3.1     Contents; Statement of Undisputed Material Facts............................................ 9
3.3.2     Contents; Response to Motion for Summary Determination. ............................ 9
3.3.3     Contents; Summary Determination Reply Brief ............................................. 10
3.4     Contents; Motion for Termination. ..................................................................... 10
3.5     Contents; Discovery-Related Motions. ............................................................... 10
3.6     Deadline for Filing Response to Motion.............................................................. 10
3.7     Request for Shortened Time to Respond to Motion. ............................................ 10
3.8     No Motion Stops Discovery Except Motion to Quash Subpoena........................... 10
3.9     Formatting; Footer. ............................................................................................ 10
3.10    Notice of Supplemental Authority. ..................................................................... 11
**4      Discovery...................................................................................................... 11**
4.1     Resolution of Disputes; Coordinated Discovery.................................................. 11
4.1.1     Discovery Committee..................................................................................... 11
4.2     Stipulations Regarding Discovery Procedure. ..................................................... 11
4.3     Service of Discovery Requests and Responses..................................................... 12
4.4     Timing of Discovery Requests, Responses and Objections................................... 12
4.4.1     Depositions; Notice. ...................................................................................... 12
4.4.2     Interrogatories; Deadline for Responses and Objections. ................................ 12
4.4.3     Requests for Production of Documents or Things or for Entry Upon Land; Deadline for Responses and Objections........................................................................................ 12
4.4.4     Request for Admission; Period for Service; Deadline for Responses and Objections... 12
4.4.5     Discovery Cutoff and Completion. ................................................................. 12
4.5     Discovery Limitations......................................................................................... 13
4.6     Subpoenas. ......................................................................................................... 13
4.6.1     Issuance and Service. .................................................................................... 13

2

4.6.2      Motion to Quash Subpoena; Deadline. ................................................................. 13
4.7      Bates Numbering. ........................................................................................................... 14
4.8      Translations. .................................................................................................................... 14
4.9      Privileged Matter. ........................................................................................................... 14
4.9.1      Privilege Log. ............................................................................................................ 14
4.9.2      Motion to Compel Production of Privileged Matter. ................................................ 14
4.9.3      Production of Disputed Documents without Waiver of Privilege............................. 15
4.9.4      Submission of Documents for Review *in Camera*. .................................................. 15
4.10      Tentative List of Witnesses. ......................................................................................... 15
**5      Disclosures of Prior Art and Claim Constructions ........................................ 15**
5.1      Notice of Prior Art. ........................................................................................................ 15
5.2      Markman Hearing on Claim Construction. .................................................................... 16
5.2.1      Identification of Disputed Claim Terms. .................................................................. 16
5.2.2      Claim Construction Briefing. ................................................................................... 16
5.2.3      Markman Hearing. .................................................................................................... 16
5.2.4      Markman Order. ........................................................................................................ 17
**6      Expert Witnesses and Reports ........................................................................... 17**
**7      Settlement/Mediation ......................................................................................... 17**
**8      Pre-trial Submissions ......................................................................................... 17**
8.1      Pre-trial Statement. ........................................................................................................ 17
8.2      Pre-trial Brief. ................................................................................................................ 18
8.3      High Priority Evidentiary Objections. ........................................................................... 18
8.4      Motions *in Limine*. ....................................................................................................... 19
**9      Hearing - Evidence and Exhibits ...................................................................... 19**
9.1      Material To Be Received Into Evidence. ....................................................................... 19
9.2      Legal Experts. ................................................................................................................. 19
9.3      Witness Testimony. ......................................................................................................... 20
9.3.1      Format of Witness Statements. ................................................................................. 20
9.3.2      Language of Witness Statements. ............................................................................. 20
9.3.3      Exclusion of Witnesses During Hearing. ................................................................. 20
9.4      Exhibits. .......................................................................................................................... 20
9.4.1      Exchange of Proposed Exhibits Among Parties. ...................................................... 20
9.4.2      Service of Proposed Exhibits Upon Administrative Law Judge. .............................. 21
9.4.3      Format of Commission's Exhibit Set. ...................................................................... 21
9.4.4      Format of the ALJ's Final Exhibit Binder Set. ........................................................ 21
9.4.5      Maintenance and Filing of Final Exhibits and Final Exhibit List. .......................... 21
9.4.5.1      Submission of Final Exhibits to the Administrative Law Judge. ........................... 22
9.4.5.2      Binder Exhibit Set for the Office of General Counsel.......................................... 22
9.4.6      Numbering and Labeling of Exhibits. ...................................................................... 22
9.4.6.1      Confidential Exhibits............................................................................................. 23
9.4.6.2      Physical Exhibits. .................................................................................................. 23
9.4.6.3      Demonstrative Exhibits. ........................................................................................ 23
9.4.7      Public and Confidential Exhibits. ............................................................................. 23
9.4.8      Exhibit Lists. ............................................................................................................. 23
9.4.9      Foreign Language Exhibits. ...................................................................................... 24
9.4.10      One Document Per Exhibit; All Pages Bates-numbered................................. 24

9.4.11    Witness Exhibit Binder. ........................................................................ 24
9.4.12    References for Exhibit. ......................................................................... 25
9.4.13    Authenticity. ....................................................................................... 25
9.4.14    Sponsoring Witness. ............................................................................ 25
9.4.14.1    Request for Receipt of Evidence without a Sponsoring Witness. ............ 25
9.4.14.2    Deposition Designations ...................................................................... 25
9.4.15    Exhibits in Dispute. ............................................................................. 26
9.4.16    Filing of Exhibits by CD/DVD Media. ................................................... 26
9.4.16.1    Delivery to Administrative Law Judge. ................................................. 26
**10      Hearing Procedure** .............................................................................. **27**
10.1     Hearing; Order of Examination. ............................................................ 27
10.2     Closing Argument. .............................................................................. 27
10.3     Hearing Hours. ................................................................................... 27
10.4     Trial Decorum. ................................................................................... 27
10.4.1    Conversations at Trial. ........................................................................ 27
10.4.2    Reading Matter; Cell Phones and Beepers; Food and Beverages. .............. 27
10.4.3    Photos or Video Recording. ................................................................. 28
10.4.4    Swearing of Witnesses. ........................................................................ 28
10.4.5    Arguments on Objection. ..................................................................... 28
10.5     Examination of Witnesses. ................................................................... 28
10.5.1    Scope of Examination; In General. ........................................................ 28
10.5.2    Scope of Cross-examination. ................................................................ 28
10.5.3    Scope of Redirect and Re-cross Examination. ........................................ 28
10.5.4    Coordination of Witnesses. .................................................................. 28
10.5.5    Documents Presented to Witnesses. ...................................................... 28
10.5.6    Scope of Expert Witness Testimony. ..................................................... 29
10.5.7    Coordination of Respondents' Cross-examination. ................................. 29
10.5.8    Requests for Clarification of a Question. ............................................... 29
10.5.9    Use of Translators. ............................................................................. 29
10.5.10    Conferring with Witness during a Break in Testimony. ............................ 29
**11      Post-trial Briefs and Proposed Findings of Fact and Conclusions of Law** .............. **29**
11.1     Initial Post-trial Briefs; Filing and Content. .......................................... 29
11.2     Proposed Findings of Fact; Form and Content. ....................................... 30
11.3     Post-trial Reply Briefs; Filing and Content. ........................................... 30
11.4     Objections and Rebuttals to Proposed Findings of Fact; Form and Content. .... 31
11.5     Notice of Supplemental Authority. ........................................................ 31
**12      Citation of Cases** ................................................................................. **31**
**13      Coordination of Post-Hearing Briefs** .................................................... **31**
**14      Cooperation Among Parties** .................................................................. **31**
**15      *Ex Parte* Contacts** ............................................................................... **32**

## JUDGE LORD'S GROUND RULES[1]

**1    Address; Requirements for Filing, Service, and Copies; Time**

### 1.1    Address of Administrative Law Judge.

The Administrative Law Judge's address is as follows:

The Honorable Dee Lord
U.S. International Trade Commission
500 E Street, S.W., Room 317
Washington, D.C.  20436

### 1.2    Filing Requirement.

All submissions shall be filed with the Office of the Secretary of the Commission in accordance with Commission Rule 210.4(f) unless otherwise specifically provided for in these Ground Rules or by order of the Administrative Law Judge.  All submissions shall contain a footer pursuant to Ground Rule 3.9.

### 1.3    Service Copy Requirements.

In accordance with the requirements of Commission Rules 210.4(i), copies of each submission shall be served on all other parties, including the Commission Investigative Attorney, with a certificate of service pursuant to Commission Rule 201.16(c)(2).

Also, two courtesy paper copies of each submission (excluding notices of appearance, Protective Order subscriptions, and subpoenas) shall be submitted to the Administrative Law Judge at the address listed in Ground Rule 1.1 the next business day after the submission is filed.  These courtesy copies **shall not be stapled or bound** but may be held by easily removable clips or rubber bands in a redweld or loose-leaf binder.  Courtesy copies of the briefs shall be single-sided.  Exhibits shall be indexed and individually tabbed.  If the next business day is a Saturday, Sunday, Federal legal holiday, or a day on which weather or other conditions have made the Office of the Secretary of the Commission inaccessible, the two courtesy paper copies shall be submitted the next business day that is not one of the aforementioned days.

### 1.4    Electronic and Word Processor Copy.

On the same day that any submission is filed, other than a subscription to the Protective Order, a courtesy electronic copy shall be sent to the Administrative Law Judge's attorney-advisor, Ted Jou, at the following email address: edward.jou@usitc.gov.  For any motion or brief, an additional electronic copy shall be sent in Word format, excluding attachments such as exhibits.

---

[1] Revised May 13, 2016.

### 1.5    Submission by Fax Disfavored.

Submissions to the Administrative Law Judge by fax are **strongly disfavored** and are not to be made without her prior approval.

### 1.6    Concurrent Service.

Service on opposing counsel may be by hand, by facsimile, by e-mail, or by overnight courier. Parties are encouraged to agree upon a method of service so that the parties will receive all submissions at the same time the submissions are received by the Commission.

### 1.7    Computation of Time.

The first day of the ten (10) calendar days for parties responding to a motion received by the Administrative Law Judge shall be the first business day following the date that said motion was filed in the Office of the Secretary, and shall apply whether a motion is hand delivered, faxed or served by overnight courier on the other parties. The additional time provided under Commission Rule 201.16(d) after service by mail does not apply in such instances, unless service by electronic mail, hand-delivery or by an express-type mail or courier service is to a nonmoving party in a foreign country, in which event the additional time allowed for responses to motions shall be five (5) days. In addition to the requirements of Commission Rules 201.14, 201.16(d), and 210.6 for computation of time, if the last day of the period of time for making a submission falls on a day on which weather or other conditions have made the Office of the Secretary of the Commission inaccessible, the period shall run until the end of the next business day which is not one of the aforementioned days.

### 1.8    Request for Extension of Time.

Any request for extension of time must be made by written motion no later than **the day before** the due date and good cause for such extension must be established.

### 1.9    Confidential Submissions.

The confidential nature of any filing with the Office of the Secretary of the Commission or of any submission to the Administrative Law Judge shall be conspicuously noted on the top page of any filing or other submission. No cover letter or other document shall be stapled or otherwise attached to a filing or other submission so as to obscure the confidential marking on the top page.

### 1.10    Public Versions of Confidential Orders.

Within seven (7) days of the date of any confidential order (or any confidential notice, initial determination, or other document issued by the Administrative Law Judge), each party shall submit to the Administrative Law Judge a statement as to whether or not it seeks to have any portion of the order deleted from the public version that will issue pursuant to Commission Rule 210.5(f). The parties' submissions under this subsection need not be filed with the Commission

Secretary but shall be submitted by paper copy to the Administrative Law Judge and by e-mail to the Administrative Law Judge's attorney-advisor.

A party seeking to have a portion of the order deleted from the public version thereof must attach to its submission a copy of the order with red brackets indicating the portion(s) asserted to contain confidential business information. To avoid depriving the public of the basis for understanding the result and reasoning underlying the decision, redactions should be limited. Parties who submit excessive redactions may be required to provide an additional written statement, supported by declarations from individuals with personal knowledge, justifying each proposed redaction and specifically explaining why the information sought to be redacted meets the definition for confidential business information set forth in Commission Rule 201.6(a).

## 2     Procedural Schedule

The Administrative Law Judge will promulgate a procedural schedule for the investigation. Modifications of the procedural schedule by any party shall be made by written motion showing good cause. The event and deadline dates in the procedural schedule will generally adhere to the following chronological order:

| |
|---|
| First settlement conference |
| Submission of first settlement conference joint report |
| File identification of expert witnesses, including their expertise and curriculum vitae |
| Exchange Proposed Claim Constructions |
| Initial *Markman* Briefs |
| Rebuttal *Markman* Briefs |
| Initial tutorial on technology (if necessary) |
| *Markman* Hearing |
| Attendance at one-day mediation session[2] |
| Submission of joint report on mediation |
| File notice of prior art |
| Fact discovery cutoff and completion |
| Exchange of initial expert reports (identify tests/surveys/data) |
| File tentative list of witnesses a party will call to testify at the hearing |
| Exchange of rebuttal expert reports |
| Deadline for motions to compel discovery |
| Expert discovery cutoff and completion |
| Second settlement conference |
| Submission of second settlement conference joint report |
| Deadline for filing summary determination motions |
| Exchange of exhibit lists among the parties |
| Exchange proposed direct exhibits (including witness statements), with |

---

[2] For any questions regarding the mediation program, the parties should refer to the Revised Users' Manual for Commission Mediation Program, available at http://www.usitc.gov.

| physical and demonstrative exhibits available – Complainant(s) and Respondent(s)[3] |
| Exchange proposed direct exhibits (including witness statements), with physical and demonstrative exhibits available – Staff |
| |
| Exchange proposed rebuttal exhibits (including witness statements), with rebuttal physical and demonstrative exhibits available – all parties |
| Submit proposed exhibits to Administrative Law Judge – all parties |
| Deadline for motions *in limine* |
| File high priority objections statement |
| File pre-trial statements and briefs – Complainant(s) and Respondent(s) |
| File pre-trial statement and brief – Staff |
| File responses to high priority objections statement |
| File responses to motions *in limine*[4] |
| Supplemental tutorial on technology (if necessary) |
| Pre-trial conference |
| Hearing |
| File initial post-trial briefs, proposed findings of fact and conclusions of law, and final exhibit lists |
| File reply post-trial briefs, objections and rebuttals to proposed findings of fact |
| Initial Determination due |
| Target date for completion of investigation |

## 3      Motions; Deadlines for Responses

### 3.1      Contents; In General.

All written motions shall consist of: (1) the motion; (2) a separate memorandum of points and authorities in support of the motion;[5] and (3) an appendix of declarations, affidavits, exhibits, or other attachments in support of the memorandum of points and authorities, with a list of the contents thereof.

### 3.1.1    Contents; Responses to Motions.

All responses to motions shall include the Motion Docket Number assigned to the motion by the Commission's Office of the Secretary in either the title or the first paragraph of any such

---

[3] On this date, the private parties must also file requests for receipt of evidence without a sponsoring witness and exchange deposition designations.

[4] To facilitate the resolution of motions *in limine*, the deadline for responses to motions *in limine* must be at least ten (10) business days prior to the pre-hearing conference.

[5] A separate memorandum is not necessary for short procedural motions, such as motions for extensions of time.

response,[6] and shall consist of: (1) a memorandum of points and authorities in response to the motion; and (2) an appendix of declarations, affidavits, exhibits, or other attachments in support of the memorandum of points and authorities, with a list of the contents thereof.

### 3.1.2   Contents; Reply Briefs.

The moving party is permitted to file a reply brief within three (3) days of the filing of a response to the motion. The reply brief shall include the Motion Docket Number assigned to the motion by the Commission's Office of the Secretary in either the title or the first paragraph of the brief,[7] and shall consist of: (1) a memorandum of points and authorities limited to issues raised in the response; and (2) an appendix of declarations, affidavits, exhibits, or other attachments in support of the memorandum of points and authorities, with a list of the contents thereof. Sur-reply briefs will not be permitted absent extraordinary circumstances.

### 3.2   Contents; Certification.

All motions shall include a certification that the moving party has made reasonable, good-faith efforts to resolve the matter with the other parties **at least two business days** prior to filing the motion, and shall state, if known, the position of the other parties on such motion. Said certification shall be placed at the beginning of the motion under a heading entitled "Ground Rule 3.2 Certification" or similar language.

### 3.3   Contents; Motion for Summary Determination.

In addition to the foregoing requirements for all motions, motions for summary determination shall include a memorandum setting forth (i) the legal basis for granting summary determination as a matter of law pursuant to Commission Rule 210.18; and (ii) the material facts for which the movant asserts there is no genuine dispute. Absent extraordinary circumstances, the memorandum shall not exceed fifty (50) pages.

### 3.3.1   Contents; Statement of Undisputed Material Facts.

A movant may choose to attach a separate statement of undisputed material facts, but the motion and memorandum should cite directly to the exhibits and not to the separate statement.

### 3.3.2   Contents; Response to Motion for Summary Determination.

In addition to the foregoing requirements for all responses to motions, each party opposing a motion for summary determination shall address the facts asserted by the movant with contrary evidence showing that the materials cited do not establish the absence of a genuine dispute, or that the movant cannot produce admissible evidence to support the fact. Absent extraordinary circumstances, the response shall not exceed fifty (50) pages.

---

[6] Motion Docket Numbers may be obtained online through the Commission's Electronic Document Information System (EDIS).

[7] *See supra*, note 6.

### 3.3.3   Contents; Summary Determination Reply Brief

The moving party is permitted to file a reply brief in support of a motion for summary determination pursuant to Ground Rule 3.1.2.  Absent extraordinary circumstances, the reply brief shall not exceed twenty (20) pages.

### 3.4    Contents; Motion for Termination.

Any motion for termination or partial termination must identify the relevant subsection of Commission Rule 210.21 that governs the termination.  The parties must carefully comply with the requirements of the Commission Rule, including the required statement regarding other agreements required under each subsection, the public version of any settlement agreement required under subsection (b),[8] and the specific requirements set forth for consent order stipulations in subsection (c)(3) and for consent orders in subsection (c)(4).

### 3.5    Contents; Discovery-Related Motions.

Any discovery-related motion must have appended to it the pertinent parts of the discovery request and all objections and answers thereto.[9]  If any issues become moot after a discovery-related motion has been filed, the moving party shall promptly notify the Administrative Law Judge.

### 3.6    Deadline for Filing Response to Motion.

In addition to the requirements of Commission Rules 201.16 and 210.15(c) governing the time period for a nonmoving party's response to a written motion, the deadline for filing a response to a motion shall be calculated in accordance with Ground Rule 1.7.

### 3.7    Request for Shortened Time to Respond to Motion.

A motion may include a request to shorten the period of time during which other parties may respond to the motion.  The fact that a shortened response time is requested shall be noted in the title of the motion and the motion shall include an explanation of the grounds for such a request.  A request for a shortened response time shall not be made through a separate motion.

### 3.8    No Motion Stops Discovery Except Motion to Quash Subpoena.

No motion stops discovery except a timely motion to quash a subpoena.

### 3.9    Formatting; Footer.

Every page of a pleading or other document must bear a footer with the investigation number, a summary of the title of the document, and consecutive numbering at the bottom of the page.

---

[8] Redactions should be limited as described in Ground Rule 1.10, *supra*.
[9] This requirement does not apply to uncontested procedural motions such as extensions of time.

Attachments and exhibits must include a cover page referencing the investigation number and the title of the document to which they are attached.

### 3.10   Notice of Supplemental Authority.

In the event that a party identifies relevant authority that issued after briefing on a motion is completed but before a decision has been issued by the ALJ, that party may file a "Notice of Supplemental Authority." Any such notice shall be limited to a single typewritten page and shall include the citation for the supplemental authority and a brief explanation of its relevance. The notice shall be filed on EDIS and served on all parties. Any response to the notice shall be filed no later than two days after service of the notice.

## 4   Discovery

### 4.1   Resolution of Disputes; Coordinated Discovery.

All parties shall make reasonable efforts to resolve among themselves disputes arising during discovery. Parties with similar interests must coordinate and consolidate depositions and all other discovery.

#### 4.1.1   Discovery Committee.

Commencing with the first full week after these Ground Rules are issued, a discovery conference committee (the "Discovery Committee") consisting of the lead counsel of each party and the Commission Investigative Staff Attorney shall convene at least once every two weeks during the discovery phase of this Investigation, either in person or by telephone, to resolve discovery disputes. The Discovery Committee shall confer in good faith to resolve every outstanding discovery dispute in a timely manner within the deadlines set forth in the Procedural Schedule. Within ten calendar days after the end of each calendar month during the discovery phase, the Discovery Committee shall report in writing to the Administrative Law Judge all disputes that were resolved during the preceding month and all disputes on which there is an impasse as of the end of that month. No motion to compel discovery may be filed unless the subject matter of the motion has first been brought to the Discovery Committee and the Committee has reached an impasse in resolving the matter.

### 4.2   Stipulations Regarding Discovery Procedure.

Unless otherwise directed by the Administrative Law Judge, the parties may by written stipulation (1) provide that depositions may be taken before any person, at any time or place, upon any notice, and in any manner and when so taken may be used like other depositions, and (2) modify other procedures governing or limitations placed upon discovery, except that stipulations extending the time provided in Ground Rules 4.4.2, 4.4.3, and 4.4.4 for responses to discovery may be made only with the approval of the Administrative Law Judge upon a written motion showing good cause.

### 4.3    Service of Discovery Requests and Responses.

Discovery requests and responses thereto shall be served upon all parties, including the Commission Investigative Attorney, but shall not be served on the Administrative Law Judge unless they are pertinent to a motion.  Discovery documents need not be served on the Office of the Secretary of the Commission unless they are appended to motions.

### 4.4    Timing of Discovery Requests, Responses and Objections.

#### 4.4.1   Depositions; Notice.

In addition to the requirements of Commission Rule 210.28(c), unless otherwise ordered, any party desiring to take a deposition shall give notice in writing to every other party of not less than ten (10) days if the deposition is to be taken of a person located in the United States, or of not less than fifteen (15) business days if the deposition is to be taken of a person located outside the United States.

#### 4.4.2   Interrogatories; Deadline for Responses and Objections.

In addition to the requirements of Commission Rule 210.29(b), unless otherwise ordered, the party upon whom interrogatories have been served shall serve a copy of the answers, and any objections, within ten (10) days after the service of the interrogatories.

#### 4.4.3   Requests for Production of Documents or Things or for Entry Upon Land; Deadline for Responses and Objections.

In addition to the requirements of Commission Rule 210.30(b)(2) with respect to a request for the production of documents or things, or to permit entry upon land, unless otherwise ordered, the party upon whom a request has been served shall serve a written response within ten (10) days after the service of the request.

#### 4.4.4   Request for Admission; Period for Service; Deadline for Responses and Objections.

In addition to the requirements of Commission Rule 210.31(a) and (b), unless otherwise ordered, a request for admission may be served at any time twenty (20) days after the date of service of the Complaint and Notice of Investigation.  Unless otherwise ordered, a party upon whom a request for admission has been served, shall serve an answer or objection within ten (10) days after the service of the request, otherwise the matter may be deemed admitted.

#### 4.4.5   Discovery Cutoff and Completion.

All discovery requests, including subpoenas, must be initiated in sufficient time prior to the fact discovery cutoff and completion date so that the responses will be due prior to that date within the time periods set forth above.  Discovery requests by any party that would require responses

after the fact discovery cutoff and completion date must be approved in advance by the Administrative Law Judge upon a showing of compelling circumstances.

### 4.5     Discovery Limitations.

The parties are encouraged to meet and confer regarding limitations on the number of depositions, interrogatories, requests for production, and requests for admission. Any such limitations should be agreed to by stipulation pursuant to Ground Rule 4.2. Absent any agreement, depositions and interrogatories shall be limited pursuant to Commission Rules 210.28(a) and 210.29(a), respectively. Leave to exceed these limits shall be granted by the Administrative Law Judge only upon a written motion showing good cause.

### 4.6     Subpoenas.

#### 4.6.1   Issuance and Service.

Pursuant to Commission Rule 210.32, an application for subpoena may be made *ex parte* to the Administrative Law Judge. The application shall be in writing with the proposed subpoena attached, and one (1) copy thereof submitted to the office of the Administrative Law Judges. The application shall set forth with specificity the relevancy of the information sought and the reasonableness of the scope of the inquiry. In addition, the subpoena should set forth a time limit for a motion to quash and should also state that the subpoena will be served by overnight delivery, if not sooner. Any dates in a subpoena set for appearance of a deponent or production of documents should take into account the date set for the filing of any motions to quash. A copy of the issued subpoena and the application shall be served by the applicant upon the subpoenaed party and all other parties to the investigation on the next business day, at the latest, after the subpoena is issued, and all parties including the subpoenaed party shall be notified on that day about the contents of the subpoena. One (1) copy of the issued subpoena, the application, and the proof of service to the subpoenaed party shall be supplied to the Administrative Law Judge. Samples of subpoenas are attached in Appendix A hereto. The application and subpoena need not be filed with or served on the Office of the Secretary of the Commission, including EDIS, unless they are appended to a motion to quash or motion for a protective order.

#### 4.6.2   Motion to Quash Subpoena; Deadline.

In addition to the requirements of Commission Rule 210.32(d), any motion to limit or quash a subpoena shall be filed within ten (10) days after receipt thereof, or within such other time as the Administrative Law Judge may allow. Any motion to quash or limit a subpoena must have appended to it the pertinent parts of the subpoena and all objections and responses thereto. Filing of any motion to quash an issued subpoena automatically stays such subpoena pending disposition of the motion by the Administrative Law Judge. Failure to file a timely motion to quash does not waive objections that are raised timely in response to a subpoena.

### 4.7    Bates Numbering.

If documents produced by any supplier in response to a document request are furnished to the requester as copies of original documents, every page of every such document shall be numbered sequentially by a unique number (commonly known as a "Bates number"). The Bates number shall appear stamped on the lower right-hand corner of the page.

### 4.8    Translations.

All documents produced in response to a document request shall be the original or true complete copies of originals. If an English translation of any document produced exists, the English translation shall be produced. If any of the parties dispute the translation provided by the producing party, then the translation must be certified by a qualified and neutral translator upon whom counsel can agree.

### 4.9    Privileged Matter.

In order to expedite discovery, the following procedure shall be followed with respect to those documents for which counsel claims privilege (attorney-client or work product).

### 4.9.1    Privilege Log.

If production of any document is withheld on the basis of a claim of privilege, each withheld document must be separately identified via a privilege log pursuant to Commission Rule 210.27(e)(1)(ii). The privilege log shall be supplied, unless otherwise ordered, within ten (10) days after objections based on privilege to the underlying document requests are due. The privilege log must identify each document separately, specifying for each document at least the following: (1) the date; (2) the author(s)/sender(s); (3) the recipient(s), including copy recipient(s); and (4) the general subject matter of the document, without revealing the privileged information itself. The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated. If the author/sender or recipient is an attorney or foreign patent agent, he or she shall be so identified. The type of privilege claimed must also be stated, together with certification that all elements of the claimed privilege have been met and not waived with respect to each document. Each entry in the privilege log must provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege and to assist the court in determining whether the claim applies if challenged.

### 4.9.2    Motion to Compel Production of Privileged Matter.

Any party seeking production of allegedly privileged documents shall file an appropriate motion only after examining the privileged document list.

The Administrative Law Judge is aware that, often times, parties agree that production of a privilege log is not necessary. The Administrative Law Judge finds such an agreement to be

acceptable; however, if such an agreement is in force, the Administrative Law Judge will not consider any motions involving privileged documents.

### 4.9.3   Production of Disputed Documents without Waiver of Privilege.

If a dispute arises regarding a claim of privilege and the party claiming the privilege determines that the underlying documents are not significant to the disputed issues in the Investigation and may be disclosed without prejudice, the parties may jointly move for an order compelling production of these documents to avoid unnecessary litigation. The production of such documents will be ordered without waiver of any applicable privilege over the subject documents or any other associated documents that are not produced.

### 4.9.4   Submission of Documents for Review *in Camera*.

Submission of documents for review *in camera* is disfavored. However, if a party believes that review *in camera* is necessary to resolve a claim of privilege, a written request for leave to submit documents *in camera* must be made, supported by legal argument explaining why *in camera* review is warranted and providing an opportunity to all other parties to respond to the request for *in camera* review. *In camera* review is subject to the discretion of the Administrative Law Judge; accordingly, documents should not be submitted unless and until a request for *in camera* review is granted.

### 4.10   Tentative List of Witnesses.

A party's tentative list of witnesses shall identify the name of each witness the party will call to testify at the hearing, with an identification of each witness' relationship to the party. If any party identifies more than twenty (20) witnesses on its tentative witness list (or the respondents collectively identify more than five (5) witnesses per respondent), those witnesses must be made available for deposition notwithstanding the limits of Commission Rule 210.28.

## 5   Disclosures of Prior Art and Claim Constructions

### 5.1   Notice of Prior Art.

Parties must file on or before the date set in the procedural schedule, notices of any prior art consisting of the following information: country, number, date, and name of the patentee of any patent; the title, date and page numbers of any publication to be relied upon as evidence of invalidity of the patent in suit, or as showing the state of the art, and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit.

If a trademark is involved, the parties must file on or before the date set in the procedural schedule, notices of any art on which a party will rely at the hearing regarding the functionality or non-functionality of any trademarks at issue.

In the absence of such notice, proof of said matters may not be introduced into evidence at the hearing except upon a timely written motion showing good cause.

## 5.2      Markman Hearing on Claim Construction.

If the Administrative Law Judge determines that a *Markman* hearing would be beneficial to the Investigation, the Administrative Law Judge shall conduct a *Markman* hearing on the date set forth in the procedural schedule for the purpose of construing disputed claim terms of the patents at issue in the Investigation.

### 5.2.1    Identification of Disputed Claim Terms.

The parties and Commission Investigative Staff shall meet and confer to identify the disputed claim terms most likely to be significant in resolving the parties' disputes. The parties shall identify disputed claim construction terms for briefing and shall exchange proposed constructions for these terms no later than thirty (30) days before the *Markman* hearing.[10] Identification of claim construction terms shall be limited to those necessary to resolve the issues in dispute and briefing will be subject to the page limitations set forth below.

### 5.2.2    Claim Construction Briefing.

The parties and Commission Investigative Staff shall meet and confer to set a logical order and timing for claim construction briefing. Dates for the filing of claim construction briefs shall be set in the procedural schedule.

The parties' initial briefs shall be no longer than fifty (50) pages (if there is more than one Respondent, they are required to file a joint brief). The initial briefs shall include a short written statement of the proposed construction for each of the disputed claim terms together with support for each interpretation as a matter of ordinary meaning, or as derived from the claims, specification, or prosecution history of the patent(s) at issue, or from extrinsic evidence.[11] If there are multiple patents at issue, the brief should be organized by patent, similar to the outline for post-trial briefs (*see* Appendix B). Rebuttal briefs may also be filed in accordance with the procedural schedule and shall be no longer than twenty-five (25) pages.

All *Markman* briefs must be filed no later than seven (7) days before the *Markman* hearing. *Markman* briefs shall contain a footer pursuant to Ground Rule 3.9.

### 5.2.3    Markman Hearing.

The parties and Commission Investigative Staff shall meet and confer to determine the order of presentation and allocation of time for the *Markman* hearing. Exhibits at the *Markman* hearing

---

[10] With the agreement of the parties, the Commission Investigative Staff may disclose its claim construction positions at a later date.

[11] *See Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979-81 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996).

shall be limited to those attached to the parties' *Markman* briefs, although the parties may use additional demonstrative exhibits.

### 5.2.4   Markman Order.

After the *Markman* hearing, the Administrative Law Judge may issue an order construing some or all of the disputed claim terms for the purposes of the Investigation.  If such an order is issued, discovery and briefing in the Investigation shall be limited to the claim construction(s) provided in that order.

### 6      Expert Witnesses and Reports

On or before the dates set forth in the procedural schedule, a party shall disclose to other parties the identity of any person who is retained or employed to provide expert testimony at the hearing and shall provide to the other parties a written report prepared and signed by the witness.  The report shall not be filed with the Office of the Secretary of the Commission.  The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.  The parties shall supplement these disclosures as needed in the manner provided in Commission Rule 210.27(f).

### 7      Settlement/Mediation

All parties, throughout the duration of the proceedings, shall explore reasonable possibilities for settlement of all or any of the contested issues.  All parties shall certify in their pre-trial statements that good faith efforts were undertaken to settle the remaining issues.  Additionally, for each of the required settlement conferences and the one-day mediation provided for in the procedural schedule, the parties shall provide the Administrative Law Judge with two copies of a joint report signed by all the parties setting forth any stipulations on which the parties have agreed.  These reports are due by the time designated in the procedural schedule or within such other time as the Administrative Law Judge may allow.  The reports shall not be filed with the Office of the Secretary of the Commission.

### 8      Pre-trial Submissions

#### 8.1      Pre-trial Statement.

Each party who desires to participate in the hearing in this Investigation must file on or before the date set forth in the procedural schedule a pre-trial statement containing the following information:

(a) The names of all known witnesses, their addresses, whether they are fact or expert witnesses (and their area of expertise), and a brief outline of the testimony of each

witness.  In the case of expert witnesses, a copy of the expert's curriculum vitae shall accompany this submission.

(b) A list of all exhibits which the parties will seek to introduce at the hearing.

(c) A list of any stipulations on which the parties have agreed.

(d) A proposed agenda for the pre-trial conference.

(e) Estimated date and approximate length for appearance of each witness.  The parties shall confer on estimated dates and approximate length prior to submission of their pre-trial statements.

(f) Certification regarding good faith efforts to settle.

### 8.2    Pre-trial Brief.

On or before the date set forth in the procedural schedule, each party shall file a pre-trial brief. The pre-trial brief shall be prefaced with a table of contents and a table of authorities.  The pre-trial brief shall set forth a party's contentions on each of the proposed issues, including citations to legal authorities in support thereof, and shall conform to the general outline set forth in Appendix B hereto.  All issues, including issues not specifically named in the general outline that any party seeks to address, shall be inserted into the general outline where appropriate.  The parties shall meet and confer as needed prior to filing the pre-trial briefs in order to determine appropriate common locations for each issue in the foregoing outline of every pre-trial brief. The parties shall provide complete proposed claim construction arguments for any terms at issue that have not been addressed in a *Markman* Order.

Any contentions not set forth in detail as required herein shall be deemed abandoned or withdrawn, except for contentions of which a party is not aware and could not be aware in the exercise of reasonable diligence at the time of filing the pre-trial brief.  Pre-trial briefs shall contain a footer pursuant to Ground Rule 3.9.

### 8.3    High Priority Evidentiary Objections.

High Priority Objections are objections to the admission of exhibits or testimony that can be raised in advance of the hearing or at the pre-hearing conference.  Objections to any testimony in written witness statements or deposition designations, or any exhibits identified for admission therein or in a request for receipt of evidence without a sponsoring witness, **must be raised** in a high priority objection or a motion *in limine*.  Objections to such evidence raised for the first time at the hearing will only be considered with an explanation for why the objection was not timely raised in a high priority objection or a motion *in limine*.

The parties must make reasonable, good-faith efforts to resolve their objections and to reduce the number of objections to focus on substantive evidence that would cause material prejudice if admitted.   While high priority objections are not motions, the parties shall include a certification pursuant to Ground Rule 3.2 when filing their objections.

Each party's high priority objections shall be accompanied by a narrative explanation of the objections.  High priority objections and responses thereto shall include the exhibit(s) that is the subject of the objection and/or exhibit(s) that is referenced or discussed in the objection or

response. Any high priority objection that does not include said exhibit(s) will not be considered. In the case of voluminous attachments, these exhibits may be submitted electronically to the Administrative Law Judge.

Although the Federal Rules of Evidence provide numerous bases on which to object to the admission of evidence in Federal District Courts, a party's high priority objections should be based on Commission Rule 210.37, which provides that "[r]elevant, material, and reliable evidence shall be admitted. Irrelevant, immaterial, unreliable, or unduly repetitious evidence shall be excluded. Immaterial or irrelevant parts of an admissible document shall be segregated and excluded as far as practicable."

### 8.4     Motions *in Limine.*

Unless otherwise permitted by the Administrative Law Judge, each side shall be limited to a maximum of ten (10) motions *in limine.* The parties should not attempt to circumvent this limitation by including numerous subsections in a motion *in limine.* Objections to any testimony in written witness statements or deposition designations, or any exhibits identified for admission therein or in a request for receipt of evidence without a sponsoring witness, must be raised in a high priority objection or a motion *in limine.* Objections to such evidence raised for the first time at the hearing will only be considered with an explanation for why the objection was not timely raised in a high priority objection or a motion *in limine.*

Motions *in limine* and responses thereto shall include the exhibit(s) that is the subject of the motion and/or exhibit(s) that is referenced or discussed in the response. Any motion *in limine* that does not include said exhibit(s) will not be considered. In the case of voluminous attachments, these exhibits may be submitted electronically to the Administrative Law Judge.

Motions *in limine* are subject to the rules regarding all motions set forth in Ground Rule 3, including the certification requirements of Ground Rule 3.2 and the right to a reply pursuant to Ground Rule 3.1.2.

### 9     Hearing - Evidence and Exhibits

### 9.1     Material To Be Received Into Evidence.

Only factual material and expert opinion shall be received into evidence. Legal argument shall be presented in the briefs. Any objection to the admission of an exhibit must be raised when the objected-to exhibit is offered into evidence at the hearing. Any objection to live testimony must be timely raised during the testimony. Objections that are not timely raised at the evidentiary hearing will not be considered.

### 9.2     Legal Experts.

Legal experts may only testify as to procedures of the U.S. Patent and Trademark Office.

### 9.3     Witness Testimony.

**All direct witness testimony**, with the exception of adverse witnesses, shall be made by witness statements in lieu of live testimony.  Staff may, however, ask the witness supplemental direct testimony on the witness stand.  Witness statements shall be marked and offered into evidence as exhibits, and witnesses shall be available for cross-examination on the witness stand unless waived.  Witnesses will not read their prepared testimony into the record.

#### 9.3.1     Format of Witness Statements.

A witness statement shall be in the form of numbered questions from counsel, with each question followed by the witness's own answer to that question, and with the final question from counsel asking the witness whether or not the witness statement contains the witness's answers to the questions from counsel, followed by the witness's answer to this question and the witness's signature.  The witness statement shall be assigned an exhibit number and each question shall be numbered consecutively.   The questions shall be in the form of a direct examination and the answers shall be in the form of verbal testimony, although the witness statement may be organized (*e.g.* headings, table of contents, and bulleted or numbered lists) to facilitate an understanding of the issues and may include illustrative excerpts from admissible exhibits.  If the testimony in the witness statement will be used to sponsor the admission of any exhibits, a list of all such exhibits shall be attached to the witness statement.

#### 9.3.2     Language of Witness Statements.

A witness statement shall be in the language of the witness, and a foreign language witness statement shall be accompanied by a certified translation thereof.

#### 9.3.3     Exclusion of Witnesses During Hearing.

Except upon a timely written motion and for good cause shown, fact witnesses shall not review the witness statements of other witnesses and shall be excluded from the hearing prior to their testimony.  Subject to restrictions imposed by any protective order entered in an investigation, this rule does not apply to exclude a party who is a natural person or an officer or employee of a party designated as the party's representative by its attorney.

### 9.4     Exhibits.

#### 9.4.1     Exchange of Proposed Exhibits Among Parties.

Copies of documentary proposed exhibits, along with a proposed exhibit list shall be served on the opposing parties (including the Commission Investigative Attorney) on the date ordered in the procedural schedule.  Once the parties have exchanged their proposed exhibit lists, they shall eliminate any duplicative exhibits or renumber such exhibits as joint exhibits and update their exhibit lists before they are submitted to the Administrative Law Judge by the due date in the procedural schedule.  Proposed physical and demonstrative exhibits need not be served, but shall be identified in the proposed exhibit list.  Proposed physical and demonstrative exhibits,

however, must be made available for inspection by the other parties on the date established for the submission and service of proposed exhibits.  Proposed exhibits shall not be filed with the Office of the Secretary of the Commission.

### 9.4.2    Service of Proposed Exhibits Upon Administrative Law Judge.

On the date that is set forth in the procedural schedule, the Administrative Law Judge shall receive an electronic PDF version of all proposed exhibits, along with a proposed exhibit list. The electronic version of proposed exhibits may be submitted on an external hard drive or a flash drive.  If a party has received permission from the Secretary to file the Commission's exhibit set on paper, said party shall also submit a set containing each proposed exhibit in an individual folder (which will be used for scanning purposes).  Clear photocopies may be used instead of original documents.

### 9.4.3    Format of Commission's Exhibit Set.

The following shall apply **ONLY** if a party has received permission from the Secretary to file the Commission's exhibit set on paper:

Exhibits in the Commission set shall consist of loose sheets (which may be clipped but not stapled) in folders (file folders, accordion folders, etc.) that are provided in sequentially-numbered boxes.  Each folder must be labeled to reflect the number of the exhibit contained therein, *e.g.*, RX-0014C.  In each of the boxes of the Commission exhibit set, the folders containing the exhibits shall be placed in numerical order.

The procedure for filing exhibits electronically is set forth in Ground Rule 9.4.16, *infra*.

### 9.4.4    Format of the ALJ's Final Exhibit Binder Set.

The exhibits in the Administrative Law Judge's binder set of final exhibits shall be individually tabbed, with each tab reflecting the number of the corresponding exhibit, *e.g.*, CX-0003C.  Each binder must be labeled on its spine with the name and number of the investigation and the nature of the contents of the binder, *e.g.* Complainant's Exhibits CX-0001 through CX-0018C.  The exhibits in the binder set shall be in consecutive numerical order, and shall not be separated according to confidential or public status.

### 9.4.5    Maintenance and Filing of Final Exhibits and Final Exhibit List.

On the date that initial post-hearing briefs are due, each party must submit a final exhibit list prepared in accordance with Ground Rule 9.4.8 reflecting the status of all exhibits, including those admitted and rejected during the hearing.  Any withdrawn exhibit shall be identified on the final exhibit list only by exhibit number and shall indicate that it is withdrawn.

The parties are responsible during the course of the hearing for updating the exhibit lists and for maintaining and updating the Commission set of exhibits, which shall become the set that is filed

with the Commission after the record is closed, as well as for confirming that all admitted and rejected exhibits are included among the Commission exhibits and the final exhibit list at the conclusion of the hearing. Any exhibits that are not included with the Commission exhibits and the final exhibit list at the conclusion of the hearing will not be considered as part of the record to be certified to the Commission when the final initial determination issues.

All final Commission exhibits shall be submitted to the office of the Administrative Law Judge who will transmit the Commission exhibits to Docket Services. The Commission exhibits should not be submitted directly to Docket Services.

### 9.4.5.1   Submission of Final Exhibits to the Administrative Law Judge.

On the date that initial post-hearing briefs are due, the parties shall submit [1] the Administrative Law Judge's binder set of all the final exhibits in the format set forth in Ground Rule 9.4.4; [2] an electronic version of the final set of exhibits to the Administrative Law Judge for her use in drafting the final initial determination; and [3] the Commission set of exhibits, with rejected exhibits submitted under separate cover and so marked. The Commission set of exhibits must be submitted on CD. The Administrative Law Judge's set, however, may be submitted on an external hard drive or flash drive and need not be separated in the manner set forth in Ground Rule 9.4.16.

### 9.4.5.2   Binder Exhibit Set for the Office of General Counsel.

No later than thirty (30) days after the submission of post-trial reply briefs, each party shall deliver one additional binder set of copies of all exhibits except withdrawn exhibits directly to the Office of General Counsel along with a final exhibit list, with rejected exhibits submitted under separate cover and so marked. In the alternative, the parties may submit this set electronically pursuant to Ground Rule 9.4.16.

### 9.4.6   Numbering and Labeling of Exhibits.

Written exhibits shall be marked serially commencing with the four digit number "0001" and preceded by the prefix "CX" for Complainant's exhibits, "RX" for Respondent(s)' exhibits, "SX" for the Commission Investigative Attorney's exhibits, and "JX" for any joint exhibits. The parties shall not "reserve" numbers, but instead shall assign all numbers in consecutive sequence.

Each exhibit shall be marked by placing a label bearing the exhibit's number (*e.g.*, CX-0003C or RX-0005) in the upper right portion of the exhibit's first page. The pages of each exhibit must be sequentially numbered in a consistent location on the pages.

Respondent(s) shall coordinate their numbering to avoid duplication in numbering. Additionally, the parties shall coordinate exhibits to avoid unnecessary duplication (*e.g.*, patents; file wrappers). Further, all exhibits or copies of exhibits shall be clear and legible. Lastly, each exhibit may be assigned no more than one number.

### 9.4.6.1   Confidential Exhibits.

If an exhibit contains confidential business information, a "C" shall be placed after the exhibit number. Furthermore, exhibits containing confidential business information shall be so designated pursuant to the Protective Order. In addition, on any exhibit list submitted, exhibits which contain confidential business information shall be denoted by placing a "C" after the exhibit number in the listing. No exhibit list shall contain confidential information; all exhibits lists shall be public documents.

### 9.4.6.2   Physical Exhibits.

Physical exhibits shall be numbered in a separate series commencing the four-digit number "0001" preceded by the prefixes "CPX", "RPX", "SPX" and "JPX", for Complainant, Respondent, the Commission Investigative Attorney, and joint exhibits, respectively. Confidential exhibits shall be denoted with the letter "C" as in the case of documentary exhibits.

### 9.4.6.3   Demonstrative Exhibits.

Demonstrative exhibits shall be numbered in a separate series commencing with the four-digit number "0001" preceded by the prefixes "CDX", "RDX", and "SDX", for Complainant, Respondent(s), and the Commission Investigative Attorney, respectively. Confidential exhibits shall be denoted with the letter "C". Additionally, the parties shall provide the Administrative Law Judge with two (2) copies of key demonstrative exhibits (e.g., charts, drawings, etc.) reduced to 8½ inches x 11 inches.

### 9.4.7   Public and Confidential Exhibits.

If any portion of an exhibit contains confidential business information, the entire exhibit shall be treated as confidential. For certain lengthy exhibits of which only portions are confidential, the parties may be asked to submit a public version of the exhibit.

The exhibits in the binder sets shall be in consecutive numerical order, and shall not be separated according to confidential or public status.

### 9.4.8   Exhibit Lists.

Every exhibit list shall consist of a table enumerating all exhibits serially by exhibit number and identifying each exhibit by a descriptive title, a brief statement of the purpose for which the exhibit is being offered in evidence, the name of the sponsoring witness, and the status of receipt of the exhibit into evidence. In the case of joint exhibits, every exhibit list shall identify such exhibits, and the parties shall meet and confer before submitting the lists to agree upon a common descriptive title, statement of purpose, and sponsoring witnesses that shall appear on every list for each joint exhibit. In any exhibit list submitted prior to the offer of any exhibit into evidence, the entry in the column for the status of receipt shall be left blank. In any exhibit list submitted after the exhibit is offered into evidence or withdrawn, the entry in that column shall

show the date of admission into evidence or rejection of the exhibit or shall indicate its withdrawal.

Exhibit lists shall include public and confidential exhibits, and shall list all exhibits together in numerical order, *e.g.*, CX-0001, CX-0002, CX-0003C, CX-0004, CX-0005C, etc.

### 9.4.9   Foreign Language Exhibits.

No foreign language exhibits will be received into evidence unless a translation thereof is provided at the time set for the exchange of exhibits. The translation shall be included as part of the foreign language exhibit.

### 9.4.10  One Document Per Exhibit; All Pages Bates-numbered.

Except for good cause shown, each exhibit shall consist of no more than one document and every page of every document shall be Bates numbered in accordance with Ground Rule 4.7 or labeled with a footer as required by Ground Rule 3.9. Exceptions to this "one document per exhibit" rule include instances when it would be appropriate to group certain documents together as one exhibit, such as a group of invoices or related e-mails.

### 9.4.11  Witness Exhibit Binder.

In examining witnesses on direct with prepared written testimony, counsel shall provide the witness, the Administrative Law Judge, and other counsel, just prior to the commencement of the examination of each witness, with a binder containing only the witness's prepared written testimony, along with a table of all exhibits that counsel seeks to admit into evidence through the witness statement along with a blank column entitled "Received Into Evidence" or having similar language.

In examining adverse witnesses who have not prepared written testimony, or cross-examining witnesses, counsel shall provide the witness, the Administrative Law Judge, and other counsel, just prior to the commencement of the examination of each witness, with a binder (or binders) containing all exhibits, in numerical order, and individually tabbed, to be used in the examination of the witness. Each binder must be labeled on its spine with the name and number of the investigation and the nature of the contents of the binder, *e.g.*, Cross-Examination of Witness - Volume 1 of 1. In addition, the front of the witness binder must include a table of all exhibits that counsel seeks to admit into evidence through the examination of the witness with a blank column entitled "Received Into Evidence" or having similar language.

If there are certain exhibits (*i.e.*, patent, prosecution histories) that will be used frequently with more than one witness, a separate exhibit binder containing those exhibits may be used with those witnesses and do not have be included in the separate witness binder for each witness.

### 9.4.12  References for Exhibit.

If it is appropriate, exhibits shall cite sources of information and methods employed in formulating accounting, economic or other types of data. Rebuttal exhibits, if submitted, shall refer specifically to exhibits being rebutted.

### 9.4.13  Authenticity.

All documents that appear to be regular on their face shall be deemed authentic, unless it is shown by particularized evidence that the document is a forgery or is not what it purports to be.

### 9.4.14  Sponsoring Witness.

Each exhibit that is offered into evidence shall have a "sponsoring witness." One of the purposes of having a sponsoring witness associated with an exhibit is to establish a foundation for the exhibit. Exhibits may be sponsored through a witness statement, live testimony, deposition designations, or otherwise by agreement of the parties.

#### 9.4.14.1  Request for Receipt of Evidence without a Sponsoring Witness.

Except in an investigation in which there is no participating Respondent, if a party believes evidence to be non-controversial and to be appropriate for receipt in evidence without a sponsoring witness, that party must identify any such exhibit(s) at the same time that direct witness statements are exchanged. The request for receipt of such evidence shall be filed with: (1) an affidavit or declaration that the declarant prepared or someone under the declarant's direction prepared the exhibit(s); (2) a request that the exhibit(s) be received in evidence without a witness at the hearing; and (3) a statement of grounds for receiving the exhibit(s) in evidence without a witness at the hearing. Any party who wishes to cross-examine the declarant may object in writing within three (3) days of service of the affidavit or declaration and request, specifying whom the party intends to examine. In the absence of a pending request to examine such a declarant, any objection to the admission of an exhibit identified in a timely filed request under this subsection must be raised in a high priority objection or a motion *in limine*.

Requests for the receipt of evidence without a sponsoring witness shall include the exhibit(s) that is the subject of the request. Any request that does not include said exhibit(s) will not be considered. In the case of voluminous attachments, these exhibits may be submitted electronically to the Administrative Law Judge.

#### 9.4.14.2  Deposition Designations

The parties may seek the admission of testimony through the designation of deposition testimony pursuant to Commission Rule 210.28(g)-(h). Each designated transcript shall be assigned an exhibit number and shall be exchanged by the offering party at the same time as direct witness statements. Other parties shall exchange counter-designations at the same time as rebuttal witness statements. Pursuant to Commission Rule 210.28(h)(4) and Federal Rule of Evidence

106, counter-designations shall be limited to any other part of the deposition that ought in fairness to be considered with the part introduced. Documentary exhibits may be sponsored for admission through the designation of deposition testimony, and exhibits sought to be admitted in this manner must be identified in a list attached to the designated transcript. Any objection to the admission of timely identified designations or exhibits sponsored therein must be raised in a high priority objection or a motion *in limine*.

### 9.4.15  Exhibits in Dispute.

For any exhibit in dispute or to be discussed at the hearing that is not included in a witness exhibit binder, a copy of said exhibit shall be provided to the Administrative Law Judge for her review and consideration.

### 9.4.16  Filing of Exhibits by CD/DVD Media.

The Commission set of exhibits shall be submitted in electronic format. The procedure for submitting exhibits electronically is set forth at:

http://www.usitc.gov/docket_services/documents/EDIS3UserGuide-CDSubmission.pdf.

There are twenty-four standard exhibit categories: CX, CDX, CPX, RX, RDX, RPX, JX, JDX, JPX, SX, SDX, SPX, CX-[four-digit number]C, CDX-[four-digit number]C, CPX-[four-digit number]C, RX-[four-digit number]C, RDX-[four-digit number]C, RPX-[four-digit number]C, JX-[four-digit number]C, JDX-[four-digit number]C, JPX-[four-digit number]C, SX-[four-digit number]C, SDX-[four-digit number]C, and SPX-[four-digit number]C. Each category of exhibit must be placed on a different CD and labeled with the Investigation name, number, and the range of exhibits contained on the CD. In addition, all source code exhibits shall be submitted on a separate CD.

A Table of Contents file which lists the names of all files on the disc and a description of each exhibit should be created and included on each disc.

### 9.4.16.1  Delivery to Administrative Law Judge.

The electronic media containing the Commission set of exhibits should be delivered to the Administrative Law Judge's office on the same day that initial post-hearing briefs are due. It should not be delivered directly to Docket Services.

## 10      Hearing Procedure

### 10.1      Hearing; Order of Examination.

The order of examination at the hearing is as follows (subject to alteration at the pre-trial conference or other changes in the discretion of the Administrative Law Judge):

(1) Brief Opening Statements
    (a) Complainant (limited to one hour)
    (b) Respondent (limited to one hour)
    (c) Commission Investigative Attorney (limited to half an hour)
(2) Complainant's Case-in-Chief
(3) Respondent's Case-in-Chief: In the event there is more than one respondent, the order of presentation will be determined at the pre-trial conference.  Respondents, where possible, should avoid unnecessary duplication of effort.
(4) Commission Investigative Attorney's Case-in-Chief
(5) Complainant's Rebuttal
(6) Respondent's Rebuttal

### 10.2      Closing Argument.

The Administrative Law Judge normally does not schedule closing arguments.  Parties may request closing arguments, which are to be held at the discretion of the Administrative Law Judge.  Typically, such closing arguments are held after all post-hearing briefs have been submitted.

### 10.3      Hearing Hours.

Normal hearing hours are 9:30 a.m. to 5:30 p.m. with a one-hour and fifteen minute luncheon recess and two fifteen-minute breaks.

### 10.4      Trial Decorum.

### 10.4.1  Conversations at Trial.

No cross conversation between opposing counsel will be permitted.  Rather if counsel has anything to say to opposing counsel, such statement must be made through the Administrative Law Judge.

### 10.4.2  Reading Matter; Cell Phones and Beepers; Food and Beverages.

No reading of extraneous material will be permitted in the courtroom.  Audible cell phone and beeper signals shall be turned off in the courtroom during trial, and all cell phone calls must be taken outside of the courtroom. No food, gum, or beverages other than bottled water or coffee

with a re-sealable lid will be permitted in the courtroom during trial. Take extra care with beverages and report any spills immediately to the Administrative Law Judge.

### 10.4.3  Photos or Video Recording.

No photography or video recording is permitted in the courtroom.

### 10.4.4  Swearing of Witnesses.

When a witness is sworn, the witness shall remain standing. All others in the trial room must be seated and quiet.

### 10.4.5  Arguments on Objection.

Arguments or objections may only be made by counsel prior to a ruling. Once a ruling is made, no further discussion of the matter will be permitted.

### 10.5    Examination of Witnesses.

### 10.5.1  Scope of Examination; In General.

Except in extraordinary circumstances, examination of witnesses for Complainant's case-in-chief and Respondent(s)' case-in-chief shall be limited to direct, cross, redirect, and re-cross.

### 10.5.2  Scope of Cross-examination.

Cross-examination will be limited to the scope of the direct examination. For witnesses called for the purpose of giving testimony in support of a position on an issue that is the same as the position on that issue of a party desiring cross-examination of that witness, that party is precluded from asking that witness leading questions; *i.e.*, "no friendly cross-examination."

### 10.5.3  Scope of Redirect and Re-cross Examination.

Redirect examination will be limited to matters brought out on cross-examination. Re-cross examination will be limited to matters brought out on redirect examination.

### 10.5.4  Coordination of Witnesses.

The parties are expected to coordinate examination of witnesses so as to allot appropriate time for examination of each of the witnesses within the total time allotted for the trial.

### 10.5.5  Documents Presented to Witnesses.

Any document which counsel wishes to show to a witness must first be shown to opposing counsel.

### 10.5.6  Scope of Expert Witness Testimony.

An expert's testimony at the trial shall be limited in accordance with the scope of his or her expert report(s), deposition testimony, or within the discretion of the Administrative Law Judge.

### 10.5.7  Coordination of Respondents' Cross-examination.

Respondents shall coordinate cross-examination through one attorney as far as practicable to avoid duplication.  If that is not possible, counsel who intends to cross-examine must be present in the trial room during the entire preceding cross-examination of the witness so as not to engage in repetitive questioning.

### 10.5.8  Requests for Clarification of a Question.

Requests for clarification of a question may only come from the witness or the Administrative Law Judge.

### 10.5.9  Use of Translators.

If a translator will be used at trial, the parties are responsible for obtaining one qualified, neutral translator upon whom counsel can agree.  It is suggested that the translator be chosen from a list of approved translators, such as may be kept by various federal district courts or federal agencies. Translators will be sworn in.

### 10.5.10       Conferring with Witness during a Break in Testimony.

Counsel shall not confer with a witness during a break in the witness's testimony on the witness's substantive testimony.

## 11       Post-trial Briefs and Proposed Findings of Fact and Conclusions of Law

### 11.1     Initial Post-trial Briefs; Filing and Content.

On or before the date set forth in the procedural schedule, each party shall file a post-trial brief. Each party must also submit a copy of its final exhibits and exhibit list with its post-trial brief. The post-trial brief shall discuss the issues and evidence tried within the framework of the general issues determined by the Commission's Notice of Investigation, the general outline of the briefs as set forth in Appendix B, and those issues that are included in the pre-trial brief and any permitted amendments thereto.  All other issues shall be deemed waived.

A reasonable page limit will be imposed for all post-trial briefs, which will be determined on a case-by-case basis.  Parties are required to use double-spacing (with the exception of headings, footnotes, quotations, etc.), at least 12 point font, and 1 inch margins (excluding headers for CBI and footers, such as page numbers).  All post-trial briefs shall contain a footer pursuant to Ground Rule 3.9.  Parties must submit a courtesy electronic copy of their brief to the Administrative Law Judge in Word format.  If the parties have any questions regarding the

acceptable formatting requirements for post-trial briefs, they should contact the Administrative Law Judge's attorney-advisor.

## 11.2    Proposed Findings of Fact; Form and Content.

In accordance with Commission Rule 210.40, a party may elect to file proposed findings of fact and conclusions of law; however, the other side is not required to respond to the proposed findings of fact and conclusions of law.  The lack of a response does not mean that the proposed findings of fact and conclusions of law are admitted, unless specifically stated as such.  If a party chooses to file proposed findings of fact and conclusions of law, they must be filed on the same date as the initial post-trial brief.

The proposed findings of fact shall be in the form of numbered paragraphs.  The findings shall reflect all section 337 elements, all issues outlined in the Notice of Investigation, and any other issues that arose during the course of the Investigation.  Section headings consistent with the outline of the post-hearing brief may be used to set off paragraphs that relate to particular section 337 elements or issues.  To be accepted without alteration, a proposed finding of fact must be an assertion of fact only (*i.e.*, without argument more appropriately placed in the post-hearing brief).

Each proposed finding of fact must be followed with citations to supporting authority in the evidence.  Examples of commonly used citations are as follows:

> Transcript:  Smith, Tr. 895 [Witness Name, Transcript page, Line number(s)]
> Exhibits:     CX-0003; RX-0005; SPX-0002
> Pleadings:   Complaint ¶ 4, at 2; XYZ Corp. Response to Complaint ¶ 5, at 3.

## 11.3    Post-trial Reply Briefs; Filing and Content.

On or before the date set forth in the procedural schedule, each party shall file a post-trial reply brief.  The post-trial reply brief shall discuss the issues and evidence discussed in the initial post-trial briefs of each opposing party, following the general outline of the briefs as set forth in Appendix B.

A reasonable page limit will be imposed on all post-trial reply briefs, which will be determined on a case-by-case basis.  Parties must submit a courtesy electronic copy of their brief to the Administrative Law Judge in Word format.  The formatting requirements detailed in Ground Rule 11.1 govern.

### 11.4 Objections and Rebuttals to Proposed Findings of Fact; Form and Content.

Should a party elect to respond to proposed findings of fact, objections and rebuttals to proposed findings of fact of an opposing party shall repeat the text and citation to the record of the proposed finding of fact being objected to or rebutted and its paragraph number. Rebuttals shall assert only facts (*i.e.*, without argument more appropriately placed in the post-hearing reply brief), and must be followed with citations to the supporting authority in the evidence.

### 11.5 Notice of Supplemental Authority.

In the event that a party identifies relevant authority that issued after post-trial briefing is completed but before a final initial determination on violation has been issued by the ALJ, that party may file a "Notice of Supplemental Authority." Any such notice shall be limited to a single typewritten page and shall include the citation for the supplemental authority and a brief explanation of its relevance. The notice shall be filed on EDIS and served on all parties. Any response to the notice shall be filed no later than two days after service of the notice.

### 12 Citation of Cases

The official case reporter citation must be included for any published decision or order that is cited in a party's briefs or pleadings. When a cited document is not published in an official case reporter but is available in an electronic database, the parties shall cite to the electronic database in accordance with the relevant Bluebook format. If a party cites to an opinion, order, judgment, or other written disposition of the Commission or another tribunal that is either unpublished or designated as not for publication, the party must file and serve a copy of that opinion, order, judgment, or disposition with the brief or other paper in which it is cited.

### 13 Coordination of Post-Hearing Briefs

To the extent there is more than one complainant and/or respondent in an investigation, complainants and/or respondents shall coordinate their efforts and submit a single brief. Exceptions to this rule will be made on a case-by-case basis. This rule shall also apply to post-hearing reply briefs.

### 14 Cooperation Among Parties

Due to the time limitations imposed by section 337, counsel shall attempt to resolve, by stipulation or negotiated agreement, any procedural problems encountered, including those relating to discovery and submission of evidence. To assure the proper cooperative spirit in this investigation, continuing good faith communications between counsel for the parties is essential and expected.

**15**    *Ex Parte* **Contacts**

There shall be no *ex parte* contacts with the Administrative Law Judge.  Any questions of a technical or procedural nature shall be directed to the Administrative Law Judge's attorney-advisor, Ted Jou, at (202) 205-3316, or edward.jou@usitc.gov.

# APPENDIX A

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### Washington, D.C.

| | |
|---|---|
| In the Matter of<br><br>**Certain . . .** | Investigation No. 337-TA-___ |

## SUBPOENA DUCES TECUM

**TO:**   NAME
ADDRESS

**TAKE NOTICE:**  By authority of section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), 5 U.S.C. § 556(c)(2), and pursuant to 19 C.F.R. § 210.32 of the Rules of Practice and Procedure of the United States International Trade Commission, and upon an application for subpoena made by ["Complainant(s)" / "Respondent(s)"/ etc., followed by name of company]
_____,

**YOU ARE HEREBY ORDERED** to produce at _____, on _____, or at such other time and place agreed upon, all of the documents and things in your possession, custody or control which are listed and described in Attachment A hereto.  Such production will be for the purpose of inspection and copying, as desired.

If production of any document listed and described in Attachment A hereto is withheld on the basis of a claim of privilege, each withheld document shall be separately identified in a privileged document list.  The privileged document list must identify each document separately, specifying for each document at least: (1) the date; (2) author(s)/sender(s); (3) recipient(s), including copy recipients; and (4) general subject matter of the document.  The sender(s) and recipient(s) shall be identified by position and entity (corporation or firm, etc.) with which they are employed or associated.  If the sender or the recipient is an attorney or a foreign patent agent, he or she shall be so identified.  The type of privilege claimed must also be stated, together with a certification that all elements of the claimed privilege have been met and have not been waived with respect to each document.

If any of the documents or things listed and described in Attachment A hereto are considered "confidential business information," as that term is defined in the Protective Order attached hereto, such documents or things shall be produced subject to the terms and provisions of the Protective Order.

Any motion to limit or quash this subpoena shall be filed within **ten (10) days** after the receipt hereof.  At the time of filing of any motion concerning this subpoena, two courtesy copies shall be served concurrently on the Administrative Law Judge at her office.

IN WITNESS WHEREOF the undersigned of the United States International Trade Commission has hereunto set her hand and caused the seal of said United States International Trade Commission to be affixed at Washington, D.C. on this ___ day of _____, 201_.


_____
Dee Lord
Administrative Law Judge
United States International Trade Commission

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### Washington, D.C.

In the Matter of

**Certain . . .**

Investigation No. 337-TA-____

## SUBPOENA AD TESTIFICANDUM

**TO:**  NAME
ADDRESS

**TAKE NOTICE:**  By authority of section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), 5 U.S.C. § 556(c)(2), and pursuant to 19 C.F.R. § 210.32 of the Rules of Practice and Procedure of the United States International Trade Commission, and upon an application for subpoena made by ["Complainant(s)" / "Respondent(s)" / etc., followed by name of company]
_____,

**YOU ARE HEREBY ORDERED** to present yourself for purposes of your deposition upon oral examination on_____, at _____, or at such other time and place agreed on, concerning the subject matter set forth in Attachment A hereto.

This deposition will be taken before a Notary Public or other person authorized to administer oaths and will continue from day to day until completed.

If any of your testimony is considered "confidential business information," as that term is defined in the Protective Order attached hereto, such testimony shall be so designated and treated according to the terms and provisions of the Protective Order.

Any motion to limit or quash this subpoena shall be filed within **ten (10) days** after the receipt hereof.  At the time of filing of any motion concerning this subpoena, two courtesy copies shall be served concurrently on the Administrative Law Judge at her office.

IN WITNESS WHEREOF the undersigned of the United States International Trade Commission has hereunto set her hand and caused the seal of said United States International Trade Commission to be affixed at Washington, D.C. on this ____ day of _____, 201_.

_____
Dee Lord
Administrative Law Judge
United States International Trade Commission

## APPENDIX B

## GENERAL OUTLINE FOR ALL BRIEFS

I.    INTRODUCTION
    A.    Procedural History
    B.    The Parties
    C.    Overview of the Technology
    D.    The Patents at Issue
    E.    The Products at Issue
II.   JURISDICTION
III.  PATENT "A"
    A.    Claim Construction
        1.    First Disputed Claim Term (Claims 1, 2, 3, . . .)
        2.    Second Disputed Claim Term (Claims 1, 2, 3, . . .)
    B.    Infringement
        1.    Claim 1
        2.    Claim 2
    A.    Domestic Industry – "Technical Prong"
    B.    Validity
        1.    Anticipation Under 35 U.S.C. § 102(a)
        2.    Obviousness Under 35 U.S.C. § 103(a)
    A.    Unenforceability
    B.    Other Defenses
IV.   PATENT "B" ...
V.    DOMESTIC INDUSTRY - ECONOMIC PRONG
    A.    Significant Investment in Plant and Equipment
    B.    Significant Employment of Labor or Capital
VI.   REMEDY AND BONDING

CERTAIN SEMICONDUCTOR DEVICES,                           Inv. No. 337-TA-1010
SEMICONDUCTOR DEVICE PACKAGES,  AND
PRODUCTS CONTAINNG  SAME

### PUBLIC CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **ORDER** has been served by hand upon the following parties as indicated, on **June 22, 2016**.

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC  20436

**On Behalf of Complainants Tessera Technologies, Inc.,**
**Tessera, Inc., Invensas Corporation:**

| | |
|---|---|
| Sturgis M. Sobin, Esq. | ☐ Via Hand Delivery |
| **COVINGTON & BURLING LLP** | ☐ Via Express Delivery |
| One CityCenter, 850 Tenth Street, N.W. | ☒ Via First Class Mail |
| Washington, DC 20001 | ☐ Other:_____ |

**Respondents:**

| | |
|---|---|
| Broadcom Limited | ☐ Via Hand Delivery |
| 1 Yishun Avenue 7 | ☐ Via Express Delivery |
| Singapore 768923 | ☒ Via First Class Mail |
| | ☐ Other:_____ |

| | |
|---|---|
| Broadcom Corporation | ☐ Via Hand Delivery |
| 5300 California Ave. | ☐ Via Express Delivery |
| Irvine, CA 92617 | ☒ Via First Class Mail |
| | ☐ Other:_____ |

| | |
|---|---|
| Avago Technologies Limited | ☐ Via Hand Delivery |
| 1 Yishun Avenue 7 | ☐ Via Express Delivery |
| Singapore 768923 | ☒ Via First Class Mail |
| | ☐ Other:_____ |

| | |
|---|---|
| Avago Technologies U.S. Inc. | ☐ Via Hand Delivery |
| 1320 Ridder Park Drive | ☐ Via Express Delivery |
| San Jose, CA 95131 | ☒ Via First Class Mail |
| | ☐ Other:_____ |

**CERTAIN SEMICONDUCTOR DEVICES,**                      **Inv. No. 337-TA-1010**
**SEMICONDUCTOR DEVICE PACKAGES, AND**
**PRODUCTS CONTAINING SAME**

Certificate of Service – Page 2

Arista Networks, Inc.                    ☐ Via Hand Delivery
5453 Great America Parkway               ☐ Via Express Delivery
Santa Clara, CA 95054                    ☒ Via First Class Mail
                                         ☐ Other:_____

ARRIS International plc                   ☐ Via Hand Delivery
3871 Lakefield Drive                     ☐ Via Express Delivery
Suwanee, GA 30024                        ☒ Via First Class Mail
                                         ☐ Other:_____

ARRIS Group, Inc.                        ☐ Via Hand Delivery
3871 Lakefield Drive                     ☐ Via Express Delivery
Suwanee, GA 30024                        ☒ Via First Class Mail
                                         ☐ Other:_____

ARRIS Technology, Inc.                   ☐ Via Hand Delivery
101 Tournament Drive                     ☐ Via Express Delivery
Horsham, PA 19044                        ☒ Via First Class Mail
                                         ☐ Other:_____

ARRIS Enterprises, LLC                   ☐ Via Hand Delivery
3871 Lakefield Drive                     ☐ Via Express Delivery
Suwanee, GA 30024                        ☒ Via First Class Mail
                                         ☐ Other:_____

ARRIS Solutions, Inc.                    ☐ Via Hand Delivery
3871 Lakefield Drive                     ☐ Via Express Delivery
Suwanee, GA 30024                        ☒ Via First Class Mail
                                         ☐ Other:_____

Pace Ltd.                                ☐ Via Hand Delivery
Victoria Road, Saltaire                  ☐ Via Express Delivery
West Yorkshire BD18 3LF                  ☒ Via First Class Mail
England                                  ☐ Other:_____

Pace Americas, LLC                       ☐ Via Hand Delivery
3701 FAU Boulevard, Suite 200            ☐ Via Express Delivery
Boca Raton, FL 33431                     ☒ Via First Class Mail
                                         ☐ Other:_____

**CERTAIN SEMICONDUCTOR DEVICES,**                    **Inv. No. 337-TA-1010**
**SEMICONDUCTOR DEVICE PACKAGES, AND**
**PRODUCTS CONTAINING SAME**

Certificate of Service – Page 3

Pace USA, LLC
3701 FAU Boulevard, Suite 200
Boca Raton, FL 33431

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other:_____

ASUSTeK Computer Inc.
No. 15, Li-Te Road,
Peitou, Taipei
Taiwan

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other:_____

ASUS Computer International
800 Corporate Way
Fremont, CA 94539

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other:_____

Comcast Cable Communications, LLC
1500 Market Street
Philadelphia, PA 19102

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other:_____

Comcast Cable Communications Management, LLC
1701 John F. Kennedy Blvd.
Philadelphia, PA, 19103

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other:_____

Comcast Business Communications, LLC
1701 John F. Kennedy Blvd.
Philadelphia, PA, 19103

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other:_____

HTC Corporation
23 Xinghau Road
Taoyuan, 330
Taiwan

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other:_____

HTC America, Inc.
13920 SE Eastgate Way, Suite 200
Bellevue, WA 98005

☐ Via Hand Delivery
☐ Via Express Delivery
☒ Via First Class Mail
☐ Other:_____

**CERTAIN SEMICONDUCTOR DEVICES,**                    **Inv. No. 337-TA-1010**
**SEMICONDUCTOR DEVICE PACKAGES, AND**
**PRODUCTS CONTAINING SAME**

Certificate of Service – Page 4


NETGEAR, Inc.                                    ☐ Via Hand Delivery
350 East Plumeria Drive                          ☐ Via Express Delivery
San Jose, CA 95134                               ☒ Via First Class Mail
                                                 ☐ Other:_____


Technicolor S.A.                                 ☐ Via Hand Delivery
1-5, rue Jeanne d'Arc                            ☐ Via Express Delivery
92130 Issy-Les-Moulineaux                        ☒ Via First Class Mail
France                                           ☐ Other:_____


Technicolor USA, Inc.                            ☐ Via Hand Delivery
101 West 103 Street                              ☐ Via Express Delivery
Indianapolis, IN 46290                           ☒ Via First Class Mail
                                                 ☐ Other:_____


Technicolor Connected Home USA LLC               ☐ Via Hand Delivery
101 West 103 Street                              ☐ Via Express Delivery
Indianapolis, IN 46290                           ☒ Via First Class Mail
                                                 ☐ Other:_____

# ATTACHMENT E

## Complaint

# COVINGTON

BEIJING   BRUSSELS   LONDON   LOS ANGELES
NEW YORK   SAN FRANCISCO   SEOUL
SHANGHAI   SILICON VALLEY   WASHINGTON

Sturgis M. Sobin

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 5040
ssobin@cov.com

**Via Hand Delivery**                                                      May 23, 2016

The Honorable Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW., Room 112
Washington, DC 20436

> Re: *In the Matter of Certain Semiconductor Devices, Semiconductor Device Packages, and Products Containing Same, Inv. No. 337-TA____*

Dear Secretary Barton:

Enclosed for filing, please find documents in support of a request by Tessera Technologies, Inc., Tessera, Inc., and Invensas Corporation (collectively "Tessera" or "Complainants") that the U.S. International Trade Commission institute an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, concerning certain semiconductor devices, semiconductor device packages, and products containing same. Complainants' submission includes the following documents:

1. One (1) original and eight (8) paper copies of Complainants' Verified Complaint, pursuant to Commission Rule 210.8(a)(1)(i).

2. One (1) electronic copy of the public exhibits to the Verified Complaint on CD, pursuant to Commission Rules 210.8(a)(l)(i) and 210.12(a)(9) including:

   a. One (1) electronic certified copy of each of U.S. Patent Nos. 6,856,007 ("the '007 patent"); 6,849,946 ("the '946 patent"); and 6,133,136 ("the '136 patent") as Exhibits 1, 3, and 5 to the Verified Complaint, respectively, pursuant to Commission Rule 210.12(a)(9)(i); and

   b. One (1) electronic certified copy of the assignment records for each of the '007, '946, and '136 patents as Exhibits 2, 4, and 6, respectively, pursuant to Commission Rule 210.12(a)(9)(ii).

3. One (1) electronic copy of the confidential exhibits to the Verified Complaint on CD pursuant to Commission Rules 201.6(c) and 210.8(a)(1)(ii).

4. Twenty four (24) additional copies of the Verified Complaint and accompanying electronic copies of the public exhibits, for service upon Proposed Respondents, pursuant to Commission Rules 201.6(c) and 210.8(a)(l)(iii); and twenty four (24) additional copies of electronic copies of the confidential exhibits to the Verified

**COVINGTON**

The Honorable Lisa R. Barton, Secretary
U.S. International Trade Commission
May 23, 2016
Page 2

Complaint for service upon Proposed Respondents' counsel after they have
subscribed to the protective order.

5.  One (1) additional paper copy each—four (4) additional copies total—of the
    Verified Complaint for service on the embassies of the United Kingdom, France,
    Taiwan, and the Republic of Singapore, pursuant to Commission Rule
    210.8(a)(l)(iv).

6.  One (1) original paper copy and three (3) electronic copies of each of the
    prosecution history of the '007,'946, and '136 patents pursuant to Commission
    Rule 210.12(c)(1) and four (4) copies of each patent and applicable pages of each
    technical reference mentioned in the prosecution histories of the '007, '946, and
    '136 patents pursuant to Commission Rule 210.12(c)(2).

7.  A letter and certification requesting confidential treatment for the information
    contained in confidential exhibits 9-29 and 75-92 to the Verified Complaint,
    pursuant to Commission Rules 201.6(b) and 210.5(d).

8.  A Statement on the Public Interest regarding the remedial orders sought by
    Complainants in the Verified Complaint, pursuant to Commission Rule 210.8(b).

Please contact me with any questions regarding this filing.

Sincerely,

Sturgis Sobin

# COVINGTON

BEIJING   BRUSSELS   LONDON   LOS ANGELES
NEW YORK   SAN FRANCISCO   SEOUL
SHANGHAI   SILICON VALLEY   WASHINGTON

Sturgis M. Sobin

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 5040
ssobin@cov.com

**Via Hand Delivery**                                                    May 23, 2016

The Honorable Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW., Room 112
Washington, DC 20436

> **Re:** *In the Matter of Certain Semiconductor Devices, Semiconductor Device Packages, and Products Containing Same, Inv. No. 337-TA_____*

Dear Secretary Barton:

Pursuant to Commission Rule 201.6, Complainants Tessera Technologies, Inc., Tessera, Inc., and Invensas Corporation (collectively "Tessera") respectfully request confidential treatment of certain confidential business information contained in confidential exhibits 9-29 and 75-92 to the Verified Complaint.

The information in the exhibits for which Tessera seeks confidential treatment consists of a confidential list of licensees (Exhibit 75), confidential license agreements (Exhibits 79, 80, 87, and 91), confidential technical analysis in the nature of trade secrets (Exhibits 9-29, 81-85, 88-90, and 92), a confidential description of the nature and significance of investments made by Tessera in the domestic industry (Exhibit 76), and a confidential description of the nature and significance of investments made by others in the domestic industry (Exhibits 77-78).  This information qualifies as confidential business information under Commission Rule 201.6 because substantially-identical information is not available to the public, because the disclosure of this information would cause substantial competitive harm to Tessera, and because the disclosure of this information would likely impede the Commission's efforts and ability to obtain similar information in the future.

Thank you for your attention. Please contact me with any questions regarding this request for confidential treatment.

Sincerely,

Sturgis Sobin

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

| | |
|---|---|
| **In The Matter Of**<br><br>**CERTAIN SEMICONDUCTOR DEVICES,<br>SEMICONDUCTOR DEVICE PACKAGES,<br>AND PRODUCTS CONTAINING SAME** | **Investigation No. 337-TA-___** |

### CERTIFICATION

I, Sturgis M. Sobin, counsel for Complainants Tessera Technologies, Inc., Tessera, Inc., and Invensas Corporation (collectively "Tessera" or "Complainants"), declare:

1. I am duly authorized by Tessera to execute this certification.

2. I have reviewed confidential exhibits 9-29 and 75-92 to Complainants' Verified Complaint, for which Tessera seeks confidential treatment.

3. To the best of my knowledge, information, and belief, founded after a reasonable inquiry, substantially-identical information to that contained in these exhibits is not available to the public.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of May, 2016 in Washington, DC.

_____
Sturgis M. Sobin (ssobin@cov.com)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone:    (202) 662-6000

*Counsel for Complainants*
*Tessera Technologies, Inc., Tessera, Inc.*
*and Invensas Corporation*

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

| | |
|---|---|
| **In The Matter Of**<br><br>**CERTAIN SEMICONDUCTOR DEVICES,**<br>**SEMICONDUCTOR DEVICE PACKAGES,**<br>**AND PRODUCTS CONTAINING SAME** | **Investigation No. 337-TA-___** |

## PUBLIC INTEREST STATEMENT

Tessera respectfully submits this public interest statement under 19 C.F.R. § 210.8(b).

Tessera seeks exclusion of Broadcom chips and products of downstream respondents[1] containing

the same (collectively, "the accused products") that infringe U.S. Patent Nos. 6,856,007;

6,849,946; and/or 6,133,136.  Tessera also seeks cease-and-desist orders against Broadcom and

the downstream respondents halting the importation, sale, offer for sale, using, marketing, and/or

advertising of the accused products.  The issuance of the relief requested in this Investigation

will have no meaningful impact on the public health, safety, or welfare conditions in the U.S.,

competitive conditions in the U.S. economy, the production of like or directly competitive

articles in the U.S., or U.S. consumers.

**(1)     Explain how the articles potentially subject to the orders are used in the U.S.**

The articles potentially subject to exclusion include, among other things, Broadcom's

chips and products of downstream respondents incorporating those chips.  Broadcom generally

offers chips in six product categories: (1) Broadband Access + Modems; (2) Enterprise +

Network Processors; (3) Ethernet Communication + Switching; (4) Settop Box + Media

---

[1] The downstream respondents are: Arista Networks, Inc.; ARRIS International plc; ARRIS
Group, Inc.; ARRIS Technology, Inc.; ARRIS Enterprises LLC; ARRIS Solutions, Inc.; Pace
Ltd.; Pace Americas, LLC; Pace, USA LLC; ASUSTeK Computer Inc.; ASUS Computer
International; Comcast Cable Communications, LLC; Comcast Cable Communications
Management, LLC; Comcast Business Communications, LLC; HTC Corporation; HTC America,
Inc.; NETGEAR, Inc.; Technicolor S.A.; Technicolor USA, Inc.; Technicolor Connected Home
USA LLC.

Processors; (5) Wireless Connectivity; and (6) Wireless Infrastructure.  Complaint at ¶18.  These chips are used in the products of downstream respondents which include, among other things, mobile devices, set-top boxes, gateways, modems, routers, Ethernet switches, network routing equipment, and infrastructure equipment for telecommunications, cable, networking, cloud and enterprise systems.  These products are used for, among other purposes, cable and satellite systems and services, wireless and WiFi devices and services, and infrastructure and networking.

      **(2)**    **Identify any public health, safety, or welfare concerns in the U.S. relating to the requested remedial orders.**

      The issuance of exclusion and cease and desist orders in this matter would have no adverse impact upon the public health, safety, or welfare of the U.S.  *Cf. Certain Digital Televisions and Products Containing Same and Methods of Using Same*, Inv. No. 337-TA-617, Comm'n Op., 2009 ITC LEXIS 2465, at *24 (Apr. 23, 2009) (Digital TVs "are not the type of products that affect public health and welfare").  There are no safety-related features unique to respondents' infringing products.  To the extent any of the products at issue could support applications with a *de minimus* impact on health, safety, or welfare in the U.S., these products could be replaced by like or directly competitive articles as discussed below because the infringing products of Broadcom and the downstream respondents can readily be replaced by licensed products or the products of other producers.

      **(3)**    **Identify like or directly competitive articles that complainant, its licensees, or third parties make which would replace the subject articles if they were to be excluded.**

      Entities authorized to practice the patented technology and third parties not named in this Investigation make like and directly competitive articles that would replace the accused products of Broadcom and the downstream respondents if excluded from the U.S.  For instance, Cisco makes a variety of networking equipment products (e.g., Ethernet switches, cloud and enterprise

systems, etc.) that compete directly with the accused products of certain downstream respondents.[2]  Similarly, there are a variety of other companies who make like or directly competitive consumer equipment for cable, satellite and WiFi services, including Humax, Tivo/Rovi, Samsung, and EchoStar.[3]  In addition, the cable market is being challenged by content providers such as Netflix, Sling TV, and Hulu, and products such as Apple TV, Roku, Google Chromecast, and Smart TVs from Samsung and Panasonic.[4]  In short, Tessera's licensees and third parties not named in this Investigation are capable of supplying directly competitive products and services that can replace the accused products of the downstream respondents should an exclusion order issue.

The same is true of the accused Broadcom chips.  There are directly competitive products that could replace the accused Broadcom chips if they were excluded from the U.S.  Broadcom itself has acknowledged that "the semiconductor industry in general, and wired and wireless communications markets in particular, are intensely competitive."[5]  Broadcom competes with a number of major domestic and international suppliers of semiconductor chips, including Intel, Marvell, Mediatek, Qualcomm, STMicroelectronics, Cavium, NXP, and Mellanox.[6]  Intel, for example, competes with Broadcom in both (i) Broadband and Connectivity and (ii) Infrastructure and Networking.[7]  Broadcom has even publicly acknowledged that some of these competitors "have longer operating histories and presence in key markets, greater name recognition, larger

---

[2] http://www.cisco.com/c/en/us/products/index.html
[3] *See* Arris International plc Form 10-K (2015) at pp. 11 -12 (available at http://www.sec.gov/Archives/edgar/data/1645494/000119312516485276/d15560d10k.htm.)
[4] *See*, *e.g.*, XFINITY TV on Samsung Smart TV FAQs, Comcast Corp (available  at http://customer.xfinity.com/help-and-support/xfinity-apps/xfinity-tv-samsung-smart-tv/.)
[5] Broadcom Corp. Form 10-K (2014) at 8 (available at http://www.sec.gov/Archives/edgar/data/1054374/000105437415000012/a20141231-10k.htm)
[6] *Id.* at 9.
[7] *Id.*

customer bases and significantly greater financial, sales and marketing, manufacturing, distribution and other resources than" Broadcom.[8]

> **(4)    Indicate whether the complainant, its licensees, and/or third parties have the capacity to replace the volume of articles subject to the requested remedial orders in a commercially reasonable time in the U.S.**

While the current capacity of Tessera's customers, its licensees, and other third parties capable of supplying replacement articles is unknown, the entities identified above, such as Intel, Samsung and Cisco, are some of the largest semiconductor and technology companies in the world.  On information and belief, these companies have the capacity to replace the volume of articles subject to the requested remedial orders in a commercially reasonable time.  Indeed, Broadcom has acknowledged that its competitors have significantly greater "manufacturing, distribution and other resources than" Broadcom.[9]  And, even if it were the case that Broadcom's competitors did not have the capacity to replace the volume of articles subject to the requested remedial orders, competition in face of an exclusion order could cause these companies and possibly new competitors to create, add or shift capacity to meet unmet demand.  Broadcom itself has acknowledged this possibility stating that "it is possible that new competitors or alliances among competitors could emerge and rapidly acquire significant market share."[10]

> **(5)    State how the requested remedial order would impact consumers.**

It is unlikely that exclusion and cease-and-desist orders would adversely impact consumers.  U.S. consumers can simply purchase one of the many non-infringing alternatives with comparable functionality.  Moreover, the requested remedial orders are unlikely to cause an increase in customer cost for the products at issue.  But even if the remedial orders did cause a

---

[8] *Id.*
[9] *Id.* at 9, 17.
[10] *Id.* at 9.

slight increase in cost to customers, a price increase alone is insufficient to warrant preclusion of a remedial order.  *Certain Lens-Fitted Film Packages*, Inv. No. 337-TA-406, Comm'n Op., 1999 ITC LEXIS 202 at *40 (June 28, 1999) (finding some price increase "does not justify a determination that the public interest in protecting intellectual property rights is in any way outweighed").

Dated:  May 23, 2016

_____
Sturgis M. Sobin (ssobin@cov.com)
Shara Aranoff (saranoff@cov.com)
Daniel E. Valencia (dvalencia@cov.com)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone:     (202) 662-6000

Michael K. Plimack (mplimack@cov.com)
Dale A. Rice (drice@cov.com)
Nitin Subhedar (nsubhedar@cov.com)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone:     (415) 591-6000

Robert T. Haslam (rhaslam@cov.com)
Anupam Sharma (asharma@cov.com)
Thomas E. Garten (tgarten@cov.com)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive
Redwood Shores, CA 94065-1418
Telephone:     (650) 632-4700

*Counsel for Complainants*
*Tessera Technologies, Inc., Tessera, Inc.*
*and Invensas Corporation*

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

**In The Matter Of**

**CERTAIN SEMICONDUCTOR DEVICES,
SEMICONDUCTOR DEVICE PACKAGES,
AND PRODUCTS CONTAINING SAME**

Investigation No. 337-TA-___

COMPLAINT OF TESSERA TECHNOLOGIES, INC.,
TESSERA, INC. AND INVENSAS CORPORATION UNDER
SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED

<u>COMPLAINANTS:</u>
Tessera Technologies, Inc.
3025 Orchard Parkway
San Jose, CA 95134
Telephone:    408-321-6000

Tessera, Inc.
3025 Orchard Parkway
San Jose, CA 95134
Telephone:    408-321-6000

Invensas Corporation
3025 Orchard Parkway
San Jose, CA 95134
Telephone:    408-321-6000

<u>COUNSEL FOR COMPLAINANT:</u>
Sturgis M. Sobin
Shara Aranoff
Daniel E. Valencia
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, N.W.
Washington, DC 20001
Telephone:    202-662-6000

Michael K. Plimack
Dale A. Rice
Nitin Subhedar
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone:    415-591-6000

Robert T. Haslam
Anupam Sharma
Thomas E. Garten
COVINGTON & BURLING LLP
333 Twin Dolphin Drive
Redwood Shores, CA 94065-1418
Telephone:    650-632-4700

<u>PROPOSED RESPONDENTS:</u>
Broadcom Limited
1 Yishun Avenue 7
Singapore 768923
Telephone:    +65 6755 7888

Broadcom Corporation
5300 California Ave.
Irvine, CA 92617
Telephone:    949-926-5000

Avago Technologies Limited
1 Yishun Avenue 7
Singapore 768923
Telephone:    +65 6215 4342

Avago Technologies U.S. Inc.
1320 Ridder Park Drive
San Jose, CA 95131
Telephone:    408-433-8000

Arista Networks, Inc.
5453 Great America Parkway
Santa Clara, CA 95054
Telephone:    408-547-5500

ARRIS International plc
3871 Lakefield Drive
Suwanee, GA 30024
Telephone:    678-473-2000

ARRIS Group, Inc.
3871 Lakefield Drive
Suwanee, GA 30024
Telephone:    678-473-2000

ARRIS Technology, Inc.
101 Tournament Drive
Horsham, PA 19044
Telephone:    215-323-1000

ARRIS Enterprises LLC
3871 Lakefield Drive
Suwanee, GA 30024
Telephone:    678-473-2000

ARRIS Solutions, Inc.
3871 Lakefield Drive
Suwanee, GA 30024
Telephone:    678-473-2000

Pace Ltd. (formerly Pace plc)
Victoria Road, Saltaire
West Yorkshire BD18 3LF
England
Telephone:    +44 1274 532000

Pace Americas, LLC
3701 FAU Boulevard, Suite 200
Boca Raton, FL 33431
Telephone:    561-995-6000

Pace USA, LLC
3701 FAU Boulevard, Suite 200
Boca Raton, FL 33431
Telephone:    561-995-6000

ASUSTeK Computer Inc.
No. 15, Li-Te Road,
Peitou, Taipei
Taiwan, R.O.C.
Telephone:    +886 2 2894 3447

ASUS Computer International
800 Corporate Way
Fremont, CA 94539
Telephone:    510-739-3777

Comcast Cable Communications, LLC
1500 Market Street
Philadelphia, PA 19102
Telephone:    215-567-2027

Comcast Cable Communications
Management, LLC
1701 John F Kennedy Blvd
Philadelphia, PA, 19103
Telephone:    215-286-1700

Comcast Business Communications, LLC
1701 John F Kennedy Blvd
Philadelphia, PA, 19103
Telephone:    215-286-1700

HTC Corporation
23 Xinghau Road
Taoyuan, 330
Taiwan, R.O.C.
Telephone:     +886 3 375 3252

HTC America, Inc.
13920 SE Eastgate Way, Suite 200
Bellevue, WA 98005
Telephone:     425-679-5318

NETGEAR, Inc.
350 East Plumeria Drive
San Jose, CA 95134
Telephone:     408-907-8000

Technicolor S.A.
1-5 , rue Jeanne d'Arc
92130 Issy-Les-Moulineaux
France
Telephone:     +33 1 41 86 50 00

Technicolor USA, Inc.
101 West 103rd Street
Indianapolis, IN 46290
Telephone:     317-816-1477

Technicolor Connected Home USA LLC
101 West 103rd Street
Indianapolis, IN 46290
Telephone:     317-816-1477

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   COMPLAINANT ............................................................................................... 7

III.  PROPOSED RESPONDENTS ......................................................................... 8

      A.    Broadcom and Avago Respondents ..................................................... 8

      B.    Arista Networks .................................................................................... 9

      C.    ARRIS Group and Pace Respondents................................................... 9

      D.    ASUS Respondents ............................................................................. 11

      E.    Comcast Cable Respondents............................................................... 11

      F.    HTC Respondents ............................................................................... 12

      G.    NETGEAR ........................................................................................... 13

      H.    Technicolor Respondents ................................................................... 13

IV.   THE ACCUSED PRODUCTS-AT-ISSUE ..................................................... 14

V.    THE PATENTS-AT-ISSUE ............................................................................ 16

      A.    U.S. Patent No. 6,856,007................................................................... 16

      B.    U.S. Patent No. 6,849,946................................................................... 17

      C.    U.S. Patent No. 6,133,136................................................................... 19

VI.   UNLAWFUL AND UNFAIR ACTS – PATENT INFRINGEMENT ............ 20

      A.    Broadcom Respondents ..................................................................... 20

            1.    Representative Involved Article ............................................... 20

            2.    Infringement of the '007 Patent ............................................... 22

            3.    Infringement of the '946 Patent ............................................... 23

            4.    Infringement of the '136 Patent ............................................... 23

            5.    Specific Instance of Sale and Importation ............................... 23

      B.    Arista Networks .................................................................................. 26

1. Representative Involved Articles ............................................................... 26

2. Infringement of the '946 Patent ................................................................ 27

3. Infringement of the '136 Patent ................................................................ 27

4. Specific Instance of Sale and Importation ................................................ 28

C. ARRIS Respondents .......................................................................................... 29

1. Representative Involved Articles ............................................................... 29

2. Infringement of the '946 Patent ................................................................ 30

3. Infringement of the '136 Patent ................................................................ 30

4. Specific Instances of Sale and Importation ............................................... 31

D. ASUS Respondents ............................................................................................ 31

1. Representative Involved Articles ............................................................... 31

2. Infringement of the '946 Patent ................................................................ 32

3. Infringement of the '136 Patent ................................................................ 32

4. Specific Instances of Sale and Importation ............................................... 32

E. Comcast Cable Respondents ............................................................................. 33

1. Representative Involved Articles ............................................................... 33

2. Infringement of the '007 Patent ................................................................ 34

3. Infringement of the '946 Patent ................................................................ 34

4. Infringement of the '136 Patent ................................................................ 34

5. Specific Instances of Sale and Importation ............................................... 35

F. HTC Respondents .............................................................................................. 35

1. Representative Involved Article ................................................................. 35

2. Infringement of the '946 Patent ................................................................ 36

3. Specific Instances of Sale and Importation ............................................... 36

G. NETGEAR ......................................................................................................... 36

1.      Representative Involved Articles ................................................................. 36

2.      Infringement of the '007 Patent ................................................................ 37

3.      Infringement of the '946 Patent ................................................................ 37

4.      Infringement of the '136 Patent ................................................................ 38

5.      Specific Instances of Sale and Importation .............................................. 38

H.      Technicolor Respondents ....................................................................................... 38

1.      Representative Involved Article ............................................................... 38

2.      Infringement of the '007 Patent ................................................................ 39

3.      Infringement of the '946 Patent ................................................................ 40

4.      Infringement of the '136 Patent ................................................................ 40

5.      Specific Instances of Sale and Importation .............................................. 40

VII.    CLASSIFICATION OF THE INFRINGING PRODUCTS UNDER THE
        HARMONIZED TARIFF SCHEDULE ........................................................................ 40

VIII.   LICENSEES ........................................................................................................................ 41

IX.     TESSERA SATISFIES THE DOMESTIC INDUSTRY REQUIREMENT .................... 41

A.      The Technical Prong of the Domestic Industry Requirement is Satisfied ........... 41

1.      Practice of the '007 Patent ....................................................................... 42

2.      Practice of the '946 Patent ....................................................................... 42

3.      Practice of the '136 Patent ....................................................................... 43

B.      The Economic Prong of the Domestic Industry Requirement is Satisfied ........... 43

1.      Tessera ...................................................................................................... 43

2.      Tessera's Licensees .................................................................................. 46

X.      RELATED LITIGATION .................................................................................................. 53

XI.     REQUESTED RELIEF ....................................................................................................... 54

<u>**LIST OF EXHIBITS**</u>

**Exhibit No.**    **Document Description**

| | |
|---|---|
| 1. | Certified United States Patent No. 6,856,007 |
| 2. | Certified Assignment History United States Patent No. 6,856,007 |
| 3. | Certified United States Patent No. 6,849,946 |
| 4. | Certified Assignment History United States Patent No. 6,849,946 |
| 5. | Certified United States Patent No. 6,133,136 |
| 6. | Certified Assignment History United States Patent No. 6,133,136 |
| 7. | Broadcom 2014 Annual Report (excerpt) |
| 8. | "Avago to Acquire Broadcom," Investor Presentation, May 28, 2015 |
| 9. | Confidential '007 Patent Infringement Chart for BCM4331 |
| 10. | Confidential '007 Patent Infringement Chart for BCM43602 |
| 11. | Confidential '007 Patent Infringement Chart for BCM94360 |
| 12. | Confidential '946 Patent Infringement Chart for BCM3383 |
| 13. | Confidential '946 Patent Infringement Chart for BCM4331 |
| 14. | Confidential '946 Patent Infringement Chart for BCM4343 |
| 15. | Confidential '946 Patent Infringement Chart for  BCM4356 |
| 16. | Confidential '946 Patent Infringement Chart for BCM43602 |
| 17. | Confidential '946 Patent Infringement Chart for BCM4366 |
| 18. | Confidential '946 Patent Infringement Chart for BCM4709 |
| 19. | Confidential '946 Patent Infringement Chart for BCM4752 |
| 20. | Confidential '946 Patent Infringement Chart for BCM53125 |
| 21. | Confidential '946 Patent Infringement Chart for BCM56850 |
| 22. | Confidential '946 Patent Infringement Chart for BCM7425 |
| 23. | Confidential '136 Patent Infringement Chart for BCM3383 |
| 24. | Confidential '136 Patent Infringement Chart for BCM33843 |
| 25. | Confidential '136 Patent Infringement Chart for BCM43570 |
| 26. | Confidential '136 Patent Infringement Chart for BCM4709 |
| 27. | Confidential '136 Patent Infringement Chart for BCM56850 |
| 28. | Confidential '136 Patent Infringement Chart for BCM7425 |
| 29. | Confidential '136 Patent Infringement Chart for BCM7435 |
| 30. | Broadcom Product Webpage for BCM3383 |
| 31. | Broadcom Product Webpage for BCM33843 |
| 32. | Broadcom Product Webpage for BCM4331 |
| 33. | Broadcom Press Release for BCM4343 |
| 34. | Broadcom Product Webpage for BCM4356 |
| 35. | Broadcom Product Webpage for BCM43570 |
| 36. | Broadcom Press Release for BCM43602 |

| Exhibit No. | Document Description |
|---|---|
| 37. | Broadcom Product Webpage for BCM4366 |
| 38. | Broadcom Product Webpage for BCM4709 |
| 39. | Broadcom Product Webpage for BCM4752 |
| 40. | Broadcom Product Webpage for BCM53125 |
| 41. | Broadcom Product Brief for BCM56850 |
| 42. | Broadcom Product Webpage for BCM7425 |
| 43. | Broadcom Product Webpage for BCM7435 |
| 44. | Broadcom Product Brief for BCM94360 |
| 45. | Broadcom Product Webpage for BCM4360 |
| 46. | Arista Networks Form 10Q for period ending June 30, 2014 (excerpt) |
| 47. | Arista Networks, Inc. 2014 Annual Report (excerpt) |
| 48. | Arista Networks, Inc. 2015 Annual Report (excerpt) |
| 49. | Arista Networks 7050X, 7250X, 7300X, and 7500E Series Security Target, July 22, 2014 (excerpt) |
| 50. | ARRIS Group, Inc. 2015 Annual Report (excerpt) |
| 51. | ARRIS MX011ANM DVR Set-Top Box Product Photos |
| 52. | ARRIS PX013ANM High-Definition Set-Top Box Product Photos |
| 53. | ASUSTeK Computer Inc. 2014 Annual Report (excerpt) |
| 54. | ASUS ZenFone Product Photos |
| 55. | ASUS RT-AC5300 router Product Photos |
| 56. | Comcast Corporation 2015 Annual Report (excerpt) |
| 57. | HTC 2014 Annual Report (excerpt) |
| 58. | HTC One M9 Product Photos |
| 59. | NETGEAR, Inc. 2015 Annual Report (excerpt) |
| 60. | NETGEAR Nighthawk X6 AC3200 Tri-Band WiFi Gigabit Router (model no. R8000) Product Photos |
| 61. | NETGEAR Nighthawk X8 AC5300 Smart WiFi Router (model no. R8500) Product Photos |
| 62. | Technicolor 2015 Annual Report (excerpt) |
| 63. | Technicolor TC-8305C Product Photos |
| 64. | BCM94360 Product Photos |
| 65. | Declaration of Lori Sharkey Regarding Specific Instances of Importation and Sale |
| 66. | Declaration of Rosa Contreras Regarding Specific Instances of Importation and Sale |
| 67. | Micron Timeline available at https://www.micron.com/about/our-company/milestone-timeline-and-awards/timeline |
| 68. | Micron Technology, Inc. 1999 Annual Report (excerpt) |

| Exhibit No. | Document Description |
|---|---|
| 69. | Cypress Semiconductor Corporation 2015 Annual Report (excerpt) |
| 70. | Cypress Careers (silk road cite) |
| 71. | IBM 2015 Annual Report (excerpt) |
| 72. | IBM 2014 Annual Report (excerpt) |
| 73. | IBM Press Release, "IBM Microprocessors to Power the New Wii U System From Nintendo," dated June 7, 2011 |
| 74. | DailyTech Article, "IBM Pays Global Foundries $1.5B USD to Take Fab Business Off Its Hands,", dated October 21, 2014 |
| 75. | Confidential List of Licensees |
| 76. | Confidential Declaration of John Farrell (Tessera) |
| 77. | Confidential Declaration of Micron Declarant No. 1 including Micron datasheets |
| 78. | Confidential Declaration of Micron Declarant No. 2 |
| 79. | Confidential Patent License Agreement between Tessera Technologies, Inc. and Micron Technology, Inc., |
| 80. | Confidential Micron xFD License and HVM Cooperation Agreement |
| 81. | Confidential Chart re Micron SSD M510DC Practice of '007 Patent |
| 82. | Confidential Chart re Micron MT44K16M36RB-125E:A Practice of '946 Patent |
| 83. | Confidential Chart re Micron MT29F8G08ABBCAH4-IT:C Practice of '946 Patent |
| 84. | Confidential Chart re Micron MT42L128M32D1GU-25 WT:A Practice of '946 Patent |
| 85. | Confidential Chart re Micron MT47H128M8CF-3:H Practice of '946 Patent |
| 86. | Confidential Cypress Declaration of Cypress Declarant |
| 87. | Confidential Patent Purchase Agreement between Tessera Advanced Technologies, Inc. and Cypress Semiconductor Corporation |
| 88. | Confidential Chart re Cypress S29GL01GS11DHIV2 Practice of '946 Patent |
| 89. | Confidential Chart re Cypress S29GL128P11FFI01 Practice of '946 Patent |
| 90. | Confidential Chart re Cypress CY15B104Q-SXI Practice of '946 Patent |
| 91. | Confidential Patent Assignment Agreement between Tessera Intellectual Properties, Inc. and International Business Machines Corporation |
| 92. | Confidential Chart re IBM Espresso Die Practice of '136 Patent |
| 93. | Receipts for purchase of Micron products |
| 94. | Receipts for purchase of Cypress products |
| 95. | Receipt for purchase of IBM product |

| Exhibit No. | Document Description |
|---|---|
| 96. | Cypress S29GL01GS11DHIV2 data sheet |
| 97. | Cypress S29GL01GS11DHIV2 product pictures |
| 98. | Cypress S29GL128P11FFI01 data sheet |
| 99. | Cypress S29GL128P11FFI01 product pictures |
| 100. | Cypress CY15B104Q-SXI data sheet |
| 101. | Cypress CY15B104Q-SXI product pictures |

## <u>LIST OF APPENDICES</u>

**Appendix No.**    **Document Description**

A.          Certified Prosecution History of United States Patent No. 6,856,007

B.          Certified Prosecution History of United States Patent No. 6,849,946

C.          Certified Prosecution History of United States Patent No. 6,133,136

D.          Copies of References Cited in the Prosecution History of United States
            Patent No. 6,856,007

E.          Copies of References Cited in the Prosecution History of United States
            Patent No. U.S. 6,849,946

F.          Copies of References Cited in the Prosecution History of United States
            Patent No. 6,133,136

## I.      INTRODUCTION

1.      Tessera Technologies, Inc., and its wholly-owned subsidiaries Tessera, Inc. and Invensas Corporation ("Invensas") (collectively "Tessera" or "Complainants") request that the United States International Trade Commission institute an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"), to remedy the unlawful importation, sale for importation, and/or sale after importation of certain semiconductor devices, semiconductor device packages, and products containing the same.  These products infringe Tessera's patent rights under United States Patent Nos. 6,856,007 ("'007 Patent"), 6,849,946 ("'946 Patent"), and 6,133,136 ("'136 Patent") (collectively "Asserted Patents").[1]

2.      The proposed respondents are: (a) Broadcom Limited and its wholly-owned subsidiaries Broadcom Corporation, Avago Technologies Limited, and Avago Technologies U.S. Inc. (collectively "Broadcom" or "Broadcom Respondents"); (b) Arista Networks, Inc. ("Arista Networks"); (c) ARRIS International plc and its direct and indirect subsidiaries ARRIS Group, Inc., ARRIS Technology, Inc., ARRIS Enterprises LLC, ARRIS Solutions, Inc., Pace Ltd. (formerly Pace plc), Pace Americas, LLC, and Pace, USA LLC (collectively "ARRIS" or "ARRIS Respondents"); (d) ASUSTeK Computer Inc. and ASUS Computer International (collectively "ASUS" or "ASUS Respondents"); (e) Comcast Cable Communications, LLC, Comcast Cable Communications Management, LLC, and Comcast Business Communications, LLC (collectively "Comcast Cable" or "Comcast Cable Respondents"); (f) HTC Corporation and HTC America, Inc. (collectively "HTC" or "HTC Respondents"); (g) NETGEAR, Inc. ("NETGEAR"); and (h) Technicolor S.A. and its direct and indirect subsidiaries Technicolor

---

[1] Certified copies of the Asserted Patents accompany this Complaint as Exhibits 1, 3, and 5 along with four additional copies of each of the Asserted Patents.

USA, Inc. and Technicolor Connected Home USA LLC (collectively "Technicolor" or

"Technicolor Respondents").  Respondents other than Broadcom are customers that use in their

products semiconductor devices, semiconductor device packages, and products containing the

same made by or for Broadcom (collectively "Downstream Respondents").

3.      Over the course of its 25-year history, Tessera,[2] a public company based in

Silicon Valley with over 250 employees (including over 200 scientists and engineers), has

established one of the largest and most prolific research, development, and licensing businesses

in the history of the United States patent system.  Tessera researches and develops

semiconductor and imaging technology, and transfers or licenses its technologies and/or the

patents that protect them to customers who use the technologies in their products.  The sustained

and organized efforts of this group of scientists, engineers, and other licensing professionals have

yielded billions of dollars in revenue for the company and its shareholders, resulted in hundreds

of license agreements and joint development partnerships with major industry players, and

created a substantial income stream into the United States economy.  As of the date of this filing,

in recognition of this established track record, Tessera's market capitalization stands at $1.5

billion.  On three separate occasions, the Commission has recognized the merit of Tessera's

licensing business and has found that it satisfied the domestic industry requirement of 19 U.S.C.

§ 1337 (a)(3)(C).[3]

---

[2] Tessera Technologies, Inc. is the ultimate parent and owner of a family of companies that
includes Tessera, Inc., Invensas, and other subsidiaries that are dedicated to the research,
development, and licensing of technology.  For purposes of this Complaint, "Tessera" also
includes the other related entities that are subsidiaries of Complainant Tessera Technologies, Inc.

[3] *See Certain Semiconductor Chips With Minimized Package Size and Products Containing
Same*, Inv. No. 337-TA-432, Initial Determination (Order No. 13), *non-reviewed,* at 13 (Jan. 24,
2001) ("Tessera's investments in patent licensing are substantial"); *Certain Semiconductor Chips
With Minimized Package Size and Products Containing Same (II)*, Inv. No. 337-TA-605, Final
(continued…)

4.      Tessera has been an innovator in semiconductor packaging technology since its

formation in 1990.  Tessera's "compliant chip" (TCC®) chip-scale package technology

revolutionized the packaging world, leading one of the Commission's Administrative Law

Judges to find that Tessera's inventions caused a "paradigm shift" in the semiconductor

industry.[4]  Tessera's TCC® chip-scale package has become one of the most widely adopted

packaging technologies in history.  It is used in nearly 100% of today's DRAM chips and in a

wide range of semiconductor devices that are ubiquitous in smartphones, tablets, and other

electronics.  Tessera's more than $2 billion in revenue since its initial public offering in

November 2003 represents a return on its substantial investments in researching, developing, and

licensing innovative technologies, and assisting its customers in implementing high-volume

manufacturing of reliable, miniaturized, high-performance and cost-effective semiconductor

packages.  Over the last three years, Tessera has spent more than $92,000,000 on research and

development.

5.      Tessera continues to invest in next-generation packaging and interconnect

technology, and has expanded into other areas such as image processing.  In diversifying its

offerings, Tessera strives to identify technologies that complement its core competencies in

semiconductor packaging while offering value to its customers.  To this end, Tessera formed

---

Initial Determination, *non-reviewed in relevant part*, at *142 (Dec. 1, 2008) ("Given the large
amount of money and domestic resources Tessera invests toward licensing its TCC packaging
technologies, including the '326 and '419 patents, the ALJ finds that Tessera actively exploits its
intellectual property and that such investments are clearly substantial"); *Certain Semiconductor
Chips With Minimized Package Size and Products Containing Same (III)*, Inv. No. 337-TA-630,
Initial Determination (Order No. 31) (Sept. 16, 2008) (finding that Tessera satisfied the domestic
industry requirement based on licensing).

[4] *Certain Semiconductor Chips With Minimized Package Size and Products Containing Same*,
Inv. No. 337-TA-432, Initial Determination at *64 (Sept. 25, 2001) ("This solution was a
'paradigm shift,' i.e., something that apparently nobody had thought of before.").

Invensas – which employs more than 40 scientists and engineers in the United States – to continue research and development efforts in advanced packaging and interconnect technologies, among other areas.  Tessera also acquired technology companies such as FotoNation Limited and Ziptronix, Inc. with the primary goal of driving commercial adoption of their respective image processing and semiconductor bonding technologies through licensing and technology collaborations with Tessera customers.

6.      Tessera's customers range from large semiconductor companies and mobile device manufacturers to small research institutions.  Tessera has licensed its technologies to hundreds of companies and institutions including, among others, industry leaders such as Intel Corporation, Micron Technology, Inc. ("Micron"), Samsung Electronics Co., Ltd., SK hynix Inc., and Sony Corporation.  Tessera's business development activities focus primarily on developing relationships at the technical, marketing, and executive management levels, identifying the needs and product requirements of Tessera's customers, managing the development and adoption of its technologies throughout the development cycle, and creating materials to assist with the adoption of the technologies.  Tessera's research and development groups work closely with its sales and marketing groups, as well as its customers and partners, to bring its high-quality technologies to market in a timely and cost-efficient manner.

7.      Tessera's efforts to develop technologies in-house coupled with its technology acquisition efforts have yielded a substantial number of patents.  Tessera was recently recognized in the IEEE Spectrum's "2015 Patent Power Scorecard" as having among the strongest patent portfolios in the semiconductor manufacturing sector.  IEEE Spectrum is the flagship magazine of the Institute of Electrical and Electronic Engineers (IEEE), and the Patent Power Scorecards are based on objective, quantitative benchmarking of the patent portfolios of more than 6,000

commercial enterprises, academic institutions, nonprofit organizations, and government agencies worldwide.  The rankings take into account not only the size of each organization's patent portfolio, but also the quality as reflected in characteristics such as growth, impact, originality, and general applicability.  Tessera Technologies, Inc. and Invensas were separately listed in the semiconductor manufacturing rankings as No. 8 and No. 11, respectively.

8.  Leading companies in the semiconductor design and manufacturing industry have recognized the value of Tessera's technology by obtaining licenses to Tessera's proprietary technical know-how and patents, including the Asserted Patents.

9.  In contrast, Broadcom has failed to engage in meaningful licensing talks with Tessera despite Tessera's earnest and repeated efforts to pursue a business relationship over the past several years.  Broadcom instead has continued its unlawful importation, sale for importation, and/or sale after importation of semiconductor devices, semiconductor device packages, and products containing the same that are made by or for Broadcom and that infringe, directly or indirectly, one or more of the Asserted Patents ("Broadcom Accused Products").  The unauthorized use of Tessera's patented inventions by Broadcom and its customers is widespread and pervasive – the Broadcom Accused Products span across all of Broadcom's product lines. The Broadcom Accused Products are being imported, sold for importation, and/or sold after importation by Broadcom and the Downstream Respondents in hundreds of different products covering a wide array of technologies (collectively "Accused Products").

10.  A domestic industry exists in the Asserted Patents and articles protected thereby under Section 337(a)(2) and (a)(3) based on both Tessera's enormous investments in its patent licensing business and the investments of Tessera's licensees – including Micron, Cypress Semiconductor Corporation ("Cypress"), and International Business Machines Corporation

("IBM") – in their own domestic manufacturing, assembly, testing, and research and development, among other activities.

11.    Tessera asks the Commission to investigate the unlawful acts of Broadcom and the Downstream Respondents.  Tessera asserts that the Accused Products of Broadcom and the Downstream Respondents directly infringe at least the following claims of the Asserted Patents: Claims 13, 16, and 18 of the '007 Patent; Claims 16, 17, 18, 19, 20, and 22 of the '946 Patent; and Claims 1, 2, 3, 5, 6, 11, 12, 13, 14, 15, 16, 24, 25, 26, 27, 29, 30, 33, 34, and 35 of the '136 Patent (collectively "the Asserted Claims").  The following chart summarizes the Asserted Claims being asserted against each of the proposed respondents:

| Respondent | Patent | Claims Asserted |
|---|---|---|
| Broadcom | '007 | 13, 16, 18* |
|  | '946 | 16*, 17, 18, 19, 20, 22 |
|  | '136 | 1*, 2, 3, 5, 6, 11*, 12, 13, 14, 15, 16, 24, 25, 26, 27, 29, 30, 33, 34, 35 |
| Arista Networks | '946 | 16*, 17, 18, 19, 22 |
|  | '136 | 1*, 2, 3, 5, 6, 11*, 12, 13, 14, 15, 16, 24, 25, 26, 27, 29, 30, 33, 34, 35 |
| ARRIS | '946 | 16*, 17, 18, 19, 20, 22 |
|  | '136 | 1*, 2, 3, 5, 6, 11*, 12, 13, 14, 15, 16, 24, 25, 26, 27, 29, 30, 33, 34, 35 |
| ASUS | '946 | 16*, 17, 18, 19, 20, 22 |
|  | '136 | 1*, 2, 3, 5, 6, 11*, 12, 13, 14, 15, 16, 24, 25, 26, 27, 29, 30, 33, 34, 35 |
| Comcast Cable | '007 | 13, 16, 18* |
|  | '946 | 16*, 17, 18, 19, 20, 22 |
|  | '136 | 1*, 2, 3, 5, 6, 11*, 12, 13, 14, 15, 16, 24, 25, 26, 27, 29, 30, 33, 34, 35 |
| HTC | '946 | 16*, 17, 18, 19, 20 |
| NETGEAR | '007 | 13, 16, 18* |
|  | '946 | 16*, 17, 18, 19, 20, 22 |
|  | '136 | 1*, 2, 3, 5, 6, 11*, 12, 13, 14, 15, 16, 24, 25, 26, 27, 29, 30, 33, 34, 35 |
| Technicolor | '007 | 13, 16, 18* |
|  | '946 | 16*, 17, 18, 19, 20, 22 |
|  | '136 | 1*, 2, 3, 5, 6, 11*, 12, 13, 14, 15, 16, 24, 25, 26, 27, 29, 30, 33, 34, 35 |
| * denotes an independent claim | | |

12.     Tessera requests a permanent limited exclusion order, pursuant to Section 337(d), excluding from entry into the United States all of Broadcom's Accused Products and Downstream Respondents' Accused Products that infringe one or more of the Asserted Claims of the Asserted Patents.  Tessera also seeks a permanent cease and desist order, pursuant to Section 337(f), directing all proposed respondents to cease and desist from activities that include, but are not limited to, importing, marketing, advertising, demonstrating, qualifying for use in the products of others, warehousing inventory for distribution, offering for sale, selling, distributing, or using Accused Products or products containing Accused Products that infringe one or more of the Asserted Claims of the Asserted Patents.  Further, Tessera requests that the Commission impose a bond during the 60-day Presidential review period pursuant to 19 U.S.C. § 1337(e)(1) and (f)(1) to prevent further injury to the domestic industry of Tessera and its licensees relating to each of the Asserted Patents.

## II.     COMPLAINANT

13.     Complainant Tessera Technologies, Inc. is a Delaware corporation with its principal place of business at 3025 Orchard Parkway, San Jose, California.  Complainants Tessera, Inc. and Invensas Corporation are wholly-owned subsidiaries of Tessera Technologies, Inc.  Tessera, Inc. and Invensas are Delaware corporations with their principal place of business at 3025 Orchard Parkway, San Jose, California.

14.     Tessera Technologies, Inc. – the ultimate parent of the Tessera family of companies – is publicly traded on the NASDAQ stock exchange at a share price of around $30 (as of May 20, 2016).  Its current market capitalization is approximately $1.5 billion.

15.     Invensas began operations in 2011.  It researches and develops novel semiconductor packaging and interconnect technologies for memory, mobile, computing, and smart object applications.  Invensas engineering teams develop and prototype new technologies

in extensive assembly and test laboratories and perform full product reliability testing and acceptance testing in support of its efforts to license these technology solutions to original equipment manufacturers ("OEMs"), original design manufacturers ("ODMs"), integrated device manufacturers ("IDMs"), and offshore assembly and test houses ("OSATs").

16.     Tessera, Inc. is the owner by assignment of the '007 Patent.  Invensas is the owner by assignment of the '136 and '946 Patents.

### III.     PROPOSED RESPONDENTS

#### A.     Broadcom and Avago Respondents

17.     Broadcom Limited is a Singapore corporation with its principal executive offices in Singapore and its corporate co-headquarters in Singapore and San Jose, California.  Broadcom Corporation is a California corporation with offices in Irvine, California.  Avago Technologies Limited is a Singapore corporation with offices in Singapore and San Jose, California.  Avago Technologies U.S. Inc. is a Delaware corporation with offices in San Jose, California.  On information and belief, Broadcom Corporation and Avago Technologies Limited are wholly-owned subsidiaries of Broadcom Limited and Avago Technologies U.S. Inc. is a wholly-owned subsidiary of Avago Technologies Limited.

18.     Broadcom Limited was formed following the merger of Avago Technologies Limited and the former Broadcom Corporation in February 2016.  The merged entity styles itself as the "world's leading diversified communications semiconductor company."  *See* Exhibit 8 ("Avago to Acquire Broadcom," Investor Presentation, May 28, 2015); *see also* http://www.broadcom.com/company; http://www.broadcom.com/company/timeline.  Broadcom Corporation offers products in six product categories:  (1) Broadband Access + Modems; (2) Enterprise + Network Processors; (3) Ethernet Communication + Switching; (4) Set-Top Box + Media Processors; (5) Wireless Connectivity; and (6) Wireless Infrastructure.  *See*

http://www.broadcom.com/products; *see also* Exhibit 7 (Broadcom Corporation 2014 Annual Report).  Tessera has identified exemplary Broadcom products across these different product categories that evidence Broadcom's widespread infringement of the Asserted Patents.

19.     On information and belief, Broadcom designs, develops, manufactures (through third parties acting on its behalf), imports into the United States, sells for importation into the United States, and/or sells after importation into the United States the Broadcom Accused Products.

### B.     Arista Networks

20.     Arista Networks, Inc. is a Delaware corporation with its corporate headquarters at 5453 Great America Parkway, Santa Clara, California 95054.

21.     Arista Networks is a supplier of cloud networking solutions to large-scale Internet companies, cloud service providers, and next-generation data centers for enterprises.  Its cloud networking solutions consist of its Extensible Operating System ("EOS"), a set of network applications, and its 10/40/100 Gigabit Ethernet switches.  *See* Exhibit 48 (Arista Networks 2015 Annual Report).  On information and belief, Arista Networks designs, develops, manufactures (or has manufactured on its behalf), imports into the United States, sells for importation into the United States, and/or sells after importation into the United States products that contain one or more of the Broadcom Accused Products and infringe one or more of the Asserted Patents, including but not limited to its cloud networking solution and Ethernet switch products.

### C.     ARRIS Group and Pace Respondents

22.     ARRIS International plc ("ARRIS International") is a corporation organized under the laws of England and Wales with its corporate headquarters at 3871 Lakefield Drive, Suwanee, Georgia 30024.  ARRIS Group, Inc. and ARRIS Solutions, Inc. are Delaware corporations with their offices at 3871 Lakefield Drive, Suwanee, Georgia 30024, and they are

wholly-owned subsidiaries of ARRIS International.  ARRIS Enterprises LLC is a Delaware limited liability company with its offices at 3871 Lakefield Drive, Suwanee, Georgia 30024, and it is a wholly-owned subsidiary of ARRIS International.  ARRIS Technology, Inc. is a Delaware corporation with its offices at 101 Tournament Drive, Horsham, Pennsylvania 19044, and it is a wholly-owned subsidiary of ARRIS International.

23.     Pace Ltd., formerly Pace plc, is a wholly-owned subsidiary of ARRIS International.  It is a corporation organized under the laws of England and Wales with its offices at Victoria Road, Saltaire, West Yorkshire BD18 3LF, England.  Pace Americas LLC and Pace USA LLC are subsidiaries of Pace Ltd.  They are Delaware limited liability companies with their head offices at 3701 FAU Boulevard, Suite 200, Boca Raton, Florida 33431.

24.     The ARRIS Respondents offer entertainment and communications hardware and software, and services relating to television, Internet, and network access.  Their customers include cable and telephone service providers, digital broadcast satellite operators, and media programmers that offer media, voice, and IP data services.  The ARRIS Respondents offer Internet Protocol Television ("IPTV") distribution systems, broadband access infrastructure platforms, and associated data and voice customer premises equipment such as set-top boxes and media gateways, leased through service providers and sold directly to consumers through retail channels.  They also offer technical support, repair and refurbishment, and system design and integration services.  *See* Exhibit 50 (ARRIS Group 2015 Annual Report).  On information and belief, the ARRIS Respondents design, develop, manufacture (or have manufactured on their behalf), import into the United States, sell for importation into the United States, and/or sell after importation into the United States products that contain one or more of the Broadcom Accused Products and infringe one or more of the Asserted Patents, including but not limited to set-top

boxes, gateways, other customer premises equipment, distribution systems and infrastructure platforms.

### D.   ASUS Respondents

25.     ASUSTeK Computer Inc. is a corporation organized under the laws of the Republic of China (Taiwan) with its principal place of business at No. 15, Li-Te Road, Peitou, Taipei, Taiwan, R.O.C.  ASUS Computer International is a wholly-owned subsidiary of ASUSTeK Computer Inc.  It is a California corporation with its headquarters located at 800 Corporate Way, Fremont, California 94539.

26.     The ASUS Respondents sell desktop computers, notebook computers, and components such as cards and motherboards for computers.  The ASUS Respondents also sell wired and wireless devices such as routers that enable networking, broadband access, and network connectivity as well as mobile devices, including their ZenFone smartphones and ZenPad tablets.  *See* Exhibit 53 (ASUSTeK 2014 Annual Report).  On information and belief, the ASUS Respondents design, develop, manufacture (or have manufactured on their behalf), import into the United States, sell for importation into the United States, and/or sell after importation into the United States products that contain one or more of the Broadcom Accused Products and infringe one or more of the Asserted Patents, including but not limited to desktop computers, notebook computers, cards, motherboards, routers, mobile phones, and tablets.

### E.   Comcast Cable Respondents

27.     Comcast Cable Communications, LLC is a Delaware limited liability company with its headquarters at 1500 Market Street, Philadelphia, Pennsylvania 19102.  Comcast Cable Communications Management, LLC is a Delaware limited liability company with its headquarters at 1701 John F Kennedy Boulevard, Philadelphia, Pennsylvania 19103.  Comcast

Business Communications, LLC is a Pennsylvania limited liability company with its headquarters at 1701 John F Kennedy Boulevard, Philadelphia, Pennsylvania 19103.

28.      Comcast Cable is one of the largest cable operators in the United States, offering residential and business services in numerous geographic markets across the nation.  The Comcast Cable Respondents offer Internet, video, and voice services under their Xfinity brand. They also lease set-top boxes and other customer premises equipment to Xfinity customers. They purchase that equipment from a limited number of suppliers, including ARRIS and Technicolor.  *See* Exhibit 56 (Comcast 2015 Annual Report).  On information and belief, the Comcast Cable Respondents design, develop, manufacture (or have manufactured on their behalf), import into the United States, sell for importation into the United States, and/or sell after importation into the United States products that contain one or more of the Broadcom Accused Products and infringe one or more of the Asserted Patents, including but not limited to set-top boxes, gateways, other customer premises equipment, distribution systems, and infrastructure platforms.

### F.      HTC Respondents

29.      HTC Corporation is a corporation organized under the laws of the Republic of China (Taiwan) with its principal place of business at 23 Xinghau Road, Taoyuan, 330, Taiwan, R.O.C.  HTC America, Inc., a Washington corporation, is an indirect subsidiary of HTC Corporation with its principal place of business at 13920 SE Eastgate Way, Suite 200, Bellevue, Washington 98005.

30.      The HTC Respondents build and market mobile devices, including smart phones, tablets, connected fitness systems, cameras, and virtual reality headsets.  *See* Exhibit 57 (HTC 2014 Annual Report).  On information and belief, the HTC Respondents design, develop, manufacture (or have manufactured on their behalf), import into the United States, sell for

importation into the United States, and/or sell after importation into the United States products that contain one or more of the Broadcom Accused Products and infringe one or more of the Asserted Patents, including but not limited to mobile phones and other mobile devices.

**G.    NETGEAR**

31.    NETGEAR, Inc. is a Delaware corporation with its principal executive offices at 350 East Plumeria Drive, San Jose, California 95134.

32.    NETGEAR is a networking company that provides products to consumers, businesses, and service providers.  Its product lines include commercial business networking (*e.g.*, Ethernet switches, wireless controllers and access points, Internet security appliances, and unified storage), broadband access (*e.g.*, broadband modems, WiFi gateways, and WiFi hotspots), and Smart Home and connectivity (*e.g.*, WiFi routers and range extenders, powerline adapters and bridges, remote video security systems, and WiFi network adapters).  *See* Exhibit 59 (NETGEAR 2015 Annual Report).  On information and belief, NETGEAR designs, develops, manufactures (or has manufactured on its behalf), imports into the United States, sells for importation into the United States, and/or sells after importation into the United States products that contain one or more of the Broadcom Accused Products and infringe one or more of the Asserted Patents, including but not limited to networking, broadband access, connectivity, storage, and security products and equipment.

**H.    Technicolor Respondents**

33.    Technicolor S.A. is a corporation organized under the laws of the Republic of France with its principal place of business at 1-5, rue Jeanne d'Arc, 92130 Issy-Les-Moulineaux, France.  Technicolor USA, Inc., a wholly-owned subsidiary of Technicolor S.A., is a Delaware corporation with its principal place of business at 101 West 103rd Street, Indianapolis, Indiana 46290.  Technicolor Connected Home USA LLC, a wholly-owned subsidiary of Technicolor

USA, Inc., is a Delaware limited liability company with its principal place of business at 101

West 103rd Street, Indianapolis, Indiana 46290.

34.     The Technicolor Respondents' business operations include development of video

technologies as well as production and distribution services for content creators, Pay-TV

operators, and network service providers.  Through their Connected Home business segment,

they offer digital set-top boxes, broadband gateways, and software solutions for multi-device

communication and smart home applications.  *See* Exhibit 62 (Technicolor 2015 Annual Report).

On information and belief, the Technicolor Respondents design, develop, manufacture (or have

manufactured on their behalf), import into the United States, sell for importation into the United

States, and/or sell after importation into the United States products that contain one or more of

the Broadcom Accused Products and infringe one or more of the Asserted Patents, including but

not limited to set-top boxes, gateways, other customer premises equipment, distribution systems,

and infrastructure platforms.

## IV.     THE ACCUSED PRODUCTS-AT-ISSUE

35.     Pursuant to 19 C.F.R. § 210.12(a)(12), the category of the Accused Products may

be plainly described as: (a) semiconductor devices, semiconductor device packages, and products

containing the same made by or for Broadcom; and (b) products made by or for the Downstream

Respondents that contain semiconductor devices, semiconductor device packages, and products

containing the same made by or for Broadcom, including, for example, mobile devices, set-top

boxes, gateways, modems, routers, Ethernet switches, network routing equipment, and

infrastructure equipment for telecommunications, cable, networking, cloud and enterprise

systems (the Accused Products that are not made by or for Broadcom are collectively referred to

as "Downstream Respondent Accused Products").  Section VI, *infra*, details specific instances of

the unlawful importation, sale for importation and/or sale after importation of the Broadcom

Accused Products and Downstream Respondent Accused Products.

36.     Exemplary Broadcom Accused Products include, but are not limited to:

| Product No. | Broadcom Product Name |
|---|---|
| BCM3383 | DOCSIS®/EuroDOCSIS™ 3.0 Cable Gateway SoC[5] |
| BCM33843 | Gigabit DOCSIS Cable Gateway Device |
| BCM4331 | Single-Chip 802.11n Dual-Band 3x3 Wireless Solution |
| BCM4343 | Wi-Fi and Bluetooth 4.2/Bluetooth Smart combo chip |
| BCM4356 | 5G WiFi 802.11ac Client |
| BCM43570 | 5G WiFi 802.11ac Client |
| BCM43602 | 3x3 MIMO 802.11ac chip designed for access/DSL/Cable/STB platforms |
| BCM4366 | 4x4 2.4/5G single chip 802.11ac SoC |
| BCM4709 | Communications Processor with Network Acceleration Hardware |
| BCM4752 | Integrated Multi-Constellation GNSS Receiver |
| BCM53125 | Seven-Port Integrated GbE Energy-Efficient Ethernet™ Switch |
| BCM56850 | High-Capacity StrataXGS® Trident II Ethernet Switch Series |
| BCM7425 | Dual HD Transcoding MoCA 2.0 Gateway SoC |
| BCM7435 | 40 nm Dual-Core Hybrid Gateway SoC with Web Domain Security |
| BCM94360 BCM4360 | PCI-E Mini Card that includes a BCM4360 5G WiFi 3-Stream 802.11ac Gigabit Transceiver |

37.     Exemplary Downstream Respondent Accused Products include, but are not

limited to:

- the Arista Networks 7050X, 7250X, and 7300X-series data center switches, which contain Broadcom's BCM56850 High-Capacity StrataXGS® Trident II Ethernet Switch;

- the ARRIS MX011ANM DVR Set-Top Box, leased to U.S. subscribers by Comcast Cable using its Xfinity brand, which contains Broadcom's BCM3383 DOCSIS®/EuroDOCSIS™ 3.0 Cable Gateway SoC and BCM7425 Dual HD Transcoding MoCA 2.0 Gateway SoC;

- the ARRIS PX013ANM High-Definition Set-Top Box, leased to U.S. subscribers by Comcast Cable using its Xfinity brand, which contains Broadcom's BCM33843 Gigabit DOCSIS Cable Gateway Device and BCM7435 40 nm Dual-Core Hybrid Gateway SoC with Web Domain Security;

[5] "SoC" is a System on a Chip.

- the ASUS RT-AC5300 router, which contains Broadcom's BCM4366 4x4 2.4/5G single chip 802.11ac SoC and BCM4709 Communications Processor with Network Acceleration Hardware;

- the ASUS ZenFone 2E (Z00D), which contains Broadcom's BCM4343 Wi-Fi and Bluetooth 4.2/Bluetooth Smart combo chip and BCM4752 Integrated Multi-Constellation GNSS Receiver;

- the HTC One M9 smart phone, which contains a Broadcom BCM4356 5G WiFi 802.11ac Client;

- the NETGEAR Nighthawk X6 AC3200 Tri-Band WiFi Gigabit Router (model no. R8000), which contains Broadcom's BCM43602 3x3 MIMO 802.11ac chip designed for access/DSL/Cable/STB platforms and BCM4709 Communications Processor with Network Acceleration Hardware;

- the NETGEAR Nighthawk X8 AC5300 Smart WiFi Router (model no. R8500), which contains Broadcom's BCM4366 4x4 2.4/5G single chip 802.11ac SoC, BCM4709 Communications Processor with Network Acceleration Hardware, and BCM53125 Seven-Port Integrated GbE Energy-Efficient Ethernet™ Switch; and

- the Technicolor TC8305C Wireless Gateway, leased to U.S. subscribers by Comcast Cable using its Xfinity brand, which contains Broadcom's BCM3383 DOCSIS®/EuroDOCSIS™ 3.0 Cable Gateway SoC and BCM4331 Single-Chip 802.11n Dual-Band 3x3 Wireless Solution.

38.     This identification of exemplary models and types of products is intended for illustration and is not intended to limit the scope of the investigation.  Any remedy should extend to all present and future infringing products of Broadcom and the Downstream Respondents regardless of model number or type of product.

## V.     THE PATENTS-AT-ISSUE

### A.     U.S. Patent No. 6,856,007

39.     The '007 Patent is entitled "High-Frequency Chip Packages."  It issued on February 15, 2005 to named inventor Michael Warner.  The '007 Patent issued from United States Patent Application No. 10/210,160, filed on August 1, 2002.  It claims the benefit of Provisional Application No. 60/315,408, filed on August 28, 2001.  *See* Exhibit 1.

40.     Tessera, Inc. is the sole owner by assignment of all right, title, and interest in the '007 Patent.  Certified copies of the recorded assignment documents related to the '007 Patent accompany this Complaint as Exhibit 2.

41.     The following foreign patents and patent applications correspond to the '007 Patent:  WO03021673 (A9) and WO03021673 (A1).

42.     In non-technical terms, the '007 Patent discloses and claims a compact and economical semiconductor chip assembly that includes a packaged semiconductor chip, a chip carrier with a metallic thermal conductor, and a circuit panel with a thermal conductor mounting. The claimed semiconductor chip assembly provides a low thermal resistance cooling path between the packaged chip and the circuit panel and can diminish (shield) undesired RF emissions to and from the chip.  The claimed assembly is ideal for use with RF chips in wireless communications devices, which generate substantial amounts of heat, because it facilitates the transfer of heat away from the chip.

43.     As required by Rule 210.12(c), Appendix A to this Complaint includes a certified copy and three additional copies of the prosecution history of the '007 Patent and Appendix D to this Complaint includes four copies of each technical reference cited in the prosecution history of the '007 Patent.

**B.     U.S. Patent No. 6,849,946**

44.     The '946 Patent is entitled "Planarized Semiconductor Interconnect Topography and Method for Polishing a Metal Layer to Form Interconnect."  It issued on February 1, 2005 to named inventors Anantha R. Sethuraman and Christopher A. Seams.  The '946 Patent issued from United States Patent Application No. 09/779,123, filed on February 7, 2001.  It is a continuation of Application No. 09/143,723, filed on August 31, 1998, now United States Patent No. 6,232,231.  *See* Exhibit 3.

45.     Invensas Corporation is the sole owner by assignment of all right, title, and interest in the '946 Patent.  Certified copies of the recorded assignment documents related to the '946 Patent accompany this Complaint as Exhibit 4.

46.     The following foreign patents and patent applications correspond to the '946 Patent:  TW441013 (B) (lapsed).

47.     In non-technical terms, the '946 Patent discloses and claims a semiconductor layout configuration and method that results in a more efficient planarization process for a semiconductor chip.  During prior art chemical mechanical polishing (CMP) of a semiconductor chip layer, the surface layer may include relatively hard areas (dielectric) and relatively soft areas (metal interconnects) that polish at different rates.  The CMP pad conforms to the surface being polished, and thus flexes in softer areas that polish more quickly, causing the surface of those soft areas to become recessed relative to the adjacent areas of the harder dielectric.  This is known as the "dishing" problem.  Similarly, relatively small oxide regions are removed by the CMP pad at a faster rate than large oxide regions, leading to a problem known as "oxide erosion."  The '946 Patent solves the "dishing" and "oxide erosion" problems by disclosing the etching of laterally spaced dummy trenches in a dielectric layer between a wide metal interconnect and a series of narrow metal interconnects, and filling the dummy trenches with a conductive material (*e.g.*, metal).  Advantageously, the polish rate of the conductive material above the dummy trenches and the wide and narrow trenches is substantially uniform, as is the polish rate of the oxide, resulting in a substantially planar surface.

48.     As required by Rule 210.12(c), Appendix B to this Complaint includes a certified copy and three additional copies of the prosecution history of the '946 Patent and Appendix E to

this Complaint includes four copies of each technical reference cited in the prosecution history of the '946 Patent.

### C.   U.S. Patent No. 6,133,136

49.     The '136 Patent is entitled "Robust Interconnect Structure."  It issued on October 17, 2000 to named inventors Daniel Charles Edelstein, Vincent McGahay, Henry A. Nye, III, Brian George Reid Ottey, and William H. Price.  The '136 Patent issued from United States Patent Application No. 09/314,003, filed on May 19, 1999.  *See* Exhibit 5.

50.     Invensas Corporation is the sole owner by assignment of all right, title, and interest in the '136 Patent.  Certified copies of the recorded assignment documents related to the '136 Patent accompany this Complaint as Exhibit 6.

51.     The following foreign patents and patent applications correspond to the '136 Patent: TW473921 (B); PL351305 (A1) (lapsed); PL201072 (B1) (lapsed); MY118419 (A); KR100463492 (B1); JP2003500860 (A); JP3898894 (B2); IL146333 (A) (lapsed); HU0201473 (A2) (lapsed); WO0072380 (A1); ES2320523 (T3); EP1186034 (A1); EP1186034 (B1); CZ20014145 (A3); CZ302748 (B6); CN1350703 (A); CN1165081 (C); CA2368950 (A1) (lapsed); CA2368950 (C) (lapsed); AU4933500 (A); and AT426247 (T).

52.     In non-technical terms, the '136 Patent discloses and claims a structure for metal interconnects used in semiconductor packaging.  Copper is increasingly used as an interconnect in semiconductor devices because it has lower resistivity and a reduced susceptibility to electromigration as compared to traditional aluminum or aluminum alloy interconnects. However, copper has a tendency to diffuse into surrounding dielectric materials, which reduces the structural integrity of the devices.  The '136 Patent discloses and claims a structure that improves the structural integrity of copper interconnects.  The claimed structure comprises a layer of copper, a barrier layer, a layer of aluminum copper (AlCu), and a pad-limiting layer.

The layer of AlCu and the barrier layer are interposed between the layer of copper and the pad-limiting layer. The barrier layer is located between the layer of copper and the layer of AlCu. The '136 Patent discloses that the barrier layer is typically titanium, titanium nitride, tantalum or tantalum nitride, or alloys thereof. The pad-limiting layer is typically titanium nitride, copper, gold, titanium tungsten, chromium or a combination of such materials.

53.     As required by Rule 210.12(c), Appendix C to this Complaint includes a certified copy and three additional copies of the prosecution history of the '136 Patent and Appendix F to this Complaint includes four copies of each technical reference cited in the prosecution history of the '136 Patent.

## VI.     UNLAWFUL AND UNFAIR ACTS – PATENT INFRINGEMENT

### A.     Broadcom Respondents

#### 1.     Representative Involved Article

54.     On information and belief, Broadcom designs, develops, manufactures (through third parties acting on its behalf), imports into the United States, sells for importation into the United States, and/or sells after importation into the United States products, including semiconductor devices, semiconductor device packages, and products containing the same that infringe, literally and/or by equivalence, claims 13, 16, and 18 of the '007 Patent, claims 16, 17, 18, 19, 20, and 22 of the '946 Patent, and claims 1, 2, 3, 5, 6, 11, 12, 13, 14, 15, 16, 24, 25, 26, 27, 29, 30, 33, 34, and 35 of the '136 Patent.

55.     Broadcom is knowingly and intentionally inducing infringement of the '007, '946, and '136 Patents in violation of 35 U.S.C. § 271(b) by actively encouraging its customers, including the Downstream Respondents, to incorporate infringing Broadcom Accused Products into Downstream Respondent Accused Products that directly infringe one or more of the Asserted Claims. Broadcom has had knowledge of the Accused Patents and that the Broadcom

Accused Products and Downstream Respondent Accused Products infringe the Asserted Patents since at least the filing of this Complaint.  With knowledge and intent, Broadcom is encouraging and facilitating infringing use of the Broadcom Accused Products by others, including the Downstream Respondents.  For example, Broadcom markets, promotes, and advertises its products and offers product briefs and descriptions, press releases, data sheets, manuals, user guides, and other materials that actively encourage others, including the Downstream Respondents, to directly infringe the '007, '946, and '136 Patents.  The Downstream Respondent Accused Products are imported into the United States, sold in the United States after importation, and/or sold for importation into the United States.

56.    Broadcom is contributing to infringement of the '007, '946, and '136 Patents in violation of 35 U.S.C. § 271(c), by selling the Broadcom Accused Products, with knowledge of the Asserted Patents, as especially-made components that have no substantial non-infringing use and are a material part of the inventions claimed in the Asserted Patents, for incorporation into other products, including Downstream Respondent Accused Products, that directly infringe the Asserted Patents.  The Downstream Respondent Accused Products are imported into the United States, sold in the United States after importation, and/or sold for importation into the United States.

57.    Complainants have obtained the following Broadcom Accused Products that are representative involved articles:

| Product No. | Broadcom Product Name |
| --- | --- |
| BCM3383 | DOCSIS®/EuroDOCSIS™ 3.0 Cable Gateway SoC |
| BCM33843 | Gigabit DOCSIS Cable Gateway Device |
| BCM4331 | Single-Chip 802.11n Dual-Band 3x3 Wireless Solution |
| BCM4343 | Wi-Fi and Bluetooth 4.2/Bluetooth Smart combo chip |
| BCM4356 | 5G WiFi 802.11ac Client |
| BCM43570 | 5G WiFi 802.11ac Client |

| Product No. | Broadcom Product Name |
|---|---|
| BCM43602 | 3x3 MIMO 802.11ac chip designed for access/DSL/Cable/STB platforms |
| BCM4366 | 4x4 2.4/5G single chip 802.11ac SoC |
| BCM4709 | Communications Processor with Network Acceleration Hardware |
| BCM4752 | Integrated Multi-Constellation GNSS Receiver |
| BCM53125 | Seven-Port Integrated GbE Energy-Efficient Ethernet™ Switch |
| BCM56850 | High-Capacity StrataXGS® Trident II Ethernet Switch Series |
| BCM7425 | Dual HD Transcoding MoCA 2.0 Gateway SoC |
| BCM7435 | 40 nm Dual-Core Hybrid Gateway SoC with Web Domain Security |
| BCM94360 BCM4360 | PCI-E Mini Card that includes a BCM4360 5G WiFi 3-Stream 802.11ac Gigabit Transceiver |

Exhibits 30-45 include Broadcom product pages, press releases and product briefs relating to these exemplary articles.

58.     Complainants believe that the exemplary Broadcom products listed above are representative of many other Broadcom products imported, sold for importation, and/or sold in the United States after importation by Broadcom that feature the same or substantially similar functionality as the exemplary Broadcom Accused Products.  Accordingly, on information and belief, Complainants allege that numerous other Broadcom products infringe the Asserted Claims of the Asserted Patents and have been and are being imported, sold for importation, and/or sold in the United States after importation by or on behalf of Broadcom.

### 2.     Infringement of the '007 Patent

59.     Confidential Exhibit 11 includes a chart comparing independent claims 1 and 18 of the '007 Patent to Broadcom's BCM94360 PCI-E Mini Card and the BCM4360 5G WiFi 3-Stream 802.11ac Gigabit Transceiver included on the card.  This exhibit shows that the BCM94360 PCI-E Mini Card is covered by at least claims 1 and 18 of the '007 Patent. Confidential Exhibits 11, 9, and 10 include charts comparing independent claims 1 and 18 of the '007 Patent to Broadcom's BCM4360, BCM4331, and BCM43602 semiconductor devices mounted to a circuit panel in the manner set forth in the '007 Patent.  These exhibits show that

the BCM4360, BCM4331, and BCM43602 semiconductor devices are covered by at least claims 1 and 18 of the '007 Patent when mounted to a circuit panel in the manner set forth in the '007 Patent.

### 3. Infringement of the '946 Patent

60. Confidential Exhibits 12 through 22 include charts comparing independent claim 16 of the '946 Patent with the following exemplary articles: BCM3383; BCM4331; BCM4343; BCM4356; BCM43602; BCM4366; BCM4709; BCM4752; BCM53125; BCM56850; and BCM7425. These exhibits show that these Broadcom Accused Products are covered by at least claim 16 of the '946 Patent.

### 4. Infringement of the '136 Patent

61. Confidential Exhibits 23 through 29 include charts comparing independent claims 1 and 11 of the '136 Patent with the following exemplary articles: BCM3383; BCM33843; BCM43570; BCM4709; BCM56850; BCM7425; and BCM7435. These exhibits show that these Broadcom Accused Products are covered by at least claims 1 and 11 of the '136 Patent.

### 5. Specific Instance of Sale and Importation

62. Broadcom Corporation is a fabless semiconductor company and, on information and belief, the exemplary Broadcom Accused Products were fabricated by foundries and packaged by independent assembly and package subcontractors outside the United States. *See* Exhibit 7 (Broadcom Corporation 2014 Annual Report) at 6 ("We depend on multiple foundry subcontractors located in Asia to manufacture a majority of our products."), 7 ("A majority of our test and assembly is performed by the following independent subcontractors" in "Singapore, China and Taiwan," "Taiwan," "Singapore, China and Thailand," "Korea, Philippines, Taiwan and China," and "Singapore, Korea, Malaysia and China"), 16 ("As a fabless semiconductor company, we do not own or operate fabrication, assembly or test facilities.").

63.     The exemplary Broadcom Accused Products were then imported into the United States, sold for importation into the United States, and/or sold after importation in the United States by Broadcom, as follows:

| Product No. | Evidence of Sale or Importation |
| --- | --- |
| BCM3383 | A BCM3383 SoC was removed from an ARRIS MX011ANM set-top box and from a Technicolor TC8305C set-top box, both branded for Xfinity (Comcast Cable) and manufactured outside the United States.  *See* Exhibits 51, 63.  Complainants purchased these set-top boxes from sellers in the United States.  *See* Exhibit 66 (Contreras Declaration) at ¶ 3; Exhibit 65 (Sharkey Declaration) at ¶ 2. |
| BCM33843 | A BCM33843 device was removed from a Pace (now ARRIS) PX013ANM set-top box, branded for Xfinity (Comcast Cable) and manufactured outside the United States.  *See* Exhibit 52.  Complainants purchased that set-top box from a seller in the United States.  *See* Exhibit 66 (Contreras Declaration) at ¶ 4. |
| BCM4331 | A BCM4331 Intensi-fi® chip was removed from a Technicolor TC8305C set-top box, branded for Xfinity (Comcast Cable) and manufactured outside the United States.  *See* Exhibit 63.  Complainants purchased that set-top box from a seller in the United States.  *See* Exhibit 65 (Sharkey Declaration) at ¶ 2. |
| BCM4343 | A BCM4343 combo chip was removed from an ASUS ZenFone 2E (Z00D) that was manufactured outside the United States.  *See* Exhibit 54.  Complainants purchased that ASUS ZenFone 2E (Z00D) from a seller in the United States.  *See* Exhibit 66 (Contreras Declaration) at ¶ 6. |
| BCM4356 | A BCM4356 client device was removed from an HTC One M9 mobile telephone that was manufactured outside the United States.  *See* Exhibit 58.  Complainants purchased that HTC One M9 mobile phone from a seller in the United States.  *See* Exhibit 66 (Contreras Declaration) at ¶ 7. |
| BCM43570 | A BCM43570 client device was removed from a set-top box that was purchased from a seller in the United States.  *See* Exhibit 66 (Contreras Declaration) at ¶ 9.  On information and belief, the BCM43570 client device was manufactured outside the United States.  *See* Exhibit 7 (Broadcom Corporation 2014 Annual Report) at 6, 7, 16. |

| Product No. | Evidence of Sale or Importation |
|---|---|
| BCM43602 | A BCM43602 SoC was removed from a NETGEAR Nighthawk X6 AC3200 Tri-Band WiFi Gigabit Router (model no. R8000) that was manufactured outside the United States. *See* Exhibit 60. Complainants purchased that router from a seller in the United States. *See* Exhibit 66 (Contreras Declaration) at ¶ 8. |
| BCM4366 | BCM4366 SoCs were removed from an ASUS RT-AC5300 Router and a NETGEAR Nighthawk X8 AC5300 Smart WiFi Router (model no. R8500) that were manufactured outside the United States. *See* Exhibits 55, 61. Complainants purchased those routers from sellers in the United States. *See* Exhibit 66 (Contreras Declaration) at ¶¶ 5, 8. |
| BCM4709 | BCM4709 processors were removed from an ASUS RT-AC5300 Router, a NETGEAR Nighthawk X6 AC3200 Tri-Band WiFi Gigabit Router (model no. R8000), and a NETGEAR Nighthawk X8 AC5300 Smart WiFi Router (model no. R8500), all of which were manufactured outside the United States. *See* Exhibits 55, 60, 61. Complainants purchased those routers from sellers in the United States. *See* Exhibit 66 (Contreras Declaration) at ¶¶ 5, 8. |
| BCM4752 | A BCM4752 receiver was removed from an ASUS ZenFone 2E (Z00D) that was manufactured outside the United States. *See* Exhibit 54. Complainants purchased that ASUS ZenFone 2E (Z00D) from a seller in the United States. *See* Exhibit 66 (Contreras Declaration) at ¶ 6. |
| BCM53125 | A BCM53125 Ethernet switch was removed from a NETGEAR Nighthawk X8 AC5300 Smart WiFi Router (model no. R8500) that was manufactured outside the United States. *See* Exhibit 61. Complainants purchased that router from a seller in the United States. *See* Exhibit 66 (Contreras Declaration) at ¶ 8. |
| BCM56850 | Complainants purchased the BCM56850 High-Capacity StrataXGS® Trident II Ethernet Switch from a seller in the United States. *See* Exhibit 65 (Sharkey Declaration) at ¶ 3. On information and belief, the Broadcom Accused Products are manufactured outside the United States. *See* Exhibit 7 (Broadcom Corporation 2014 Annual Report) at 6, 7, 16. Further on information and belief, the BCM56850 Ethernet switch is fabricated on Broadcom's behalf by Taiwan Semiconductor Manufacturing Company in one of its facilities in Asia. |

| Product No. | Evidence of Sale or Importation |
|---|---|
| BCM7425 | BCM7425 SoCs were removed from an ARRIS MX011ANM set-top box branded for Xfinity (Comcast Cable), which was manufactured outside the United States (*see* Exhibit 51), and from a second set-top box from a non-respondent.  Complainants purchased both of these set-top boxes from sellers in the United States.  *See* Exhibit 66 (Contreras Declaration) at¶ ¶ 3, 10. |
| BCM7435 | A BCM7435 SoC was removed from a Pace (now ARRIS) PX013ANM set-top box, branded for Xfinity (Comcast Cable) and manufactured outside the United States.  *See* Exhibit 52.  Complainants purchased that set-top box from a seller in the United States.  *See* Exhibit 66 (Contreras Declaration) at ¶ 4. |
| BCM94360 BCM4360 | A BCM94360 PCI-E Mini Card that was assembled outside the United States was purchased as a wireless card component.  *See* Exhibit 64.  Complainants purchased that wireless card component from a seller in the United States.  *See* Exhibit 65 (Sharkey Declaration) at ¶ 3.  A BCM4360 chip was then removed from the BCM94360 PCI-E Mini Card.  *See* Exhibit 11. |

B.    **Arista Networks**

1.    **Representative Involved Articles**

64.    On information and belief, Arista Networks designs, develops, manufactures, imports into the United States, sells for importation into the United States, and/or sells after importation into the United States products that contain one or more of the infringing Broadcom Accused Products and that infringe, literally, by equivalence, directly, and/or indirectly, Claims 16, 17, 18, 19, and 22 of the '946 Patent, and Claims 1, 2, 3, 5, 6, 11, 12, 13, 14, 15, 16, 24, 25, 26, 27, 29, 30, 33, 34, and 35 of the '136 Patent.

65.    Complainants have identified Arista Networks 7050X, 7250X, and 7300X-series data center switches as representative involved articles.  Tessera is informed and believes that Arista Networks imports into the United States, sells for importation into the United States, and/or sells after importation into the United States its 7050X, 7250X, and 7300X-series data

center switches that contain Broadcom's BCM56850 High-Capacity StrataXGS® Trident II Ethernet Switch.

66.     Complainants believe that these exemplary Arista Networks products are representative of other products that Arista Networks imports, sells for importation, or sells in the United States after importation that contain either an exemplary Broadcom Accused Product or a Broadcom Accused Product that features the same or substantially similar functionality as the exemplary products.  Accordingly, on information and belief, Complainants allege that other Arista Networks products that are covered by the Asserted Claims of the Asserted Patents have been and are being imported, sold for importation, and/or sold in the United States after importation by or on behalf of Arista Networks.

### 2.     Infringement of the '946 Patent

67.     Exhibit 49 shows that the Arista Networks 7050X, 7250X, and 7300X-series data center switches contain Broadcom's BCM56850 High-Capacity StrataXGS® Trident II Ethernet Switch.  Exhibit 21 includes a chart comparing independent claim 16 of the '946 Patent to the BCM56850 Ethernet switch.  These exhibits show that the Arista Networks Accused Products are covered by at least claim 16 of the '946 Patent.

### 3.     Infringement of the '136 Patent

68.     Exhibit 49 shows that the Arista Networks 7050X, 7250X, and 7300X-series data center switches contain Broadcom's BCM56850 High-Capacity StrataXGS® Trident II Ethernet Switch.  Exhibit 27 includes a chart comparing independent claims 1 and 11 of the '136 Patent to the BCM56850 Ethernet switch.  These exhibits show that the Arista Networks Accused Products are covered by at least claims 1 and 11 of the '136 Patent.

### 4.    Specific Instance of Sale and Importation

69.    Arista Networks 7050X, 7250X or 7300X-series data center switch are, on information and belief, sold in the United States, but they are intended for business enterprise customers and are not readily available through normal retail channels.  Complainants are informed and believe, however, that Arista Networks is importing into the United States, selling for importation into the United States and/or selling after importation into the United States its data center switches, including its 7050X, 7250X or 7300X-series data center switches.[6]

70.    On information and belief, Arista Networks data center switches are manufactured outside the United States and then imported into the United States.  Arista Networks has disclosed that it relies primarily on Asia-based contract manufacturers to manufacture its products.  *See* Exhibit 48 (Arista Networks 2015 Annual Report) at 12 (all products manufactured by contract manufacturers; primary manufacturing partners are Foxconn and Jabil Circuit); Exhibit 46 (Arista Networks Form 10Q for period ending June 30, 2014) at 17 ("[o]ur products are manufactured, assembled and tested by third-party contract manufacturers in Asia").  Arista Networks also has disclosed that, following manufacture and testing, the products are shipped to direct fulfillment facilities for Arista Networks, one of which is in California.  *See* Exhibit 48 (Arista Networks 2015 Annual Report) at 13 ("Once the completed products are manufactured and tested, our contract manufacturing partners ship them to various theatre direct

---

[6] Arista Networks' network switches, including the 7050X, 7250X, and 7300X-series data center switches, are accused products in Investigation No. 337-TA-944.  Following an evidentiary hearing, the Administrative Law Judge found that the accused network switches had been imported into the United States.  *See Certain Network Devices, Related Software and Components Thereof*, Inv. No. 337-TA-944, Initial Determination (Feb. 2, 2016) ( "[t]he evidence demonstrates . . . that the accused products have been imported into the United States").

fulfillment facilities in California, the Netherlands and Singapore for final configuration, quality control inspection and shipment to our distribution partners and end customers.").

71.     Complainants are informed and believe that Arista Networks has sold the imported products to customers in the United States, directly or through distribution partners. According to Arista Networks' SEC filings, Microsoft is its largest customer, responsible for more than 10% of Arista Networks' total revenue in 2013, 2014 and 2015.  *See* Exhibit 48 (Arista Networks 2015 Annual Report) at 8.  Many other U.S. companies have been identified by Arista Networks as its customers, including eBay, Facebook, Yahoo!, Citigroup, Morgan Stanley, AOL, Comcast, ESPN, Netflix, Equinix, and Rackspace.  *See* Exhibit 47 (Arista Networks 2014 Annual Report) at 9.  In 2015, 77.3% of Arista Networks "revenue was generated from the Americas, substantially all for the U.S."  *See* Exhibit 48 at 12 (Arista Networks 2015 Annual Report).  In addition, Exhibit 49 evidences that the Arista Networks' 7050X, 7250X and 7300X-series data center switches were tested by InfoGard Laboratories, Inc., located in San Luis Obispo, California, in July 2014.

### C.     ARRIS Respondents

#### 1.     Representative Involved Articles

72.     On information and belief, the ARRIS Respondents design, develop, manufacture, import into the United States, sell for importation into the United States, and/or sell after importation into the United States products that contain one or more of the infringing Broadcom Accused Products and that infringe, literally, by equivalence, directly, and, directly and/or indirectly, Claims 16, 17, 18, 19, 20, and 22 of the '946 Patent, and Claims 1, 2, 3, 5, 6, 11, 12, 13, 14, 15, 16, 24, 25, 26, 27, 29, 30, 33, 34, and 35 of the '136 Patent.

73.     Complainants have obtained an ARRIS MX011ANM DVR Set-Top Box, leased to U.S. subscribers by Comcast Cable using its Xfinity brand, which contains Broadcom's

BCM3383 SoC and BCM7425 SoC.  *See* Exhibit 51 (product photos).  Complainants also have

obtained a Pace (now ARRIS) PX013ANM High-Definition Set-Top Box, also leased to U.S.

subscribers by Comcast Cable using its Xfinity brand, which contains Broadcom's BCM33843

device and BCM7435 SoC.  *See* Exhibit 52 (product photos).

      74.     Complainants believe that these exemplary ARRIS products are representative of

other products that the ARRIS Respondents import, sell for importation, or sell in the United

States after importation that contain either an exemplary Broadcom Accused Product or a

Broadcom Accused Product that features the same or substantially similar functionality as the

exemplary products.  Accordingly, on information and belief, Complainants allege that other

ARRIS products that are covered by the Asserted Claims of the Asserted Patents have been and

are being imported, sold for importation, and/or sold in the United States after importation by or

on behalf of the ARRIS Respondents.

### 2.     Infringement of the '946 Patent

      75.     The ARRIS exemplary MX011ANM product contains the BCM3383 SoC and

BCM7425 SoC.  *See* Exhibit 51 (product photos).  Exhibits 12 and 22 include charts comparing

independent claim 16 of the '946 Patent to the BCM3383 SoC and BCM7425 SoC.  These

exhibits show that the ARRIS Accused Products are covered by at least claim 16 of the '946

Patent.

### 3.     Infringement of the '136 Patent

      76.     The ARRIS exemplary products contain the BCM3383 SoC, BCM33843 device,

BCM7425 SoC, and BCM7435 SoC.  *See* Exhibits 51 and 52 (product photos).  Exhibits 23, 24,

28, and 29 include charts comparing independent claims 1 and 11 of the '136 Patent to the

BCM3383 SoC, BCM33843 device, BCM7425 SoC, and BCM7435 SoC.  These exhibits show

that the ARRIS Accused Products are covered by at least claims 1 and 11 of the '136 Patent.

### 4. Specific Instances of Sale and Importation

77.     The ARRIS MX011ANM set-top box, branded for Xfinity (Comcast Cable), was manufactured outside the United States. *See* Exhibit 51 (product photos). Complainants purchased this set-top box from a seller in the United States. *See* Exhibit 66 (Contreras Declaration) at ¶ 3.

78.     The Pace (now ARRIS) PX013ANM set-top box, branded for Xfinity (Comcast Cable), was manufactured outside the United States. *See* Exhibit 52 (product photos). Complainants purchased this set-top box from a seller in the United States. *See* Exhibit 66 (Contreras Declaration) at ¶ 4.

### D.     ASUS Respondents

#### 1. Representative Involved Articles

79.     On information and belief, the ASUS Respondents design, develop, manufacture, import into the United States, sell for importation into the United States, and/or sell after importation into the United States products that contain one or more of the infringing Broadcom Accused Products and that infringe, literally, by equivalence, directly, and/or indirectly, Claims 16, 17, 18, 19, 20, and 22 of the '946 Patent, and Claims 1, 2, 3, 5, 6, 11, 12, 13, 14, 15, 16, 24, 25, 26, 27, 29, 30, 33, 34, and 35 of the '136 Patent.

80.     Complainants have obtained an ASUS ZenFone 2E (Z00D), which contains Broadcom's BCM4343 combo chip and BCM4752 receiver. *See* Exhibit 54 (product photos). Complainants also have obtained an ASUS RT-AC5300 Router, which contains Broadcom's BCM4366 SoC and BCM4709 processor. *See* Exhibit 55 (product photos).

81.     Complainants believe that these exemplary ASUS products are representative of other products that the ASUS Respondents import, sell for importation, or sell in the United States after importation that contain either an exemplary Broadcom Accused Product or a

Broadcom Accused Product that features the same or substantially similar functionality as the exemplary products.  Accordingly, on information and belief, Complainants allege that other ASUS products that are covered by the Asserted Claims of the Asserted Patents have been and are being imported, sold for importation, and/or sold in the United States after importation by or on behalf of the ASUS Respondents.

### 2.      Infringement of the '946 Patent

82.      The ASUS exemplary products contain the BCM4343 combo chip, BCM4709 processor, and BCM4752 receiver.  *See* Exhibits 54, 55 (product photos).  Exhibits 14, 18, and 19 include charts comparing independent claim 16 of the '946 Patent to the BCM4343 combo chip, BCM4709 processor, and BCM4752 receiver.  These exhibits show that the ASUS Accused Products are covered by at least claim 16 of the '946 Patent.

### 3.      Infringement of the '136 Patent

83.      The ASUS exemplary RT-AC5300 router contains the BCM4709 processor.  *See* Exhibit 55 (product photos).  Exhibit 26 includes a chart comparing independent claims 1 and 11 of the '136 Patent to the BCM4709 processor.  These exhibits show that the ASUS Accused Products are covered by at least claims 1 and 11 of the '136 Patent.

### 4.      Specific Instances of Sale and Importation

84.      The ASUS ZenFone 2E (Z00D) was manufactured outside the United States.  *See* Exhibit 54 (product photos).  Complainants purchased the ASUS ZenFone 2E (Z00D) from a seller in the United States.  *See* Exhibit 66 (Contreras Declaration) at ¶ 6.

85.      The ASUS RT-AC5300 router was manufactured outside the United States.  *See* Exhibit 55 (product photos).  Complainants purchased this router from a seller in the United States.  *See* Exhibit 66 (Contreras Declaration) at ¶ 5.

E.      **Comcast Cable Respondents**

1.      **Representative Involved Articles**

86.      On information and belief, the Comcast Cable Respondents design, develop, manufacture (or have manufactured on their behalf), import into the United States, sell for importation into the United States, and/or sell after importation into the United States products that contain one or more of the infringing Broadcom Accused Products and that infringe, literally, by equivalence, directly, and/or indirectly, Claims 13, 16, and 18 of the '007 Patent, Claims 16, 17, 18, 19, 20, and 22 of the '946 Patent, and Claims 1, 2, 3, 5, 6, 11, 12, 13, 14, 15, 16, 24, 25, 26, 27, 29, 30, 33, 34, and 35 of the '136 Patent.

87.      The Comcast Cable Respondents offer video services in the United States using its Xfinity brand and lease set-top boxes and gateways to U.S. subscribers.  Complainants have obtained three Xfinity-branded products: (a) an ARRIS MX011ANM DVR Set-Top Box, which contains Broadcom's BCM3383 SoC and BCM7425 SoC; (b) a Pace (now ARRIS) PX013ANM High-Definition Set-Top Box, which contains Broadcom's BCM33843 device and BCM7435 SoC; and (c)  a Technicolor TC8305C Wireless Gateway, which contains Broadcom's BCM3383 SoC and BCM4331 Intensi-fi chip.  *See* Exhibits 51, 52, and 63 (product photos).[7]

88.      Complainants believe that these exemplary Comcast Cable products are representative of other products that the Comcast Cable Respondents import, sell for importation, or sell in the United States after importation that contain either an exemplary Broadcom Accused Product or a Broadcom Accused Product that features the same or substantially similar

---

[7] The Technicolor TC8305C Wireless Gateway also contains a BCM53124 Ethernet switch that is, on information and belief, substantially similar to the BCM53125 Ethernet switch.  The BCM53125 Ethernet switch infringes at least claims 16, 17, 18, 19, and 22 of the '946 Patent (*see* Exhibit 20).  On information and belief, the BCM53124 Ethernet switch also infringes at least those Asserted Claims.

functionality as the exemplary products.  Accordingly, on information and belief, Complainants allege that other Comcast Cable products that are covered by the Asserted Claims of the Asserted Patents have been and are being imported, sold for importation, and/or sold in the United States after importation by or on behalf of the Comcast Cable Respondents.

### 2.   Infringement of the '007 Patent

89.   The Technicolor TC8305C Wireless Gateway exemplary product, branded for Xfinity (Comcast Cable), contains the BCM4331 Intensi-fi chip mounted to a circuit panel in the manner set forth in the '007 Patent.  *See* Exhibit 63 (product photos).  Exhibit 9 includes a chart comparing independent claims 1 and 18 of the '007 Patent to the BCM4331 Intensi-fi chip as mounted on the circuit panel in the Xfinity-branded Technicolor TC8305C Wireless Gateway. This exhibit shows that Comcast Cable Accused Products are covered by at least claims 1 and 18 of the '007 Patent.

### 3.   Infringement of the '946 Patent

90.   The Comcast Cable exemplary products contain the BCM3383 SoC, BCM4331 Intensi-fi chip, and BCM7425 SoC.  *See* Exhibits 51 and 63 (product photos).  Exhibits 12, 13, and 22 include charts comparing independent claim 16 of the '946 Patent to the BCM3383 SoC, BCM4331 Intensi-fi chip, and BCM7425 SoC.  These exhibits show that the Comcast Cable Accused Products are covered by at least claim 16 of the '946 Patent.

### 4.   Infringement of the '136 Patent

91.   The Comcast Cable exemplary products contain the BCM3383 SoC, BCM33843 device, BCM7425 SoC, and BCM7435 SoC.  *See* Exhibits 51, 52, and 63.  Exhibits 23, 24, 28, and 29 include charts comparing independent claims 1 and 11 of the '136 Patent to the BCM3383 SoC, BCM33843 device, BCM7425 SoC, and BCM7435 SoC.  These exhibits show

that the Comcast Cable Accused Products are covered by at least claims 1 and 11 of the '136 Patent.

### 5.     Specific Instances of Sale and Importation

92.     The ARRIS MX011ANM set-top box, branded for Xfinity (Comcast Cable), was manufactured outside the United States.  *See* Exhibit 51.  Complainants purchased this set-top box from a seller in the United States.  *See* Exhibit 66 (Contreras Declaration) at ¶ 3.

93.     The Pace (now ARRIS) PX013ANM set-top box, branded for Xfinity (Comcast Cable), was manufactured outside the United States.  *See* Exhibit 52.  Complainants purchased this set-top box from a seller in the United States.  *See* Exhibit 66 (Contreras Declaration) at ¶ 4.

94.     The Technicolor TC8305C Wireless Gateway, branded for Xfinity (Comcast Cable), was manufactured outside the United States.  *See* Exhibit 63.  Complainants purchased this gateway from a seller in the United States.  *See* Exhibit 65 (Sharkey Declaration) at ¶ 2.

### F.     HTC Respondents

### 1.     Representative Involved Article

95.     On information and belief, the HTC Respondents design, develop, manufacture, import into the United States, sell for importation into the United States, and/or sell after importation into the United States products that contain one or more of the infringing Broadcom Accused Products and that infringe, literally, by equivalence, directly, and/or indirectly, Claims 16, 17, 18, 19, and 20 of the '946 Patent.

96.     Complaint has obtained an HTC One M9 mobile phone, which contains Broadcom's BCM4356 client device.  *See* Exhibit 58 (product photos).

97.     Complainants believe that this exemplary HTC product is representative of other products that the HTC Respondents import, sell for importation, or sell in the United States after importation that contain either an exemplary Broadcom Accused Product or a Broadcom

Accused Product that features the same or substantially similar functionality as the exemplary products.  Accordingly, on information and belief, Complainants allege that other HTC products that are covered by the Asserted Claims of the Asserted Patents have been and are being imported, sold for importation, and/or sold in the United States after importation by or on behalf of the HTC Respondents.

### 2.      Infringement of the '946 Patent

98.      The HTC exemplary product contains the BCM4356 client device.  *See* Exhibit 58 (product photos).  Exhibit 15 includes a chart comparing independent claim 16 of the '946 Patent to the BCM4356 client device.  These exhibits show that the HTC Accused Products are covered by at least claim 16 of the '946 Patent.

### 3.      Specific Instances of Sale and Importation

99.      The HTC One M9 mobile phone was manufactured outside the United States.  *See* Exhibit 58 (product photos).  Complainants purchased this phone from a seller in the United States.  *See* Exhibit 66 (Contreras Declaration) at ¶ 7.

### G.      NETGEAR

### 1.      Representative Involved Articles

100.      On information and belief, NETGEAR designs, develops, manufactures, imports into the United States, sells for importation into the United States, and/or sells after importation into the United States products that contain one or more of the infringing Broadcom Accused Products and that infringe, literally, by equivalence, directly, and/or indirectly, Claims 13, 16, and 18 of the '007 Patent, Claims 13, 16, and 18 of the '007 Patent, Claims 16, 17, 18, 19, 20, and 22 of the '946 Patent, and Claims 1, 2, 3, 5, 6, 11, 12, 13, 14, 15, 16, 24, 25, 26, 27, 29, 30, 33, 34, and 35 of the '136 Patent.

101.    Complainants have obtained a NETGEAR Nighthawk X6 AC3200 Tri-Band WiFi Gigabit Router (model no. R8000), which contains Broadcom's BCM43602 SoC and BCM4709 processor.  *See* Exhibit 60 (product photos).  Complainants also have obtained a NETGEAR Nighthawk X8 AC5300 Smart WiFi Router (model no. R8500), which contains Broadcom's BCM4366 SoC, BCM4709 processor, and BCM53125 Ethernet switch.  *See* Exhibit 61 (product photos).

102.    Complainants believe that these exemplary NETGEAR products are representative of other products that NETGEAR imports, sells for importation, or sells in the United States after importation that contain either an exemplary Broadcom Accused Product or a Broadcom Accused Product that features the same or substantially similar functionality as the exemplary products.  Accordingly, on information and belief, Complainants allege that other NETGEAR products that are covered by the Asserted Claims of the Asserted Patents have been and are being imported, sold for importation, and/or sold in the United States after importation by or on behalf of NETGEAR.

### 2.    Infringement of the '007 Patent

103.    The NETGEAR exemplary Nighthawk X6 R8000 router contains, *inter alia*, the BCM43602 SoC mounted to a circuit panel in the manner set forth in the '007 Patent.  *See* Exhibit 60 (product photos).  Exhibit 10 includes a chart comparing independent claims 1 and 18 of the '007 Patent to the BCM43602 SoC as mounted on the circuit panel in the Nighthawk X6 R8000 router.  This exhibit shows that at least one of the NETGEAR Accused Products is covered by at least claims 1 and 18 of the '007 Patent.

### 3.    Infringement of the '946 Patent

104.    The NETGEAR exemplary products contain the BCM43602 SoC, BCM4366 SoC, BCM4709 processor, and BCM53125 Ethernet switch.  *See* Exhibits 60 and 61 (product

photos).  Exhibits 16, 17, 18, and 20 include charts comparing independent claim 16 of the '946

Patent to the BCM43602 SoC, BCM4366 SoC, BCM4709 processor, and BCM53125 Ethernet

switch.  These exhibits show that the NETGEAR Accused Products are covered by at least claim

16 of the '946 Patent.

### 4.     Infringement of the '136 Patent

105.    The NETGEAR exemplary products contain two versions of the BCM4709

processor.  *See* Exhibits 60 and 61 (product photos).  Exhibit 26 includes a chart comparing

independent claims 1 and 11 of the '136 Patent to these versions of the BCM4709 processor.

These exhibits show that the NETGEAR Accused Products are covered by at least claims 1 and

11 of the '136 Patent.

### 5.     Specific Instances of Sale and Importation

106.    The NETGEAR Nighthawk X6 AC3200 Tri-Band WiFi Gigabit Router (model

no. R8000) was manufactured outside the United States.  *See* Exhibit 60 (product photos).

Complainants purchased this router from a seller in the United States.  *See* Exhibit 66 (Contreras

Declaration) at ¶ 8.

107.    The NETGEAR Nighthawk X8 AC5300 Smart WiFi Router (model no. R8500)

was manufactured outside the United States.  *See* Exhibit 61 (product photos).  Complainants

purchased this router from a seller in the United States.  *See* Exhibit 66 (Contreras Declaration)

at ¶ 8.

### H.     Technicolor Respondents

### 1.     Representative Involved Article

108.    On information and belief, the Technicolor Respondents design, develop,

manufacture, import into the United States, sell for importation into the United States, and/or sell

after importation into the United States products that contain one or more of the infringing

Broadcom Accused Products and that infringe, literally, by equivalence, directly, and/or indirectly, Claims 13, 16, and 18 of the '007 Patent, Claims 13, 16, and 18 of the '007 Patent, Claims 16, 17, 18, 19, 20, and 22 of the '946 Patent, and Claims 1, 2, 3, 5, 6, 11, 12, 13, 14, 15, 16, 24, 25, 26, 27, 29, 30, 33, 34, and 35 of the '136 Patent.

109.    Complaint has obtained an Xfinity-branded Technicolor TC8305C Wireless Gateway, which contains Broadcom's BCM3383 SoC and BCM4331 Intensi-fi chip.  *See* Exhibit 63 (product photos).[8]

110.    Complainants believe that this exemplary Technicolor product is representative of other products that the Technicolor Respondents import, sell for importation, and/or sell in the United States after importation that contain either an exemplary Broadcom Accused Product or a Broadcom Accused Product that features the same or substantially similar functionality as the exemplary products.  Accordingly, on information and belief, Complainants allege that other Technicolor products that are covered by the Asserted Claims of the Asserted Patents have been and are being imported, sold for importation, and/or sold in the United States after importation by or on behalf of the Technicolor Respondents.

## 2.    Infringement of the '007 Patent

111.    The Technicolor exemplary product contains the BCM4331 Intensi-fi chip mounted to a circuit panel in the manner set forth in the '007 Patent.  *See* Exhibit 63 (product photos).  Exhibit 9 includes a chart comparing independent claims 1 and 18 of the '007 Patent to the BCM4331 Intensi-fi chip as mounted on the circuit panel in the Technicolor Accused

---

[8] As addressed in footnote 7, the Technicolor TC8305C Wireless Gateway also contains a BCM53124 Ethernet switch that is substantially similar to the exemplary infringing BCM53125 Ethernet switch.

Product.  This exhibit shows that the Technicolor Accused Product is covered by at least claims 1 and 18 of the '007 Patent.

### 3.       Infringement of the '946 Patent

112.      The Technicolor exemplary product contains the BCM3383 SoC and BCM4331 Intensi-fi chip.  *See* Exhibit 63 (product photos).  Exhibits 12 and 13 include charts comparing independent claim 16 of the '946 Patent to the BCM3383 SoC and BCM4331 Intensi-fi chip. These exhibits show that the Technicolor Accused Product is covered by at least claim 16 of the '946 Patent.

### 4.       Infringement of the '136 Patent

113.      The Technicolor exemplary product contains the BCM3383 SoC.  *See* Exhibit 63 (product photos).  Exhibit 23 includes a chart comparing independent claims 1 and 11 of the '136 Patent to the BCM3383 SoC.  This exhibit shows that the Technicolor Accused Product is covered by at least claims 1 and 11 of the '136 Patent.

### 5.       Specific Instances of Sale and Importation

114.      The Technicolor TC8305C Wireless Gateway, branded for Xfinity (Comcast Cable), was manufactured outside the United States.  *See* Exhibit 63 (product photos). Complainants purchased this gateway from a seller in the United States.  *See* Exhibit 65 (Sharkey Declaration) at ¶ 2.

## VII.   CLASSIFICATION OF THE INFRINGING PRODUCTS UNDER THE HARMONIZED TARIFF SCHEDULE

115.      The Accused Products are believed to fall within at least the following classifications of the Harmonized Tariff Schedule of the United States: 8471.30.01, 8471.41.01, 8471.50.01, 8471.70.10, 8471.70.20, 8471.70.30, 8471.70.40, 8471.70.50, 8471.70.60, 8471.70.90, 8471.80.10, 8471.80.40, 8471.80.90, 8471.90.00, 8473.30.11, 8473.30.20,

3473.30.51 8517.12.00, 8517.18.00, 8514.61.00, 8517.62.00, 8517.69.00, 8517.70.00, 8521.90.00, 8522.90.25, 8522.90.65, 8522.90.75, 8525.50.10, 8525.50.30, 8525.60.20, 8528.71.20, 8528.72.04, 8528.72.08, 8528.71.30 8529.10.20, 8529.10.90, 8529.90.01, 8529.90.03, 8529.90.06, 8529.90.29, 8529.90.33, 8529.90.36, 8529.90.39, 8529.90.43, 8529.90.46, 8529.90.49, 8541.50.00, 8541.90.00, 8542.31.00, 8542.32.00, 8542.39.00, 8542.90.00, and 8543.70.60.  These classifications are intended for illustration only and are not intended to be restrictive of the Accused Products.

## VIII.  LICENSEES

116.    Attached as Confidential Exhibit 75 is a list of persons and entities to which Tessera has licensed one or more of the Asserted Patents.

## IX.    TESSERA SATISFIES THE DOMESTIC INDUSTRY REQUIREMENT

### A.    The Technical Prong of the Domestic Industry Requirement is Satisfied

117.    As required by Section 337(a)(2) and defined by Section 337(a)(3), an industry in the United States exists in connection with each of the Asserted Patents.  In particular, Tessera's licensees including, but not limited to, Micron, Cypress, and IBM, practice one or more claims of the Asserted Patents.

118.    Below is a chart summarizing the Domestic Industry Products that correspond to the Asserted Patents:

| Asserted Patent | Technical Prong Product |
|---|---|
| '007 Patent | Micron: M510DC 2.5 SSD |
| '946 Patent | Micron Part Nos. MT44K16M36RB-125E:A; MT29F8G08ABBCAH4-IT:C; MT42L128M32D1GU-25 WT:A; MT47H128M8CF-3:H<br><br>Cypress: 65nm MirrorBit product (*e.g.*, S29GL01GS11DHIV2); 90nm MirrorBit product (*e.g.*, S29GL128P11FFI01); 130nm F-RAM (*e.g.*, CY15B104Q-SXI) |
| '136 Patent | IBM: Espresso die |

119.    Claim charts and explanatory information for multiple licensed products that currently practice at least one exemplary claim of the Asserted Patent (hereinafter "the Domestic Industry Products") accompany this Complaint.  *See* Confidential Exhibit 77 (Micron confidential declaration attaching Micron confidential and public datasheets); 81-85 (charts for Micron products); 88-90 (charts for Cypress products); 92 (chart for IBM product); Exhibits 96-101 (datasheets and photos for Cypress products).

### 1.    Practice of the '007 Patent

120.    Exhibit 81 is a claim chart that discloses how the Micron M510DC 2.5 SSD product with Part No. MTFDDAK120MBP-1AN1ZABYY practices at least exemplary claim 18 of the '007 Patent.  On information and belief, at least Micron Part Nos. MTFDDAK240MBP-1AN1ZABYY, MTFDDAK480MBP-1AN1ZABYY, MTFDDAK800MBP-1AN1ZABYY, and MTFDDAK960MBP-1AN1ZABYY also practice the '007 Patent.

### 2.    Practice of the '946 Patent

121.    Exhibit 84 is a claim chart that discloses how the Micron Part No. MT42L128M32D1GU-25 WT:A product practices at least exemplary claim 16 of the '946 Patent.

122.    Exhibit 85 is a claim chart that discloses how the Micron Part No. MT47H128M8CF-3:H product practices at least exemplary claim 16 of the '946 Patent.

123.    Exhibit 83 is a claim chart that discloses how the Micron Part No. MT29F8G08ABBCAH4-IT:C product practices at least exemplary claim 16 of the '946 Patent.

124.    Exhibit 82 is a claim chart that discloses how the Micron Part No. MT44K16M36RB-125E:A  product practices at least exemplary claim 16 of the '946 Patent.

125.    Exhibit 88 is a claim chart that discloses how the Cypress 65nm MirrorBit product with part number S29GL01GS11DHIV2 practices at least exemplary claim 16 of the '946 Patent.

126.    Exhibit 89 is a claim chart that discloses how the Cypress 90nm MirrorBit product with part number S29GL128P11FFI01 practices at least exemplary claim 16 of the '946 Patent.

127.    Exhibit 90 is a claim chart that discloses how the Cypress 130nm F-RAM product with part number CY15B104Q-SXI practices at least exemplary claim 16 of the '946 Patent.

### 3.    Practice of the '136 Patent

128.    Exhibit 92 is a claim chart that discloses how the IBM Espresso die practices at least exemplary claims 1 and 11 of the '136 Patent.

### B.    The Economic Prong of the Domestic Industry Requirement is Satisfied

129.    A domestic industry under subparts (A), (B), and/or (C) of Section 337(a)(3) exists by virtue of the activities within the United States of Tessera and/or its licensees, including manufacture, assembly, packaging, testing, research, product development, application engineering, licensing, and/or post-sale support and repair.

### 1.    Tessera

130.    Tessera has been licensing its technology and patents since the 1990's.  Its efforts to do so have led the Commission to conclude that its licensing business satisfies the domestic industry standard.  *See Certain Semiconductor Chips With Minimized Package Size and Products Containing Same*, Inv. No. 337-TA-432, Initial Determination (Order No. 13), *non-reviewed,* at 13 (Jan. 24, 2001) ("Tessera's investments in patent licensing are substantial"); *Certain Semiconductor Chips With Minimized Package Size and Products Containing Same (II)*, Inv. No. 337-TA-605, Final Initial Determination, *non-reviewed in relevant part*, at *142 (Dec. 1, 2008)

("Given the large amount of money and domestic resources Tessera invests toward licensing its TCC packaging technologies, including the '326 and '419 patents, the ALJ finds that Tessera actively exploits its intellectual property and that such investments are clearly substantial"); *Certain Semiconductor Chips With Minimized Package Size and Products Containing Same (III)*, Inv. No. 337-TA-630, Initial Determination (Order No. 31) (Sept. 16, 2008) (finding that Tessera satisfied the domestic industry requirement based on licensing). Subsequent to the Commission decisions finding Tessera satisfied the domestic industry standard, Tessera's licensing business has grown in size and scope. *See* Confidential Exhibit 76 (Farrell Declaration).

131.    Tessera leases a large domestic facility in San Jose, California. *See id*. at ¶¶ 23-25. Tessera's facilities are pictured below:



132.    Tessera's San Jose facilities are home to over 100 salaried employees involved in engineering, research and development, and licensing Tessera's technologies, among other things. *See id*. at ¶¶ 20-21. The vast majority of Tessera's efforts to exploit the Asserted Patents occur in or around its San Jose facilities. Tessera's facilities also contain equipment and other assets worth millions of dollars that are used for engineering, research, and development

associated with Tessera's licensing business.  *See id*. at ¶ 26.  Some of Tessera's lab equipment is

pictured below:





133.    Tessera's licensing business includes dozens of U.S.-based employees whose

efforts directly advance Tessera's efforts to license the Asserted Patents.  *See id*. at ¶¶ 21-22.  In

connection with its licensing business, Tessera's investments include payments to domestic

contractors, outside counsel, consultants, and other vendors who provide critical support for the development and licensing of Tessera's patents. *See id.* at ¶¶ 27-36.

134.     Tessera has licensed its patents and technologies to more than 100 companies. These customers include Intel Corporation, Micron, Samsung Electronics Co., Ltd, SK hynix Inc., and Sony Corporation, among others. *See id.* at ¶ 8. Some of these licensees have taken licenses from Tessera repeatedly for various patent portfolios and technologies. *See id.* In 2015 alone, Tessera brought in $273,300,000 in royalty and licensing fees, 36% of which came from customers headquartered in the United States. *See id.* at ¶9.

135.     The Asserted Patents have been a focus of Tessera's licensing efforts. Tessera's investments in licensing these particular patents have been both significant and substantial. *See id.* at ¶¶ 38-39.

### 2.     Tessera's Licensees

#### a)     Micron

136.     On July 30, 2014, Micron entered into a patent license agreement and a license and cooperation agreement with Tessera Technologies, Inc. and Invensas, respectively.[9] The patent license agreement granted a non-exclusive license to Micron for at least the '946 and '007 Patents. At least the following Micron parts are licensed: M510DC 2.5 SSD (at least MTFDDAK120MBP-1AN1ZABYY, MTFDDAK240MBP-1AN1ZABYY, MTFDDAK480MBP-1AN1ZABYY, MTFDDAK800MBP-1AN1ZABYY and MTFDDAK960MBP-1AN1ZABYY); MT44K16M36RB-125E:A; MT29F8G08ABBCAH4-IT:C; MT42L128M32D1GU-25 WT:A; and MT47H128M8CF-3:H (collectively "Micron DI

---

[9] *See* Confidential Exhibit 79 (Patent License Agreement); Confidential Exhibit 80 (License and Cooperation Agreement).

Products").  The Micron DI Products are manufactured, assembled, tested, and/or designed at least in part in the United States.[10]

137.    Micron has made and continues to make significant and substantial investments in the manufacture, research, and/or product development in the United States in connection with the Micron DI Products.[11]  Tessera expects that discovery will show that the domestic industry requirements of subparagraphs 337(a)(3)(A), 337(a)(3)(B), and 337(a)(3)(C) are each independently satisfied by Micron's domestic activities and investments.

138.    Micron is a Delaware corporation with its executive offices in Boise, Idaho. Confidential Exhibit 78 (Micron Declaration No. 2) at ¶ 4.  From its headquarters, Micron offers one of the world's broadest memory portfolios that includes powerful DRAM, NAND and NOR solutions for computing, networking, and mobile, embedded and consumer applications.  Micron has three major manufacturing facilities in the United States: Boise, Idaho; Lehi, Utah; and Manassas, Virginia.  *Id.* at ¶ 6.  Micron also maintains facilities in Longmont, Colorado; Meridian, Idaho; Nampa, Idaho; Folsom, California; Santa Clara, California; San Diego, California; Milpitas, California; Minneapolis, Minnesota; Allen, Texas; Austin, Texas; Houston, Texas; Richardson, Texas; Kirkland, Washington; and Seattle, Washington.  *Id.* at ¶ 6.

139.    As of September 3, 2015, Micron had net property, plant, and equipment of $3.64 billion in the United States.[12]  As of September 3, 2015, Micron had 31,800 employees.  *Id.* Many of these employees are located in the United States, with 6,600 employees in Idaho alone.

---

[10] *See* Confidential Exhibit 77 (Micron Declaration No. 1) at ¶¶ 5-10.

[11] *See generally* Confidential Exhibit 78 (Micron Declaration No. 2); *see also* Confidential Exhibit 77 (Micron Declaration No. 1).  However, Tessera's domestic industry allegations are not limited to the facts set forth in the two declarations provided by Micron.

[12] Confidential Exhibit 78 (Micron Declaration No. 2) at ¶ 5.

*Id.*  Micron's research and development expenses were approximately $1.54 billion in 2015 and $1.37 billion in 2014.  *Id.* at ¶10.

140.    Micron's Boise operations include corporate headquarters, premiere research and development facilities, and its first semiconductor manufacturing facility.  *Id.* at ¶7.  When Micron broke ground for its headquarters in 1980, the Boise facility included a 50,000-square-foot wafer fabrication plant on a 200-acre campus.[13]  By September 1999, the headquarters had exploded to 1.9 million square feet of building space, including approximately 494,000 square feet of production space, 633,000 square feet of facility support space, and 770,000 square feet of office and other space.[14]  As of August 2015, Micron was planning a substantial expansion of its R&D capabilities by adding 50,000 square feet of clean room space in Boise.

141.    In Manassas, Virginia, the company's 300-mm wafer fabrication facility – which includes property, plant, and equipment worth millions of dollars – manufactures DRAM, NAND, and NOR memory components used in cell phones and personal computers.[15]  As of September 15, 2015, this location employed a significant number of full-time employees.  *Id.*

142.    Micron's joint venture facility in Lehi, Utah houses the IM Flash Technologies fabrication facility, a partnership with Intel formed to manufacture NAND Flash memory for use in consumer electronics, removable storage, and handheld communication devices.[16]  As of September 3, 2015, this facility employed a significant number of full-time employees and had substantial investments in net property, plant, and equipment.  *Id.*

---

[13] *See* Exhibit 67 (Micron milestone timeline).

[14] *See* Exhibit 68 (excerpt from Micron 1999 Annual Report).

[15] Confidential Exhibit 78 (Micron Declaration No. 2) at ¶8.

[16] Confidential Exhibit 78 (Micron Declaration No. 2) at ¶9.

143.    Upon information and belief, the plant, equipment, labor, capital, and other

investments made by Micron are directly related to the Micron DI Products and the Asserted

Patents.  Accordingly, Micron has made and continues to make investments in manufacture,

research, and product development in the United States relating to the Micron DI Products that

are significant and substantial.

**b)**     **Cypress**

144.    In March, 18, 2014, Cypress entered into an agreement assigning the '946 Patent

to Tessera Advanced Technologies, Inc. ("TATI") – a subsidiary of Tessera Technologies, Inc.[17]

As part of this agreement, TATI granted a non-exclusive license to Cypress for the '946 Patent.

*Id.*  Cypress's 65 nm MirrorBit parts (*e.g.*, S29GL01GS11DHIV2), 90 nm MirrorBit parts (*e.g.*,

S29GL128P10TFI010), and 130 nm F-RAM parts (*e.g.*, CY15B104QSXI) (collectively

"Cypress DI Products") are licensed products.  On information and belief, Cypress has made and

continues to make investments in the manufacture, research, and product development in the

United States in connection with the Cypress DI Products that are both significant and

substantial.  *See generally* Confidential Exhibit 86 (Cypress Declaration).  The Cypress DI

Products are manufactured, at least in part, in the United States.  *Id.* at ¶ 11.

145.    Cypress is a Delaware corporation with its headquarters in San Jose, California.[18]

Cypress designs and manufactures semiconductor devices including, for example, various types

of memory.  *Id.*  In March of 2015, Cypress completed a merger with Spansion, a leading

designer, manufacturer, and developer of embedded systems semiconductors with flash memory,

---

[17] Confidential Exhibit 87 (Cypress Patent Purchase Agreement).  TATI subsequently assigned the '946 Patent to Invensas, the current owner of the patent.

[18] *See* Exhibit 69 (Cypress Annual Report for period ending Jan. 3, 2016) at 1.

microcontroller, analog, and mixed-signal products.  *Id.* at 5; *see also* Confidential Exhibit 86 (Cypress Declaration) at ¶ 5.

146.    As of January 3, 2016, Cypress had 6,279 employees, approximately 2,100 of whom are located in the United States.  Of the total employees across the company worldwide, 3,715 employees were associated with manufacturing, 1,149 employees were associated with selling, general and administrative functions, and 1,415 employees were associated with research and development.  Cypress spent approximately $281 million on research and development in 2015, and approximately $164 million in 2014. [19]

147.    Cypress has several major locations in the United States.  Its headquarters in San Jose, California, are 337,000 square feet, and are primarily used for administration and research and development.  Cypress also has a 70,400 square foot office in Colorado Springs, Colorado, and a 6,700 square foot office in Lynnwood, Washington, that it uses for administration and research and development.[20]

148.    Cypress maintains two manufacturing facilities in the United States.  In Austin, Texas, the facility referred to as "Fab 25" (acquired as part of the Spansion merger) is 1,514,000 square feet, and it is used for manufacturing, research and development, and administration.[21] This facility is used to produce 200-millimeter wafers using 180-nanometer, 130-nanometer, 110-nanometer, 90-nanometer and 65-nanometer process technologies, which refers to the

---

[19] *See* Exhibit 69 (Cypress Annual Report) at 17, 14; *see also* Confidential Exhibit 86 (Cypress Declaration) at ¶¶ 6, 13.

[20] *See* Exhibit 69 (Cypress Annual Report) at 29; *see also* Confidential Exhibit 86 (Cypress Declaration) at ¶ 7.

[21] *See* Exhibit 69 (Cypress Annual Report) at 29; *see also* Cypress Declaration at ¶ 8.

resolution that can be achieved using these processes to pattern features on the semiconductor wafers.[22]

149.   Cypress's Bloomington, Minnesota facility is 337,000 square feet, and is used for manufacturing and research and development.[23]  This eight-inch wafer fab manufactures in high volume using high resolution process technologies.  It offers process technologies that integrate Silicon Oxide Nitride Oxide Silicon (SONOS)-based nonvolatile memory and precision analog/mixed-signal capabilities.  The facility has been accredited as a Category 1A Trusted Fab for fabrication, design, and testing of U.S. Department of Defense ("DoD") Trusted Microelectronics, meaning that the DoD trusts Cypress to design and manufacture custom integrated circuits for classified and top secret government programs.[24]  This wafer production facility has clean room space of 80,000 sq. ft. with about 500 employees and produces Cypress's proprietary PSoC, SRAM and specialty products.[25]

150.   Upon information and belief, design work relating to Cypress's MirrorBit flash memory products, including the 65 and 90 nm MirrorBit parts, was performed in the United States.[26]  The 90 nm MirrorBit chips are manufactured at Cypress's facilities in Austin, Texas – Fab 25.  The 65 nm MirrorBit chips are manufactured at Fab 25 in Austin.  *Id.*  Cypress sells its products in the United States through its distributors such as Avnet, and Mouser.  *Id.*

---

[22] *See* Confidential Exhibit 86 (Cypress Declaration) at ¶ 8.

[23] *See* Exhibit 69 (Cypress Annual Report) at 29.

[24] *See* http://www.cypress.com/news/cypress-earns-trusted-foundry-accreditation-usdepartment-defense?source=search&keywords=department%20of%20defense.

[25] *See* Exhibit 70 (accessed from https://cypress.silkroad.com).

[26] *See* Confidential Exhibit 86 (Cypress Declaration) at ¶ 11.

151.    Cypress invests in design, engineering, research, development, manufacture, assembly, packaging, testing, sale, and customer support of the 130-nm F-RAM chips.  Upon information and belief, design work relating to Cypress's 130-nm F-RAM products was performed in the United States.  The products are manufactured by Texas Instruments on behalf of Cypress in Dallas, Texas, and soft-tested by Cypress in its Bloomington, Minnesota facility.[27]

152.    Cypress has previously been found to satisfy the Commission's domestic industry requirement based on its own manufacturing, research and product development activities.  *See Certain Static Random Access Memories and Products Containing Same*, Inv. No. 337-TA-792, Summary Initial Determination (Order No. 37), non-reviewed (Feb. 14, 2012) ("*Static Random Access Memories*"); *see also Static Random Access Memories*, Complaint (June 10, 2011).  Since 2012, when the *Static Random Access Memories* decision was issued, Cypress's domestic industry has grown exponentially, in large part due to its acquisition of Spansion along with its domestic fabs (*e.g.*, Fab 25) where some of the Cypress DI Products are manufactured.

### c)    IBM

153.    On May 29, 2009, IBM entered into an agreement assigning the '136 Patent to Tessera Intellectual Properties, Inc. ("TIPI") – a subsidiary of Tessera Technologies, Inc.[28]  As part of this agreement, TIPI granted a non-exclusive license to IBM for the '136 Patent.  IBM's Espresso die for the Nintendo Wii U is licensed under the '136 Patent.  Upon information and belief, IBM has made and continues to make substantial and significant investments in

---

[27] *See* http://www.cypress.com/file/193971/download.

[28] Confidential Exhibit 91 (2009 Patent Purchase Agreement).  TIPI subsequently changed its name to Invensas, the current owner of the patent.

manufacture, research, and product development in the United States in connection with the licensed Espresso die.

154.    IBM is a New York corporation, with its executive offices in Armonk, New York. IBM's manufacturing process, design, and package development efforts occur at multiple locations across the world.  As of December 31, 2014, IBM's manufacturing and development facilities in the United States had aggregate floor space of 17 million square feet.[29]

155.    Upon information and belief, until 2015, IBM manufactured the Espresso die for the Nintendo Wii U in IBM's fabrication facility in East Fishkill, New York.[30]  The East Fishkill fab opened in 2003 and employed over 4,500 employees by 2014.[31]  On July 1, 2015, GlobalFoundries acquired IBM's microelectronics business, including the existing semiconductor manufacturing assets and operations in East Fishkill, New York and Essex Junction, Vermont.[32]  Upon information and belief, the Espresso die for the Nintendo Wii U continues to be manufactured for IBM in the East Fishkill, New York facility by the new owner, GlobalFoundries.[33]

## X.    RELATED LITIGATION

156.    On May 23, 2016, Tessera filed a Complaint in the United States District Court for the District of Delaware, alleging infringement of one or more claims of United States Patent Nos. 6,856,007, 6,849,946, and 6,133,136, the same patents that have been asserted in this Complaint.  The named defendant in that action is Broadcom Corporation.

---

[29] Exhibit 72 (IBM 2014 Annual Report).

[30] Exhibit 73 (IBM Press Release, dated June 7, 2011).

[31] Exhibit 74 (DailyTech Article, dated Oct. 21, 2014).

[32] Exhibit 71 (IBM 2015 Annual Report).

[33] Exhibit 74 (DailyTech Article, dated Oct. 21, 2014).

157.    Other than the litigation specified above, to Tessera's knowledge, the Asserted

Patents are not and have not been the subject of any current or prior court or agency litigation.

## XI.    REQUESTED RELIEF

158.    WHEREFORE, by reason of the foregoing, Complainants request that the United

States International Trade Commission:

(a) institute an immediate investigation, pursuant to Section 337 of the Tariff Act of

1930, as amended, 19 U.S.C. § 1337, with respect to the proposed respondents' violations of

Section 337 based on the unlawful importation into the United States, sale for importation into

the United States, and/or sale within the United States after importation of products that infringe

one or more claims of United States Patent Nos. 6,856,007, 6,849,946, and 6,133,136, as well as

the unlawful importation into the United States, sale for importation into the United States,

and/or sale within the United States after importation of products containing the same made by

or for Broadcom;

(b) schedule and conduct a hearing on the unlawful acts and, following the hearing,

determine whether there has been a violation of Section 337;

(c) issue a permanent limited exclusion order, pursuant to Section 337(d) of the Tariff

Act of 1930, as amended, excluding from entry into the United States all of proposed

respondents' semiconductor devices, semiconductor device packages, and products containing

the same that infringe one or more claims of United States Patent Nos. 6,856,007, 6,849,946, and

6,133,136;

(d) issue a permanent cease and desist order, pursuant to Section 337(f) of the Tariff Act

of 1930, as amended, prohibiting proposed respondents and related companies from at least

importing, marketing, advertising, demonstrating, warehousing inventory for distribution,

offering for sale, selling, qualifying for use in the products of others, distributing, or using

proposed respondents' semiconductor devices, semiconductor device packages, and products containing the same that infringe one or more claims of United States Patent Nos. United States Patent Nos. 6,856,007, 6,849,946, and 6,133,136;

(e) impose a bond during the 60-day Presidential review period pursuant to 19 U.S.C. § 1337(e)(1) and (f)(1) to prevent further injury to Tessera and its licensees' domestic industry relating to each of the Asserted Patents; and

(f) grant such other and further relief as the Commission deems just and proper based on the facts determined by the investigation and the authority of the Commission.

Dated:  May 23, 2016

Sturgis M. Sobin (ssobin@cov.com)
Shara Aranoff (saranoff@cov.com)
Daniel E. Valencia (dvalencia@cov.com)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone:   (202) 662-6000

Michael K. Plimack (mplimack@cov.com)
Dale A. Rice (drice@cov.com)
Nitin Subhedar (nsubhedar@cov.com)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone:   (415) 591-6000

Robert T. Haslam (rhaslam@cov.com)
Anupam Sharma (asharma@cov.com)
Thomas E. Garten (tgarten@cov.com)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive
Redwood Shores, CA 94065-1418
Telephone:   (650) 632-4700

*Counsel for Complainants*
*Tessera Technologies, Inc., Tessera, Inc.*
*and Invensas Corporation*

## VERIFICATION

I, Michael C. Spillner, declare in accordance with 19 C.F.R. §§ 210.4 and 210.12(a), under penalty of perjury; that the following statements are true:

1.        I am the Vice-President of Legal, IP and Government Affairs for Tessera Intellectual Property Corporation, a wholly-owned subsidiary of Tessera Technologies, Inc., and I am duly authorized to verify this Complaint of Tessera Technologies, Inc., Tessera, Inc., and Invensas Corporation under Section 337 of the Tariff Act of 1930, as Amended ("Complaint");

2.        I have read the Complaint and I am aware of its contents;

3.        To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (a) the claims and other legal contentions in the Complaint are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, and (b) the allegations and other factual contentions in the Complaint have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

4.        The Complaint is not being presented for any improper purpose; such as to harass or to cause unnecessary delay or needless increase in the cost of the investigation or related proceeding.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on May 20, 2016.

Michael C. Spillner

[Certified Mandarin Chinese Translation of Attachment A]

# ATTACHMENT B

**美国地区法院**
**哥伦比亚特区**

| | |
|---|---|
| Tessera Technologies, Inc.、Tessera, Inc. 和 Invensas Corporation | 民事案件编号其它： |
| 原告 | |
| 诉 | |
| Broadcom Limited 等 | |
| 被告 | |

**就 Semiconductor Manufacturing International Corporation 出示文件和证词向中华人民共和国提供国际司法协助之请求信**

**请求信**

美国哥伦比亚特区地方法院

据 1970 年 3 月 18 日《海牙公约》关于民商事的取证事宜

提出的

国际司法协助请求

_____ 法官
美国地方法院法官
美国哥伦比亚特区地方法院

**致中国司法部：**

  美国哥伦比亚特区地方法院尊重作为中华人民共和国适当司法机关的中国司法部，并请求获取国际司法协助以便从 Semiconductor Manufacturing International Corporation (SMIC) 取得出示文件和宣誓作证证词。本法院依据 1970 年 3 月 18 日《海牙公约》关于民商事海外取证的规定请求获得规定中所述的协助。美国哥伦比亚特区地方法院是法律和衡平法之主管法院，对此次诉讼拥有合适的司法管辖权，并有权力在其司法管辖权范围内外迫使文件的出示完成。

  我们寻求从 SMIC 获取的文件和证词证据旨在用于经本法院批准关于上述说明事宜呈交至美国国际贸易委员会的行政诉讼中。本法院在适当行使其权力的前提下决定，我们寻求从 SMIC 获取的证据若无中国司法部的干预则无法获得。

## 请求信

**1.     寄信方**

_____ 法官
美国地方法院法官
美国哥伦比亚特区地方法院
333 Constitution Ave., N.W.
Washington, D.C. 20001
United States of America

**2.     被请求国的中央机关**

中国司法部
国际法律合作中心
中国北京朝阳区
朝阳门南大街 6 号
100020

**3.     将接受返还的所执行请求之人员**

Sturgis M. Sobin
COVINGTON & BURLING LLP
 One CityCenter
850 Tenth Street, NW
Washington, DC 20001
电话：(202) 662-5040

**4.     提出请求的权威机关要求收到请求信之回复的截止日期规定**

**日期**

请尽快回复，但在任何情况下请在 2016 年 9 月 30 日当天或之前回复。

**紧急的原因**

依据《1930 年关税法案》（经修订）第 337 节、《美国法典》第 19 篇第 1337 条规定，美国国际贸易委员会的调查必须"在最早可执行时间内"完成。对于这一请求的权宜处理将让各方可以获得并审阅所出示的文件并在此事务的事实发现截止之前获取证词。

**5.**    <u>**根据公约第 3 条，下方签名的申请者有幸可提交以下请求：**</u>

**a.**    <u>**请求司法机关（第 3(a) 条）**</u>

_____ 法官

美国地方法院法官
美国哥伦比亚特区地方法院
333 Constitution Ave., N.W.
Washington, D.C. 20001
United States of America

**b.**    <u>**致主管当局（第 3(a) 条）**</u>

中华人民共和国

**c.**    <u>**案件名称和任何识别编号**</u>

关于某些半导体装置、半导体装置包以及含有同类装置的产品事宜，调查编号 337-TA-1010

**6.**    <u>**各方及其代表的名称和地址（包括被请求国的代表）（第 3(b) 条）**</u>

**a.**    <u>**原告**</u>

（原告）名称为：Tessera Technologies, Inc.、Tessera, Inc. 和 Invensas Corporation。原告可通过以下列出的其代表进行联系。

**原告代表**

Sturgis M. Sobin
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
电话：(202) 662-5040

**b. <u>被告</u>**

被告名称为：

Broadcom Limited
Broadcom Corporation
Avago Technologies Limited

Avago Technologies U.S. Inc.
Arista Networks, Inc.
ARRIS International plc
ARRIS Group, Inc.
ARRIS Technology, Inc.
ARRIS Enterprises LLC
ARRIS Solutions, Inc.
Pace Ltd.（原 Pace plc）
Pace Americas, LLC
Pace USA, LLC
ASUSTeK Computer Inc.
ASUS Computer International
Comcast Cable Communications, LLC
Comcast Cable Communications Management, LLC
Comcast Business Communications, LLC
HTC Corporation
HTC America, Inc.
NETGEAR, Inc.
Technicolor S.A.
Technicolor USA, Inc.
Technicolor Connected Home USA LLC

被告可通过以下列出的其代表进行联系。

## 被告代表

David E. Sipiora (Broadcom-TesseraITC@kilpatricktownsend.com)
KILPATRICK TOWNSEND &STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
电话: (303) 571-8525

## 7. 诉讼性质（第 3(c) 条）和事实概述

　　这是美国国际贸易委员会（"ITC"）依据《1930 年关税法案》（经修订）第 337 节、《美国法典》第 19 篇第 1337 条（"第 337 节"）规定基于 Tessera 在 2016 年 5 月 23 日提交的诉状而进行的诉讼。原告指控包括 Broadcom Limited 在内的被告侵犯美国专利编号 6,856,007、6,849,946 和 6,133,136（统称"据称专利"）。被告产品包括但不限于 Broadcom Corporation 的半导体装置、半导体装置包和包含同类装置的产品。ITC 基于 Tessera 的诉状在 2016 年 6 月 20 日提起诉讼，并于 2016 年 6 月 24 日在《联邦公报》上公布了调查通知。在提起诉讼后，该案件被分配至行政法法官 Dee Lord 处，由其主持听证会前事务、举行证据听证会并发布关于案件是非曲直的初步裁决。初步裁决可能接受 ITC 的审查，ITC 有权向美国联邦巡回上诉法院提出上诉。

　　Broadcom Corporation 公司是一家专业半导体公司，它依靠美国境外的第三方铸造厂和独立组装及封装分包商生产被告半导体装置和被告半导体装置包。诉状第 62 段。基于公开获得信息，Tessera 认为此类铸造厂之一是 Semiconductor Manufacturing International Corporation

(SMIC)。

因此，SMIC 可能持有关于以下内容的独有文件和信息：SMIC 制作的被告 Broadcom 产品的生产和制造过程、SMIC 制造的被告 Broadcom 产品的设计、结构和技术规格以及 SMIC 制造的被告 Broadcom 产品的测试。因此，我们认为 SMIC 是知晓最多关于 Broadcom 侵犯此次调查中所诉专利的信息的各方之一，并拥有、托管并控制了相关文件。

**8. a.  将获取的证据或将采取的其他司法行动（第 3(d) 条）**

附件 A 中规定的 Broadcom 的专利侵权和 Broadcom 辩护相关的证据。

**c.      所寻求的证据或司法行动的目的**

请求的文件和宣誓作证证词将提供关于 Broadcom 侵犯 Tessera 专利的重要证据，此类证据之后可能在行政法法官在上述调查过程中举行的证据听证会中被引入。

**9.      将被审查的任何人员之身份和地址（第 3(e) 条）**

Semiconductor Manufacturing International Corporation (SMIC)
中华人民共和国
上海浦东新区张江路 18 号
201203

**10.     向将被审查的人员提出的问题以及关于其将被审查的争议事项之说明（第 3(f) 条）**

宣誓作证问题的话题在附件 B 中规定。

**11.     将被检查的文件或其他财产（第 3(g) 节）**

将被检查的文件和其他财产在附件 A 中规定。

**12.     宣誓或确认后给出证据的任何要求和将使用的任何特殊表格（第 3(h) 条）**

我们以尊敬的态度要求中华人民共和国检查人员或其他合适的司法官员给出指示，要求证人依据适用的中华人民共和国程序正确宣誓，而且 Tessera 代表选择的合格法院书记官和摄像

师记录证词并进行视频记录。此外我们要求，宣誓作证的记录使用英语。此外，我们以尊敬的态度要求附件 A 中所述的各份文件与所有相关不同草稿以完整形式一并出示，其中无缩写或修订，并以正常业务流程中的状态保留。

### 13.    将遵守的特殊方法或程序（第 3(i) 和 9 条）

参阅附件 A 了解关于 SMIC 如何出示所请求文件的详细信息。关于宣誓作证，要求如下：(a) 审查以口头形式完成；(b)各方代表或其委任人士、律师、他们的译员以及一名速记员允许在审查过程中出现在现场；(c) 如果中华人民共和国法律允许，除各方代表或其委任人士、律师、他们的译员以及速记员以及要求在此类程序过程中出现在现场的中华人民共和国任何司法官员以外，所有人员不得出现在现场；(d) 速记员可以对审查进行逐字记录；(e) 速记员可以通过视听手段对审查进行记录；(f) 进行审查的律师可以提出关于附件 B 中所列话题的问题；(g) 对于需要译员的每位证人，其审查将被分配有十个半 (10.5) 小时的时间，对于每位讲英语的证人，其审查将被分配有七 (7) 小时的时间；(h) 证人将在可执行的范围内尽快接受审查；以及 (i) 附件 A 中请求的文件和财产将在双方约定的合适地点进行的宣誓作证之前二十一天内提供给被告。

### 14.    执行请求之时间和地点的通知要求以及须通知的任何人员之身份和地址（第 7 条）

本法院要求向以下人员通知执行此请求的时间和地点：

Sturgis M. Sobin
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
电话：(202) 662-5040

David E. Sipiora (Broadcom-TesseraITC@kilpatricktownsend.com)
KILPATRICK TOWNSEND &STOCKTON LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
电话: (303) 571-8525

### 15.    在执行此请求信时请求机关的司法工作人员出席或参加之要求（第 8 条）

要求请求机关的司法工作人员出席。

**16.** **依据产地国法律拒绝提供证据的特权或职责之规定（第 11, b 条）**

SMIC 可拒绝提供证据，但前提是美国法律或中华人民共和国法律规定存在拒绝提供证据的特权或职责。

**17.** **支付依据公约第 14 条第二段或第 26 条可报销的所产生费用的一方**

原告将承担所有费用。如果费用预计超过 $5,000.00 美元，请通知 Tessera 律师。账单可发送至：

Sturgis M. Sobin
COVINGTON & BURLING LLP
One City
Center 850 Tenth Street, NW
Washington, DC 20001
电话：(202) 662-5040
签名：

_____ 法官
美国地方法院法官
美国哥伦比亚特区地方法院
333 Constitution Ave., N.W.
Washington, D.C. 20001
United States of America

签名地点：_____ ，日期 20___年___月___日

[下方法院盖章：]

<u>附件 A</u>

**SMIC 将出示的文件或其他财产**

<u>定义</u>

1.　　"文件"拥有美国国际贸易委员会规则第 210.30 节中所使用的同一意义，并包括从中可获取信息的文字、图纸、图表、照片和其他数据编译。

2.　　"Broadcom"一词指 Broadcom Limited 及其全资子公司 Broadcom Corporation、Avago Technologies Limited 和 Avago Technologies U.S. Inc. 及所有前任、继任者、母公司、子公司和附属公司。

3.　　"Tessera" 指 Technologies, Inc. 及其全资子公司 Tessera, Inc. 和 Invensas Corporation。

4.　　"你"一词指 Semiconductor Manufacturing International Corporation 及所有前任、继任者、母公司、子公司和附属公司。

5.　　"Broadcom 未来产品"一词指开发中的任何产品或准备发布的产品，此类产品由你代表 Broadcom 在 2017 年 5 月 23 日之前进行制造、生产、组装、封装和/或测试。

6.　　"Broadcom 产品"一词指由你在过去六年里为 Broadcom 制造、生产、组装、封装和/或测试的任何及所有半导体装置、晶片、模具、包装或组装件。

7.　　"电路板"指用于在电子设备中进行组件安装和互联的绝缘材料板，一般包括但不限于任何电路板、印刷电路板 (PCB)、印刷电路板组装、电路面板、印刷电路组装、印刷电路

板组装、电路插件组装或底板总成。

## 指示

1.      这些指示将被视为截至相关日期在美国国际贸易委员会实践和程序规则范围内寻求文件和资料之出示。

2.      在出示所请求文件和资料时，你应该提供你经过合理调查和查询由你掌握、托管或控制而被你知晓或向你提供的所有文件和资料，无论你在何处，无论此类文件或资料是否直接由你或任何你的代理人、顾问、管理人员、员工、律师、代表或代表你行事的人员直接拥有。

3.      如果任何文件的出示因为特权主张而被扣留，各份被扣留的文件应在特权文件列表中单独标注。特权文件列表必须单独标明各份文件，为各份文件至少指明以下内容：(i) 信息创建或沟通的日期；(ii)作者/发件人；(iii) 所有收件人；以及 (iv) 文件中包含的一般主题事务。发件人和收件人应标明其职位和其被雇佣或从属的实体（公司或企业等）。如果发件人或收件人是律师或外国专利代理人，他或她应进行如此标注。所主张特权类型也必须声明，连同所主张特权的所有内容均已达到且尚未针对各份文件被放弃的证明。

4.　　　　如果任何请求因为过于宽泛或过于繁琐而遭到反对，请出示这些不可反对的文件和/或资料，并分别明确据称过于宽泛或繁琐的请求。

5.　　　　如果某份文件或资料不再由你持有、托管或控制，或不再存在，请说明其是否 (i) 遗失或丢失；(ii) 被销毁；(iii) 被自愿或非自愿转发给他人，或 (iv) 得到其他处理。针对每份此类文件或资料，请 (i) 说明相关不可提供性、销毁或处理的环境情况和授权，(ii)说明相关日期和近似日期，(iii) 说明相关作者、发件人和收件人的姓名和职位，以及 (iv) 说明知悉关于文件和资料不可提供性、销毁或处理之信息的所有人员的姓名和地址。

6.　　　　关于这些请求的翻译的意义的所有问题应转至 Tessera 律师处。

## 文件请求

**请求出示编号 1：**

    足以表明你从 2010 年至今完整或部分制造、生产、组装、封装和/或测试的各个 Broadcom 产品的文件。

**请求出示编号 2：**

    足以表明你计划完整或部分制造、生产、组装、封装和/或测试的各个 Broadcom 未来产品的文件。

**请求出示编号 3：**

    足以表明你在回复出示请求编号 1 和 2 时标注的各个 Broadcom 产品实际产量和各个 Broadcom 未来产品的预计产量的文件。

**请求出示编号 4：**

    足以表明用于出示各个 Broadcom 产品和各个 Broadcom 未来产品的生产过程的文件，你在回复出示请求编号 1 和 2 时对这些产品进行了标注：

- 存放在半导体装置上、在半导体装置上模仿或从半导体装置上拆除的任何材料的位置、构成和厚度；

- 每个金属化层中放置虚拟结构的方式，以及使用虚拟金属相关的任何设计规则；

- 成品半导体装置内各层材料的平面性以及用于改善平面性的任何步骤，包括化学机械抛光或整平；

- 波纹或铜波纹流程；

- 半导体装置各部分之间的电气连接；以及

- 实施制造过程的地理位置和特定设备。

**请求出示编号 5：**

足以表明各个 Broadcom 产品和 Broadcom 未来产品中各个焊接凸点或受控可折叠芯片连接 (C4) 触点凸起之结构、位置、形状、厚度和构成的文件，你在回复出示请求编号 1 和 2 时对这些产品进行了标注。

**请求出示编号 6：**

足以表明你在回复出示请求编号 1 和 2 时标注的各个 Broadcom 产品和 Broadcom 未来产品的横截面图像的文件，其中包括但不限于：互联结构内在受控可折叠芯片连接 (C4) 触点凸起附近、周围和/或其位置的区域，以及 (2) 以电子方式连接至 C4 触点凸起的任何过孔。

**请求出示编号 7：**

足以表明你在回复关于电路板的出示请求编号 1 和 2 时标注的各个封装 Broadcom 产品和 Broadcom 未来产品的安装和组装的文件，包括：

- 包装内芯片的位置和结构；

- 各个芯片触点的位置和结构；

- 任何包括在内的芯片载体的位置、结构和构成；

- 任何包括在内的金属热导体的位置、结构、构成和尺寸；

- 各个芯片载体之终端的位置、结构和尺寸；

- 任何芯片载体表面上材料的位置、结构、尺寸和构成；

- 任何焊接或焊接可湿区域的位置、结构、尺寸、厚度和构成；

- 任何芯片载体终端和芯片触点之间的电气连接；以及

- 实施组装和封装的地理位置及设施。

**请求出示编号 8：**

针对你在回复出示请求编号 1 和 2 时标注的各个 Broadcom 产品和 Broadcom 未来产品，足以表明这些产品的设计、结构、制造过程、封装过程、化学机械抛光过程、整平过程、测试过程、资格审核过程以及操作的文件，其中包括但不限于技术图纸、规范、图表、设计规则、分析报告、手册、应用笔记、扫描电子显微镜图像、照片、能量色散 X 射线能谱分析、线扫描分析、层厚测量、布局文件、图形数据库系统二代 (GDSII) 文件、方法、流程图、测试协议等等。

**请求出示编号 9：**

针对你在回复出示请求编号 1 和 2 时标注的各个 Broadcom 产品和 Broadcom 未来产品，足以表明各个产品横截面、斜面和顶视图的文件。

**请求出示 10 ：**

足以表明你和 Broadcom 之间关于 Broadcom 产品或 Broadcom 未来产品的任何合同关系或协议的文件。

**请求出示编号 11 ：**

足以表明并描述你制造或生产的各个 Broadcom 产品从中国出口的流程的文件，其中包括但不限于这些产品出口的目的地、用于出口这些产品的承运商和出口这些产品的条款。

## 附件 B

## 针对 SMIC 宣誓作证之话题和书面宣誓作证问题

### 定义和指示

附件 A 中规定的定义和指示并入作为引用内容。

### 话题

1. 从 2010 年至今，你完整或部分制作、生产、组装、封装和/或测试的各个 Broadcom 产品。

2. 你计划完整或部分制作、生产、组装、封装和/或测试的各个 Broadcom 未来产品。

3. 你在回复话题编号 1 和 2 时标注的各个 Broadcom 产品实际产量和各个 Broadcom 未来产品的预计产量。

4. 你在回复话题编号 1 和 2 时标注的用于制作各个 Broadcom 产品和 Broadcom 未来产品的生产过程，包括：

   • 存放在半导体装置上、在半导体装置上模仿或从半导体装置上拆除的任何材料的位置、构成和厚度；

   • 每个金属化层中放置虚拟结构的方式，以及使用虚拟金属相关的任何设计规则；

   • 成品半导体装置内各层材料的平面性以及用于改善平面性的任何步骤，包括化学机械抛光或整平；

   • 波纹或铜波纹流程；

   • 半导体装置各部分之间的电气连接；以及

- 实施制造过程的地理位置和特定设备。

5. 你在回复话题编号 1 和 2 时标注的各个 Broadcom 产品和 Broadcom 未来产品中各个焊接凸点或受控可折叠芯片连接 (C4) 触点凸起的结构、位置、形状、厚度和构成。

6. 你在回复关于电路板的出示请求编号 1 和 2 时标注的各个封装 Broadcom 产品和 Broadcom 未来产品的安装和组装，包括：

- 包装内芯片的位置和结构；

- 各个芯片触点的位置和结构；

- 任何包括在内的芯片载体的位置、结构和构成；

- 任何包括在内的金属热导体的位置、结构、构成和尺寸；

- 各个芯片载体之终端的位置、结构和尺寸；

- 任何芯片载体表面上材料的位置、结构、尺寸和构成；

- 任何焊接或焊接可湿区域的位置、结构、尺寸、厚度和构成；

- 任何芯片载体终端和芯片触点之间的电气连接；以及

- 实施组装和封装的地理位置及设施。

7. 针对你在回复话题编号 1 和 2 时标注的各个 Broadcom 产品和 Broadcom 未来产品，这些产品的设计、结构、制造过程、封装过程、化学机械抛光过程、整平过程、测试过程、资格审核过程以及操作。

8. 你与 Broadcom 之间关于 Broadcom 产品或 Broadcom 未来产品的任何合同关系或协议。

9. 你制造或生产的各个 Broadcom 产品从中国出口的流程，其中包括但不限于这些产品出口的目的地、用于出口这些产品的运输公司和出口这些产品的条款。

10. 以上话题相关的所有文件的标识。

11. 回复此传票时出示的文件的真实性、来源、记录实践和意义。

12. 关于在回复此传票时出示的任何文件（无论公开或其他）之任何传播、散布或披露的事实和情况。

13. 你在回复此传票时对于文件的搜索和收集。

14. 上述话题涉及的所有人员或知悉上述话题的所有人员的身份。


TRANSPERFECT

# AFFIDAVIT OF ACCURACY

I, Angela Lo, hereby certify that the document "Letter of Request to SMIC" is to the best of my knowledge and belief, a true and accurate translation from English to Simplified Chinese.

Angela Lo

3 Park Avenue, 38th floor

New York, NY 10016

Sworn to before me this

June 29th , 2016

Signature, Notary Public

ALiTASHA YOUNGER
Notary Public - State of New York
No. 01YO6335137
Qualified in KING County
Commission Expires Dec 28, 2019

Stamp, Notary Public

## 附件 C

保护令

**美国国际贸易委员会**

**华盛顿特区**

| | |
|---|---|
| 关于<br>**某些半导体装置、半导体装置包以及含有同类装置的产品事宜** | **调查编号 337-TA-1010** |

**命令编号：保护令**

（2016 年 6 月 22 日）

鉴于上述所提诉讼各方之间可能寻求、制作或展示文件和信息，其中材料与商业秘密或其他机密研究、开发或商业信息有关，此类术语在委员会规则、《联邦法规汇编》第 19 篇第 210.5 条中使用；

特此颁布法令如下：

1.　　　机密商业信息是关于或关乎商业秘密、工艺、运营、工作风格或设备或生产、销售、装运、购买、转让、客户识别、库存、任何人员、公司、合伙企业、企业或其他组织的任何收入、利润、损失或支出金额或来源的信息或其他具有商业价值的信息，此类信息的披露可能造成以下影响：(i) 削弱委员会获取此类信息的能力，此类信息对于委员会执行其法定职能而言是必需的；或 (ii) 对提供信息的个人、公司、合伙企业、企业或其他组织造成实质性损害，除非法律要求委员会披露此等

1

信息。"机密商业信息"一词包括《1930年关税法案》(《美国法典》第19篇第1677f(b)条) 第777(b)节意义范围内的"专有信息"。

2(a). 此次调查中在听证会前证据开示或诉状、动议或动议答复中自愿或依据法令规定提交的任何信息（此类信息是供应商为包含或构成机密商业信息而主张的）应由此类供应商在证词、会议或听证会上以书面或口头形式指定，并应与提交的其他信息分开。文件封面上应明确突出地标识以下说明文字："依据保护令的机密商业信息"或类似通知。此类信息（无论在书面或口头证词中提交）应依据此保护令的条款进行处理。

(b).行政法法官或委员会可决定据称机密的信息是否为机密信息，或此类信息的披露对于在此保护令中规定的听证会结束之前、过程中或结束后程序的适当处置而言是否必要。如果此类决定由行政法法官或委员会作出，此类信息的供应者应获得机会在此类裁决之前就其保密性实施辩论。

3.    在没有供应者书面许可或委员会或行政法法官下达的法令的情况下，依据上述第2段规定提交的任何机密文件或商业信息不得向以下人员以外的任何人员披露：(i) 此次调查中各方的外部律师，包括协助此类律师的必要秘书和支持工作人员；(ii) 进行涉及此类文件或信息的取证的合格人员，以及必须的相关速记员和文员；

2

(iii) 以此次诉讼为目的雇佣的技术专家及其员工（除非他们以其他方式被非政府方雇佣、担任非政府方的顾问或隶属于非政府方，或是作为此次调查争议产品、设备或零部件的任何国内或国外的制造商、批发商、零售商或经销商的员工）；(iv) 委员会、行政法法官、委员会员工和委员会授权的任何政府机构的工作人员；以及 (v) 委员会、委员会员工和行使委员会员工职能的合同工，其工作是制定或维护这次调查或提交此信息的相关程序的记录或依据《美国法典》第 5 篇附件 3 的委员会程序和操作相关的内部审计或调查中的记录；[1]

4.　　依据上述第 2 段条款提交的机密商业信息不得向第 3(i)[2] 和 (iii) 段中指定的任何人员提供，除非他或她曾首次阅读此法令并在提交至此委员会秘书处的信函中同意：(i) 接受相关条款的约束；(ii) 不向除第 3 段中制定的另一人以外的任何人披露此类机密商业信息；以及 (iii) 仅将此类机密商业信息用于此次调查的目的。

5.　　如果委员会或行政法法官法令或供应者或调查的所有方同意，对于作为机密商业信息提交的信息的获取或传播应由不包括上述第 3 段中的人员之人员进行，此类内容基于此次法令相关的条件和从此次法令中产生的义务只应由此类人员获取或向此类人员传播，此类人员应被视为受到法令的约束，

---

[1] 参阅委员会行政法令 97-06（1997 年 2 月 4 日）。
[2] 协助律师的必要速记和支持工作人员不须在保护令上签字，因为他们由在保护令上签名的律师负责。

除非委员会或行政法法官发现此类信息并非此保护令第 1 段中定义的机密商业信息。

6.　　　　提交至委员会或此次调查范围内动议或其他程序相关的行政法法官处的任何机密商业信息应依据上述第 2 段的规定盖上公章后提交。包含依据第 2 段规定提交的任何机密商业信息且与此次调查相关的文字记录之任何部分应单独装有封面并在盖上公章后提交。如果依据上述第 2 段规定提交的机密商业信息被包含在相关处理和展示的授权文字记录中，负责宣誓为此类机密部分装上封面并将其单独贴有"保护令规定的机密商业信息"标签的法院书记官应进行安排。在法院书记官或翻译员收到任何此类信息之前，他或她应曾首次阅读此法令，并以书面形式同意接受相关条款的约束；或者他或她应签署作为本法令附件 A 的协议。任何此类已签署协议的副本应提供给此类商业机密信息的供应者和委员会秘书。

7.　　　　在获得听证会的机会后，对于受到此法令约束的人员之限制或其积累的义务不应适用于断言上述第 2 段提交的任何信息之机密状态的人员以书面形式同意的此类信息或委员会或行政法法官规定，此类信息在提供给接收方时被公众得知或在没有任何接收方过错的情况下被公众得知。

8.　　　委员会、行政法官和委员会调查律师声明，依据上文第 2 段作为机密商业信息提交的任何文件或信息应在听证会后基于相反判决在《美国法典》第 5 篇第 552(b)(4) 条和《美国法典》第 18 篇第 1905 条的意义范围内由委员会、信息自由法官员或行政法官进行处理。如果此类信息成为诉状的一部分或提交至提供证据的记录中，应提供《联邦法规汇编》第 19 篇第 201.6 条中规定的数据，行政法官认为此诉讼悬而未决的期间除外。在该时期内，提供机密商业信息的一方必须依据要求提供作为其机密性之权利主张之基础的声明。

9.　　　除非机密性指定被撤回，或委员会或行政法官决定被指定为机密的信息不再保密，委员会、行政法官或委员会调查律师应采取所有必要和正确步骤保留该供应者依据上述第 2 段规定指定的任何机密信息之机密性并保护各个供应者关于此类信息的权利，此等措施包括但不限于：(a) 及时通知供应者 (i) 任何人依据经修订的《信息自由法》（《美国法典》第 5 篇第 552 条）针对此类机密商业信息之内容或获取提出的任何调查或要求（依据此保护令获得授权的人员除外）以及 (ii) 重新指定或公开任何此类机密商业信息的任何提议；以及 (b) 在收到此类调查或要求后为供应者提供至少七天时间让其可以在此期间在委员会、其自由信息法官员或行政法官的面前采取措施，或

以其他方式保留此类机密商业信息的机密性并保护其与此类机密商业信息相关的权利。

10.　　如果调查被提交至行政法法官处，而作为被指定为机密信息并依据第 2 段规定提交的任何商业机密信息之接收方的一方（完全或部分）不同意此类指定，其应以书面形式通知供应方，之后他们将就此法令环境中提供的主题信息的状态进行协商。如果在此次协商会议之前或会议召开时，供应者依据此法令撤销其对此类信息的指定，但依然为此调查提交了此等信息，此类供应者应以书面形式明确表达撤销，并将此类撤销送达所有方和行政法法官。如果接收者和供应者不能在收到此类否决的通知后十天内就作为机密商业信息提交的争议信息状态表示同意，此法令的任何一方可能向行政法法官提出此类状态之指定的问题，行政法法官将对此问题进行处理。行政法法官可能自发性地质疑任何信息之机密状态的指定，在听证会机会后可能撤销机密性的指定。

11.　　在向计划专家进行依据第 2 段提交的任何机密信息之首次披露至少 10 天（或行政法法官指定的任何其他时间期限）之前，提议使用此类专家的一方应该向供应方以书面形式提交此类计划专家的姓名和他/或她的教育背景和详细的工作历史。如果供应方因为其与此法令的语言或意图不一致或其他理由反对向此等计划专家披露此类机密商业信息，它应在首次披露前以书面形式通知其接收者其反对和相关理由。

如果在此等反对通知后十天内基于非正式情况争议未得到解决，信息供应者应立即将各项反对提交至行政法法官处，让其通过依据委员会规则第 210.34 节提交保护令之意动议来做出裁定。如果调查被呈交至委员会，此问题应被提交至委员会以获得决议。向此等计划专家提交此等机密商业信息应在委员会或行政法法官裁决期间保持未决状态。这一段的规定对于委员会内部专家或委员会向其进行咨询或使用的其他政府机构的专家不适用。

　　　　12.　　如果依据第 2 段提交的机密商业信息向此保护令授权的人员以外的任何人披露，负责披露的一方必须立即让供应者和行政法法官注意到此次披露相关的所有相关事实，并在不影响供应者的其他权利和救济措施的情况下尽一切努力防止其自己或作为此类信息接收者的人员的进一步披露发生。

　　　　13.　　此法令中任何内容不应剥夺任何人员去寻求司法审查或寻求委员会、其自由信息法官员或行政法法官关于机密商业信息的状态问题所做的任何裁决的其他适当的司法措施的权利。

　　　　14.　　在此次调查最终终止后，受此次法令约束的机密商业信息的各个接收者应收集包含依据上文第 2 段提交的此等信息的所有材料并返还给供应者，包括可能制作的所有此类问题的副本。或者，受到此法令约束的各方

可在获得供应方书面许可的情况下销毁包含机密商业信息的所有材料并向供应方（或其律师）证明此等销毁曾经实施。这一段的规定不适用于委员会，包括其调查律师和行政法法官，他们可依据法定要求和处于其他保留记录的目的保留此等材料，但可销毁其持有并视为多余材料的此类其他副本。

尽管有上一段的规定，机密商业信息可依据委员会规定第 210.5(c) 节转交给地方法院。

15.    如果依据上述第 2 段提供的任何机密商业信息由非此次诉讼一方提供，此类非诉讼方应被视为"供应者"，因为该属于在此保护令环境中使用。

16.    任何非诉讼方供应者应向所诉供应者寻求信息的一方提供此保护令的副本。

17.    秘书应向所有各方送达此保护令的副本。

**法令如上**

[签名]
Dee Lord
行政法法官

附件 A

书记员/速记员/医院的非披露协议

本人，____ _____，庄严宣誓或确认，本人不会透露在关于*某些半导体装置、半导体装置包以及含有同类装置的产品事宜*，调查编号 337-TA-1010 的调查或听证会中告知本人的任何保密部分的任何信息，除非此案件中发布的保护令允许这么做。本人不会直接或间接使用或允许将此类信息用于除与本人在此案件中官方职责直接相关的目的以外的任何目的。

此外，本人不会在此案件中调查或听证会的任何保密部分通过直接行动、讨论、推荐或向任何人的建议的方式披露交流的任何信息的性质或内容。

本人也确认，本人不会在上述调查中担任任何职位或与参与上述调查的任何人保持官方关系。

本人理解，上述规定信息的未授权使用或传达是违反联邦刑法的行为，可能产生最高 $10,000 美元的罚款惩罚或最高十(10)年的监禁（或两项兼具）。


签名

日期

公司或所属机构


TRANSPERFECT

# AFFIDAVIT OF ACCURACY

I, Angela Lo, hereby certify that the document "ITC Inv. No. 337-TA-1010 - Order No. 1" is to the best of my knowledge and belief, a true and accurate translation from English to Simplified Chinese.

Angela Lo

3 Park Avenue, 38th floor

New York, NY 10016

Sworn to before me this

June 29th , 2016

Signature, Notary Public

ALITASHA YOUNGER
Notary Public - State of New York
No. 01YO6335137
Qualified in KING County
Commission Expires Dec 28, 2019

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

## 附件 D

基本规则

**美国国际贸易委员会**

**华盛顿特区**

| | |
|---|---|
| 关于<br>**某些半导体装置、半导体装置包以及含有同**<br>**类装置的产品事宜** | **调查编号　337-TA-1010** |

**命令编号 2：基本规则**

（2016 年 6 月 22 日）

在行政法法官面前执行此次调查应适用委员会规定和此文件中所附基本规则。

**法令如上**

[签名]

Dee Lord

行政法法官

## 第 337 节调查的基本规则

此等基本规则对委员会的实践和程序规则、《联邦法规汇编》第 19 篇 第 201 和 210 部分（"委员会规则"）进行了补充，以便协助行政法官依据行政程序法、《美国法典》第 5 篇第 556(c)条有序执行第 337 节的调查。

这些基本规则依据《美国法典》第 19 篇第 1337(a)(1)(B) 条对基于美国专利的调查进行管辖。如果调查依据《美国法典》第 19 篇第 1337(a)(1)(B). (C) 或 (D) 条以注册版权、注册商标或注册掩膜作品为基础，其他基本规则可能产生管辖作用。此外，如果涉及依据《美国法典》第 19 篇第 1337(e) 条的临时救济措施的动议，其他基本规则也可能产生管辖作用。

如果这些基本规则和行政法法官或委员会在此次调查过程中发布的任何后续命令之间产生任何冲突，应以后续命令为准。

# 目录

1    **地址；提交、送达和副本的要求；时间** ........................................................5
1.1    行政法法官的地址 .................................................................................5
1.2    提交要求 ................................................................................................5
1.3    送达副本要求 .......................................................................................5
1.4    电子版及文字处理器版副本 .................................................................5
1.5    不允许通过传真提交 .............................................................................6
1.6    并发服务 ................................................................................................6
1.7    时间计算 ................................................................................................6
1.8    时间延长要求 .......................................................................................6
1.9    机密提交文件 .......................................................................................6
1.10    机密法令的公开版本 ...........................................................................6
2    **程序安排** ...............................................................................  .......7
3    **动议；回复的截止日期** .....................................................................8
3.1    内容；一般内容 ...................................................................................8
3.1.1    内容；动议回复 ...............................................................................8
3.1.2    内容；答辩书 ...................................................................................9
3.2    内容；证明 ...........................................................................................9
3.3    内容；简易裁决动议 ...........................................................................9
3.3.1    内容；无可争议的重要事实声明 ...................................................9
3.3.2    内容；简易裁决动议之回复 ...........................................................9
3.3.3    内容；简易裁决答辩书 ...................................................................10
3.4    内容；终止动议 ...................................................................................10
3.5    内容；证据开示相关动议 ...................................................................10
3.6    提交动议回复的截止时间 ...................................................................10
3.7    缩短回复动议时间的要求 ...................................................................10
3.8    无动议可终止证据开示（撤销传票之动议除外） ...........................10
3.9    格式；页脚 ...........................................................................................10
3.10    补充性法律依据之通知 .......................................................................11
4    **证据开示** ...........................................................................................11
4.1    争议解决；协调证据开示 ...................................................................11
4.1.1    证据开示委员会 ...............................................................................11
4.2    关于证据开示程序的规定 ...................................................................11
4.3    证据开示请求和回复的送达 ...............................................................12
4.4    证据开示请求、回复和反对的时间 ...................................................12
4.4.1    宣誓作证；通知 ...............................................................................12
4.4.2    书面质询；回复和反对的截止时间 ...............................................12
4.4.3    出示文件或事物或获取检查之要求；回复和反对的截止时间 .....12
4.4.4    采信请求；送达期限；回复和反对的截止时间... 12
4.4.5    证据开示截止和完成 .......................................................................12
4.5    证据开示限制 .......................................................................................13
4.6    传票 .......................................................................................................13
4.6.1  发布和送达 13
4.6.2 撤销传票的动议；截止时间 ...............................................................13
4.7    文件编号 .............................................................................................. 14

| | | |
|---|---|---|
| 4.8 | 翻译 | 14 |
| 4.9 | 特许事务 | 14 |
| 4.9.1 | 特许日志 | 14 |
| 4.9.2 | 迫使产生特许事务之动议 | 14 |
| 4.9.3 | 在不放弃特许的情况下出示争议文件 | 15 |
| 4.9.4 | 供审阅的文件提交（禁止旁听） | 15 |
| 4.10 | 证人预备名单 | 15 |
| **5** | **先前技术和专利范围之披露** | **15** |
| 5.1 | 先前技术通知 | 15 |
| 5.2 | 专利范围的马克曼听证会 | 16 |
| 5.2.1 | 争议专利范围条款的确定 | 16 |
| 5.2.2 | 专利范围辩论摘要 | 16 |
| 5.2.3 | 马克曼听证会 | 16 |
| 5.2.4 | 马克曼命令 | 17 |
| **6** | **专家证人和报告** | **17** |
| **7** | **和解/调解** | **17** |
| **8** | **审前提交文档** | **17** |
| 8.1 | 审前声明 | 17 |
| 8.2 | 审前辩论摘要 | 18 |
| 8.3 | 高优先级证据反对 | 18 |
| 8.4 | 审判前保护令 | 19 |
| **9** | **听证会 – 证据** | **19** |
| 9.1 | 接收作为证据的材料 | 19 |
| 9.2 | 法律专家 | 19 |
| 9.3 | 证人证词 | 20 |
| 9.3.1 | 证人陈述的格式 | 20 |
| 9.3.2 | 证人陈述的语言 | 20 |
| 9.3.3 | 听证会期间排除证人 | 20 |
| 9.4 | 证据 | 20 |
| 9.4.1 | 各方之间交换提出的证据 | 20 |
| 9.4.2 | 向行政法法官送达提出的证据 | 21 |
| 9.4.3 | 委员会的证据集格式 | 21 |
| 9.4.4 | **ALJ** 的最终证据文件格式 | 21 |
| 9.4.5 | 最终证据和最终证据清单的维护和提交 | 21 |
| 9.4.6.1 | 向行政法法官提交最终证据 | 22 |
| 9.4.6.2 | 总法律顾问办公室的活页证据 | 22 |
| 9.4.6 | 证据编号和标签 | 22 |
| 9.4.6.1 | 保密证据 | 23 |
| 9.4.6.2 | 物证 | 23 |
| 9.4.6.3 | 实物证据 | 23 |
| 9.4.7 | 公开和保密证据 | 23 |
| 9.4.8 | 证据清单 | 23 |
| 9.4.9 | 外语证据 | 24 |
| 9.4.10 | 每个证据一份文件；所有页面文件编号 | 24 |
| 9.4.11 | 证人证据文件 | 24 |
| 9.4.12 | 证据参考文件 | 25 |
| 9.4.13 | 真实性 | 25 |

9.4.14      支持证人 ....................................................................................................... 25
9.4.6.1      在无支持证人的情况下要求接收证据 ....................................................... 25
9.4.6.2      宣誓作证指定 ............................................................................................... 25
9.4.15      存在争议的证据 ........................................................................................... 26
9.4.16      使用 CD/DVD 媒介提交证据 ..................................................................... 26
9.4.6.1      交付至行政法法官处 ................................................................................... 26
2      听证程序 ........................................................................................................ 27
2.1      听证会：审查顺序 ....................................................................................... 27
2.2      终止辩论 ....................................................................................................... 27
2.3      听证会时间 ................................................................................................... 27
2.4      审判礼仪 ....................................................................................................... 27
9.4.1      审判时的对话 ............................................................................................... 27
9.4.2      读物：手机和传呼机；食品和饮料 ........................................................... 27
9.4.3      照片或视频录像 ........................................................................................... 28
9.4.4      证人宣誓 ....................................................................................................... 28
9.4.5      反对辩论 ....................................................................................................... 28
2.5      证人审查 ....................................................................................................... 28
9.4.1      审查范围：一般范围 ................................................................................... 28
9.4.2      盘问的范围 ................................................................................................... 28
9.4.3      再直接询问和再次盘问的范围 ................................................................... 28
9.4.4      证人协调 ....................................................................................................... 28
9.4.5      向证人呈交的文件 ....................................................................................... 28
9.4.6      专家证人证词范围 ....................................................................................... 29
9.4.7      被告盘问的协调 ........................................................................................... 29
9.4.8      问题澄清的要求 ........................................................................................... 29
9.4.9      雇用译员 ....................................................................................................... 29
9.4.10      在作证中途休息时与证人协商 ................................................................... 29
3      审后辩论摘要和提交的事实结果和法律结论 ........................................... 29
3.1      初始审后辩论摘要；提交和内容 ............................................................... 29
3.2      提交的事实结果；形式和内容 ................................................................... 30
3.3      审后回复辩论摘要；提交和内容 ............................................................... 30
3.4      提交的事实结果之反对和辩驳；形式和内容 ........................................... 31
3.5      补充性法律依据的通知 ............................................................................... 31
4      案例引用 ........................................................................................................ 31
5      听证会后辩论摘要协调 ............................................................................... 31
6      各方间合作 ................................................................................................... 31
7      单方面联系 ................................................................................................... 32

## **LORD 法官的基本规则** [1]

**1        地址；提交、送达和副本的要求；时间**

### **1.1        行政法官的地址。**

行政法官的地址如下：

Lord 法官
美国国际贸易委员会
500 E Street, S.W., Room 317
Washington, D.C. 20436

### **1.2        提交要求。**

所有提交文件应依据委员会规则第 210.4(f) 节之规定提交至委员会秘书办公室，除非这些基本规则或行政法官法令中另有特别规定。所有提交文件依据基本规则 3.9 应包含脚注。

### **1.3        送达副本要求。**

依据委员会规则第 210.4(i) 节之规定的要求，各项提交文件的副本应送达所有其他方，包括委员会调查律师，同时依据委员会规则第 201.16(c)(2) 节之规定附有送达证明。

此外，各项提交文件的两份礼节性纸质副本（不包括出庭通知、保护令签署文件和传票）应在文件提交后第二个工作日提交至基本规则第 1.1 节中列出的行政法官地址处。这些礼节性副本**不应使用订书针装订或装有封面**，但可使用方便移除的夹子或橡皮筋固定在红色闭合文件夹或活页夹中保存。这些辩论摘要的礼节性副本应为单面印刷。证据应编制索引并另行标记。如果下一个工作日为周六或周日、联邦法定节假日或天气或其他情况令副本无法被送达委员会秘书办公室，这两份礼节性纸质副本应在不属于上述时日的下一个工作日内提交。

### **1.4        电子版及文字处理版副本。**

在提交任何提交文件的同一天内，除保护令的签署文件以外，还应发送一份礼节性电子副本至行政法官的律师顾问 Ted Jou 处（使用以下电子邮箱地址：edward.jou@usitc.gov）。对于任何动议或辩论摘要，应发送 Word 格式的另一份电子副本（证据等附件除外）。

---

[1] 修订日期：2016 年 5 月 13 日。

### 1.5　不允许通过传真提交。

**严禁**使用传真向行政法法官提交文件，在没有获得其事先批准的情况下不可以这么做。

### 1.6　并发服务。

给对方律师的送达文件可亲手交付、通过传真、电子邮件或隔夜快递完成。鼓励各方就送达方法达成一致意见，这样各方将在委员会收到提交文件的同时收到所有提交文件。

### 1.7　时间计算。

各方回复行政法法官所收到的动议的十 (10) 个日历天的第一天应为所诉动议提交至秘书办公室之日后的第一个工作日，无论动议是亲手交付、通过传真或隔夜快递送达其他各方都应适用。使用邮件送达后委员会规则第 201.16(d) 节规定的额外时间在此情况下不适用，除非通过电子邮件、亲手交付的送达或通过速递类型邮件或快递服务之送达是送往另一个国家的非动议方，在这种情况下回复动议允许的额外时间应为五 (5) 天。除针对时间计算的委员会规则第 201.14, 201.16(d) 和 210.6 节以外，如果提交文件的期限最后一天因天气或其他条件令提交文件无法到达至委员会秘书办公室，此期限应继续直至并非上述日期之一的下一个工作日结束。

### 1.8　时间延长要求。

任何延长时间的要求必须在不迟于到期日**前一天**的日期通过书面动议提出，此类事件延长的原因必须阐明。

### 1.9　提交机密文件。

提交至委员会秘书办公室的任何文件或提交至行政法法官处任何文件的机密性质应在任何提交文件或其他提交文件的页面顶部明显注明。任何附信或其他文件都不应使用订书针装订或以其他方式附在提交文件或其他提交文件中以至于掩盖页面顶部的机密标志。

### 1.10　机密命令的公开版本。

在任何机密命令（或任何机密通知、初步裁决或行政法法官发布的其他文件）发布之日七 (7) 天内，各方应向行政法法官提交一份声明，阐明其是否寻求获得从公共版本法令中删除的任何部分，此类法令均依据委员会规则第 210.5(f) 节发布。各方依据此小节规定提交的文件不应提交至委员会秘书处，

但应将其纸质副本提交至行政法法官处并通过电子邮件发送至行政法法官的律师顾问处。

如果一方寻求获得从相关公共版本的法令中所删除部分的文件，该方必须在其提交文件中附上法令副本，并在副本中使用红括号注明据称包含机密商业信息的部分。若要避免剥夺公众理解相关结果以及推断出决策的理由的基础，应对修订进行限制。提交过多修订的各方可能被要求提供一份额外的书面声明，该声明受到具备个人知识的个人所做声明的支持，证明各项提议的修订并特别说明应被修订的信息为何满足委员会规则第 201.6(a) 节中规定的机密商业信息定义。

## 2　　程序安排

行政法法官将颁布调查的程序安排。任何一方对程序安排的修订应通过清楚阐明原因的书面动议做出。程序安排中的活动和截止日期一般遵循以下时间顺序：

首次和解会议
提交首次和解会议联合报告
专家证人的身份文件，包括其专业知识和简历
交换提出的专利范围
初始马克曼辩论摘要
反驳马克曼辩论摘要
初始技术教程（如有必要）
马克曼听证会
出席为期一天的调停会话 [2]
调停的联合报告提交
提交先前技术通知
事实证据开示截止和完成
交换初始专家报告（识别测试/调查/数据）
提交一方将传召以便在听证会上作证的证人预备名单
交换反驳专家报告
迫使证据开示之动议的截止日期
专家证据开示截止和完成
第二次和解会议
提交第二次和解会议联合报告
提交简易裁决动议的截止日期
各方之间证据列表交换
交换提出的直接证据（包括证人陈述），连同

---

2 针对关于调停程序的任何问题，各方应该参考修订后委员会调停程序用户手册，获取该手册的地址为 http://www.usitc.gov.

| |
|---|
| 可用物证和实物证据——原告和被告 [3] |
| 交换提出的直接证据（包括证人陈述），连同可用的物证和实物证据——工作人员 |
| |
| 交换提出的辩驳证据（包括证人陈述），连同可用的辩驳物证和实物证据——所有各方 |
| 向行政法法官提交提出的证据——所有各方 |
| 审判前保护令的截止日期 |
| 提交高优先级的反对陈述 |
| 提交审前陈述和辩论摘要——原告和被告 |
| 提交审前陈述和辩论摘要——工作人员 |
| 提交高优先级的反对陈述之回复 |
| 提交审判前保护令的回复 [4] |
| 补充技术指导（如有必要） |
| 审前会议 |
| 听证会 |
| 提交初始审后辩论摘要、提出的事实结果和法律结论以及最终证据列表 |
| 提交回复审后辩论摘要、反对和所提出事实结果的辩驳 |
| 到期的初步裁决 |
| 调查完成的目标日期 |

### 3   动议；回复的截止日期
#### 3.1   内容；一般内容。

所有书面动议都包括：(1) 动议；(2) 支持动议的论点和法律依据之单独备忘录；[5] 以及 (3) 支持论点和法律依据之备忘录的声明、宣誓书、证据或其他附件之附录，以及相关内容的列表。

#### 3.1.1   内容；动议回复。

所有动议回复必须包括委员会秘书办公室在任何此类回复标题或第一段中指定的动议案卷

---

[3] 在当天，隐私各方还必须在没有支持证人和交换处理指定的情况下提交收取证据的要求。
[4] 为了加速审判前保护令的决议，回复审判前保护令的截止日期必须至少为听证会前会议之前十 (10) 个工作日。
[5] 单独的备忘录对于短期程序动议例如时间延长动议而言并非必需。

编号，[6]且应包括：(1) 回复动议的论点和法律依据之备忘录；以及 (2) 支持论点和法律依据之备忘录的声明、宣誓书、证据或其他附件之附录，以及相关内容的列表。

### 3.1.2   内容：答辩书。

动议方可以在提交动议回复后三 (3) 天内提交答辩书。答辩书应包括委员会秘书办公室在答辩书标题或第一段中为动议指定的动议案卷编号[7]，并应包括：(1) 限制为回复中所提问题的论点和法律依据之备忘录；以及 (2) 支持论点和法律依据之备忘录的声明、宣誓书、证据或其他附件之附录，以及相关内容的列表。在没有特殊情况的前提下，不会批准额外的答辩书。

### 3.2   内容：证明。

所有动议应包括动议方在提交动议之前**至少两个工作日**尽合理真诚努力与其他各方解决问题的证明，并应陈述（如已知）其他各方在此类动议中的地位。所述证明应置于审判前保护令题为"基本规则第 3.2 节证明"的标题或类似语句下。

### 3.3   内容：简易裁决动议。

除针对所有动议的上述要求以外，简易裁决动议应包括规定以下内容的备忘录：(i) 依据委员会规则 210.18 作为法律问题授予简易裁决的法律基础；以及 (ii) 请求胜诉一方声称不存在真正纠纷的重要事实。在没有特殊情况的前提下，备忘录不应超过五十 (50) 页。

### 3.3.1   内容：无可争议的重要事实声明。

请求胜诉的一方选择附上单独的无争议重要事实之声明，但动议和备忘录应直接引用证据而不应引用单独声明。

### 3.3.2   内容：简易裁决动议之回复。

除针对所有动议回复的上述要求以外，反对简易裁决之动议的各方应使用反面证据解决请求胜诉的一方据称的事实，此类证据表明引用的材料不能确立不存在真正纠纷的情况，或请求胜诉的一方不能提出可承认的证据以支持事实。在没有特殊情况的前提下，回复不应超过五十 (50) 页。

---

[6]动议案卷编号可通过委员会的电子文件信息系统 (EDIS) 在线获取。
[7] *参阅前文*，注释 6。

### 3.3.3    内容；简易裁决答辩书。

动议方可依据基本规则第 3.1.2 节提交支持简易裁决之动议的答辩书。在没有特殊情况的前提下，答辩书不应超过二十 (20) 页。

### 3.4    内容；终止动议。

任何终止或部分终止之动议必须确定约束终止的委员会规则第 210.21 节的相关小节。各方必须谨慎遵守委员会规则的要求，包括各小节下要求的其他协议所要求的声明，小节 (b) 下要求的任何和解协议之公开版本，[8] 以及针对小节 (c)(3) 中同意法令规定和小节 (c)(4) 中同意法令规定的特殊要求。

### 3.5    内容；证据开示相关动议。

任何证据开示相关的动议必须附上证据开示请求的相关部分以及相关的所有反对和回答。[9] 如果证据开示相关动议提交后任何问题失去意义，动议方应及时通知行政法法官。

### 3.6    提交动议回复的截止时间。

除约束非动议方回复书面动议之期限的委员会规则第 201.16 节和第 210.15(c) 节要求以外，提交动议回复的截止时间应依据基本规则 1.7 计算。

### 3.7    缩短回复动议时间的要求。

动议可包括缩短时间期限的要求，在此期间其他各方可回复动议。要求缩短回复时间的事实应在动议标题中注明，而动议应包括对此类要求理由的说明。缩短回复时间的要求不应通过另一份动议做出。

### 3.8    无动议可终止证据开示（撤销传票之动议除外）。

任何动议均不可终止证据开示，撤销传票的及时动议除外。

### 3.9    格式；页脚。

诉状或其他文件的每一页必须载有调查编号、文件标题概述和在页面底部的连续编号的页脚。

---

[8] 修订应如上文基本规则第 1.10 节中所述受到限制。
[9] 这一要求不适用于时间延长等无可争议的程序动议。

附件和证据必须包含引用调查编号和其所附文件标题的封面页。

### 3.10   补充性授权之通知。

如果一方确定了在动议辩论摘要完成之后但在 ALJ 发布决议之前发布的相关授权，该方可提交"补充性授权之通知"。任何此类通知应限于单独用打字机打出的页面，并应包括对补充性授权的引用和其相关性的简要说明。此通知应在 EDIS 上提交并送达至所有各方。对该通知的任何回复应在送达通知后不迟于两天内提交。

### 4   证据开示
#### 4.1   争议解决；协调证据开示。

所有各方应尽合理努力在各方之间解决证据开示过程中产生的争议。享有类似权益的各方必须协调并合并宣誓证词和所有其他证据开示。

#### 4.1.1   证据开示委员会。

自这些基本规则发布后第一个完整周开始，由各方首席律师和委员会调查员工律师组成的调查会议委员会（"证据开示委员会"）应在此次调查的证据开示阶段期间至少每两周进行一次会议（亲自开会或通过电话）以便解决证据开示纠纷。证据开示委员会应秉承良好意愿进行商谈以便在程序安排中规定的截止日期内及时解决每个未决的证据开示纠纷。在证据开示阶段的每个日历月结束后十个日历天内，证据开示委员会应以书面形式向行政法官报告在上一个月内解决的所有争议和截至该月月底仍陷入僵局的所有争议。不可提交强迫证据开示的动议，除非动议之争议事务首次提交至证据开示委员会且委员会在解决该问题过程中陷入僵局。

#### 4.2   关于证据开示程序的规定。

除非获得行政法法官的其他指示，否则各方可通过书面规定 (1) 规定该宣誓作证可在接到任何通知后随时在任何人面前以任何方式进行以及何时此类宣誓作证可像其他宣誓作证一样使用，以及 (2) 修订约束或限制证据开示的其他程序，除非该规定延长了基本规则第 4.4.2 节、第 4.4.3 节和第 4.4.4 节中针对仅在获得行政法法官批准后就明确说明原因的书面动议做出证据开示回复的时间。

### 4.3    证据开示请求和回复的送达。

证据开示请求和相关回复应送达至各方，包括委员会调查律师，但不应送达至行政法法官处，除非它们与动议有关。发现文件无需送达至委员会秘书办公室，除非它们是动议的附件。

### 4.4    证据开示请求、回复和反对的时间。

#### 4.4.1    宣誓作证；通知。

除委员会规则第 210.28(c) 节的要求以外，除非另有法令规定，否则要求宣誓作证的任何一方应在身处美国的某人宣誓作证之前不短于十 (10) 天或身处美国以外其他地方的某人宣誓作证之前不短于十五 (15) 天以书面形式通知任何其他方。

#### 4.4.2    书面质询；回复和反对的截止时间。

除委员会规则第 210.29(b) 节的要求以外，除非另有法令规定，否则收到书面质询送达的一方应在书面质询送达后十 (10) 天内送达回答的副本及任何反对。

#### 4.4.3    出示文件或事物或获许检查之要求；回复和反对的截止时间。

除委员会规则第 210.30(b)(2) 节关于出示文件或事物或允许检查之请求的要求以外，除非另有法令规定，否则收到所送达请求的一方应在此类请求送达后十 (10) 天内送达书面回复。

#### 4.4.4    请求采信；送达期限；回复和反对的截止时间。

除委员会规则第 210.31(a) 和 (b) 节的要求以外，除非另有法令规定，否则采信之请求可在送达诉状和调查通知之日二十 (20) 天后随时送达。除非另有法令规定，否则在采信之请求送达后，应在请求送达后十 (10) 天内送达回答或反对，否则该事务将被视为得到采信。

#### 4.4.5    证据开示截止和完成。

任何证据开示要求（包括传票）必须在事实证据开示截止和完成日期前充足的时间内发起，以便回复在该日期之前上述规定的实现期限内到期。要求在事实证据开示截止和完成日期后回复的任何一方的证据开示要求

在出现迫不得已的情况下必须由行政法法官事先批准。

### 4.5    证据开示限制。

鼓励各方见面并协商关于对宣誓作证次数、书面质询、证物请求和采信请求的限制之事宜。任何此类限制应依据基本规则第 4.2 节通过规定达成一致意见。在无任何一致意见的情况下，宣誓作证和书面质询应分别依据委员会规则第 210.28(a) 节和第 210.29(a) 节之规定受到限制。超出这些限制的许可应仅在呈交清楚阐明理由的书面动议之后由行政法法官授权。

### 4.6    传票。

### 4.6.1    发布和送达。

依据委员会规则第 210.32 节之规定，可单方面向行政法法官提出传票申请。申请应采用书面形式，附有提议的传票，并将相关的一 (1) 份副本提交至行政法法官办公室。申请应带有特殊性地规定所寻求信息的相关性和查询范围的合理性。此外，传票应规定撤销动议的时间限制，并还应阐明传票将使用隔夜快递送达（如无更快送达方式）。传票中针对宣誓证人的出现或文件出示规定的任何日期应考虑到任何撤销动议之提交所设定的日期。所发布传票和申请的副本最迟应在传票发布后下一个工作日由申请方送达至被传召方及调查中所有其他方，包括被传召方在内的所有各方应在该日接到关于传票内容的通知。所发布传票的一 (1) 份副本、申请和送达至被传召方的证据应提供给行政法法官。传票样本附在本文件的附件 A 中。申请和传票不需要提交或送达至委员会秘书办公室，包括 EDIS，除非他们作为撤销动议或保护令动议之附件。

### 4.6.2    撤销传票的动议；截止时间。

除委员会规则第 210.32(d) 节规定的要求以外，限制或撤销传票的任何动议应在相关接收后十 (10) 天内提交，或在行政法法官允许的此类其他时间限制内提交。撤销或限制传票的任何动议必须附上传票的相关部分和所有相关反对和回复。提交撤销已发布传票的任何动议自动令此类传票处于未决的动议状态，等待行政法法官的处理。未能提交及时的撤销动议不能放弃及时作为传票回复提出的反对意见。

### 4.7    文件编号。

如果任何供应者为回复文件要求而出示的文件作为原始文件的副本提供给提出要求者，则任何此类文件的每一页应使用唯一的号码按顺序标注编号（通常称为"文件编号"）。文件编号应印制在页面的右下角。

### 4.8    翻译。

为回复文件要求而出示的任何文件应为原件或原件的真实完整副本。如果出示的任何文件存在英文翻译，则应制作英文译本。如果任何一方对出示方所提供的译本存在争议，则译本必须由律师一致同意的合格中立译者进行认证。

### 4.9    特许事务。

为了加快证据开示，应遵循关于律师主张特许（律师客户或工作成果）的此类文档之以下程序。

#### 4.9.1    特许记录。

如果任何文件的出示基于特许主张被保留，各项被保留的文件必须依据委员会规则第 210.27(e)(l)(ii) 节之规定通过特许记录单独确定。除非另有法令规定，否则应在基于原始凭证之特许的反对到期后十 (10) 天内提供特许记录。特许记录必须对各份文件单独进行确定，至少为各份文件指明以下内容：(1) 日期；(2) 作者/发件人；(3) 收件人，包括副本收件人；以及 (4) 文件的一般争议事项，但不揭示特许信息本身。发件人和收件人应通过职位和雇佣其的实体（企业或公司等）或相关实体进行确定。如果作者/发件人或收件人是律师或外国专利代理人，其也应进行此类确定。还必须阐明所主张特许的类型，以及所主张特许的所有元素均已满足且未关于各项文件被放弃的证明。特许记录中的各项条目必须提供充足的信息以便让其他方可以评估所主张特许的适用性并协助法庭决定权利主张在受到挑战的情况下是否适用。

#### 4.9.2    迫使出示特许事务之动议。

寻求出示据称拥有特许之文件的任何一方必须仅在检查特许文件列表之后提交合适的动议。

行政法法官了解，各方经常达成一致意见，特许记录的出示并非必要。行政法法官认为此类一致意见是可接受的；

但是，如果此类一致意见是被迫产生，则行政法法官不会考虑涉及特权文件的任何动议。

### 4.9.3　在不放弃特许的情况下出示争议文件。

如果关于某项特许主张产生争议，而且主张拥有特许的一方确定原始凭证对于调查中的争议问题并不重要且可在无偏见的情况下披露，各方可联合获得迫使出示这些文件以避免不必要诉讼的法令。法令在不放弃针对争议文件或并未出示的任何其他相关文件的任何适用特许的情况下要求出示此等文件。

### 4.9.4　供审阅的文件提交（*禁止旁听*）。

禁止提交供审阅（*禁止旁听*）的文件。但如果一方认为审阅（*禁止旁听*）对于解决特许主张而言是必要的，则必须提出针对提交文件（*禁止旁听*）之许可的书面请求，并以说明（*禁止旁听*）的审阅是有保证的合法讨论作为支持，从而为所有其他提供机会对（*禁止旁听*）的审阅之要求做出回复。（*禁止旁听*）的审阅由行政法法官自行决定；因此，文件无需提交，除非（*禁止旁听*）的审阅要求得到批准。

### 4.10　证人预备名单。

一方的证人预备名单应标明该方在听证会时将传召前去作证的各位证人的姓名，并标明各位证人与该方的关系。如果任何方在其证人预备名单上确定了二十 (20) 位以上的证人（或被告集体确定了每位被告五 (5) 位以上的证人），尽管存在委员会规则第 210.28 节之规定的限制，这些证人必须准备好进行宣誓作证。

## 5　先前技术和专利范围之披露

### 5.1　先前技术通知。

各方必须在程序安排中规定的日期或之前提交任何先前技术的通知，其中包括以下信息：任何专利的专利权所有人之国家、编号、日期和姓名；作为诉讼专利无效证据被依赖的，或表明技术状态、可能作为之前发明者被依赖以及之前了解或之前使用或提供诉讼专利发明供销售的任何人员之姓名和地址的任何出版物之标题、日期和页码。

如果涉及商标，各方必须在程序安排中规定的日期或之前提交该方可能在关于任何争议商标的功能性或非功能性的听证会上依赖的任何技术之通知。

如无此类通知，所述争议的证据可能无法在听证会上引入作为证据，除非提交清楚阐明原因的及时书面动议。

### 5.2     专利范围的马克曼听证会。

如果行政法法官确定*马克曼*听证会对于调查有益，行政法法官应在程序安排中规定的日期举行*马克曼*听证会，该听证会的目的在于解释调查中问题专利存在争议的权利条款。

#### 5.2.1     争议权利条款的确定。

各方和委员会调查工作人员应见面协商从而确定在解决各方争议过程中最可能发挥重要作用的争议专利范围条款。各方应确定用于辩论摘要的争议权利条款并应在*马克曼*听证会至少三十天 (30) 前交换所提出的用于这些条款的专利范围。[10]专利范围条款的确定应限于解决争议问题所必需的这些条款，辩论摘要将受到下文规定的页数限制。

#### 5.2.2     专利范围辩论摘要。

各方和委员会调查工作人员应见面协商从而制定专利范围辩论摘要的逻辑顺序和时间。提交专利范围辩论摘要的日期应在程序安排中规定。

各方的初步辩论摘要应不超过五十 (50) 页(如果存在一位以上的被告，要求他们提供联合辩论摘要)。初步辩论摘要应包括针对各项争议专利范围所提出的专利范围之简短书面陈述，以及作为各项普通意义之解释，问题专利的专利范围、规范或起诉历史之衍生内容或来自外在证据的支持内容。[11]如果存在多项问题专利，辩论摘要应按照专利组织结构，与审后辩论摘要之概要类似(*参阅*附件 B)。辩驳辩论摘要也应依据程序安排提交，而且长度不应超过二十五 (25) 页。

所有*马克曼*辩论摘要必须在*马克曼*听证会前不迟于七 (7) 天提交。*马克曼*辩论摘要依据基本规则第 3.9 节之规定应包含脚注。

#### 5.2.3     马克曼听证会。

各方和委员会调查工作人员应见面协商以便决定*马克曼*听证会的出席顺序以及时间分配。*马克曼*听证会上的证据应限于

---

10 依据各方协议，委员会调查工作人员稍后可披露其专利范围位置。

11 参阅 *Phillips* 诉 *AWH Corp.*，415 F.3d 1303（美国联邦巡回区上诉法院 2005）（法院全体法官共同审理）；*Markman* 诉 *Westview Instrumentns, Inc.*，52 F.3d 967, 979-81（美国联邦巡回区上诉法院 1995），*维持原判*，517 U.S. 370(1996)。

附在各方*马克曼*辩论摘要后的证据，尽管各方可能使用其他实物证据。

### 5.2.4   马克曼命令。

在*马克曼*听证会后，行政法法官可发布法令，为调查目的解释部分或全部争议专利范围条款。如果此类法令被发布，调查中的发现和辩论摘要应限于该法令中提供的专利范围。

## 6   专家证人和报告

在程序安排中规定的日期当天或之前，一方应向其他各方披露被留用或雇佣从而在听证会上提供专家证词的任何人员的身份，并应向其他各方提供证人出示并签名的书面报告。报告无需提交至委员会秘书办公室。报告应包含将表达的所有意见的完整陈述以及相关理据和原因；证人在组织意见时考虑的数据或其他信息；作为意见概括或支持内容使用的任何证据；证人资格，包括证人在之前十年内授权的所有出版物列表；为研究和证词支付的酬劳；以及在之前四年内证人作为审判时专家作证或宣誓作证的任何其他案件列表。各方应根据需要以委员会规则第 210.27(f) 节中规定的方式对这些披露内容进行补充。

## 7   和解/调解

在诉讼程序的整个过程中，所有各方应探索所有或任何争议问题和解的可能性。所有各方应在其审前声明中证明其秉承良好意愿努力就剩余问题达成和解。此外，对于程序安排中规定的各次要求和解会议和为期一天的调解，各方应向行政法法官提供各方签署的联合报告之两份副本，其中制定各方达成一致意见的任何规定。这些报告在程序安排中指定的时间或行政法法官可能批准的此类其他时间到期。报告无需提交至委员会秘书办公室。

## 8   审前提交文档
### 8.1   审前声明。

要求参与调查中听证会的各方必须在程序安排中规定的日期当天或之前提交审前声明，其中包括以下信息：

> (a) 所有已知证人的姓名、其地址(无论他们是事实证人还是专家证人(连同其专业领域))，以及各位证人的证词简要概述。

如果是专家证人，专家的履历副本应连同此提交文件一起提交。

(b) 各方寻求在听证会上引入的所有证据列表。

(c) 各方达成一致意见的任何规定列表。

(d) 审前会议的提议日程。

(e) 各位证人出庭的预计日期和近似时间长度。各方应在提交其审前声明之前就预计日期和近似时间长度进行商谈。

(f) 关于秉承良好意愿努力达成和解的证明。

### 8.2 审前辩论摘要。

在程序安排中规定的日期当天或之前，各方应提交审前辩论摘要。审前辩论摘要应以目录和法律依据表格作为序言。审前辩论摘要应规定一方关于各项提议问题的争论，包括为支持相关争论对法律依据的引用，并应遵守相关附件 B 中规定的概要。所有问题（包括未在概要中特别指明的任何一方寻求解决的问题）应在概要中合适的位置插入。各方根据需要在提交审前辩论摘要之前见面协商以便决定解决各份审前辩论摘要的上述概要中各项问题的合适常见地点。各方应针对*马克曼*法令中尚未解决的任何问题条款提供完整的提议专利范围之论述。

根据要求在本文件中未详细规定的任何争论应被视为放弃或撤销，一方在提交审前辩论摘要时未知悉或在合理尽职调查的环境下无法知悉的争论除外。审前辩论摘要依据基本规则第 3.9 节之规定应包含脚注。

### 8.3 高优先级证据反对。

高优先级反对是对承认在听证会之前或在听证会前会议上提出的证据或证词表达的反对。对书面证人陈述或宣誓作证指定内容中的任何证词、为相关采信而确定的或在无支持证人的情况下接收证据的要求中确定的任何证据的反对**必须**在高优先级反对或审判前保护令中**提出**。在听证会上首次提出的针对此类证据的反对仅在伴有阐明反对未及时在高优先级反对或审判前保护令中提出之原因的说明时得到考虑。

各方必须秉承良好意愿尽合理努力解决其反对并减少反对数量从而关注实质性证据，这些证据如被承认将导致严重偏见。高优先级反对并非动议，但各方应在提交其反对时依据基本规则第 3.2 节之规定将证明包含在其中。

各方的高优先级反对应伴有反对的陈述性说明。高优先级反对和相关回复应包括作为反对主题的证据和/或在反对或回复中引用或讨论的证据。

18

不包含所述证据的任何高优先级反对不会得到考虑。如果存在大量附件，这些证据可采用电子方式提交至行政法法官处。

尽管联邦证据规则规定了反对在联邦地区法院承认证据的各种理据，一方的高优先级反对应以委员会规则第 210.37 节之规定为基础，该规则规定 "[相关]的重要可靠证据应得到承认。不相关、不重要、不可依靠或过度重复的证据应被排除。可得到承认的文件中不重要或不相关部分应在可实践的范围内被分离和排除。"

### 8.4    审判前保护令。

除非行政法法官另有批准，否则各方应限于最多十 (10) 条审判前保护令。各方不得尝试通过在审判前保护令中包含多个小节来规避这一限制。对书面证人陈述或宣誓作证指定内容或为获得承认而确定的相关任何证据或在无支持证人的情况下接收证据的要求中任何证词的反对必须在高优先级反对或审判前保护令中提出。在听证会上首次提出的针对此类证据的反对仅在伴有阐明反对未及时在高优先级反对或审判前保护令中提出之原因的说明时得到考虑。

审判前保护令和相关回应包括作为动议主题的证据和/或在回复中引用或讨论的证据。任何未包含上述证据的审判前保护令将不会得到考虑。如果存在大量附件，这些证据可通过电子方式提交至行政法法官处。

审判前保护令须受到关于基本规则第 3 节中规定的所有动议之规定的约束，包括基本规则第 3.2 节的证明要求和依据基本规则第 3.1.2 节的答复权利。

### 9    听证会——证据
#### 9.1    接收作为证据的材料。

仅事实材料和专家意见可被接收成为证据。法律论证应在辩论摘要中呈现。对证据之采信的任何反对必须在听证会上所反对的证据被提供成为证据时提出。对现场证词的任何反对必须在证词阐述过程中及时提出。在证据听证会上未及时提出的反对不会得到考虑。

#### 9.2    法律专家。

法律专家仅可针对美国专利及商标局的程序作证。

### 9.3    证人证词。

_所有直接证人证词_（存在敌意的证人除外）应代替现场证词通过证人陈述提出。但工作人员可要求证人在证人席上补充直接证词。证人陈述应作为证据进行标记并提供成为证据，证人应可在证人席上接受盘问，除非此类盘问被放弃。证人不会朗读其准备好的证词以供记录。

#### 9.3.1    证人陈述的格式。

证人陈述应采用律师提出的编号问题形式，各个问题后附有证人自己对该问题的回答，律师提出的最后一个问题询问证人证人陈述是否包含证人对律师所提出问题的回答，之后是证人对该问题的回答和证人签名。证人陈述将被指定一个证据编号，各个问题连续编号。问题应采用直接检查的形式，回答应采用口头证词的形式，尽管证人陈述可能采用一定组织结构（例如标题、目录和项目符号或编号列表）促进对问题的理解，并可能包含来自可被承认证据的说明性摘录。如果证人陈述中的证词将被用于支持对任何证据的采信，所有此类证据的列表应被附在证人陈述中。

#### 9.3.2    证人陈述的语言。

所有证人陈述应采用证人语言，外语证人陈述应伴有对应的经认证译本。

#### 9.3.3    听证会期间排除证人。

除了收到清楚陈述原因的及时书面动议以外，事实证人不应审查其他证人的证人陈述，且应在其陈述证词前从听证会上被排除。依据调查中规定的任何保护令施加的限制，此项规则不适用于将并非作为一方代表被其律师指定的该方自然人或管理人员或员工的一方排除。

### 9.4    证据。

#### 9.4.1    各方之间交换提出的证据。

文件性质所提出证据的副本以及提出证据的列表应在程序安排中规定的日期送达至对方（包括委员会调查律师）处。一旦各方交换器提出的证据列表，他们应消除任何重复的证据或将此类证据作为联合证据重新编号并在将此类证据于程序安排中的到期日提交至行政法法官处之前对他们的证据列表进行更新。提议的物证和实物证据无需送达，但应在提出的证据列表中标明。但提出的

物证和实物证据应提供以便在针对提出的证据之提交和送达确立的日期由其他各方进行审查。提出的证据无需提交至委员会秘书办公室。

### 9.4.2    向行政法法官送达提出的证据。

在程序安排中规定的日期，行政法法官应收到所有提出的证据的电子 PDF 版本以及提出的证据列表。提出证据的电子版本可使用外部硬盘或闪盘提交。如果一方得到秘书许可提交纸质版的委员会证据集，所述该方还应提交在单独文件夹中包含各项所提出文件的文件夹（用于扫描目的）。可使用清晰的复印件代替原始文件。

### 9.4.3    委员会的证据集格式。

以下规定<u>仅</u>在一方已收到秘书许可提交纸质版的委员会证据集时适用：

委员会集中的证据应包括按顺序提供（编号纸箱）文件夹（文件夹、手风琴文件夹等）中的活页（可使用回形针但不可使用订书针装订）。每个文件夹必须贴有标签从而反映其中所包含的证据编号，例如 RX-0014C。每个委员会证据集的纸箱中，包含证据的文件夹应按编号顺序放置。

以电子形式提交证据的程序在下文基本规则第 9.4.16 节中有所规定。

### 9.4.4    ALJ 最终证据文件格式。

行政法法官的最终证据活页夹中的证据应单独贴有标签，每个标签表明对应证据的编号，例如 CX-0003C。各个活页夹必须在其书脊上贴有标签，表明调查的名称和编号以及活页夹内容的性质，例如原告证据 CX-0001 到 CX-0018C。活页夹集合中的证据应采用连续数字顺序，不应基于其机密或公开状态而分离。

### 9.4.5    最终证据和最终证据清单的维护和提交。

在初始听证会后辩论摘要到期之日，各方必须提交依据基本规则第 9.4.8 节之规定编制的最终证据列表，表明所有证据的状态，包括在听证会期间得到采信和被否决的证据。任何撤销的证据应在最终证据列表上仅使用证据编号标明，并指明其已被撤销。

各方负责在听证会期间负责更新证据列表并维护和更新委员会证据集合，该集合应成为在记录结束

后提交至委员会的集合，各方还须负责确认所有被采信和否决的证据在听证会结束时已经包含在委员会证据和最终证据列表中。任何在听证会结束时未包含在委员会证据和最终证据列表中的证据不会作为首次初步裁决发布时向委员会证明的记录中的一部分。

所有最终委员会证据应提交至行政法法官办公室，其将传递委员会证据至诉讼摘要服务 (Docket Services) 部门。委员会证据不应直接提交至诉讼摘要服务部门。

### 9.4.5.1    向行政法法官提交最终证据。

在初始听证会后辩论摘要到期之日，各方应提交 [1] 所有最终证据的行政法法官活页夹（采用基本规则第 9.4.4 节规定的格式）；[2] 呈递至行政法法官处供其在起草最终初步裁决时使用的最终证据集电子版本；以及 [3] 委员会证据集，以及提交时使用单独封面并标明被否决的证据。委员会证据集必须使用 CD 提交。但行政法法官的证据集必须使用外部硬盘或闪盘提交，无需以基本规则第 9.4.16 节中规定的方式分离。

### 9.4.5.2    法律总顾问办公室的活页证据。

在提交审后回复辩论摘要后三十天内，各方应交付一份额外的所有证据副本活页（撤销证据除外）至法律总顾问办公室，并附上一份最终证据列表，被否决的证据使用单独的封面并在标明其为被否决证据的情况下提交。或者，各方可依据基本规则第 9.4.16 节以电子形式提交此集合。

### 9.4.6    证据编号和标签。

书面证据应标明连续编号，从四位数编号 "0001" 开始，原告证据在编号前面加上前缀 "CX"，被告证据加上前缀 "RX"，委员会调查律师的证据前缀为 "SX"，而任何联合证据的前缀是 "JX"。各方不应 "保留" 数字，但应按连续顺序指定所有编号。

每个证据应在证据首页的右上角使用载有证据编号（*例如*CX-0003C 或 RX-0005）的标签进行标识。各个证据的页面应在各页的同一位置按顺序编号。

被告应协调其编号以避免编号重复。此外，各方应协调证据以避免不必要的重复（*例如*专利；文件包装）。此外，所有证据和证据副本应明确清晰。最后，各个证据可被分配不超过一个的编号。

22

### 9.4.6.1    保密证据。

如果证据包含机密商业信息，应在证据编号后标明 "C"。此外，包含机密商业信息的证据应依据保护令进行指定。此外，在提交的任何证据列表上，包含机密商业信息的证据应通过在列表的证据编号后加上 "C" 进行标注。任何证据列表都不应包含机密信息；所有证据列表应为公开文件。

### 9.4.6.2    实物证据。

实物证据应使用单独系列编号，从四位数编号 "0001" 开始，在前面加上前缀 "CPX"、"RPX"、"SPX" 和 "JPX"，这些前缀分别与原告、被告、委员会调查律师和联合证据对应。机密证据应和文档证据一样使用字母 "C" 进行标注。

### 9.4.6.3    实物证据。

实物证据应使用单独系列编号，从四位数的编号 "0001" 开始，前面加上前缀 "CDX"、"RDX" 和 "SDX"，这些前缀分别与原告、被告和委员会调查律师对应。机密证据应使用字母 "C" 进行标注。此外，各方应向行政法法官提供主要实物证据（例如图表、图纸等）的两份副本（缩小成 8½ 英寸 x 11 英寸的尺寸）。

### 9.4.7    公开和保密证据。

如果证据的任何部分包含机密商业信息，完整证据应作为机密证据处理。对于只有部分内容为机密信息的相当长的证据而言，各方可被要求提交证据的公开版本。

活页夹中的证据应使用连续的编号顺序，不应依据其机密或公开状态而分离。

### 9.4.8    证据清单。

每份证据清单应包括一张表格，表格中按证据编号有序列举所有证据，并用说明性标题、提供证据的目的之简要陈述、支持证人的姓名和接受证据的状态对各个证据进行标注。如果是联合证据，每份证据列表应标明此类证据，各方应在提交列表前见面协商，从而就通用说明性标题、目的陈述和应在各个联合证据的每份列表上出现的支持证人达成一致意见。在提供任何证据之前提交的任何证据列表中，针对接收状态栏中的条目应保留空白。在提供或撤销证

据后提交的任何证据列表中，该栏条目应显示作为证据得到承认或否决的日期或表明其被撤销。

证据列表应包含公开和机密证据，并应按照编号顺序列出所有证据，例如 CX-0001、CX-0002、CX-0003C、CX-0004、CX-0005C 等。

### 9.4.9   外语证据。

任何外语证据不应被接收作为证据，除非对应的译本在规定交换证据的时候提供。译本应作为外语证据的一部分被包括在内。

### 9.4.10   每个证据一份文件；所有页面文件编号。

除明确说明原因的情况以外，每个证据应包括不超过一份文件，每份文件的每一页应依据基本规则第 4.7 节之规定进行文件编号或按照基本规则第 3.9 节的要求标有脚注。这一"每个证据一份文件"的规定之例外情况包括适合将一些文件组合在一起作为一个证据的情况，例如发票组合或相关电子邮件的集合。

### 9.4.11   证人证据活页。

在使用准备的书面证词直接审查证人时，在对每位证人的审查开始前，律师应向证人、行政法法官和其他律师提供仅包含证人的准备书面证词的活页以及律师希望通过证人陈述使其成为证据的所有证据表格，表格中有标题为"接收成为证据"或类似文本的空白栏。

在审查未准备书面证词的存有敌意的证人或盘问证人时，律师应在对每位证人的审查开始前向证人、行政法法官和其他律师提供包含所有证据（使用数字顺序）并分别贴有标签的活页夹（或多个活页夹）以便在对证人的审查过程中使用。各个活页夹必须在其书脊上贴有包含调查名称和编号及活页夹内容性质的标签，例如证人盘问-第 1 卷/共 1 卷）。此外，证人活页夹的正面必须包含律师寻求通过审查证人使其作为证据得到承认的所有证据表格，表格中有标题为"接收成为证据"或类似文本的空白栏。

如果存在被一位以上的证人频繁使用的一些证据（即专利、起诉历史），包含这些证据的单独证据活页夹可由这些证人使用，且无需被包含在针对各个证人的单独证人活页夹中。

**9.4.12**                                **证据参考文件。.**

在合适的情况下，证据应引用信息来源和编制会计、经济或其他类型的数据时使用的方法。辩驳证据（如有提交）应特别引用被辩驳的证据。

### 9.4.13  真实性。

定期出现在其封面的所有文件应被视为真实的,除非特殊证据表明该文件是伪造的或并非其声称的文件。

### 9.4.14  支持证人。

作为证据提供的各个证据应有"支持证人"。拥有证据相关的支持证人之目的之一是为证据确立基础。证据可通过证人陈述、现场证词、宣誓作证指定或各方协议得到支持。

#### 9.4.14.1  在无支持证人的情况下要求接收证据。

除无参与被告的调查以外,如果一方认为证据是无争议的而且适合在没有支持证人的情况下作为证据被接收,该方必须在交换直接证人陈述的同时对任何此类证据进行鉴定。接收此类证据的要求提交时应附有:
(1) 申报者准备或某人在申报者指示下准备证据的宣誓书或陈述；(2)在听证会上没有证人的情况下证据将被接收的要求；以及 (3) 在听证会上没有证人的情况下证据被接收的理由陈述。希望盘问申报者的任何一方可能在宣誓书或声明和要求送达后三 (3) 天内以书面形式提出反对,指明该方意图审查的对象。在没有对此类申报者进行审查的未决之要求的情况下,对依据本小节及时提交的要求中确定的证据承认提出的反对意见必须在高优先级反对或审判前保护令中提出。

在无支持证人的情况下接收证据的要求应包括作为要求主题的证据。不包括所述证据的任何要求不会得到考虑。如果存在大量附件,这些证据可采用电子形式提交至行政法法官处。

#### 9.4.14.2  宣誓作证指定。

各方可通过依据委员会规则第 210.28(g)-(h) 节之规定通过指定宣誓作证证词寻求获得证词的承认。各份被指定的文本记录应被指定一个证据编号并由提供方同时作为直接证人陈述交换。其他各方可同时交换作为辩驳证人陈述的相反指定内容。依据委员会规则第 210.28(h)(4) 节和联邦证据规则

第 106 节之规定，相反指定内容应限于与引入的部分一起得到公平考虑的宣誓作证内容的任何其他部分。文件记录证据可以通过指定宣誓作证证词得到支持继而得到承认，而寻求以这种方式得到承认的证据必须在附于指定文本记录的列表中进行标注。针对及时标注的指定内容或其中支持的证据之采信表示的任何反对必须在高优先级反对或审判前保护令中提出。

### 9.4.15 存在争议的证据。

对于任何存在争议的证据或将在听证会上讨论且并未包含在证人证据活页中的任何证据，所述证据的副本必须提供给行政法法官供她审查和考虑。

### 9.4.16 使用 CD/DVD 媒介提交证据。

委员会证据集合必须采用电子格式提交。以电子格式提交证据的程序规定位于：

http://www.usitc.gov/docket_services/documents/EDIS3UserGuide-CDSubmission.pdf。

标准证据有二十四种：CX、CDX、CPX、RX、RDX、RPX、JX、JDX、JPX、SX、SDX、SPX、CX-[四位数编号]C、CDX-[四位数编号]C、CPX-[四位数编号]C、RX-[四位数编号]C、RDX-[四位数编号]C、RPX-[四位数编号]C、JX-[四位数编号]C、JDX-[四位数编号]C、JPX-[四位数编号]C、SX-[四位数编号]C、SDX[四位数编号]C 和 SPX-[四位数编号]C。每个类别的证据必须放在另一张 CD 中并贴上调查名称、编号和 CD 中包含的证据范围的标签。此外，所有源代码证据应使用单独的 CD 提交。

列出光盘上所有文件名称和各个证据说明的目录文件应创建并包含在每张光盘中。

### 9.4.16.1 交付至行政法法官处。

包含委员会证据集的电子媒介应在初始听证会后辩论摘要到期的同一天交付至行政法法官办公室。其不应直接被交付至诉讼摘要服务部门。

26

**10      听证会程序**
**10.1     听证会；审查顺序。**

在听证会上的审查顺序如下（可能在审前会议上进行更改或由行政法法官自行决定变更）：

    (1) 简要开庭陈述
        (a) 原告（限一小时）
        (b) 被告（限一小时）
        (c) 委员会调查律师（限半小时）
    (2) 原告的主诉
    (3) 被告主诉：如果被告人数超过在一位以上，出席的顺序将在审前会议上决定。被告在可能的情况下应避免不必要的重复工作。
    (4) 委员会调查律师主诉
    (5) 原告辩驳
    (6) 被告辩驳

**10.2     终结辩论。**

行政法法官一般不安排终结辩论。各方可能要求终结辩论，终结辩论将由行政法法官自行决定进行。一般情况下，此类终结辩论将在所有听证会后辩论摘要提交后进行。

**10.3     听证会时间。**

正常听证会时间是上午 9:30 到下午 5:30，其中有一小时十五分钟的午餐休息和两次十五分钟休息。

**10.4     审判礼仪。**

**10.4.1   审判时的对话。**

相互对立的律师之间不允许盘问。如果律师有任何事情需要告诉对方律师，此类声明必须通过行政法法官进行。

**10.4.2   读物；手机和传呼机；食品和饮料。**

法庭上不允许阅读其他材料。审判过程中，法庭内的有声手机和传呼机信号应被关闭，所有手机电话都应在法庭外接听。除瓶装水或带有可重新密封盖的咖啡外，任何食物、口香糖或

饮料不允许在审判过程中出现在法庭内。请格外谨慎地处理饮料，如有任何饮料洒溢，请立即向行政法法官报告。

### 10.4.3 照片或视频录像。

法庭中不允许拍照或视频录像。

### 10.4.4 证人宣誓。
证人宣誓时，证人应保持站立姿势。审判室内所有其他人必须坐好且保持安静。

### 10.4.5 反对辩论。

辩论反对仅由律师在裁决前提出。一旦做出裁决，不允许针对主题事务进行进一步辩论。

### 10.5　证人审查。

### 10.5.1　审查范围；一般范围。

除特殊情况以外，针对原告主诉和被告主诉的证人审查应限于直接审查、盘问、再直接询问和再次盘问。

### 10.5.2　盘问的范围。

盘问将限于直接审查的范围。如果要求盘问某证人的一方在该问题中处于某个位置，为了支持该问题中与该方位置相同位置而传召证人意图给出证词，该方将被避免向该证人提出引导性的问题；即"无友好盘问。"

### 10.5.3　再直接询问和再次盘问的范围。

再直接询问将限于盘问中提出的问题。再次盘问将限于再直接询问中提出的问题。

### 10.5.4　证人协调。

各方需要对证人审查进行协调以便将在审判分配的总时间内为各个证人的审查分配合适的时间。

### 10.5.5　向证人呈交的文件。

律师希望向证人出示的任何文件必须首先向对方律师出示。

### 10.5.6 专家证人证词范围。

审判时专家证词应依据他或她的专家报告、宣誓作证证词或由行政法法官自行决定的范围受到限制。

### 10.5.7 被告盘问的协调。

被告应通过律师在可执行的范围内协调盘问从而避免重复。如果这不可能实现，意图进行盘问的律师必须在之前对证人的盘问过程中全程出现在审判室从而确保不会进行重复质疑。

### 10.5.8 问题澄清的要求。

澄清问题的要求只可由证人或行政法法官提出。

### 10.5.9 雇用译员。

如果审判过程中雇用译员，各方负责雇用律师同意的合格中立翻译。建议从经过批准的译员中选择译员，不同的联邦地方法院或联邦机构中可能聘用着这样的译员。

### 10.5.10 在作证中途休息时与证人协商。

律师不可在证人作证中途休息时与证人就证人的实质性证词进行协商。

### 11 审后辩论摘要和提交的事实和法律结论之证据开示。

### 11.1 初始审后辩论摘要；提交和内容。

程序安排中规定的日期当日和之前，各方应提交审后辩论摘要。各方还须提交其最终证据和证据列表的副本以及其审后辩论摘要。审后辩论摘要应讨论委员会调查通知决定的一般问题结构中尝试的问题和证据、附件 B 中规定的辩论摘要和包括在审前辩论摘要中的这些问题以及相关任何批准的修订。所有其他问题应被视为已放弃。

应对所有审后辩论摘要施加合理的页数限制，具体按照情况决定。各方必须使用双倍行距（标题、脚注、引用等内容除外）、至少 12 号字体和 1 英寸的边距（CBI 页眉和页脚除外，例如页码）。所有审后辩论摘要依据基本规则第 3.9 节之规定应包含脚注。各方必须使用 Word 格式向行政法法官提交其辩论摘要的电子副本。如果各方有关于审后辩论摘要的可接受格式要求的任何问题，

他们应该联系行政法法官的律师顾问。

### 11.2    提交的事实结果；形式和内容。

依据委员会规则第 210.40 节，一方可选择提交拟定的事实结果和法律结论；但另一方不要求对所提出的事实结果和法律结论作出回复。答复的缺少不意味着提出的事实结果和法律结论得到采信，除非特别作出这样的声明。如果一方选择提交拟定的事实结果和法律结论，其必须在初始审后辩论摘要提交的当日提交。

提出的事实结果必须采用编号段落的形式。这些结果应反映所有第 337 节之规定、调查通知中概述的所有问题和在调查过程中出现的任何其他问题。与听证会后辩论摘要概述一致的章节标题可用于划分与特别的第 337 节规定或问题有关的段落。为了在没有更改的情况下被接受，提出的事实发现必须仅为事实断言（即没有更适合放在听证会后辩论摘要中的辩论）。

各项提出的事实结果必须随有证据中支持性法律依据的引用。经常使用的引用示例如下：

文本记录：Smith, Tr. 895 [证人姓名，文本记录页面，行号]
证据：CX-0003；RX-0005；SPX-0002
诉状：原告第 2 页的第 4 段；XYZ Corp. 回复第 3 页的诉状第 5 段。

### 11.3    审后回复辩论摘要；提交和内容。

在程序安排中规定的日期当天或之前，各方应提交审后回复辩论摘要。审后回复辩论摘要应讨论各个相对方的初始审后辩论摘要中讨论的问题和证据，这些问题和证据应位于附件 B 中规定的辩论摘要概述之后。

应对所有审后回复辩论摘要施加合理页数限制，这将视具体情况决定。各方必须以 Word 格式向行政法法官提交其辩论摘要的电子副本。基本规则第 11.1 节中详细规定的格式要求应适用。

**11.4**　**提交的事实结果之反对和辩驳；形式和内容。**

如果一方选择对提出的事实结果做出回复，针对对方所提出事实结果的反对和辩驳应重复受到反对或辩驳的所提出事实结果之记录的文本内容和引用内容以及其段落编号。辩驳应仅肯定事实（即无更合适放在听证会后辩论摘要中的辩论）且必须放在对证据中支持性法律依据的引用之后。

**11.5**　**补充性法律依据的通知。**

如果一方确定在完成审判后辩论摘要之后且 ALJ 发布违反规定的最终初步裁决之前发布的相关法律依据，该方可提交"补充性法律依据的通知"。任何此类通知应限于单份打字机制作页面且应包括对补充性法律依据的引用和其相关性的简要说明。通知应使用 EDIS 提交并送达至所有各方。任何对通知的回复应在送达通知后两日内提交。

**12**　**案例引用**

官方案例报告引用必须包括在内供一方辩论摘要或诉状中引用的任何公开判决或法令使用。如果所引用文件未在官方案例报告中发布但可在电子数据库中获取，各方应依据相关 Bluebook 格式引用电子数据库。如果一方引用委员会或另一个法庭未发布或指定为不用于发布的意见、法令、判决或其他书面处理，该方必须提交并送达该意见、法令、判决或处理之副本并附有对其进行引用的辩论摘要或其他文件。

**13**　**听证会后辩论摘要协调**

如果调查中有一个以上的原告和/或被告，原告和/或被告应协调其工作并提交一份辩论摘要。此条规定的例外将根据具体情况决定。此条规定也适用于听证会后回复辩论摘要。

**14**　**各方间合作**

由于第 337 节施加的时间限制，律师应尝试依据规定或协商的协议解决遇到的任何程序问题，包括这些与证据的证据开示和提交有关的问题。为了确保此次调查过程中的可靠合作精神，各方律师之间秉承良好意愿的沟通是重要而且必需的。

**15    单方面联系**

不应与行政法法官进行单方面联系。任何技术或程序性质的问题应转给行政法法官的律师顾问 Ted Jou，电话 (202) 205-3316，或电子邮箱 edward.jou@usitc.gov。

**附件 A**

**美国国际贸易委员会**
**华盛顿特区**

关于

**某些······**
事宜

调查编号 337-TA-_

**传票**

**致**：姓名

地址

**注意**：据《1930 年关税法案》（经修订）(《美国法典》第 19 篇第 1337 条) 第 337 节、《美国法典》第 5 篇第 556(c)(2)条之法律依据并依据美国国际贸易委员会实践和程序规则之《联邦法规汇编》第 19 篇第 210.32 条之规定，且在_____[ "原告" / "被告"等，之后是公司名称]提出传票申请的情况下，

**特此命令你在_____**（时间），____（地点）或约定的此类其他时间和地点出示您持有、托管或控制的所有文件，这些文件在本文件附件 A 中列出并有所说明。此类文件出示将根据需要用于检查和复制目的。

如果本文件附件 A 中列出并说明的任何文件的出示因为特许权利而保留，各项被保留的文件应在特许文件列表中单独标明。特许文件列表必须单独标明各份文件，在各份文件中至少指明：(1) 日期； (2) 作者/发件人；(3) 收件人，包括副本收件人；以及 (4) 文件的一般争议问题。发件人和收件人应按照职位和雇佣其或相关的实体（企业或公司等）分类。如果发件人或收件人是律师或外国专利代理人，他或她应该进行此类标识。所主张特权的类型连同所主张特权的所有元素均已满足且未针对各份文件被放弃的证明也必须说明。

如果本文件附件 A 中列出并说明的任何文件或内容被视为 "机密商业信息"（该术语在本文件所附的保护令中有所定义），此类文件或内容应依据保护令条款和规定出示。

限制或撤销此传票的任何动议应在相关接收后**十 (10) 天**内提交。在提交关于此传票的任何动议时，应同时将两份副本送达至行政法法官办公室。

    兹证明，美国国际贸易委员会的以下签名者于 201 年__月__日在华盛顿特区特此签署并盖上美国国际贸易委员会的印章。

                    Dee Lord
                    行政法法官
                    美国国际贸易委员会

**美国国际贸易委员会**
**华盛顿特区**

关于

**某些······**
事宜

调查编号 337-TA-_

**致：**姓名

地址

**注意：**据《1930 年关税法案》（经修订）(《美国法典》第 19 篇第 1337 条) 第 337 节、《美国法典》第 5 篇第 556(c)(2)条之法律依据并依据美国国际贸易委员会实践和程序规则之 《联邦法规汇编》第 19 篇第 210.32 条之规定，且在_____[ "原告" / "被告" 等，之后是公司名称]提出传票申请的情况下，

**特此命令你**在_____（时间），___（地点）或约定的此类其他时间和地点为你在口头审问后的宣誓作证而出现，该宣誓作证是关于本文件附件 A 中规定的争议事项。

此次宣誓作证将在公证人或经授权管理宣誓的其他人员面前进行，并日复一日继续直至完成。

如果你的任何证词被视为 "机密商业信息"（该术语在本文件所附的保护令中有所定义），此类证词应依据保护令条款和规定进行指定和处理。

限制或撤销此传票的任何动议应在相关接收后**十 (10) 天**内提交。在提交关于此传票的任何动议时，应同时将两份礼节性副本送达至行政法法官办公室。

兹证明，美国国际贸易委员会的以下签名者于 201 年__月__日
在华盛顿特区特此签署并盖上所述美国国际贸易委员会的印章。

Dee Lord
行政法法官
美国国际贸易委员会

附件 **B**

**所有辩论摘要的概要**

I.     引言
       A.     程序历史
       B.     各方
       C.     技术概述
       D.     问题专利
       E.     问题产品
II.    司法管辖权
III.   专利 "A"
       A.     专利范围
              1.     首条争议权利条款（专利范围 1、2、3……）
              2.     第二条争议权利条款（专利范围 1、2、3……）
       B.     侵权
              1.     专利范围 1
              2.     专利范围 2
       A.     国内产业 – "技术目标"
       B.     有效性
              1.     依据《美国法典》第 35 篇第 102(a) 条的预计情况
              2.     依据《美国法典》第 35 篇第 103(a) 条的显著性
       A.     不可执行性
       B.     其他辩护内容
IV.    专利 "B"……
V.     国内产业 – 经济目标
       A.     工厂和设备的巨大投资
       B.     劳动力或资本的大量使用
VI.    救济措施和关系


TRANSPERFECT

# AFFIDAVIT OF ACCURACY

I, Angela Lo, hereby certify that the document "ITC Inv. No. 337-TA-1010 - Order No. 2" is to the best of my knowledge and belief, a true and accurate translation from English to Simplified Chinese.

Angela Lo

3 Park Avenue, 38th floor

New York, NY 10016

Sworn to before me this

June 29th , 2016

Signature, Notary Public

ALITASHA YOUNGER
Notary Public - State of New York
No. 01YO6335137
Qualified in KING County
Commission Expires Dec 28, 2019

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

附件 **E**

诉状

# COVINGTON

北京　布鲁塞尔　伦敦　洛杉矶
纽约　旧金山　首尔
上海　硅谷　华盛顿

**Sturgis M. Sobin**

Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC  20001-4956
电话: +12026625040
ssobin@cov.com

**通过直接递交**　　　　　　　　　　　　　　　　2016 年 5 月 23 日

尊敬的 Lisa R. Barton，秘书
美国国际贸易委员会
500 E Street, SW., Room 112 Washington,
DC 20436

　　　　　回复: *关于某些半导体装置、半导体装置包以及含有同类装置的产品事宜，调查编号*
　　　　　*337-TA*＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

尊敬的 Barton 秘书:

　　　　请在附件中查收支持 Tessera Technologies, Inc.、 Tessera, Inc. 和 Invensas Corporation（统称
"Tessera" 或 "原告"）之请求的文件，他们认为美国国际贸易委员会依据 《1930 年关税法案》
（经修订）第 337 节就某些半导体装置、半导体装置包以及包含同类装置的产品发起调查。原告
提交的内容包括以下文件:

1. 依据委员会规则 210.8(a)(1)(i) ，经核实诉状一份 (1) 原件和八 (8) 份纸质副本。

2. 依据委员会规则 210.8(a)(l)(i) 和 210.12(a)(9) 载于 CD 上的核实诉状之公开证据
   的一 (1) 份电子副本，其中包括:

   a. 依据委员会规则 Rule 210.12(a)(9)(i) ，美国专利申请号 6,856,007（ "' 007
      专利"）；6,849,946（ "' 946 专利"）；以及 6,133,136（ "' 136 专
      利"） 一 (1) 份经核实的电子副本分别作为核实诉状之证据 1、3 和
      5，；以及

   b. 依据委员会规则 210.12(a)(9)(ii) ，' 007、' 946 和 ' 136 专利各自的转让
      记录一份经核实的电子副本分别作为证据 2、4 和 6 。

3. 依据委员会规则 201.6(c) 和 210.8(a)(1)(ii) ，载于 CD 的核实诉状之保密证据的一
   (1) 份电子副本。

4. 依据委员会规则 201.6(c) 和 210.8(a)(l)(iii) 用于送达拟定被告的核实诉状之二十四
   (24) 份额外副本及随附的公开证据之电子副本；在拟定被告签署了保护令后用于
   送达拟定被告之律师的核实诉状之保密证据的

**COVINGTON**

尊敬的 Lisa R. Barton 秘书
美国国际贸易委员会
2016 年 5 月 23 日
第 2 页

电子副本的二十四 (24) 份额外副本。

5. 依据委员会规则 210.8(a)(l)(iv) 分别用于送达英国、法国、中国台湾及新加坡共和国大使馆的核实诉状之一 (1) 份额外纸质副本（共计四 (4) 份额外副本）。

6. 依据委员会规则 210.12(c)(1)'007、'946 和'136 专利各自的起诉历史之一 (1) 份纸质原件和三 (3) 份电子副本，以及依据委员会规则 210.12(c)(2)'007、'946 和'136 专利的起诉历史中提及的各项技术引用的各项专利和适用页面的四 (4) 份副本。

7. 依据委员会规则 201.6(b) 和 210.5(d) 要求对核实诉状的保密证据 9-29 和 75-92 中所包含的信息进行保密处理的信函及认证。

8. 关于依据委员会规则 210.8(b) 原告在核实诉状中寻求的救济法令之公共利益声明。

如有关于此次提交文件的任何问题，请与我联系。

此致，
[签名]
Sturgis Sobin

# COVINGTON

北京 布鲁塞尔 伦敦 洛杉矶
纽约 旧金山 首尔
上海 硅谷 华盛顿

**Sturgis M. Sobin**

Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
电话：+12026625040
Ssobin@cov.com

**通过直接递交**                                                        2016 年 5 月 23 日

尊敬的 Lisa R. Barton 书记
美国国际贸易委员会
500 E Street, SW., Room 112
Washington, DC 20436

**回复：**关于某些半导体装置、半导体装置包以及含有同类装置的产品事宜，调查编号 337-TA_____

尊敬的 Barton 秘书：

依据委员会规则 201.6，原告 Tessera Technologies, Inc.、Tessera, Inc. 和 Invensas Corporation（统称 "Tessera"）恭请对核实诉状的保密证据 9-29 和 75-92 中所包含的某些机密商业信息进行保密处理。

Tessera 寻求保密处理的证据中的信息包括被许可方保密列表（证据 75）、保密许可协议（证据 79、80、87 和 91）、商业秘密性质的保密技术分析（证据 9-29、81-85、88-90 和 92）、Tessera 在国内行业所进行投资的性质和重要性之保密说明（证据 76）及其他方在国内行业所进行投资的性质和重要性之保密说明（证据 77-78）。此类信息符合作为委员会规则 201.6 下的机密商业信息的资格，因为实质上相同的信息不会向公众开放，因为此类信息的披露会为 Tessera 造成大量竞争性伤害，因为此类信息的披露可能阻碍委员会未来获取类似信息的工作和能力。

感谢您的关注。如果有关于这一保密处理请求的任何问题，请与我联系。

此致，
[签名]
Sturgis Sobin

美国国际贸易委员会
华盛顿特区

| |
|---|
| 关于<br><br>某些半导体装置、半导体装置包以及含有同类装置的产品事宜 |

调查编号 337-TA-_____

证明

本人，Sturgis M. Sobin 作为原告 Tessera Technologies, Inc.、Tessera, Inc. 和 Invensas

Corporation（统称 "Tessera" 或 "原告"）的律师，声明如下：

1. 本人经过 Tessera 正式授权签署此认证。

2. 本人已审阅 Tessera 寻求保密处理的原告之核实诉状的保密证据 9-29 和 75-92。

3. 据本人所知所信，这些证据中包含的合理查询后成立的实质上相同的信息不向公众

   开放。

在承担伪证罪前提下，本人宣布，以上内容真实准确。

2016 年 5 月 23 日于华盛顿特区签署。

[签名] _____

Sturgis M. Sobin (ssobin@cov.com)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
电话： (202) 662-6000
*原告律师*
*Tessera Technologies, Inc.、Tessera, Inc. 和*
*Invensas Corporation*

美国国际贸易委员会
华盛顿特区

| | |
|---|---|
| 关于<br>**某些半导体装置、半导体装置包以及含有同**<br>**类装置的产品事宜** | 调查编号 337-TA-_____ |

## 公众利益声明

Tessera 依据《联邦法规汇编》 第 19 篇第 210.8(b) 条以恭敬的态度提交了这一公众利益声明。Tessera 寻求将 Broadcom 芯片及侵犯美国专利申请号 6,856,007；6,849,946；和/或 6,133,136 的含有同样芯片的产品被告下游产品（统称"被告产品"）排除。Tessera 还寻求针对停止被告产品之进口、销售、要约销售、使用、市场营销和/或广告的 Broadcom 和下游被告的政府禁令。此次调查中要求发布的救济不会对美国的公众健康、安全或福利情况、美国经济的竞争条件、美国或美国消费者的类似或产生直接竞争的产品之生产造成任何有实际意义的影响。

**(1)    说明依据法令这些产品可能如何在美国使用。**

可能受到排除法令约束的产品包括 Broadcom 的芯片、包含这些芯片的下游被告产品。Broadcom 一般提供六种产品种类的芯片： (1) 宽带接入＋调制解调器；(2) 企业＋网络处理器；(3) 以太网通信＋交换机；(4) 机顶盒＋媒体处理器；

---

[1] 下游被告有：Arista Networks, Inc.；ARRIS International plc；ARRIS Group, Inc.；ARRIS Technology, Inc.；ARRIS Enterprises LLC；ARRIS Solutions, Inc.；Pace Ltd.；Pace Americas, LLC；Pace, USA LLC；ASUSTeK Computer Inc.；ASUS Computer International；Comcast Cable Communications, LLC；Comcast Cable Communications Management, LLC；Comcast Business Communications, LLC；HTC Corporation；HTC America, Inc.；NETGEAR, Inc.; Technicolor S.A.；Technicolor USA, Inc.；Technicolor Connected Home USA LLC。

(5) 无线连接；和 (6) 无线基础设施。诉状第 18 段。这些芯片被用在下游被告的产品中，其中包括移动设备、机顶盒、网关、调制解调器、路由器、以太网交换机、网络路由设备和用于电信、有线电视、网络、云存储和企业系统的基础设施设备。这些产品被用于有限电视和卫星系统及服务、无线和无线网络设备和服务以及基础设施和网络架构及其他方面。

**(2)    确定所请求的救济法令相关的美国境内任何公众健康、安全或福利问题。**

此事宜中排除和禁止令的发布对美国公众健康、安全或福利没有任何负面影响。*参见某些数字电视和包含同类设备的产品及使用同类产品的方法*，调查编号 337-TA-617，评论意见，2009 ITC LEXIS 2465，第 *24 页（2009 年 4 月 23 日）（数字电视"并非影响公众健康和福利的产品类型"）。被告的侵权产品没有独有的安全相关特性。鉴于任何问题产品都可支持对美国境内健康、安全或福利产生*最*小影响的应用，这些产品可按照以下讨论的内容由类似产品或具备直接竞争性的产品进行替换，因为 Broadcom 和下游被告的侵权产品可以方便地替换为许可产品或其他生产商的产品。

**(3)    确定原告、其被许可方或第三方制作的类似或具备直接竞争性并在主题产品被排除的情况下可进行替代的产品。**

如果 Broadcom 和下游被告的被告产品从美国被排除，此次调查中未提及的经授权实施专利技术的实体和第三方制作类似且具备直接竞争性质的产品，这些产品将替代被告产品。例如，Cisco 制作各种网络连接设备产品（例如以太网交换机、云存储和企业系统等），

这些产品与某些下游被告的被告产品直接产生竞争。[2] 同样地，还有各种各样的其他公司制作类似或具备直接竞争性的消费者产品用于有线电视、卫星和无线服务，包括 Humax、Tivo/Rovi、Samsung 和 EchoStar。[3] 此外，有线电视市场正在受到 Netflix、Sling TV 和 Hulu 等内容供应商以及来自 Samsung 和 Panasonic 的 Apple TV、Roku、Google Chromecast 和 Smart TV 等产品的挑战。[4] 简而言之，如果出现排除法令问题，此次调查中未提及的 Tessera 的被许可方和第三方能够替代下游被告的被告产品的具备直接竞争性的产品和服务。

被告的 Broadcom 芯片也是一样。如果被告的 Broadcom 芯片从美国被排除，有具备直接竞争性的产品可替代它们。Broadcom 自己也承认："一般的半导体产业尤其是有线和无线通信市场竞争激烈。"[5] Broadcom 与众多大型国内外半导体芯片供应商竞争，其中包括 Intel、Marvell、Mediatek、Qualcomm、STMicroelectronics、Cavium、NXP 和 Mellanox。[6] 举例来说，Intel 在 (i) 宽带和连接以及 (ii) 基础设施和网络这两个方面都与 Broadcom 竞争。[7] Broadcom 曾公开声明这些竞争对手中有一些拥有比 Broadcom "更长的运营历史和关键的市场地位、更广的知名度、更深的客户基础和明显更强大的财务、销售和

---

[2] http://www.cisco.com/c/en/us/products/index.html

[3] *参阅* Arris International plc Form 10-K (2015)（第 11 -12 页）（在 http://www.sec.gov/Archives/edgar/data/1645494/000119312516485276/d15560d10k.htm.可查）[4] *参阅，例如* XFINITY TV on Samsung Smart TV FAQs, Comcast Corp (available at http://customer.xfinity.com/help-and-support/xfinity-apps/xfinity-tv-samsung-smart-tv/.)

[5] Broadcom Corp. Form 10-K (2014)（第 8 页）（在 http://www.sec.gov/Archives/edgar/data/1054374/000105437415000012/a20141231-10k.htm 可查）

[6] 9 *同上*

[7] *同上*

市场营销、制造、分销和其他资源。"[8]

**(4)** 表明原告、其被许可方和/或第三方是否拥有能力可以依据要求的救济法令在商业意义上合理的时间内在美国替代规定数量的产品。

虽然 Tessera 的客户、其被许可方和其他第三方供应替代产品的当前能力仍是未知,但上述提及的实体例如 Intel、Samsung 和 Cisco 均跻身于世界上最大的半导体和技术公司行列。据所知所信,这些公司有能力在商业意义上合理的时间内依据要求的救济法令替代规定数量的产品。事实上,Broadcom 已经声明,其竞争对手拥有与 Broadcom 相比显然更强大的"制造、分销和其他资源"。[9] 此外,即使 Broadcom 的竞争对手没有能力依据要求的救济法令替代规定数量的产品,面临排除法令的竞争也可能令这些公司以及可能出现的新公司创造、添加或转移产能从而达到之前未满足的要求。Broadcom 自己也承认,存在"竞争对手中出现新的竞争对手或联盟并快速赢得巨大市场份额"的可能性。[10]

**(5)** 说明要求的救济法令将如何影响客户。

排除和禁止令不可能对客户造成负面影响。美国客户可以简单地从很多种具备类似功能的非侵权备选产品中选择一种进行购买。此外,要求的救济法令不可能导致问题产品的客户成本增加。但即使救济法令确实导致客户成本略有升高,

---

[8] *同上*
[9] 9,17 *同上*
[10] 9 *同上*

仅涨价这一措施并不足以保证对救济法令的排除。*某些安有镜片的膜包装*，调查编号 337-TA-406，评论意见, 1999 ITC LEXIS 202 第 *40 页（1999 年 6 月 28 日）（发现涨价"并不能作为在保护知识产权过程中公众利益以任何方式成为负担的理由"）。

日期：2016 年 5 月 23 日

[签名]

Sturgis M. Sobin (ssobin@cov.com) Shara Aranoff (saranoff@cov.com) Daniel E. Valencia (dvalencia@cov.com) COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
电话：(202) 662-6000

Michael K. Plimack (mplimack@cov.com) Dale A. Rice (drice@cov.com)
Nitin Subhedar (nsubhedar@cov.com)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
电话：(415) 591-6000

Robert   T.   Haslam   (rhaslam@cov.com)
Anupam    Sharma    (asharma@cov.com)
Thomas   E.   Garten   (tgarten@cov.com)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive Redwood Shores, CA 94065-1418 电话：(650) 632-4700

*原告律师*
*Tessera Technologies, Inc.、Tessera, Inc. 和 Invensas Corporation*

美国国际贸易委员会
华盛顿特区.

关于

某些半导体装置、半导体装置包以及含有同
类装置的产品事宜

调查编号 337-TA-_____

TESSERA TECHNOLOGIES, INC.、TESSERA, INC. 和 INVENSAS
CORPORATION 依据 《1930 年关税法案》（经修订）之诉状

原告：

Tessera Technologies, Inc.
3025 Orchard Parkway San
Jose, CA 95134
电话：408-321-6000

Tessera, Inc.
3025 Orchard Parkway
San Jose, CA 95134
电话：408-321-6000

Invensas Corporation
3025 Orchard Parkway
San Jose, CA 95134
电话：408-321-6000

原告律师：

Sturgis M. Sobin
Shara Aranoff Daniel
E. Valencia
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, N.W.
Washington, DC 20001
电话：202-662-6000

Michael K. Plimack
Dale A. Rice
Nitin Subhedar
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
电话：415-591-6000

Robert T. Haslam
Anupam Sharma
Thomas E. Garten
COVINGTON & BURLING LLP
333 Twin Dolphin Drive Redwood
Shores, CA 94065-1418 电话：650-
632-4700

拟定被告：

Broadcom Limited 1
Yishun Avenue 7
Singapore 768923
电话：+65 6755 7888

Broadcom Corporation
5300 California Ave.
Irvine, CA 92617
电话：949-926-5000

Avago Technologies Limited 1
Yishun Avenue 7
Singapore 768923
电话：+65 6215 4342

Avago Technologies U.S. Inc.
1320 Ridder Park Drive
San Jose, CA 95131
电话：408-433-8000

Arista Networks, Inc.
5453 Great America Parkway
Santa Clara, CA 95054
电话：408-547-5500

ARRIS International plc
3871 Lakefield Drive
Suwanee, GA 30024
电话：678-473-2000

ARRIS Group, Inc.
3871 Lakefield Drive
Suwanee, GA 30024
电话：678-473-2000

ARRIS Technology, Inc.
101 Tournament Drive
Horsham, PA 19044
电话：215-323-1000

ARRIS Enterprises LLC
3871 Lakefield Drive
Suwanee, GA 30024
电话：678-473-2000

ARRIS Solutions, Inc.
3871 Lakefield Drive
Suwanee, GA 30024
电话：678-473-2000

Pace Ltd. (formerly Pace plc)
Victoria Road, Saltaire
West Yorkshire BD18 3LF
England
电话：+44 1274 532000

Pace Americas, LLC
3701 FAU Boulevard, Suite 200
Boca Raton, FL 33431
电话：561-995-6000

Pace USA, LLC
3701 FAU Boulevard, Suite 200
Boca Raton, FL 33431
电话：561-995-6000

ASUSTeK Computer Inc.
No. 15, Li-Te Road, Peitou,
Taipei
Taiwan, R.O.C.
电话：+886 2 2894 3447

ASUS Computer International 800
Corporate Way
Fremont, CA 94539
电话：510-739-3777

Comcast Cable Communications, LLC 1500
Market Street
Philadelphia, PA 19102
电话：215-567-2027

Comcast Cable Communications
Management, LLC
1701 John F Kennedy Blvd
Philadelphia, PA, 19103
电话：215-286-1700

Comcast Business Communications, LLC 1701
John F Kennedy Blvd
Philadelphia, PA, 19103
电话：215-286-1700

HTC Corporation
23 Xinghau Road
Taoyuan, 330
Taiwan, R.O.C.
电话： +886 3 375 3252

HTC America, Inc.
13920 SE Eastgate Way, Suite 200
Bellevue, WA 98005
电话： 425-679-5318

NETGEAR, Inc.
350 East Plumeria Drive
San Jose, CA 95134
电话： 408-907-8000

Technicolor S.A.
1-5 , rue Jeanne d'Arc 92130
Issy-Les-Moulineaux France
电话： +33 1 41 86 50 00

Technicolor   USA,   Inc.
101   West   103rd   Street
Indianapolis, IN 46290
电话： 317-816-1477

Technicolor Connected Home USA LLC 101
West 103rd Street
Indianapolis, IN 46290
电话： 317-816-1477

<u>**目录**</u>

I.　引言 ........................................................................................................................... 1

II.　原告 ........................................................................................................................ 7

III.　拟定被告 ............................................................................................................... 8
　　A.　Broadcom 和 Avago 被告 ........................................................................... 8
　　B.　Arista Networks ............................................................................................. 9
　　C.　ARRIS Group 和 Pace 被告 ....................................................................... 9
　　D.　ASUS 被告 .................................................................................................. 11
　　E.　Comcast Cable 被告 ................................................................................... 11
　　F.　HTC 被告 ..................................................................................................... 12
　　G.　NETGEAR ................................................................................................... 13
　　H.　Technicolor 被告 ........................................................................................ 13

IV.　被告的问题产品 ................................................................................................. 14

V.　问题专利 .............................................................................................................. 16
　　A.　美国专利号 6,856,007. ............................................................................. 16
　　B.　美国专利号 6,849,946. ............................................................................. 17
　　C.　美国专利号 6,133,136. ............................................................................. 19

VI.　非法和不公平行为 – 专利侵权 ........................................................................ 20
　　A.　Broadcom 被告 ........................................................................................... 20
　　　　1.　代表性涉案产品 ............................................................................... 20
　　　　2.　'007 专利侵权 .................................................................................. 22
　　　　3.　'946 专利侵权 .................................................................................. 23
　　　　4.　'136 专利侵权 .................................................................................. 23
　　　　5.　销售和进口的具体实例 ................................................................... 23
　　B.　Arista Networks ........................................................................................... 26

|   | 1. | 代表性涉案产品 | 26 |
|---|----|------------|-----|
|   | 2. | ' 946 专利侵权 | 27 |
|   | 3. | ' 136 专利侵权 | 27 |
|   | 4. | 销售和进口的具体实例 | 28 |
| C. | | ARRIS 被告 | 29 |
|   | 1. | 代表性涉案产品 | 29 |
|   | 2. | ' 946 专利侵权 | 30 |
|   | 3. | ' 136 专利侵权 | 30 |
|   | 4. | 销售和进口的具体实例 | 31 |
| D. | | ASUS 被告 | 31 |
|   | 1. | 代表性涉案产品 | 31 |
|   | 2. | ' 946 专利侵权 | 32 |
|   | 3. | ' 136 专利侵权 | 32 |
|   | 4. | 销售和进口的具体实例 | 32 |
| E. | | Comcast Cable 被告 | 33 |
|   | 1. | 代表性涉案产品 | 33 |
|   | 2. | ' 007 专利侵权 | 34 |
|   | 3. | ' 946 专利侵权 | 34 |
|   | 4. | ' 136 专利侵权 | 34 |
|   | 5. | 销售和进口的具体实例 | 35 |
| F. | | HTC 被告 | 35 |
|   | 1. | 代表性涉案产品 | 35 |
|   | 2. | ' 946 专利侵权 | 36 |
|   | 3. | 销售和进口的具体实例 | 36 |
| G. | | NETGEAR | 36 |

|  |  | 1. | 代表性涉案产品 | 36 |
|  |  | 2. | ’007 专利侵权 | 37 |
|  |  | 3. | ’946 专利侵权 | 37 |
|  |  | 4. | ’136 专利侵权 | 38 |
|  |  | 5. | 销售和进口的具体实例 | 38 |
|  | H. | | Technicolor 被告 | 38 |
|  |  | 1. | 代表性涉案产品 | 38 |
|  |  | 2. | ’007 专利侵权 | 39 |
|  |  | 3. | ’946 专利侵权 | 40 |
|  |  | 4. | ’136 专利侵权 | 40 |
|  |  | 5. | 销售和进口的具体实例 | 40 |
| VII. | | | 依据统一关税税率表侵权产品的分类 | 40 |
| VIII. | | | 被许可方 | 41 |
| IX. | | | TESSERA 满足国内行业要求 | 41 |
|  | A. | | 达到国内行业要求的技术目标 | 41 |
|  |  | 1. | ’007 专利实践 | 42 |
|  |  | 2. | ’946 专利实践 | 42 |
|  |  | 3. | ’136 专利实践 | 43 |
|  | B. | | 达到国内行业要求的经济目标 | 43 |
|  |  | 1. | Tessera | 43 |
|  |  | 2. | Tessera 的被许可方 | 46 |
| X. | | | 相关诉讼 | 53 |
| XI. | | | 要求的救济 | 54 |

**证据列表**

| 证据编号 | 文件说明 |
|---|---|
| 1. | 认证美国专利编号 6,856,007 |
| 2. | 认证转让记录美国专利编号 6,856,007 |
| 3. | 认证美国专利编号 6,849,946 |
| 4. | 认证转让记录美国专利编号 6,849,946 |
| 5. | 认证美国专利编号 6,133,136 |
| 6. | 认证转让记录美国专利编号 6,133,136 |
| 7. | Broadcom 2014 年度报告（节选） |
| 8. | "Avago 收购 Broadcom,"投资者演示，2015 年 5 月 28 日 |
| 9. | BCM4331 机密＇007 专利侵权图表 |
| 10. | BCM43602 机密＇007 专利侵权图表 |
| 11. | BCM94360 机密＇007 专利侵权图表 |
| 12. | BCM3383 机密＇946 专利侵权图表 |
| 13. | BCM4331 机密＇946 专利侵权图表 |
| 14. | BCM4343 机密＇946 专利侵权图表 |
| 15. | BCM4356 机密＇946 专利侵权图表 |
| 16. | BCM43602 机密＇946 专利侵权图表 |
| 17. | BCM4366 机密＇946 专利侵权图表 |
| 18. | BCM4709 机密＇946 专利侵权图表 |
| 19. | BCM4752 机密＇946 专利侵权图表 |
| 20. | BCM53125 机密＇946 专利侵权图表 |
| 21. | BCM56850 机密＇946 专利侵权图表 |
| 22. | BCM7425 机密＇946 专利侵权图表 |
| 23. | BCM3383 机密＇136 专利侵权图表 |
| 24. | BCM33843 机密＇136 专利侵权图表 |
| 25. | BCM43570 机密＇136 专利侵权图表 |
| 26. | BCM4709 机密＇136 专利侵权图表 |
| 27. | BCM56850 机密＇136 专利侵权图表 |
| 28. | BCM7425 机密＇136 专利侵权图表 |
| 29. | BCM7435 机密＇136 专利侵权图表 |
| 30. | BCM3383 的 Broadcom 产品网页 |
| 31. | BCM33843 的 Broadcom 产品网页 |
| 32. | BCM4331 的 Broadcom 产品网页 |
| 33. | BCM4343 的 Broadcom 新闻发布会 |
| 34. | BCM4356 的 Broadcom 产品网页 |
| 35. | BCM43570 的 Broadcom 产品网页 |
| 36. | BCM43602 的 Broadcom 新闻发布会 |

| 证据编号 | 文件说明 |
|---|---|
| 37. | BCM4366 的 Broadcom 产品网页 |
| 38. | BCM4709 的 Broadcom 产品网页 |
| 39. | BCM4752 的 Broadcom 产品网页 |
| 40. | BCM53125 的 Broadcom 产品网页 |
| 41. | BCM56850 的 Broadcom 产品简报 |
| 42. | BCM7425 的 Broadcom 产品网页 |
| 43. | BCM7435 的 Broadcom 产品网页 |
| 44. | BCM94360 的 Broadcom 产品简报 |
| 45. | BCM4360 的 Broadcom 产品网页 |
| 46. | 截至 2014 年 6 月 30 日的 Arista Networks 表 10Q（节选） |
| 47. | Arista Networks, Inc. 2014 年度报告（节选） |
| 48. | Arista Networks, Inc. 2015 年度报告（节选） |
| 49. | Arista Networks 7050X、7250X、7300X 和 7500E 系列安全目标，2015 年 7 月 22 日（节选） |
| 50. | ARRIS Group, Inc. 2015 年度报告（节选） |
| 51. | ARRIS MX011ANM DVR 机顶盒产品照片 |
| 52. | ARRIS PX013ANM 高清机顶盒产品照片 |
| 53. | ASUSTeK Computer Inc. 2014 年度报告（节选） |
| 54. | ASUS ZenFone 产品照片 |
| 55. | ASUS RT-AC5300 路由器产品照片 |
| 56. | Comcast Corporation 2015 年度报告（节选） |
| 57. | HTC 2014 年度报告（节选） |
| 58. | HTC One M9 产品照片 |
| 59. | NETGEAR, Inc. 2015 年度报告（节选） |
| 60. | NETGEAR Nighthawk X6 AC3200 三频段无线千兆路由器（型号 R8000）产品照片 |
| 61. | NETGEAR Nighthawk X8 AC5300 智能无线路由器（型号 R8500）产品照片 |
| 62. | Technicolor 2015 年度报告（节选） |
| 63. | Technicolor TC-8305C 产品照片 |
| 64. | BCM94360 产品照片 |
| 65. | Lori Sharkey 关于进口和销售具体实例的声明 |
| 66. | Rosa Contreras 关于进口和销售具体实例的声明 |
| 67. | Micron Timeline 获取地址 https://www.micron.com/about/our-company/milestone-timeline-and-awards/timeline |
| 68. | Micron Technology, Inc. 1999 年度报告（节选） |

| 证据编号 | 文件说明 |
|---|---|
| 69. | Cypress Semiconductor Corporation 2015 年度报告（节选） |
| 70. | Cypress Careers（丝绸之路网站） |
| 71. | IBM 2015 年度报告（节选） |
| 72. | IBM 2014 年度报告（节选） |
| 73. | IBM 新闻发布会，"IBM 微处理器为 Nintendo 的新 Wii U 系统提供电源"，日期 2011 年 6 月 7 日 |
| 74. | DailyTech 文章，"IBM 向 Global Foundries 支付 $15 亿美元卸下 Fab Business"，日期 2014 年 10 月 21 日 |
| 75. | 机密被许可方列表 |
| 76. | John Farrell (Tessera) 保密声明 |
| 77. | Micron 1 号申报者保密声明（包括 Micron 数据表） |
| 78. | Micron 2 号申报者保密声明 |
| 79. | Tessera Technologies, Inc. 与 Micron Technology, Inc. 之间的保密专利许可协议 |
| 80. | 保密 Micron xFD 许可证与 HVM 合作协议 |
| 81. | 关于 Micron SSD M510DC'007 专利实践之机密图表 |
| 82. | 关于 Micron MT44K16M36RB-125E：'946 专利实践之机密图表 |
| 83. | 关于 Micron MT29F8G08ABBCAH4-IT: C'946 专利实践之机密图表 |
| 84. | 关于 Micron MT42L128M32D1GU-25 WT:A'946 专利实践之机密图表 |
| 85. | 关于 Micron MT47H128M8CF-3:H'946 专利实践之机密图表 |
| 86. | Cypress 申报者机密 Cypress 声明 |
| 87. | Tessera Advanced Technologies, Inc. 与 Cypress Semiconductor Corporation 之间的机密专利购买协议 |
| 88. | 关于 Cypress S29GL01GS11DHIV2'946 专利实践之机密图表 |
| 89. | 关于 Cypress S29GL128P11FFI01'946 专利实践之机密图表 |
| 90. | 关于 Cypress CY15B104Q-SXI'946 专利实践之机密图表 |
| 91. | Tessera Intellectual Properties, Inc. 与 International Business Machines Corporation 之间的机密专利转让协议 |
| 92. | 关于 IBM Espresso Die'136 专利实践之机密图表 |
| 93. | 购买 Micron 产品的收据 |
| 94. | 购买 Cypress 产品的收据 |
| 95. | 购买 IBM 产品的收据 |

| 证据编号 | 文件说明 |
|---|---|
| 96. | Cypress S29GL01GS11DHIV2 数据表 |
| 97. | Cypress S29GL01GS11DHIV2 产品照片 |
| 98. | Cypress S29GL128P11FFI01 数据表 |
| 99. | Cypress S29GL128P11FFI01 产品照片 |
| 100. | Cypress CY15B104Q-SXI 数据表 |
| 101. | Cypress CY15B104Q-SXI 产品照片 |

## LIST OF APPENDICES 附件
## 列表

**附件编号**　　　**文件说明**

A.　　　美国专利编号 6,856,007 的认证起诉历史

B.　　　美国专利编号 6,849,946 的认证起诉历史

C.　　　美国专利编号 6,133,136 的认证起诉历史

D.　　　美国专利编号 6,856,007 之起诉历史中引用的参考文件副本

E.　　　美国专利编号 U.S. 6,849,946 之起诉历史中引用的参考文件副本

F.　　　美国专利编号 6,133,136 之起诉历史中引用的参考文件副本

## I.　引言

1.　　　Tessera Technologies, Inc. 及其全资子公司 Tessera, Inc. 和 Invensas Corporation（"Invensas"）（统称 "Tessera" 或 "原告"）要求美国国际贸易委员会依据 1930 年关税法案（经修订）、《美国法典》第 19 篇第 1337 条（"第 337 节"）发起调查，对某些半导体装置、半导体装置包和含有同类装置的产品的非法进口、以进口为目的的销售和/或进口后销售实施救济。依据美国专利编号 6,856,007（"'007 专利"）、6,849,946（"'946 专利"）和 6,133,136（"'136 专利"）（统称"据称专利"），这些产品侵犯了 Tessera 的专利权。[1]

2.　　　拟定被告包括：(a) Broadcom Limited 及其全资子公司

Broadcom Corporation、Avago Technologies Limited 和 Avago Technologies U.S. Inc.（统称

"Broadcom" 或 "Broadcom 被告"）；(b) Arista Networks, Inc.（"Arista Networks"）；(c) ARRIS

International plc 及其直接和间接子公司 ARRIS Group, Inc.、ARRIS Technology, Inc.、ARRIS

Enterprises LLC、ARRIS Solutions, Inc.、Pace Ltd.（原 Pace plc）、Pace Americas, LLC 和 Pace, USA

LLC（统称 "ARRIS" 或 "ARRIS 被告"）；(d) ASUSTeK Computer Inc. 和 ASUS Computer

International（统称 "ASUS" 或 "ASUS 被告"）；(e) Comcast Cable Communications, LLC、

Comcast Cable Communications Management, LLC 和 Comcast Business Communications, LLC（统称

"Comcast Cable" 或 "Comcast Cable 被告"）；(f) HTC Corporation 和 HTC America, Inc.（统称

"HTC" 或 "HTC 被告"）；(g) NETGEAR, Inc.（"NETGEAR"）；以及 (h) Technicolor S.A.及其直

接或间接子公司 Technicolor

_____

[1] 据称专利的认证副本作为证据 1、3 和 5 与此诉状连同各项据称专利的四份额外副本一起提交。

USA, Inc. 和 Technicolor Connected Home USA LLC（统称 "Technicolor" 或 "Technicolor 被告"）。除 Broadcom 以外的被告是在其产品中使用半导体装置、半导体装置包和含有 Broadcom 制作或由 Broadcom 使用的同类装置的产品的客户（统称"下游被告"）。

3.    Tessera [2] 作为一家总部位于硅谷、员工超过 250 人（包括 200 多位科学家和工程师）的上市公司，在其 25 年的发展历程中，建立了美国专利系统历史上最大规模同时也最具产出能力的研究、开发和许可证业务。Tessera 研究并开发半导体和成像技术，并将其技术和/或保护技术的专利转让给在其产品中使用其技术的客户或就此向其客户颁发许可证。这一科学家、工程师及其他许可专业人士组成的团队长久以来有条不紊地努力令公司及其股东得到了数十亿美元的收入，形成了数以百计的许可证协议以及与主要产业参与方的共同开发合作关系，并为美国经济创造了实质性的收入流。截至此文件提交之日，Tessera 在承认这一确立追踪记录的情况下，其市值达到了 $15 亿美元。在三个不同的场合，委员会曾承认 Tessera 许可业务的价值，并发现其满足了 19 U.S.C. § 1337 (a)(3)(C) 的国内行业要求。[3]

─────────────────────

[2] Tessera Technologies, Inc. 是包括 Tessera, Inc.、Invensas 和其他子公司在内的企业家族的最终母公司，这些公司致力于技术的研究、开发和许可。为此诉状的目的，"Tessera" 还包括作为原告 Tessera Technologies, Inc. 的子公司的其他相关实体

[3] *参阅某些半导体芯片（最小化的包装规格）及包含同类芯片的产品*，调查编号 337-TA-432, 初步裁决（法令编号 13），*非审阁*，第 13 页（2001 年 1 月 24 日）（"Tessera 在专利许可方面的投资是巨大的"）；*某些半导体芯片（最小化的包装规格）及包含同类芯片的产品 (II)*，调查编号 337-TA-605，最终稿（续……）

4.　　Tessera 自 1990 年成立以来就是半导体封装技术方面的创新者。

Tessera 的"兼容芯片"(TCC<sup>®</sup>) 芯片级包装技术彻底改变了封装的世界，委员会的一个行政法法官发现 Tessera 的发明导致了半导体行业的"范式转换"。<sup>4</sup> Tessera 的 TCC<sup>®</sup> 芯片包装成为了历史上采用范围最广泛的封装技术之一。它被用于近乎 100% 的当代 DRAM 芯片和各种各样的半导体装置中，这样的装置在智能手机、平板电脑和其他电子产品中随处可见。自 Tessera 于 2003 年 11 月首次公开发行以来，其超过 $20 亿美元的收入代表着其在研究、开发和许可创新性技术以及协助其客户实施大批量生产可靠、小型化、好性能和具有成本效益的半导体包方面的相当可观的投资回报。过去三年中，Tessera 在研究和开发上花费了超过 $92,000,000 美元。

5.　　Tessera 继续在下一代封装和相互连接技术上进行投资，并扩展至图像处理等其他领域。在实现产品多元化的过程中，Tessera 努力识别在半导体封装方面补充其核心竞争力并为其客户提供价值的技术。为此，Tessera 组建了

---

初步裁决，*相关部分非审阅内容*，at *142（2008 年 12 月 1 日）（"考虑到 Tessera 在许可其 TCC 封装技术方面投入的大量资金和国内资源，包括'326 和'419 资源，ALJ 认为 Tessera 积极利用其知识产权，这样的投资显然是巨大的"）；*某些半导体芯片（最小化的包装规格）及包含同类芯片的产品 (III)*，调查编号 337-TA-630，初步裁决（法令编号 31）（2008 年 9 月 16 日）（发现 Tessera 满足基于许可发放的国内行业要求）。

<sup>4</sup> *某些半导体芯片（最小化的包装规格）及包含同类芯片的产品*，调查编号 337-TA-432，初步裁决 第 *64 页（2001 年 9 月 25 日）（"此决议为'范式转换'，即显然之前从未有人想过的内容。"）。

Invensas（它在美国雇佣了 40 多位科学家和工程师）继续在高级封装和相互连接技术及其他领域
进行研究和开发工作。Tessera 还收购了 FotoNation Limited 和 Ziptronix, Inc. 等技术公司，其主要目
的在于通过发放许可和与 Tessera 客户的技术合作推动其各自的图像处理和半导体键合技术在商
业领域的采用。

6.　　　Tessera 拥有许多的客户，包括大型半导体公司、移动设备制造商
和小型研究机构。Tessera 曾将其技术许可办法给数百家公司和机构，其中包括 Intel Corporation、
Micron Technology, Inc.（"Micron"）、Samsung Electronics Co., Ltd.、SK hynix Inc. 和 Sony Corporation
等行业领导者。Tessera 的业务开发活动主要侧重于在技术、市场营销和行政管理层面发展关系、
确定 Tessera 客户的需求和产品要求、在整个开发周期中管理其技术的开发和应用并创建材料以便
协助此类技术的应用。Tessera 的研究和开发团队与其销售和市场营销团队以及其客户和合作伙伴
密切合作，及时以实现成本有效性的方式将其优质技术引入市场。

7.　　　Tessera 在内部开发技术的努力加上其技术收购工作已经产生了大量的专利。
Tessera 最近在 IEEE 综览的"2015 年专利实力排行榜"中得到认可，跻身半导体制造业最强专利
组合行列中。IEEE 综览是电气与电子工程师学会 (IEEE) 的旗舰杂志，专利实力排行榜是基于对全
世界 6000 多家商业企业、学术机构、非盈利组织和政府机构的专利组合的客观、量化基准评定。

这一排名不仅考虑到各个组织的专利组合的规模，也将发展、影响、原创性和普遍适用性等各项特征中反映的质量考虑在内。Tessera Technologies, Inc. 和 Invensas 在半导体制造排行榜上分别名列第 8 和第 11 位。

8.　　　半导体设计和制造业的领先公司已经通过 Tessera 专有技术知识和专利（包括据称专利）的许可证承认了 Tessera 技术的价值。

9.　　　与此相反，尽管 Tessera 在过去数年里认真且不断努力寻求与 Broadcom 达成商业关系，但 Broadcom 未能参与同 Tessera 的有意义的许可谈话。相反地，Broadcom 继续其对半导体装置、半导体装置包和包含同类装置的产品（这些由 Broadcom 制造或为 Broadcom 制造）的非法进口、以进口为目的的销售和/或进口后销售，这些装置和产品直接或间接侵犯了一项或多项据称专利（"Broadcom 被告产品"）。Broadcom 及其客户对 Tessera 之专利发明的未经授权的使用是广泛而普遍的——Broadcom 被告产品遍布所有 Broadcom 的产品线。Broadcom 被告产品是 Broadcom 和下游被告正在进口、以进口为目的销售和/或进口后销售的数百种不同产品，这些产品涵盖各种各样的技术（统称"被告产品"）。

10.　　基于 Tessera 在其专利许可业务中的大量投资和 Tessera 被许可方（包括 Micron、Cypress Semiconductor Corporation（"Cypress"）和 International Business Machines Corporation（"IBM"））在其各自的国内制造、装配、测试和研究开发及其他活动中的投资依据第 337(a)(2) 和 (a)(3) 节受到保护的被告专利和产品中存在着一个国内产业。

11.    Tessera 要求委员会对 Broadcom 和下游被告的不法行为进行调查。

Tessera 称 Broadcom 和下游被告的被告产品直接侵犯了至少以下各项据称专利权利：'007 专利权利 13、16 和 18；'946 专利权利 16、17、18、19、20 和 22；以及 '136 专利权利 1、2、3、5、6、11、12、13、14、15、16、24、25、26、27、29、30、33、34 和 35（统称"据称权利"）。

下表总结了针对各个拟定被告提出的据称权利：

| 被告 | 专利 | 据称权利 |
|------|------|----------|
| Broadcom | '007 | 13、16、18* |
| | '946 | 16*、17、18、19、20、22 |
| | '136 | 1*、2、3、5、6、11*、12、13、14、15、16、24、25、26、27、29、30、33， |
| Arista Networks | '946 | 16*、17、18、19、22 |
| | '136 | 1*、2、3、5、6、11*、12、13、14、15、16、24、25、26、27、29、30、33， |
| ARRIS | '946 | 16*、17、18、19、20、22 |
| | '136 | 1*、2、3、5、6、11*、12、13、14、15、16、24、25、26、27、29、30、33， |
| ASUS | '946 | 16*、17、18、19、20、22 |
| | '136 | 1*、2、3、5、6、11*、12、13、14、15、16、24、25、26、27、29、30、33， |
| Comcast Cable | '007 | 13、16、18* |
| | '946 | 16*、17、18、19、20、22 |
| | '136 | 1*、2、3、5、6、11*、12、13、14、15、16、24、25、26、27、29、30、33， |
| HTC | '946 | 16*、17、18、19、20 |
| NETGEAR | '007 | 13、16、18* |
| | '946 | 16*、17、18、19、20、22 |
| | '136 | 1*、2、3、5、6、11*、12、13、14、15、16、24、25、26、27、29、30、33， |
| Technicolor | '007 | 13、16、18* |
| | '946 | 16*、17、18、19、20、22 |
| | '136 | 1*、2、3、5、6、11*、12、13、14、15、16、24、25、26、27、29、30、33， |
| * 表示独立权利主张 | | |

12.    Tessera 依据第 Section 337(d) 节要求颁发永久有限排除法令，禁止所有

Broadcom 被告产品和下游被告的被告产品（侵犯一项或多项据称专利的据称权利主张）进入美国。

Tessera 还依据第 337(f) 节要求颁发永久禁止令，命令所有拟定被告禁止参与各项活动，包括但不

限于进口、市场营销、广告、演示、符合在他人产品中使用的资格、分销仓库库存、产品供应以

供销售、出售、分销或使用被告产品或包含被告产品的产品（这些产品侵犯一项或多项据称专利

的据称权利主张）。此外，Tessera 要求委员会依据 19 U.S.C. § 1337(e)(1) 和 (f)(1) 在 60 天的总统复

审期间实施约定，防止 Tessera 及其被许可方的国内产品受到各项据称专利相关的进一步损害。

## II.    原告

13.    原告 Tessera Technologies, Inc.是一家特拉华州公司，其主要营业地点位于

3025 Orchard Parkway, San Jose, California。原告 Tessera, Inc. 和 Invensas Corporation 是 Tessera

Technologies, Inc. 的全资子公司。Tessera, Inc. 和 Invensas 是特拉华州公司，其主要营业地点位于

3025 Orchard Parkway, San Jose, California。

14.    Tessera 企业家族的最终母公司 Tessera Technologies, Inc.以约 $30 美元的股价

在纳斯达克股票交易所上市（截至 2016 年 5 月 20 日）。其当前市值为约 $15 亿美元。

15.    Invensas 自 2011 年开始运营。其研究并开发用于存储、移动设备、计算和智

能对象应用程序的创新半导体封装和相互连接技术。 Invensas 工程团队在多个组装和测试实验

室中开发新技术并建立原型，并执行完整的产品可靠性测试从而支持

其将这些技术解决方案的许可证颁发给原始设备制造商（"OEM"）、原始设计制造商（"ODM"）、集成设备制造商（"IDM"）和海外组装和测试间（"OSAT"）的工作。

> 16. Tessera, Inc. 通过转让'007 专利成为所有者。Invensas 通过转让'136 和'946 专利成为所有者。

## III. 拟定被告

### A. Broadcom 和 Avago 被告

> 17. Broadcom Limited 是一家新加坡公司，其主要办公地点位于新加坡，其公司

联合总部位于新加坡和加利福尼亚州圣何塞。Broadcom Corporation 是一家加利福尼亚州公司，办事处位于加利福尼亚州欧文。Avago Technologies Limited 是一家新加坡公司，其办事处位于新加坡和加利福尼亚州圣何塞。Avago Technologies U.S. Inc. 是一家特拉华州公司，办事处位于加利福尼亚州圣何塞。据所知所信，Broadcom Corporation 和 Avago Technologies Limited 是 Broadcom Limited 的全资子公司，Avago Technologies U.S. Inc. 是 Avago Technologies Limited 的全资子公司。

> 18. 2016 年 2 月 Avago Technologies Limited 和原 Broadcom Corporation 合并后组

成了 Broadcom Limited。合并后的实体将其风格定义为"世界领先的多元化通信半导体公司。"*参阅*/证据 8（"Avago 收购 Broadcom，"投资者演示，2015 年 5 月 28 日）；*另请参阅* http://www.broadcom.com/company；http://www.broadcom.com/company/timeline。Broadcom Corporation 提供六个产品种类的产品：(1) 宽带接入 + 调制解调器；(2) 企业 + 网络处理器；(3) 以太网通信 + 交换机；(4) 机顶盒 + 媒体处理器；(5) 无线连接；以及 (6) 无线接触设施。*参阅*

http://www.broadcom.com/products；*另请参阅*证据 7（Broadcom Corporation 2014 年度报告）。

Tessera 已经在这些不同的产品种类中确定了证明 Broadcom 对据称产品之广泛侵权的典型

Broadcom 产品。

  19.  据所知所信，Broadcom 对 Broadcom 的被告产品进行设计、开发、

制造（通过代表其行事的第三方）、进口至美国、以进口至美国为目的进行销售和/或在进口

至美国后进行销售。

**B.**  **Arista Networks**

  20.  Arista Networks, Inc. 是一家特拉华州公司，其企业总部地址位于

5453 Great America Parkway, Santa Clara, California 95054。

  21.  Arista Networks 是大型互联网公司的云网络解决方案供应商、

云服务供应商和企业的下一代数据中心。其云网络解决方案组成部分包括其可扩展操作系统

（"EOS"）———一套网络应用程序以及其 10/40/100 千兆以太网交换机。*参阅*证据 48（Arista

Networks 2015 年度报告）。据所知所信，Arista Networks 对包含一个或多个 Broadcom 被告产品的

产品（这些产品侵犯一项或多项据称专利，包括但不限于其云网络解决方案和以太网交换机产品）

进行设计、开发、制造（或让其他方代表其进行制造）、进口至美国、以进口至美国进行销售和/

或在进口至美国后进行销售。

**C.**  **ARRIS Group 和 Pace 被告**

  22.  ARRIS International plc（"ARRIS International"）是一家依据英格兰和威尔士

法律成立的公司，其公司总部地址位于 3871 Lakefield Drive, Suwanee, Georgia 30024。ARRIS

Group, Inc. 和 ARRIS Solutions, Inc. 是特拉华州公司，其办事处地址为 3871 Lakefield Drive,

Suwanee, Georgia 30024，他们是 ARRIS International 的全资子公司。

ARRIS Enterprises LLC 是一家特拉华州有限责任公司，其办事处地址为 3871 Lakefield Drive, Suwanee, Georgia 30024，它是 ARRIS International 的全资子公司。ARRIS Technology, Inc. 是一家特拉华州公司，其办事处地址为 101 Tournament Drive, Horsham, Pennsylvania 19044，它是 ARRIS International 的全资子公司。

23.　　Pace Ltd.（原 Pace plc）是 ARRIS International 的全资子公司。它是依据英格兰和威尔士法律成立的公司，其办事处地址为 Victoria Road, Saltaire, West Yorkshire BD18 3LF, England。Pace Americas LLC 和 Pace USA LLC 是 Pace Ltd 的子公司。它们是特拉华州有限责任公司，总部办事处地址为 3701 FAU Boulevard, Suite 200, Boca Raton, Florida 33431。

24.　　ARRIS 被告供应娱乐和通信硬件、软件以及电视、互联网和网络接入相关的服务。他们的客户包括有线电视和电话服务供应商、数字广播卫星运营商和提供媒体、语音和 IP 数据服务的媒体编程人员。ARRIS 被告提供互联网协议电视（"IPTV"）分销系统、宽带接入基础设施平台和相关数据及语音客户房屋设备，例如通过服务供应商租赁和通过零售渠道直接向客户销售的机顶盒和媒体网关。他们也提供技术支持、维修和翻新以及系统设计和集成服务。参阅证据 50（ARRIS Group 2015 年度报告）。据所知所信，ARRIS 被告对包含一个或多个 Broadcom 被告产品并侵犯一项或多项所称专利的产品（包括但不限于机顶盒、网关、其他客户房屋设备、分销系统和基础设施平台）进行设计、开发、制造（或代表其的其他方进行制造）、进口至美国、以进口至美国为目的进行销售和/或进口至美国后进行销售。

**D.**   ASUS 被告

25.   ASUSTeK Computer Inc. 是依据中华民国（台湾）法律成立的公司，其主要

营业地址位于中华民国台湾台北市投区立德路 15 号。ASUS Computer International 是 ASUSTeK

Computer Inc 的全资子公司。它是一家加利福尼亚州公司，总部地址位于 800 Corporate Way,

Fremont, California 94539。

26.   ASUS 被告销售计算机、笔记本电脑和计算机卡和主板等组件。

ASUS 被告也销售有线和无线设备，例如启用网络、宽带接入和网络连接的路由器以及移动设

备（包括其 ZenFone 智能手机和 ZenPad 平板电脑）。参阅证据 53（ASUSTeK 2014 年度报告）。

据所知所信，ASUS 被告对包含一个或多个 Broadcom 被告产品且侵犯一种或多种据称专利的产

品（包括但不限于台式计算机、笔记本电脑、卡、主板、路由器、手机和平板电脑）进行设计、

开发、制造（或让代表其的其他方进行制造）、进口至美国、以进口至美国为目的销售和/或在

进口至美国后销售。

**E.**   Comcast Cable 被告

27.   Comcast Cable Communications, LLC 是一家特拉华州有限责任公司，其

总部地址位于 1500 Market Street, Philadelphia, Pennsylvania 19102。Comcast Cable Communications

Management, LLC 是一家特拉华州有限责任公司，其总部地址位于 1701 John F Kennedy Boulevard,

Philadelphia, Pennsylvania 19103。Comcast

Business Communications, LLC 是一家宾夕法尼亚州有限责任公司，其总部地址位于

1701 John F Kennedy Boulevard, Philadelphia, Pennsylvania 19103。

28.　　Comcast Cable 是美国最大的有线电视运营商之一，在全国不同地理

位置的市场上提供住宅和商业服务。Comcast 以他们的 Xfinity 品牌提供互联网、视频和语音服

务。他们也向 Xfinity 客户租赁机顶盒和其他客户场所设备。他们从数量有限的供应商那里购买

设备（包括 ARRIS 和 Technicolor）。参阅证据 56（Comcast 2015 年度报告）。据所知所信，

Comcast Cable 被告对包含一个或多个 Broadcom 被告产品且侵犯一项或多项据称专利的产品（包

括但不限于机顶盒、网关、其他客户场所设备、分销系统和基础设施平台）进行设计、开发、

制造（或让其他方代表他们进行制造）、进口至美国、以进口至美国为目的进行销售和/或进口

至美国后销售。

**F.　　HTC 被告**

29.　　HTC Corporation 是一家依据中华民国（台湾）法律成立的公司，主要营业

地点位于中华民国台湾 330 桃园兴化路 23 号。HTC America, Inc. 作为一家华盛顿公司，是 HTC

Corporation 的间接子公司，其主要营业点位于 13920 SE Eastgate Way, Suite 200, Bellevue,

Washington 98005。

30.　　HTC 被告实施移动设备的建造和市场营销，包括智能手机、平板电脑、

有线健身系统、相机和虚拟现实头盔。参阅证据 57（HTC 2014 年度报告）。据所知所信，HTC

被告对对包含一个或多个 Broadcom 被告产品且侵犯一项或多项据称专利的产品（包括但不限于

在手机和其他移动设备）进行设计、开发、制造（或让其他方代表他们进行制造）、

进口至美国、以进口至美国为目的进行销售和/或进口至美国后销售。

### G.   NETGEAR

31.     NETGEAR, Inc. 是一家特拉华州公司，其主要办公地点位于

350 East Plumeria Drive, San Jose, California 95134。

32.     NETGEAR 是一家网络公司，向客户、企业和服务供应商提供产品。

它的产品系列包括商用业务网络（*例如*以太网交换机、无人控制器和访问点、互联网完全设备以

及统一存储）、宽带接入（*例如*宽带调制解调器、无线网关和无线热点）和智能夹具和连接（*例*

*如*无线路由器和范围延伸器、电力线路适配器和桥、远程视频安全系统和无线网络适配器）。*参*

*见*证据 59（NETGEAR 2015 年度报告）。据所知所信，NETGEAR 对包含一个或多个 Broadcom 被

告产品且侵犯一项或多项据称专利的产品（包括但不限于网络、宽带接入、连接、存储和安全产

品及设备）进行设计、开发、制造（或让其他方代表他们进行制造）、进口至美国、以进口至美

国为目的进行销售和/或进口至美国后销售。

### H.   Technicolor 被告

33.     Technicolor S.A. 是一家依据法国法律成立的公司，其主要营业地点位于

1-5, rue Jeanne d'Arc, 92130 Issy-Les-Moulineaux, France。Technicolor USA, Inc. 作为 Technicolor S.A.

的全资子公司，是一家特拉华州公司，其主要营业地点位于 101 West 103rd Street, Indianapolis,

Indiana 46290。Technicolor Connected Home USA LLC 作为 Technicolor USA, Inc. 的全资子公司，是一

家特拉华州有限责任公司，其主要营业地点位于

101 West 103rd Street, Indianapolis, Indiana 46290。

34.　　Technicolor 被告的业务运营范围包括开发视频技术以及为内容创建者、

Pay-TV 运营商和网络服务供应商提供生产和分销服务。他们通过自己的 Connected Home 业务细分

为多设备通信和智能家居应用提供数字机顶盒、宽带网关和软件解决方案。*参见*附件 62

（Technicolor 2015 年度报告）。据所知所信，Technicolor 被告对包含一个或多个 Broadcom 被告产

品且侵犯一项或多项据称专利的产品（包括但不限机顶盒、网关、其他客户场所设备、分销系统

和基础设施平台）进行设计、开发、制造（或让其他方代表他们进行制造）、进口至美国、以进

口至美国为目的进行销售和/或进口至美国后销售。

**IV.　　被告问题产品**

35.　　依据《美国联邦法规》第 19 篇第 210.12(a)(12) 条规定，被告产品的种类可清楚地描

述为：

(a) 半导体装置、半导体装置包和包含由 Broadcom 制造或为 Broadcom 制造的同类装置的产品；以

及 (b) 由下游被告制造或为下游被告制造的产品，这些产品中包含半导体装置、半导体装置包和

包含由 Broadcom 制造或为 Broadcom 制造的同类装置的产品，其中包括移动设备、机顶盒、网关、

调制解调器、路由器、以太网交换机、网络路由设备和用于电信、有线电视、网络、云和企业系

统的基础设施设备（并非由 Broadcom 制造或为 Broadcom 制造的被告产品统称为"下游被告的被

告产品"）。下文第六节详细叙述了

Broadcom 被告产品和下游被告的被告产品非法进口、以进口为目的进行销售和/或进口后销售的具体实例。

36.　　　典型 Broadcom 被告产品包括但不限于：

| 产品编号 | Broadcom 产品名称 |
|---|---|
| BCM3383 | DOCSIS®/EuroDOCSIS™ 3.0 有线电视网关 SoC[5] |
| BCM33843 | 千兆 DOCSIS 有线电视网关装置 |
| BCM4331 | 单芯片 802.11n 双频 3x3 无线解决方案 |
| BCM4343 | 无线和蓝牙 4.2/蓝牙智能组合芯片 |
| BCM4356 | 5G 无线 802.11ac 客户端 |
| BCM43570 | 5G 无线 802.11ac 客户端 |
| BCM43602 | 3x3 MIMO 802.11ac 芯片，设计用于网络接入/DSL/有线电视/STB 平台 |
| BCM4366 | 4x4 2.4/5G 单芯片 802.11ac SoC |
| BCM4709 | 通信处理器（配有网络加速硬件） |
| BCM4752 | 集成多星座 GNSS 接收器 |
| BCM53125 | 七端口集成 GbE 节能以太网™交换机 |
| BCM56850 | 高容量 StrataXGS® Trident 2 代以太网交换机系列 |
| BCM7425 | 双 HD 转码 MoCA 2.0 网关 SoC |
| BCM7435 | 40 nm 双核混合网关 SoC（配有网域安全装置） |
| BCM94360 BCM4360 | PCI-E 迷你卡（包括一个 BCM4360 5G 无线 3 流 802.11ac 千兆收发器） |

37.　　　典型下游被告的被告产品包括但不限于：

- Arista Networks 7050X、7250X 和 7300X 系列数据中心交换机，其中包含 Broadcom 的 BCM56850 高容量 StrataXGS® Trident 2 代以太网交换机；

- ARRIS MX011ANM DVR 机顶盒，通过使用其 Xfinity 品牌产品的 Comcast Cable 租赁给美国订阅用户，其中包含 Broadcom 的 BCM3383 DOCSIS®/EuroDOCSIS™ 3.0 有线电视网关 SoC 和 BCM7425 双 HD 转码 MoCA 2.0 网关 SoC；

- ARRIS PX013ANM 高清机顶盒，通过使用其 Xfinity 品牌产品的 Comcast Cable 租赁给美国订阅用户，其中包含 Broadcom 的 BCM33843 千兆 DOCSIS 有线电视网关设备和 BCM7435 40 nm 双核混合网关 SoC（配有网域安全装置）；

---

[5] "SoC" 是系统芯片。

- ASUS RT-AC5300 路由器，其中包含 Broadcom 的 BCM4366 4x4 2.4/5G 单芯片 802.11ac SoC 和 BCM4709 通信处理器（配有网络加速硬件）；

- ASUS ZenFone 2E (Z00D)，其中包含 Broadcom 的 BCM4343 无线和蓝牙 4.2/蓝牙智能组合芯片和 BCM4752 集成多星座 GNSS 接收器；

- HTC One M9 智能手机，其中包含 Broadcom BCM4356 5G 无线 802.11ac 客户端；

- NETGEAR Nighthawk X6 AC3200 三频无线千兆路由器（型号 R8000），其中包含 Broadcom 的 BCM43602 3x3 MIMO 802.11ac 芯片，该芯片设计用于网络接入/DSL/有线电视/STB 平台和 BCM4709 通信处理器（配有网络加速硬件）；

- NETGEAR Nighthawk X8 AC5300 智能无线路由器（型号 R8500），其中包含 Broadcom 的 BCM4366 4x4 2.4/5G 单芯片 802.11ac SoC、BCM4709 通信处理器（配有网络加速硬件）和 BCM53125 七端口集成 GbE 节能以太网$^{TM}$ 交换机；以及

- Technicolor TC8305C 无线网关，通过使用其 Xfinity 品牌的 Comcast Cable 租赁给美国订阅用户，其中包含 Broadcom 的 BCM3383 DOCSIS$^{®}$/EuroDOCSIS$^{TM}$ 3.0 有线电视网关 SoC 和 BCM4331 单芯片 802.11n 双频 3x3 无线解决方案。

38.     这一产品典型型号和类别的鉴定文件旨在提供说明，并非旨在限制调查

范围。任何救济措施都应扩展到 Broadcom 和下游被告的所有当前和未来侵权产品，无论产品的

型号或类别为何。

**V.     问题专利**

**A.     美国专利编号 6,856,007**

39.     ＇007 专利的标题为"高频芯片封装"。它于 2005 年 2 月 15 日向名为

Michael Warner 的发明家发布。＇007 专利由 2002 年 8 月 1 日提交的美国专利申请编号 10/210,160

发布。它宣称了 2001 年 8 月 28 日提交的临时申请编号 60/315,408 的益处。 *参阅*证据 1。

40.　　Tessera, Inc. 通过转让＇007 专利中的所有权利、所有权和权益成为该专利的

唯一所有者。＇007 专利相关的记录转让文件之认证副本作为证据 2 与此诉状同时提交。

41.　　以下外国专利和专利申请与＇007 专利对应：WO03021673 (A9) 和

WO03021673 (A1)。

42.　　就非技术层面而言，＇007 专利披露并声称拥有紧凑经济型的半导体芯片集成，

其中包括一个封装的半导体芯片、一个芯片载体（配有金属热导体）和一个电路面板（配有热导

体安装）。其声称拥有的半导体芯片集成在封装芯片和电路面板之间提供一个低热阻冷却路线，

并可以减少（屏蔽）芯片发射和接收的不必要射频排放。其声称拥有的集成适合用于无线通信设

备内的射频芯片，这种芯片产生大量热量，因为它促进芯片发出的热量传递。

43.　　正如规则 210.12(c) 要求，此诉状的附件 A 包括＇007 专利的起诉历史的一份

认证副本和三份额外副本，而此诉状的附件 D 包括＇007 专利的起诉历史中引用的各份技术参考

文件的四份副本。

**B.　　美国专利编号 6,849,946**

44.　　＇946 专利的标题为“平面型半导体互连地形和抛光金属层以形成互联的方法”

。它在 2005 年 2 月 1 日向名为 Anantha R. Sethuraman 和 Christopher A. Seams 的发明者发布。＇946

专利由 2001 年 2 月 7 日提交的美国专利申请编号 09/779,123 发布。它是 1998 年 8 月 31 日提交的

申请编号 09/143,723（现为美国专利编号 6,232,231）的续本。　*参见*证据 3。

45. Invensas Corporation 通过转让 ' 946 专利成为该专利中所有权利、所有权和权益的唯一所有者。' 946 专利相关的记录转让文件之认证副本作为证据 4 与此诉状同时提交。

46. 以下外国专利和专利申请与 ' 946 专利对应：TW441013 (B)（失效）。

47. 就非技术层面而言，' 946 专利披露并声称拥有产生更加有效的半导体芯片整平过程的半导体布局配置和方法。在之前的半导体芯片现有技术化学机械抛光 (CMP) 过程中，表面层可能包括以不同速率进行抛光的相对坚硬区域（介质）和相对柔软区域（金属互联）。CMP 垫与即将抛光的表面匹配，然后在抛光速率更快的较为柔软的表面实现收缩，结果令这些柔软区域的表面相对于更为坚硬的介电质邻近区域变得凹陷。这被称为"凹陷"问题。同样的，相对较小的氧化区域被 CMP 垫以比大型氧化区域更快的速度移走，导致被称为"氧化侵蚀"的问题。' 946 专利解决了"凹陷"和"氧化侵蚀"的问题，它披露了一条宽金属互联和一系列窄金属互联之间介电质层上横向间隔的假壕沟的侵蚀，并用导电材料（*例如*金属）对假壕沟进行了填充。假壕沟和宽窄壕沟上方的导电材料抛光速率有利地实现了大体统一，氧化区域的抛光速率也是如此，因而产生了大幅平整表面。

48. 依据规则 210.12(c) 要求，此诉状的附件 B 包括 ' 946 专利的起诉历史的一份认证副本和三份额外副本，而此诉状的附件 E 包括 ' 946 专利的起诉历史中引用的各项技术参考文件的四份副本。

**C.    美国专利编号 6,133,136**

49. ' 136 专利的标题为"稳健的互联结构"。它在 2000 年 10 月 17 日向名为

Daniel Charles Edelstein、Vincent McGahay、Henry A. Nye, III、Brian George Reid Ottey 和 William H. Price 的发明者发布。'136 专利由 1999 年 5 月 19 日提交的美国专利编号 09/314,003 发布。参阅证据 5。

50.　　Invensas Corporation 通过转让 '136 专利成为该专利中所有权利、所有权和权益的唯一所有者。'136 专利相关的记录转让文件之认证副本作为证据 6 与此诉状同时提交。

51.　　以下外国专利和专利申请与 '136 专利对应：

TW473921 (B)；PL351305 (A1)（失效）；PL201072 (B1)（失效）；MY118419 (A)；KR100463492 (B1)；JP2003500860 (A)；JP3898894 (B2)；IL146333 (A)（失效）；HU0201473 (A2)（失效）；WO0072380 (A1)；ES2320523 (T3)；EP1186034 (A1)；EP1186034 (B1)；CZ20014145 (A3)；CZ302748 (B6)；CN1350703 (A)；CN1165081 (C)；CA2368950 (A1)（失效）；CA2368950 (C)（失效）；AU4933500 (A)；以及 AT426247 (T)。

52.　　就非技术层面而言，'136 专利披露并声称拥有半导体封装中使用的金属互联结构。铜作为半导体装置中互联使用的越来越多，因为与传统的铝或铝合金互联相比，它的电阻率较低，对电迁移的敏感性也较低。但是铜可能扩散至周围电介质材料中，降低装置的结构完整性。'136 专利披露并声称拥有改善铜互联结构完整性的结构。其声称拥有的这一结构组成内容包括一层铜、一个阻挡层、一层铝铜 (AlCu) 和一个垫片限制层。

AlCu 层和阻挡层被置于铜层和垫片限制层之间。阻挡层位于铜层和 AlCu 层之间。'136 专利披露说，阻挡层一般是钛、氮化钛、钽、氮化钽或相关材料的合金。垫片限制层通常是氮化钛、铜、金、钛钨、铬或此类材料的组合。

     53.     依据规则 210.12(c) 要求，此诉状的附件 C 包括'136 专利的起诉历史的一份认证副本和三份额外副本，而此诉状的附件 F 包括'136 专利的起诉历史中引用的各项技术参考文件的四份副本。

**VI.**     **非法和不公平行为——专利侵权**

     **A.**     Broadcom 被告

     **1.**     *代表性涉案产品*

     54.     据所知所信，Broadcom 对产品（包括但不限于半导体装置、半导体装置包和含有同类装置的产品）进行设计、开发、制造（通过代表其行事的第三方）、进口至美国、以进口至美国为目的销售和/或进口至美国后销售，这些产品（在字面意义上和/或同等效力层面上）侵犯了'007 专利权利 13、16 和 18，'946 专利权利 16、17、18、19、20 和 22 以及'136 专利权利 1、2、3、5、6、11、12、13、14、15、16、24、25、26、27、29、30、33、34 和 35。

     55.     Broadcom 通过积极鼓励其客户（包括下游被告）将侵权 Broadcom 被告产品并入直接侵犯一项或多项据称权利主张的下游被告的被告产品中而故意诱导在违反 35《美国法典》第 271(b) 条的情况下侵犯'007、'946 和'136 专利。Broadcom 至少在此诉状提交后就知晓被告专利以及 Broadcom 被告产品

和下游被告的被告产品侵犯据称专利这一事实。Broadcom 在具备相关知识的情况下有意鼓励并促进他人（包括下游被告）对 Broadcom 被告产品的侵权使用。例如，Broadcom 对其产品进行市场营销、促销和广告等，并提供产品简报和说明、新闻发布会、数据表、手册、用户指南和积极鼓励他人（包括下游被告）直接侵犯'007、'946 和'136 专利的其他材料。下游被告的被告产品被进口至美国、进口后在美国销售和/或以进口至美国为目的进行销售。

56.　　Broadcom 在违反《美国法典》第 35 篇第 271(c) 条的情况下造成对'007、'946 和'136 专利

的侵权，它在知晓据称专利的情况下销售 Broadcom 被告产品，尤其是特别制造的无实质侵权用途且作为据称专利中主张拥有权利的发明中重要部分的组件，这些组件被并入直接对据称专利构成侵权的其他产品中（包括下游被告的被告产品）。下游被告的被告产品被进口至美国、进口至美国后销售和/或以进口至美国为目的进行销售。

57.　　原告已经获得了作为代表性涉案产品的以下 Broadcom 被告产品：

| 产品编号 | Broadcom 产品名称 |
|---|---|
| BCM3383 | DOCSIS$^{\circledR}$/EuroDOCSIS$^{TM}$ 3.0 有线电视网关 SoC |
| BCM33843 | 千兆 DOCSIS 有线电视网关装置 |
| BCM4331 | 单芯片 802.11n 双频 3x3 无线解决方案 |
| BCM4343 | 无线和蓝牙 4.2/蓝牙智能组合芯片 |
| BCM4356 | 5G 无线 802.11ac 客户端 |
| BCM43570 | 5G 无线 802.11ac 客户端 |

| 产品编号 | Broadcom 产品名称 |
|---|---|
| BCM43602 | 3x3 MIMO 802.11ac 芯片（设计用于网络接入/DSL/有线电视/STB 平台） |
| BCM4366 | 4x4 2.4/5G 单芯片 802.11ac SoC |
| BCM4709 | 通信处理器（配有网络加速硬件） |
| BCM4752 | 集成多星座 GNSS 接收器 |
| BCM53125 | 七端口集成 GbE 节能以太网™ 交换机 |
| BCM56850 | 高容量 StrataXGS® Trident 二代以太网交换机系列 |
| BCM7425 | 双 HD 转码 MoCA 2.0 网关 SoC |
| BCM7435 | 40 nm 双核混合网关 SoC（配有网域安全装置） |
| BCM94360 BCM4360 | PCI-E 迷你卡（配有 BCM4360 5G 无线 3 频 802.11ac 千兆收发器） |

证据 30-45 包括与这些典型产品有关的 Broadcom 产品页、新闻发布会和产品简报。

58.    原告认为，上述所列的典型 Broadcom 产品是 Broadcom 进口、以进口为目

的销售和/或进口在美国销售的很多其他 Broadcom 产品的代表，这些产品的特点在于与典型

Broadcom 被告产品相同或本质上类似的功能。因此，据所知所信，原告称众多其他 Broadcom

产品侵犯了据称专利的据称权利主张，并由 Broadcom 或代表 Broadcom 的其他方进口、以进口

为目的销售和/或进口后在美国销售。

## 2.    ’007 专利侵权

59.    保密证据 11 包括将 ’007 专利的独立权利主张 1 和 18 与 Broadcom 的

BCM94360 PCI-E 迷你卡和卡上包含的 BCM4360 5G 无线 3 频 802.11ac 千兆收发器进行对比的图

表。这一证据显示，BCM94360 PCI-E 至少被 ’007 专利的权利主张 1 和 18 覆盖。保密证据 11、

9 和 10 包括将 ’007 专利的独立权利主张 1 和 18 与采用与 ’007 专利中规定的相同方式安装

在电路面板上的 Broadcom 的 BCM4360、BCM4331 和 BCM43602 半导体装置记性对比的图表。

这些证据显示

BCM4360、BCM4331 和 BCM43602 半导体装置在以'007 专利中规定的方式安装至电路面板时至少被'007 专利的权利主张 1 和 18 覆盖。

### 3. '946 专利侵权

60.    保密证据 12 到 22 包括将'946 专利的独立权利主张 16 与以下典型产品进行对比的图表：BCM3383、BCM4331、BCM4343、BCM4356、BCM43602、BCM4366、BCM4709、BCM4752、BCM53125、BCM56850 和 BCM7425。这些证据显示这些 Broadcom 被告产品至少被'946 专利的权利主张 16 覆盖。

### 4. '136 专利侵权

61.    保密证据 23 到 29 包括将'136 专利的独立权利主张 1 和 11 与以下典型产品进行对比的图表：BCM3383；BCM33843；BCM43570；BCM4709；BCM56850；BCM7425；以及 BCM7435。这些证据显示这些 Broadcom 被告产品至少被'136 专利的权利主张 1 和 11 覆盖。

### 5. 销售和进口的具体实例

62.    Broadcom Corporation 是一家专业半导体公司，据所知所信，典型 Broadcom 被告产品由美国境外的铸造厂制造并由独立组装和封装分包商进行封装。参见证据 7（Broadcom Corporation 2014 年度报告）第 6 页（"我们依赖位于亚洲的多个铸造分包商生产大多数我们的产品。"），第 7 页（"我们的大部分测试和组装由位于"新加坡、中国和中国台湾"、"中国台湾"、"新加坡、中国和泰国"、"韩国、菲律宾、中国台湾和中国"和"新加坡、韩国、马来西亚和中国"的以下独立分包商执行"），第 16 页（"作为专业半导体公司，我们未拥有或运营制造、组装或测试设施。"）。

63.　　当时，这些典型 Broadcom 被告产品由 Broadcom 进口至美国、

以进口至美国为目的销售和/或在进口至美国后销售，如下所示：

| 产品编号 | 销售或进口证据 |
|---|---|
| BCM3383 | 从 ARRIS MX011ANM 机顶盒和 Technicolor TC8305C 机顶盒上拆除 BCM3383 SoC，这两种机顶盒的品牌都是 Xfinity (Comcast Cable) 并且都在美国境外制造。*参阅*证据 51、63。原告从美国卖家处购买了这些机顶盒。*参阅* 证据 66（Contreras 声明）第 3 段；证据 65（Sharkey 声明）第 2 段， |
| BCM33843 | 从 Pace（现为 ARRIS）PX013ANM 机顶盒上拆除 BCM33843 装置，此机顶盒的品牌为 Xfinity (Comcast Cable) 且在美国境外制造。*参阅* 证据 52。原告从美国卖家处购买了该机顶盒。*参阅* 证据 66（Contrera 声明）第 4 段。 |
| BCM4331 | 从 Technicolor TC8305C 机顶盒上拆除 BCM4331 Intensi-fi® 芯片，该机顶盒的品牌为 Xfinity (Comcast Cable) 且在美国境外制造。*参阅*证据 63。原告从美国卖家处购买了该机顶盒。*参阅* 证据 65（Sharkey 声明）第 2 段。 |
| BCM4343 | 从在美国境外制造的 ASUS ZenFone 2E (Z00D) 上拆除 BCM4343 组合芯片。*参阅*证据 54。原告从美国卖家处购买了 ASUS ZenFone 2E (Z00D)。*参阅* 证据 66（Contreras 声明）第 6 段。 |
| BCM4356 | 从在美国境外制造 HTC One M9 手机上拆除 BCM4356 客户端装置。*参阅*证据 58。原告从美国卖家处购买了该 HTC One M9 手机。*参阅* 证据 66（Contreras 声明）第 7 段。 |
| BCM43570 | 从机顶盒上拆除 BCM43570 客户端装置，该机顶盒从美国卖家处购买。*参阅* 证据 66 第 9 段（Contreras 声明）。据所知所信，BCM43570 客户端在美国境外制造。参阅证据 7（Broadcom Corporation 2014 年度报告）第 6、7 和 16 页。 |

| 产品编号 | 销售或进口证据 |
|---|---|
| BCM43602 | 从在美国境外制造的 NETGEAR Nighthawk X6 AC3200 三频无线千兆路由器（型号 R8000）上拆除 BCM43602 SoC。*参阅*证据 60。原告从美国卖家处购买了该路由器。*参阅* 证据 66（Contreras 声明）第 8 段。 |
| BCM4366 | 从在美国境外制造的 ASUS RT-AC5300 路由器和 NETGEAR Nighthawk X8 AC5300 智能无线路由器（型号 R8500）上拆除 BCM4366 SoCs。*参阅*证据 55、61。原告从美国卖家处购买了这些路由器。*参阅*证据 66（Contreras 声明）第 5、8 段。 |
| BCM4709 | 从 ASUS RT-AC5300 路由器、NETGEAR Nighthawk X6 AC3200 三频无线千兆路由器（型号 R8000）和 NETGEAR Nighthawk X8 AC5300 智能无线路由器（型号 R8500）上拆除 BCM4709 处理器，这些路由器都是在美国境外制造。*参阅*证据 55、60、61。原告从美国卖家处购买了这些路由器。*参阅*证据 66（Contreras 声明）第 5、8 段。 |
| BCM4752 | 从在美国境外制造的 ASUS ZenFone 2E (Z00D) 上拆除 BCM4752 接收器。*参阅*证据 54。原告从美国卖家处购买了该 ASUS ZenFone 2E (Z00D)。*参阅* 证据 66（Contreras 声明）第 6 段。 |
| BCM53125 | 从在美国境外制造的 NETGEAR Nighthawk X8 AC5300 智能无线路由器（型号 R8500）上拆除 BCM53125 以太网交换机。*参阅* 证据 61。原告从美国卖家处购买了该路由器。*参阅* 证据 66（Contreras 声明）第 8 段。 |
| BCM56850 | 原告从美国卖家处购买了 BCM56850 高容量 StrataXGS® Trident 二代以太网交换机。*参阅*¶ 3 的证据 65（Sharkey 声明）。据所知所信，Broadcom 被告产品在美国境外制造。*参阅*证据 7（Broadcom Corporation 2014 年度报告）第 6、7、16 页。此外据所知所信，BCM56850 以太网交换机由代表 Broadcom 的台湾半导体制造公司在其位于亚洲的设施之一制造。 |

| 产品编号 | 销售或进口证据 |
|---|---|
| BCM7425 | 从 Xfinity (Comcast Cable) 品牌的 ARRIS MX011ANM 机顶盒上和非被告的另一台机顶盒上拆除 BCM7425 SoC，ARRIS MX011ANM 机顶盒在美国境外制造（*参阅*证据 51）。原告从美国卖家处购买了这两台机顶盒。*参阅* 证据 66（Contreras 声明）第 3、10 页。 |
| BCM7435 | 从 Xfinity (Comcast Cable) 品牌且在美国境外制造的 Pace（现为 ARRIS）PX013ANM 机顶盒上拆除 BCM7435 SoC。*参阅*证据 52。原告从美国卖家处购买了该机顶盒。*参阅* 证据 66（Contreras 声明）第 4 段。 |
| BCM94360 BCM4360 | 购买在美国境外组装的 BCM94360 PCI-E 迷你卡作为无线卡组件。*参阅*组件 64。原告从美国卖家处购买了该无线卡组件。*参阅*证据 65（Sharkey 声明）第 3 段。之后从 BCM94360 PCI-E 迷你卡上拆除 BCM4360 芯片。*参阅*证据 11。 |

## B.　Arista Networks

### 1.　代表性涉案产品

64.　据所知所信，Arista Networks 对包含一个或多个侵权 Broadcom

被告产品且在字面意义上等效直接和/或间接侵犯 ' 946 专利的权利主张 16、17、18、19 和 22 以

及 ' 136 专利的权利主张 1、2、3、5、6、11、12、13、14、15、16、24、25、26、27、29、30、

33、34 和 35 的产品进行设计、开发、制造、进口至美国、以进口至美国为目的销售和/或进口至

美国后销售。

65.　原告已经确定了 Arista Networks 7050X、7250X 和 7300X 系列数据中心

交换机作为代表性涉案产品。Tessera 得知并认为，Arista Networks 将包含 Broadcom 的 BCM56850

高容量 StrataXGS® Trident 二代以太网交换机的其 7050X、7250X 和 7300X

系列数据中心交换机进口至美国、以进口至美国为目的销售和/或进口至美国后销售。

66.　　　原告认为，典型 Arista Networks 产品是其他产品的代表，这些产品包含

典型 Broadcom 被告产品或以具备与典型产品相同或本质类似的功能为特色的 Broadcom 被告产品，

并由 Arista Networks 进口、以进口为目的销售或进口后在美国销售。因此，据所知所信，原告声

称，据称专利的据称权利主张所覆盖的其他 Arista Networks 产品曾或正在被 Arista Networks 或代

表 Arista Networks 的其他方进口、以进口为目的销售和/或进口后在美国销售。

### 2.　　　’946 专利侵权

67.　　　证据 49 显示，Arista Networks 7050X、7250X 和 7300X 系列数据中心交换机

包含 Broadcom 的 BCM56850 高容量 StrataXGS$^{®}$ Trident 二代以太网交换机。证据 21 包括将 ’946
专利的独立权利主张 16 与 BCM56850 以太网交换机进行对比的图表。这些证据表明，Arista
Networks 被告产品至少被 ’946 专利的权利主张 16 覆盖。

### 3.　　　’136 专利侵权

68.　　　证据 49 显示，Arista Networks 7050X、7250X 和 7300X 系列数据中心交换机

包含 Broadcom 的 BCM56850 高容量 StrataXGS$^{®}$ Trident 二代以太网交换机。证据 27 包括将 ’136
专利的独立权利主张 1 和 11 与 BCM56850 以太网交换机进行对比的图表。这些证据显示，Arista
Networks 被告产品至少被 ’136 专利的权利主张 1 和 11 覆盖。

### 4.    销售和进口的具体实例

69.    据所知所信，Arista Networks 7050X、7250X 或 7300X 系列数据中心交换机

在美国销售，但他们旨在用于商业企业客户，通过正常零售渠道无法足量供应。但原告得知并认

为，Arista Networks 正在将其数据中心交换机（包括其 7050X、7250X 或 7300X 系列数据中心交

换机）进口至美国、以进口至美国为目的销售和/或在进口至美国后销售。[6]

70.    据所知所信，Arista Networks 数据中心交换机在美国境外制造，之后被进口

至美国。Arista Networks 披露，其主要依赖以亚洲为基地的合同制造商生产其产品。*参阅*证据 48

（Arista Networks 2015 年度报告）第 12 页（合同制造商制造的所有产品；主要制造合作伙伴是

Foxconn 和 Jabil Circuit）；证据 46（截至 2014 年 6 月 30 日的 Arista Networks 表 10Q）第 17 页

（ "[我们]的产品由亚洲的第三方合同制造商制造、组装并测试" ）。Arista Networks 还披露，在

制造和测试完成后，这些产品被运送至 Arista Networks 的直接操作工厂，其中一处位于加利福尼

亚州。*参阅*证据 48（Arista Networks 2015 年度报告）第 13 页（ "一旦成品制作和测试完成，我们

的合同制造合作伙伴将它

---

[6] Arista Networks 的网络交换机（包括 7050X、7250X 和 7300X 系列数据中心交换机）是调查编号 337-TA-944 中的被告产品。在基于证据的听证会后，行政法法官认为被告网络交换机曾被进口至美国。*参阅某些网络设备、相关软件和组件*，调查编号 337-TA-944，初步裁决（2016 年 2 月 2 日）（ "[证据]证明……被告产品曾被进口至美国" ）。

们运至位于加利福尼亚州、荷兰和新加坡的多个活动直接操作工厂进行最后的配置、质量控制检查并装运至我们的分销合作伙伴和终端客户处。"）

71.　　　原告得知并认为，Arista Networks 曾直接或通过分销合作伙伴将进口产品销售给美国境内的客户。依据 Arista Networks 的 SEC 提交文件，Microsoft 是其最大的客户，创造了 2013、2014 和 2015 年 10% 以上的 Arista Networks 总收入。*参阅*证据 48（（Arista Networks 2015 年度报告）第 8 页。很多其他美国公司曾被 Arista Networks 确定为其客户，包括 eBay、Facebook、Yahoo!、Citigroup、Morgan Stanley、AOL、Comcast、ESPN、Netflix、Equinix 和 Rackspace。*参阅*证据 47（Arista Networks 2014 年度报告）第 9 页。2015 年，77.3% 的 Arista Networks "收入产生自美洲，大部分来自美国"。*参阅*证据 48（Arista Networks 2015 年度报告）第 12 页。此外，证据 49 证明，Arista Networks 的 7050X、7250X 和 7300X 系列数据中心交换机在 2014 年 7 月由位于加利福尼亚州圣路易斯奥比斯波的 InfoGard Laboratories, Inc. 进行测试。

## C.　　ARRIS 被告

### 1.　　代表性涉案产品

72.　　　据所知所信，ARRIS 被告对包含一个或多个侵权 Broadcom 被告产品并在字面意义或等效层面上直接以及直接和/或间接侵犯'946 专利的权利主张 16、17、18、19、20 和 22 以及 '136 专利的权利主张 1、2、3、5、6、11、12、13、14、15、16、24、25、26、27、29、30、33、34 和 35 的产品进行设计、开发、制造、进口至美国、以进口至美国为目的销售和/或进口至美国后销售。

73.　　　原告已获得了由 Comcast Cable 使用其 Xfinity 品牌租赁给美国订阅用户的 ARRIS MX011ANM DVR 机顶盒，该机顶盒包含 Broadcom 的 BCM3383 SoC 和

BCM7425 SoC。*参阅*证据 51（产品照片）。原告还获得了同样由 Comcast Cable 使用其 Xfinity 品牌租赁给美国订阅用户的 Pace（现为 ARRIS）PX013ANM 高清机顶盒，该机顶盒中包含 Broadcom 的 BCM33843 装置和 BCM7435 SoC。*参阅*证据 52（产品照片）。

74.　　原告认为这些典型 ARRIS 产品是其他产品的代表，这些包含典型 Broadcom 被告产品或以具备与典型产品相同或本质上类似功能为特性的 Broadcom 被告产品的产品由 ARRIS 被告进口、以进口为目的销售或进口后在美国销售。因此，据所知所信，原告声称据称专利的据称权利主张覆盖的其他 ARRIS 产品曾且正在由 ARRIS 被告或代表 ARRIS 被告的其他方进口、以进口为目的销售和/或进口后在美国销售。

### 2.　　'946 专利侵权

75.　　ARRIS 典型 MX011ANM 产品包含 BCM3383 SoC 和 BCM7425 SoC。

*参阅*证据 51（产品照片）。证据 12 和 22 包含将 '946 专利的独立权利主张 16 与 BCM3383 SoC 及 BCM7425 SoC 进行对比的图表。这些证据显示，ARRIS 被告产品至少被 '946 专利的权利主张 16 覆盖。

### 3.　　'136 专利侵权

76.　　ARRIS 典型产品包含 BCM3383 SoC、BCM33843 装置、BCM7425 SoC 和 BCM7435 SoC。*参阅*证据 51 和 52（产品照片）。证据 23、24、28 和 29 包含将 '136 专利的独立权利主张 1 和 11 与 BCM3383 SoC、BCM33843 装置、BCM7425 SoC 和 BCM7435 SoC 进行对比的图表。这些证据显示，ARRIS 被告产品至少被 '136 专利的权利主张 1 和 11 覆盖。

4.     销售和进口具体实例

77.     Xfinity (Comcast Cable) 品牌的 ARRIS MX011ANM 机顶盒在美国境外制造。

*参阅*证据 51（产品照片）。原告从美国卖家处购买这一机顶盒。*参阅* 证据 66（Contreras 声明）第 3 段。

78.     Xfinity (Comcast Cable) 品牌的 Pace（现为 ARRIS）在美国境外制造。

*参阅*证据 52（产品照片）。原告从美国卖家处购买了此机顶盒。参阅证据 66（Contreras 说明）第 4 段。

**D.     ASUS 被告**

**1.     代表性涉案产品**

79.     据所知所信，ASUS 原告对包含一个或多个侵权 Broadcom 被告产品并且在字面意义或等效层面上直接和/或间接侵犯'946 专利的权利主张 16、17、18、19、20 和 22 以及'136 专利的权利主张 1、2、3、5、6、11、12、13、14、15、16、24、25、26、27、29、30、33、34 和 35 的产品进行设计、开发、制造、进口至美国、以进口至美国为目的销售和/或进口至美国后销售。

80.     原告已获得包含 Broadcom 的 BCM4343 组合芯片和 BCM4752 接收器的 ASUS ZenFone 2E (Z00D)。*参阅*证据 54（产品照片）。原告还获得了包含 Broadcom 的 BCM4366 SoC 和 BCM4709 处理器的 ASUS RT-AC5300 路由器。*参阅*证据 55（产品照片）。

81.     原告认为这些典型 ASUS 产品是其他产品的代表，这些包含典型 Broadcom 被告产品或以具备与典型产品相同或本质上类似功能为特性的 Broadcom 被告产品的产品由 ASUS 被告进口、以进口为目的销售或进口后在美国销售。因此，据所知所信，原告声称据称专利的据称权利主张覆盖的其他 ASUS 产品曾经且正在由 ASUS 被告或代表 ASUS 被告的其他方进口、以进口为目的销售和/或进口后在美国销售。

### 2.  ' 946 专利侵权

82.　　ASUS 典型产品包含 BCM4343 组合芯片、BCM4709 处理器和 BCM4752

接收器。参阅证据 54、55（产品照片）。证据 14、18 和 19 包含将 ' 946 专利之独立权利主张

16 与 BCM4343 组合芯片、BCM4709 处理器和 BCM4752 接收器进行对比的图表。这些证据显

示，ASUS 被告产品至少被 ' 946 专利的权利主张 16 覆盖。

### 3.  ' 136 专利侵权

*83.*　　ASUS 典型 RT-AC5300 路由器包含 BCM4709 处理器。*参阅*证据 55

（*产品照片*）。证据 26 包括将 ' 136 专利的独立权利主张 1 和 11 与 BCM4709 处理器进行对比的

图表。这些证据显示，ASUS 被告产品至少被 ' 136 专利的权利主张 1 和 11 覆盖。

### 4.  销售和进口的具体实例

*84.*　　ASUS ZenFone 2E (Z00D) 在美国境外制造。*参阅*证据 54（*产品照片*）。

原告从美国卖家处购买了 ASUS ZenFone 2E (Z00D)。*参阅* 证据 66（Contreras 声明）第 6 段。

*85.*　　ASUS RT-AC5300 路由器在美国境外制造。*参阅*证据 55（*产品照片*）。

原告从美国卖家处购买了此路由器。*参阅* 证据 66（Contreras 声明）第 5 段。

**E.**     **Comcast Cable 被告**

      **1.**     **代表性涉案产品**

86.     据所知所信，Comcast Cable 被告对包含一个或多个侵权 Broadcom 被告产品并在字面意义或等效层面上直接和/或间接侵犯'007 专利的权利主张 13、16 和 18、'946 专利的权利主张 16、17、18、19、20 和 22 以及'136 专利的权利主张 1、2、3、5、6、11、12、13、14、15、16、24、25、26、27、29、30、33、34 和 35 的产品进行设计、开发、制造（或让代表其的第三方制造）、进口至美国、以进口至美国为目的销售和/或进口至美国后销售。

87.     Comcast Cable 被告在美国利用其 Xfinity 品牌提供视频服务并向美国订阅用户租赁机顶盒和网关。原告已经获得了三件 Xfinity 品牌产品：(a) 一台 ARRIS MX011ANM DVR 机顶盒，包含 Broadcom 的 BCM3383 SoC 和 BCM7425 SoC；(b) 一台 Pace（现为 ARRIS）PX013ANM 高清机顶盒，其中包含 Broadcom 的 BCM33843 装置和 BCM7435 SoC；以及 (c) 一个 Technicolor TC8305C 无线网关，其中包含 Broadcom 的 BCM3383 SoC 和 BCM4331 Intensi-fi 芯片。参阅证据 51、52 和 63（产品照片）。[7]

88.     原告认为这些典型 Comcast Cable 产品是其他产品的代表，这些包含典型 Broadcom 被告产品或以具备与典型产品相同或本质上类似功能为特性的 Broadcom 被告产品的产品由 Comcast Cable 被告进口、以进口为目的销售或进口后在美国销售。因此，

---

[7] Technicolor TC8305C 无线网关也包含 BCM53124 以太网交换机，据所知所信，该交换机与 BCM53125 以太网交换机实质上类似。BCM53125 以太网交换机至少对'946 专利的权利主张 16、17、18、19 和 22 构成侵权（参阅证据 20）。据所知所信，BCM53124 以太网交换机也至少对这些据称权利主张构成侵权。

据所知所信，原告声称，据称专利的据称权利主张覆盖的其他 Comcast Cable 产品曾经且正在由 Comcast Cable 被告或代表 Comcast Cable 被告的其他方进口、以进口为目的销售和/或进口后在美国销售。

### 2.　　'007 Patent 专利侵权

89.　　Xfinity (Comcast Cable) 品牌的 Technicolor TC8305C 无线网关典型产品包含采用'007 专利中规定的方式安装在电路面板上的 BCM4331 Intensi-fi 芯片。*参阅*证据 63（产品照片）。证据 9 包含将'007 专利的独立权利主张 1 和 18 与安装在 Xfinity 品牌 Technicolor TC8305C 无线网关中的电路面板上的 BCM4331 Intensi-fi 芯片进行对比的图表。此证据显示，Comcast Cable 被告产品至少被'007 专利的权利主张 1 和 18 覆盖。

### 3.　　'946 专利侵权

90.　　Comcast Cable *典型产品包含* BCM3383 SoC、BCM4331 Intensi-fi 芯片和 BCM7425 SoC。*参阅*证据 51 和 63（产品照片）。证据 12、13 和 22 包含将'946 专利的独立权利主张 16 与 BCM3383 SoC、BCM4331 Intensi-fi 芯片以及 BCM7425 SoC 进行对比的图表。这些证据显示，Comcast Cable 被告产品至少被'946 专利的权利主张 16 覆盖。

### 4.　　'136 专利侵权

91.　　Comcast Cable *典型产品包含* BCM3383 SoC、BCM33843 装置、BCM7425 SoC 以及 BCM7435 SoC。*参阅*证据 51、52 和 63。证据 23、24、28 和 29 包括将'136 专利的权利主张 1 和 11 与 BCM3383 SoC、BCM33843 装置、BCM7425 SoC 以及 BCM7435 SoC 进行对比的图表。这些证据显示

Comcast Cable 被告产品至少被 ' 136 专利的权利主张 1 和 11 覆盖。

### 5.    销售和进口的具体实例

92.    Xfinity (Comcast Cable) 品牌的 ARRIS MX011ANM 机顶盒在美国境外制造。

参阅证据 51。原告从美国卖家处购买此机顶盒。参阅 证据 66（Contreras 声明）第 3 段。

93.    Xfinity (Comcast Cable) 品牌的 Pace（现为 ARRIS ）PX013ANM 机顶盒在美

国境外制造。参阅证据 52。原告从美国卖家处购买此机顶盒。参阅 证据 66（Contreras 声明）第 4

段。

94.    Xfinity (Comcast Cable) 品牌的 Technicolor TC8305C 无线网关在美国境外制

造。参阅证据 63。原告从美国卖家处购买此网关。参阅证据 65（Sharkey 声明）第 2 段。

### F.    HTC 被告

### 1.    代表性涉案产品

95.    据所知所信，HTC 被告对包含一个或多个侵权 Broadcom 被告产品并在

字面意义或等效层面上直接和/或间接侵犯 ' 946 专利的权利主张 16、17、18、19 和 20 的产品进

行设计、开发、制造（或让代表其的第三方制造）、进口至美国、以进口至美国为目的销售和/或

进口至美国后销售。

96.    被告已获得一部 HTC One M9 手机，其中包含 Broadcom 的 BCM4356

客户端装置。参阅证据 58（产品照片）。

97.    原告认为这些典型 HTC 产品是其他产品的代表，这些包含典型 Broadcom

被告产品或以具备与典型产品相同或本质上类似功能为特性的 Broadcom 被告产品的产

品由 HTC 被告进口、以进口为目的销售或进口后在美国销售。因此，据所知所信，原告声称，据称专利的据称权利主张覆盖的其他 HTC 产品曾经且正在由 HTC 被告或代表 HTC 被告的其他方进口、以进口为目的销售和/或进口后在美国销售。

### 2.　　'946 专利侵权

98.　　　HTC 典型产品包含 BCM4356 客户端装置。参阅证据 58（产品照片）。证据 15 包含将'946 专利的独立权利主张 16 与 BCM4356 客户端装置进行对比的图表。这些证据显示，HTC 被告产品至少被'946 专利的权利主张 16 覆盖。

### 3.　　销售和进口的具体实例

99.　　　HTC One M9 手机在美国境外制造。参阅证据 58（产品照片）。原告从美国卖家处购买此手机。参阅证据 66（Contreras 声明）第 7 段。

### G.　　NETGEAR

### 1.　　代表性涉案产品

100.　　　据所知所信，NETGEAR 被告对包含一个或多个侵权 Broadcom 被告产品并在字面意义或等效层面上直接和/或间接侵犯'007 专利的权利主张 13、16 和 18，'946 专利的权利主张 16、17、18、19、20 和 22 以及'136 专利的权利主张 1、2、3、5、6、11、12、13、14、15、16、24、25、26、27、29、30、33、34 和 35 的产品进行设计、开发、制造（或让代表其的第三方制造）、进口至美国、以进口至美国为目的的销售和/或进口至美国后销售。

101.　　原告已获得一台 NETGEAR Nighthawk X6 AC3200 三频无线千兆路由器

（型号 R8000），其中包含 Broadcom 的 BCM43602 SoC 和 BCM4709 处理器。参阅证据 60（产品

照片）。原告还获得了一台 NETGEAR Nighthawk X8 AC5300 智能无线路由器（型号 R8500），其

中包含 Broadcom 的 BCM4366 SoC、BCM4709 处理器和 BCM53125 以太网交换机。参阅证据 61

（产品照片）。

102.　　原告认为这些典型 NETGEAR 产品是其他产品的代表，这些包含典型

Broadcom 被告产品或以具备与典型产品相同或本质上类似功能为特性的 Broadcom 被告产品的产

品由 NETGEAR 被告进口、以进口为目的销售或进口后在美国销售。因此，据所知所信，原告声

称，据称专利的据称权利主张覆盖的其他 NETGEAR 产品曾经且正在由 NETGEAR 被告或代表

NETGEAR 被告的其他方进口、以进口为目的销售和/或进口后在美国销售。

### 2.　　’007 专利侵权

103.　　NETGEAR 典型 Nighthawk X6 R8000 路由器包含以 ’007 专利中规定的方式

安装在电路面板上的 BCM43602 SoC 及其他组件。参阅证据 60（产品照片）。证据 10 包含

将 ’007 专利的权利主张 1 和 18 与安装在 Nighthawk X6 R8000 路由器中电路面板上的 BCM43602

SoC 进行对比的图表。此证据显示，至少一种 NETGEAR 被告产品被至少 ’007 专利的权利主张

1 和 18 覆盖。

### 3.　　’946 专利侵权

104.　　NETGEAR 典型产品包含 BCM43602 SoC、BCM4366 SoC、BCM4709

处理器和 BCM53125 以太网交换机。参阅证据 60 和 61（产品照片）。

证据 16、17、18 和 20 包含将 ' 946 专利的独立权利主张 16 与 BCM43602 SoC、BCM4366 SoC、BCM4709 处理器和 BCM53125 以太网交换机进行对比的图表。这些证据显示，NETGEAR 被告产品被至少 ' 946 专利的权利主张 16 覆盖。

### 4.    ' 136 专利侵权

105.    NETGEAR *典型产品包含两个版本的 BCM4709 处理器。参阅证据 60 和 61（产品照片）*。证据 26 包含将 ' 136 专利的独立权利主张 1 和 11 与这些版本的 BCM4709 处理器进行对比的图表。这些证据显示，NETGEAR 被告产品至少被 ' 136 专利的权利主张 1 和 11 覆盖。

### 5.    销售和进口的具体实例

106.    NETGEAR Nighthawk X6 AC3200 *三频无线千兆路由器（型号 R8000）在美国境外制造。参阅证据 60（产品照片）*。原告从美国卖家处购买此路由器。*参阅证据 66（Contreras 声明）*第 8 段。

107.    NETGEAR Nighthawk X8 AC5300 *智能无线路由器（型号 R8500）在美国境外制造。参阅证据 61（产品照片）*。原告从美国卖家处购买此路由器。*参阅证据 66（Contreras 声明）*第 8 段。

### H.    Technicolor 被告

### 1.    代表性涉案产品

108.    据所知所信，Technicolor 被告对包含一个或多个侵权 Broadcom 被告产品并在字面意义或等效层面上直接和/或间接侵犯 ' 007 专利的权利主张 13、16 和 18， ' 946 专利的权利主张 16、17、18、19、20 和 22 以及 ' 136 专利的权利主张 1、2、3、5、6、11、12、13、14、15、16、24、25、26、27、29、30、33、34 和 35 的产品进行设计、开发、制造（或让代表其的第三方制造）、进口至美国、以进口至美国为目的销售和/或进口至美国后销售。

109.    原告已获得一台 Xfinity 品牌的 Technicolor TC8305C 无线网关，其中包含

Broadcom 的 BCM3383 SoC 和 BCM4331 Intensi-fi 芯片。*参阅*证据 63（产品照片）。[8]

110.    原告认为这些典型 Technicolor 产品是其他产品的代表，这些包含典型

Broadcom 被告产品或以具备与典型产品相同或本质上类似功能为特性的 Broadcom 被告产品的产

品由 Technicolor 被告进口、以进口为目的销售或进口后在美国销售。因此，据所知所信，原告声

称，据称专利的据称权利主张覆盖的其他 Technicolor 产品曾经且正在由 Technicolor 被告或代表

Technicolor 被告的其他方进口、以进口为目的销售和/或进口后在美国销售。

### 2.    '007 专利侵权

111.    Technicolor 典型产品包含以 '007 专利中规定方法安装在电路面板上的

BCM4331 Intensi-fi 芯片。*参阅*证据 63（产品证据）。证据 9 包含将 '007 专利的独立权利主张 1

和 18 与安装在 Technicolor 被告产品中电路面板上的 BCM4331 Intensi-fi 芯片进

--------------------------

[8] 正如脚注 7 中所述，Technicolor TC8305C 无线网关还包含一个与典型侵权 BCM53125 以太网交换机实质上类似的 BCM53124 以太网交换机。

行对比的图表。此证据表明，Technicolor 被告产品至少被 '007 专利的权利主张 1 和 18 覆盖。

### 3.    '946 专利侵权

112.    Technicolor 典型产品包含 BCM3383 SoC 和 BCM4331 Intensi-fi 芯片。

参阅证据 63（产品照片）。证据 12 和 13 包含将 '946 专利的独立权利主张 16 与 BCM3383 SoC 和 BCM4331 Intensi-fi 芯片进行对比的图表。这些证据表明，Technicolor 被告产品至少被 '946 专利的权利主张 16 覆盖。

### 4.    '136 专利侵权

113.    Technicolor 典型产品包含 BCM3383 SoC。参阅证据 63（产品照片）。

证据 23 包含将 '136 专利的独立权利主张 1 和 11 与 BCM3383 SoC 进行对比的图表。这些证据表明，Technicolor 被告产品至少被 '136 专利的权利主张 1 和 11 覆盖。

### 5.    销售和进口的具体实体

114.    Xfinity (Comcast Cable) 品牌的 Technicolor TC8305C 无线网关在美国境外制造。参阅证据 63（产品照片）。原告从美国卖家处购买此网关。参阅证据 65（Sharkey 声明）第 2 段。

## VII.    依据统一关税税率表侵权产品的分类

115.    我们认为被告产品至少可被分为美国统一关税税率表的以下分类类别：

8471.30.01、8471.41.01、8471.50.01、8471.70.10、8471.70.20、8471.70.30、8471.70.40、8471.70.50、8471.70.60、8471.70.90、8471.80.10、8471.80.40、8471.80.90、8471.90.00、8473.30.11、8473.30.20、

3473.30.51 8517.12.00、8517.18.00、8514.61.00、8517.62.00、8517.69.00、8517.70.00、

8521.90.00、8522.90.25、8522.90.65、8522.90.75、8525.50.10、8525.50.30、8525.60.20、

8528.71.20、8528.72.04、8528.72.08、8528.71.30 8529.10.20、8529.10.90、8529.90.01、

8529.90.03、8529.90.06、8529.90.29、8529.90.33、8529.90.36、8529.90.39、8529.90.43、

8529.90.46、8529.90.49、8541.50.00、8541.90.00、8542.31.00、8542.32.00、8542.39.00、

8542.90.00 和 8543.70.60。这些分类仅以说明为目的，并非旨在对被告产品构成限制。

**VIII.　被许可方**

116.　作为保密证据 75 随附在本文件中的是 Tessera 曾向其发布一项或多项

据称专利的人员和实体列表。

**IX.　TESSERA 满足国内行业要求**

**A.　达到国内行业要求的技术目标**

117.　依据第 337(a)(2) 节要求和第 337(a)(3) 节定义，美国境内存在与各项据称

专利有关的一个行业。具体来说，Tessera 的被许可方包括但不限于 Micron、Cypress 和 IBM，他们

都实施据称专利的一项或多项权利主张。

118.　以下是总结与据称专利对应的国内行业产品的图表：

| 据称专利 | 技术目标产品 |
|---|---|
| ＇007 专利 | Micron：M510DC 2.5 SSD |
| ＇946 专利 | Micron 零件 Nos. MT44K16M36RB-125E:A；MT29F8G08ABBCAH4-IT:C；MT42L128M32D1GU-25 WT:A；MT47H128M8CF-3:H<br><br>Cypress：65nm MirrorBit 产品（例如 S29GL01GS11DHIV2)）；90nm MirrorBit 产品（例如 S29GL128P11FFI01）；130nm F- RAM（例如 CY15B104Q-SXI） |
| ＇136 专利 | IBM：Espresso die |

119.    针对目前事实据称专利的至少一项典型权利主张的多个被许可产品

（以下称"国内行业产品"）的权利主张图表和说明信息与此诉状同时提交。参阅保密证据 77

（附有 Micron 保密和公开数据表的 Micron 保密声明）；81-85（Micron 产品图表）；88-90

（Cypress 产品图表）；92（IBM 产品图表）；证据 96-101（Cypress 产品数据表和照片）。

**1.    ' 007 专利实践**

120.    证据 81 是披露 Micron M510DC 2.5 SSD 产品（配有零件编号

MTFDDAK120MBP-1AN1ZABYY）如何实践至少 ' 007 专利的典型权利主张 18 的权利主张图表。

据所知所信，至少 Micron 零件编号 MTFDDAK240MBP- 1AN1ZABYY、MTFDDAK480MBP-

1AN1ZABYY、MTFDDAK800MBP-1AN1ZABYY 和 MTFDDAK960MBP-1AN1ZABYY 也实践了

' 007 专利。

**2.    ' 946 专利实践**

121.    证据 84 是披露 Micron 零件编号 MT42L128M32D1GU-25 WT:A 产品如何实

践至少 ' 946 专利的典型权利主张 16 的权利主张图表。

122.    证据 85 是披露 Micron 零件编号 MT47H128M8CF-3:H 产品如何实践

至少 ' 946 专利的典型权利主张 16 的权利主张图表。

123.    证据 83 是披露 Micron 零件编号 MT29F8G08ABBCAH4-IT:C 产品如何实践

至少 ' 946 专利的典型权利主张 16 的权利主张图表。

124.    证据 82 是披露 Micron 零件编号 MT44K16M36RB-125E:A 产品如何实践

至少 ' 946 专利的典型权利主张 16 的权利主张图表。

125.    证据 88 是披露 Cypress 65nm MirrorBit 产品（零件编号 S29GL01GS11DHIV2）如何实践至少'946 专利的典型权利主张 16 的权利主张图表。

126.    证据 89 是披露 Cypress 90nm MirrorBit 产品（零件编号 S29GL128P11FFI01）如何实践至少'946 专利的典型权利主张 16 的权利主张图表。

127.    证据 90 是披露 Cypress 130nm F-RAM 产品（零件编号 CY15B104Q-SXI）如何实践至少'946 专利的典型权利主张 16 的权利主张图表。

### 3.    '136 专利实践

128.    证据 92 是披露 IBM Espresso die 如何实践至少'136 专利的权利主张 1 和 11 的权利主张图表。

### B.    达到国内行业要求的经济目标

129.    第 337(a)(3) 节的 (A)、(B) 和/或 (C) 子部分下的国内行业依靠 Tessera 和/或其被许可方在美国境内的活动生存，包括制造、组装、封装、测试、研究、产品开发、应用程序工程、许可和/或售后支持与维修。

### 1.    Tessera

130.    Tessera 自 1990 年代开始发放其技术和专利的许可。它在这方面的努力让委员会得出结论说其许可业务满足国内行业标准。*参阅某些半导体芯片（最小化的包装规格）及包含同类芯片的产品*，调查编号 337-TA-432，初步裁决（法令编号 13），*非审阅*，第 13 页（2001 年 1 月 24 日）（"Tessera 在专利许可上的投资是巨大的"）；*某些半导体芯片（最小化的包装规格）及包含同类芯片的产品 (II)*，调查编号 337-TA-605，最终初步裁决，相关部分非审阅内容，第 *142 页（2008 年 12 月 1 日）

（"考虑到 Tessera 在许可其 TCC 封装技术方面投入的大量资金和国内资源，包括'326 和'419 资源，ALJ 认为 Tessera 积极利用其知识产权，这样的投资显然是巨大的"）；*某些半导体芯片（最小化的包装规格）及包含同类芯片的产品 (III)*，调查编号 337-TA-630，初步裁决（法令编号 31）（2008 年 9 月 16 日）（发现 Tessera 满足基于许可发放的国内行业要求）。在委员会作出认为 Tessera 满足国内行业标准的决议后，Tessera 许可业务在规模和范围上都实现了增长。*参阅*保密证据 76（Farrell 声明）。

131.　　Tessera 在加利福尼亚州圣何塞租赁了一处大型国内工厂。参阅同上，第 23-25 段。以下是 Tessera 的工厂照片：



132.　　Tessera 的圣何塞工厂有 100 名以上的受薪员工，他们参与 Tessera 技术的工程化、研究和开发、许可以及其他工作。*参阅*，第 20-21 段。Tessera 利用据称专利的绝大多数工作在其圣何塞工厂内或附近发生。Tessera 工厂还包括价值数百万美元的设备和其他资产，它们用于 Tessera 许可业务相关的工程化、研究和开发。

*参阅* ¶ 26 同上第 26 段。以下是 Tessera 实验室设备的一些照片：





133.    Tessera 的许可业务包括数十个美国员工，他们的工作直接推动了 Tessera

针对据称专利发放许可的工作。*参阅* 同上第 21-22 段。与其许可业务相关的 Tessera 投资包

括向国内承包商、外部律师、顾问和为 Tessera 专利的开发和许可发放提供关键支持的其他供应商支付的费用。*参阅*同上第 27-36 段。

134. Tessera 已经向 100 多家公司发放了其专利和技术的许可证。这些客户包括

Intel Corporation、Micron、Samsung Electronics Co., Ltd、SK hynix Inc. 和 Sony Corporation 及其他。*参阅*同上第 8 段。这些被许可方中有一些已经针对不同专利组合和技术从 Tessera 处多次获得了许可。*参阅*同上。仅在 2015 年，Tessera 在版权费和许可费用上获得了 $273,300,000 美元，其中 36% 来自总部位于美国的客户。*参阅*同上第 9 段。

135. 据称专利曾经是 Tessera 许可工作的重心。Tessera 在为这些特别专利发放许可可方面的投资非常重要，也是实质上的投资。*参阅*同上第 38-39 段。

**2. Tessera 的被许可方**

**a) Micron**

136. 2014 年 7 月 30 日，Micron 分别与 Tessera Technologies, Inc. 和 Invensas 签订了专利许可协议以及许可和合作协议。[9] 专利许可协议针对至少 ' 946 和 ' 007 专利向 Micron 授予了非独占性许可证。至少以下 Micron 零件得到了许可： M510DC 2.5 SSD（至少 MTFDDAK120MBP-1AN1ZABYY、MTFDDAK240MBP-1AN1ZABYY、MTFDDAK480MBP-1AN1ZABYY、MTFDDAK800MBP-1AN1ZABYY 和 MTFDDAK960MBP-1AN1ZABYY）；MT44K16M36RB-125E:A；MT29F8G08ABBCAH4- IT:C；MT42L128M32D1GU-25 WT:A；和 MT47H128M8CF-3:H（统称"Micron DI 产品"）。

---

[9] *参阅*保密证据 79（专利许可协议）；保密证据 80（许可和合作协议）。

Micron DI 产品至少部分在美国制造、组装、测试和/或设计。[10]

137.    Micron 曾经并继续在 Micron DI 产品相关的美国境内制造、研究和/或产品

开发上进行巨大的实质性投资。[11] Tessera 预期这一发现将表明，337(a)(3)(A)、337(a)(3)(B) 和

337(a)(3)(C) 小段的国内行业要求分别由 Micron 的国内活动和投资独立满足。

138.    Micron 是一家特拉华州公司，其办公场所地址位于爱达荷州博伊西。

保密证据 78（Micron 声明 2 号）第 4 段。Micron 从其总部提供全世界最广泛的存储组合，其中包

括用于计算、网络和移动、嵌入式和应用程序的强大 DRAM、NANA 和 NOR 解决方案。Micron

在美国有三个主要生产设施：爱达荷州博伊西；犹他州利希；和弗吉尼亚州马纳萨斯。同上第 6

段。Micron 还在科罗拉多州朗蒙特；爱达荷州莫瑞典；爱达荷州楠帕；加利福尼亚州佛森；加利

福尼亚州圣克拉拉；加利福尼亚州圣地亚哥；加利福尼亚州苗必达；明尼苏达州明尼阿波利斯；

德克萨斯州艾伦；德克萨斯州奥斯汀；德克萨斯州休斯顿；德克萨斯州理查森；华盛顿柯克兰；

以及华盛顿西雅图。同上第 6 段。

139.    截至 2015 年 9 月 3 日，Micron 在美国的净资产、厂房和设备价值 $36.4

亿美元。[12] 截至 2015 年 9 月 3 日，Micron 拥有 31,800 名员工。同上。这些员工中有很

多位于美国，仅爱达荷州就有 6,600 名员工。

---

[10] *参阅*保密证据 77（Micron 声明 1 号），第 5-10 段。

[11] *一般参阅*保密证据 78（Micron 声明 2 号）；*另请参阅*保密证据 77（Micron 声明 1 号）。但是 Tessera 的国内行业指控并非仅限于 Micron 提供的两份声明中规定的事实。

[12] 保密证据 78（Micron 声明 2 号），第 5 段。

同上。 Micron 2015 年的研究开发费用为约 \$15.4 亿美元，2014 年为 \$13.7 亿美元。 同上第 10 段。

140. Micron 的博伊西运营内容包括公司总部、场所研究和开发设施及其第一个半导体制造设施。同上第 7 段。1980 年 Micron 的总部破土动工时，博伊西设施包括 200 英亩园区内一座占地 50,000 平方英尺的晶片制造厂。[13] 截至 1999 年 9 月，总部开发了 190 万平方英尺的建筑空间，其中包括约 494,000 平方英尺的生产空间、633,000 平方英尺的设施支持空间和 770,000 平方英尺的办公和其他空间。[14] 截至 2015 年 8 月，Micron 计划通过在博伊西添加 50,000 平方英尺的洁净室空间来实质性提高其研发能力。

141. 在弗吉尼亚州马纳萨斯，公司的 300-mm 晶片制造设施（其中包括价值数百万美元的资产、厂房和设备）生产用于手机和个人计算机的 DRAM、NAND 和 NOR 存储组件。[15] 截至 2015 年 9 月 15 日，该地点雇佣了大量全职员工。同上。

142. Micron 位于犹他州李海的合资工厂是 IM Flash Technologies 制造设施所在地，IM Flash Technologies 是与 Intel 共同组成以便制造用于消费者电子产品、便携存储设备和手持通讯装置的 NAND 闪存的合伙企业。[16] 截至 2015 年 9 月 3 日，此设施雇佣了大量全职员工，并在净资产、厂房和设备上进行了大量投资。同上。

_____

[13] *参阅*证据 67（Micron 里程碑时间表）。

[14] *参阅*证据 68（Micron 1999 年度报告摘录）。

[15] 保密证据 78（Micron 声明 2 号），第 8 段。

[16] 保密证据 78（Micron 声明 2 号），第 9 段。

143. 据所知所信，这些厂房、设备、劳动力、资本和 Micron 进行的其他投资

与 Micron DI 产品和据称专利直接有关。因此，Micron 曾经并继续在美国就 Micron DI 产品相关

的制造、研究和产品开发进行巨大的实质性投资。

### a) Cypress

144. 2014 年 3 月 18 日，Cypress 与 Tessera Technologies, Inc 的子公司 Tessera

Advanced Technologies, Inc.（"TATI"）签订了转让 ' 946 专利的协议。[17] 作为该协议的一部分，

TATI 向 Cypress 授予针对 ' 946 专利的非独有许可证。同上。Cypress 的 65 nm MirrorBit 零件（例

如 S29GL01GS11DHIV2）、90 nm MirrorBit 零件（例如 S29GL128P10TFI010）和 130 nm F-RAM 零

件（例如 CY15B104QSXI）（统称"Cypress DI 产品"）是许可产品。据所知所信，Cypress 曾经并

继续在美国就 Cypress DI 产品相关的制造、研究和产品开发进行巨大的实质性投资。一般参阅保

密证据 86（Cypress 声明）。Cypress DI 产品至少部分在美国制造。同上第 11 段。

145. Cypress 是一家特拉华州公司，其总部位于加利福尼亚州圣荷西。[18]

Cypress 设计并制作包括各种类型的存储在内的半导体装置。同上。2015 年 3 月，Cypress 完成了

与 Spansion 的合并，Spansion 是配有闪存、单片机、模拟和混合信号产品的嵌入式系统半导体领

先设计者、制造商和开发者。

---

[17] 保密证据 87（Cypress 专利购买协议）。TATI 随后将 ' 946 专利转让给 Invensas 即该专利的当前所有者。

[18] 参阅证据 69（截至 2016 年 1 月 3 日的 Cypress 年度报告）第 1 页。

同上第 5 段；*另请参阅* 保密证据 86（Cypress 声明）第 5 段。

146. 截至 2016 年 1 月 3 日，Cypres 拥有 6,279 名员工，其中约 2,100 人位于美国。

在该公司位于世界各地的所有员工中，3,715 名员工与制造有关，1,149 名员工与销售、一般和行政职能有关，1,415 名员工与研究和开发有关。Cypress 2015 年在研究和开发上花费了约 $2.81 亿美元，2014 年花费了约 $1.64 亿美元。[19]

147. Cypress 在美国有多个主要运营场所。其位于加利福尼亚州圣荷西的总部为 337,000 平方英尺，主要用于行政管理和研究开发。Cypress 在科罗拉多州普林斯还有一处 70,400 平方英尺的办事处，并在华盛顿林伍德有一处 6,700 平方英尺的办事处，这两处办事处都用于行政管理和研究开发。[20]

148. Cypress 在美国拥有两处制造设施。德克萨斯州奥斯汀被称为 "Fab 25" 的设施（作为 Spansion 合并的一部分收购）为 1,514,000 平方英尺，被用于制造、研究开发和行政管理。[21] 此设施用作生产 180 纳米、130 纳米、110 纳米、90 纳米和 65 纳米加工技术的 200 毫米晶片，

---

[19] *参阅* 证据 69（Cypress 年度报告）第 17、14 页；*另请参阅* 保密证据 86（Cypress 声明）第 6、13 段。

[20] *参阅* 证据 69（Cypress 年度报告）第 29 页；*另请参阅* 保密证据 86（Cypress 声明）第 7 段。

[21] *参阅* 证据 69（Cypress 年度报告）第 29 页；*另请参阅* Cypress 声明第 8 段。

这指的是通过在半导体晶片上图形特性上使用这些工艺可以实现的分辨率。[22]

149.    Cypress 的明尼苏达州布卢明顿设施为 337,000 平方英尺，用于制造和研究

开发。[23] 这一八英寸晶片厂使用高分辨率处理技术大量生产。它提供将硅氧化物氧化氢化硅

(SONOS) 基的非易失性内存和精确模拟/混合信号能力集成的处理技术。该厂已被认可为 1A 类值

得信赖该工厂，用于制造、设计和测试美国国防部（"DoD"）信任的微电子，这意味着 DoD 信

赖 Cypress 去设计并制造用于分类且最高机密政府项目的定制集成电路。[24] 这个晶片生产厂拥有

面积为 80,000 平方英尺的洁净室，约 500 名员工，并生产 Cypress 的专有 PSoC、SRAM 和特种产

品。[25]

150.    据所知所信，Cypress 的 MirrorBit 闪存产品相关的设计工作（包括 65 和

90 nm MirrorBit 零件）在美国进行。[26] 90 nm MirrorBit 芯片在 Cypress 位于德克萨斯州奥斯汀的工

厂 Fab 25 制造。65 nm MirrorBit 芯片在位于奥斯汀的 Fab 25 制造。同上。Cypress 在美国通过

Avnet 和 Mouser 等其经销商销售其产品。同上。

---

[22] *参阅*¶ 8 的保密证据 86（Cypress 声明）。

[23] *参阅*证据 69（Cypress 年度报告）第 29 页。

[24] *参阅* http://www.cypress.com/news/cypress-earns-trusted-foundry-accreditation-usdepartment-defense?source=search&keywords=department%20of%20defense。

[25] *参阅*证据 70（从 https://cypress.silkroad.com 访问）。

[26] *参阅* 保密证据 86（Cypress 声明）第 11 段。

151. Cypress 在 130-nm F-RAM 芯片的设计、工程化、研究、开发、制造、组装、封装、测试、销售和客户支持上进行投资。据所知所信，Cypress 130-nm F-RAM 产品相关的设计工作在美国进行。产品由 Texas Instruments 代表 Cypress 在德克萨斯州达拉斯进行，并由 Cypress 在其明尼苏达州布卢明顿设施进行软测试。 27

152. 人们之前曾基于 Cypress 的制造、研究和产品开发活动认为 Cypress 满足委员会的国内行业要求。*参阅某些静态随机存取内存和含有相同功能的产品*，调查编号 337-TA-792，概述初步裁决（法令编号 37），非审阅（2012 年 2 月 14 日）（*"静态速记存取内存"*）；*请参阅静态随机存储内存*，诉状（2011 年 6 月 10 日）。自 2012 年静态随机存取内存决议发布以来，Cypress 的国内行业呈指数级增长，这很大程度上是因为其对 Spansion 的收购以及制造部分 Cypress DI 产品的其国内工厂（例如 Fab 25）。

**a)** **IBM**

153. 2009 年 5 月 29 日，IBM 签署协议将＇136 专利转让给 Tessera Technologies, Inc. 的一家子公司 Tessera Intellectual Properties, Inc.（"TIPI"）。28 作为此协议的一部分，TIPI 向 IBM 授予＇136 专利的非专有许可证。用于 Nintendo Wii U 的 IBM 的 Espresso die 在＇136 专利得到许可。据所知所信，IBM 曾经并继续在美国对经许可的 Espresso

---

27 *参阅* http://www.cypress.com/file/193971/download。
28 保密证据 91（2009 年专利购买协议）。TIPI 随后将其名称改为 Invensas，即该专利的当前拥有者。

die 相关的制造、研究和产品开发进行巨大的实质性投资。

154.    IBM 是一家纽约公司，其行政办公地点位于纽约阿蒙克。IBM 的制造流程、

设计和包装开发工作在世界各地多个地点进行。截至 2014 年 12 月 31 日，IBM 位于美国的制造

和开发设施累积占地面积达到 1,700 万平方英尺。[29]

155.    据所知所信，至 2015 年为止，IBM 在其位于纽约东菲什基尔的制造厂制造

用于 Nintendo Wii U 的 Espresso die。[30] 东菲什基尔厂于 2003 年开业，截至 2014 年雇佣了 4,500

多名员工。[31]2015 年 7 月 1 日，GlobalFoundries 收购了 IBM 的微电子业务，包括位于纽约东菲什

基尔和佛蒙特州艾斯克斯强克逊的现有半导体制造资产和业务。[32] 据所知所信，新的所有者

GlobalFoundries 继续在纽约东菲什基尔设施为 IBM 生产用于 Nintendo Wii U 的 Espresso die。[33]

## X.    相关诉讼

156.    2016 月 5 月 23 日，Tessera 在美国特拉华州地方法院提交了诉状，指控对美

国专利编号 6,856,007、6,849,946, 和 6,133,136 中一项或多项权利的侵权，此诉状中对相同的专利

也宣称了其所有权。该次诉讼中指明的被告是 Broadcom Corporation。

---

[29] 证据 72（IBM 2014 年度报告）。

[30] 证据 73（IBM 新闻发布会，日期 2011 年 6 月 7 日）。

[31] 证据 74（DailyTech 文章，日期 2014 年 10 月 21 日）。

[32] 证据 71（IBM 2015 年度报告）。

[33] 证据 74（DailyTech 文章，日期 2014 年 10 月 21 日）。

157.   除上述指明的诉讼外，据 Tessera 知悉，据称专利现在并非也未曾是任何

当前或之前法庭或机构诉讼的主题。

## XI.   要求的救济

158.   因此，鉴于上述原因，原告要求美国国际贸易委员会：

(a) 依据《1930 年关税法案》第 337 节（经修订）、《美国法典》第 19 篇第 1337 条就拟
定被告因为将侵犯美国专利编号 6,856,007、6,849,946 和 6,133,136 的产品非法进口至美国、以进
口至美国为目的销售和/或进口后在美国境内销售以及将 Broadcom 制作的或为 Broadcom 制作的包
含同类装置的产品非法进口至美国、以进口至美国为目的销售和/或进口后在美国境内销售而违反
第 337 节规定的情况发起即时调查；

(b) 针对非法行为安排并举行听证会，在听证会后决定是否存在违反第 337 节规定
的行为；

(c) 依据《1930 年关税法案》（经修订）第 337(d) 节发布永久有限排除令，禁止所有拟定
被告的半导体装置、半导体装置包和包含同类装置的产品（对美国专利编号 6,856,007、6,849,946
和 6,133,136 的一项或多项权利主张构成侵权）进入美国；

(d) 依据《1930 年关税法案》（经修订）第 337(f) 节发布永久禁止令，禁止拟定被告和相
关公司对拟定被告的半导体装置、半导体装置包和包含同类装置的产品（对美国专利编号
6,856,007、6,849,946 和 6,133,136 的一项或多项权利主张构成侵权）实施进口、

市场营销、广告、演示、仓库库存分销、供应销售、出售、评定在他方产品中使用的资格、分销或使用；

    (e) 依据 《美国法典》第 19 篇第 1337(e)(1) 和 (f)(1) 条在 60 天总统复审期间实施担保，防止 Tessera 及其被许可方与各项据称专利有关的国内行业受到进一步损害；以及

    (f) 基于调查和委员会权限，授予委员会所决定的认为公正正确的此类其他和进一步救济。

日期：2016 年 5 月 23 日

[签名]

Sturgis M. Sobin (ssobin@cov.com) Shara Aranoff (saranoff@cov.com) Daniel E. Valencia (dvalencia@cov.com) COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
电话： (202) 662-6000

Michael K. Plimack (mplimack@cov.com) Dale A. Rice (drice@cov.com)
Nitin Subhedar (nsubhedar@cov.com)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
电话： (415) 591-6000

Robert T. Haslam (rhaslam@cov.com) Anupam Sharma (asharma@cov.com) Thomas E. Garten (tgarten@cov.com) COVINGTON & BURLING LLP
333 Twin Dolphin Drive Redwood Shores, CA 94065-1418 电话： (650) 632-4700

*原告律师*
*Tessera Technologies, Inc.、Tessera, Inc. 和*
*Invensas Corporation*

## 证明

本人 Michael C. Spillner ，依据《联邦法规汇编》第 19 篇第 210.4 条和第 210.12(a) 条，在承担伪证罪的前提下，宣布下列陈述真实：

1.　　本人是 Tessera Technologies, Inc. 全资子公司 Tessera Intellectual Property Corporation 法务、知识产权和政府事务部门的副总裁，本人经正式授权依据《1930 年关税法案》（经修订）第 337 节核实 Tessera Technologies, Inc.、Tessera, Inc. 和 Invensas Corporation 的这一诉状（"诉状"）；

2.　　本人已经阅读此诉状，且本人知悉其中内容；

3.　　在经过合理调查后，据我所知所信，(a) 诉状中的权利主张和其他合法论点具有现有法律或现有法律之延伸、修订或废弃或新法律确立之正式论辩中的正当理由；以及 (b) 诉状中的指控和其他事实争论有证据支持，或若能具体确定，在得到进一步调查或证据开示的合理机会后可能有证据支持；以及

4.　　诉状并非针对任何不正当目的的呈交；此等不正当目的在于造成骚扰或导致调查或相关程序不必要延迟或不必要的成本增加。

本人在依据美国法律承担伪证罪的前提下宣布，上述内容真实正确。宣誓日期 2016 年 5 月 20 日。

[签名]

_____

Michael C. Spillner



# AFFIDAVIT OF ACCURACY

I, Angela Lo, hereby certify that the document "ITC Inv. No. 337-TA-1010 - Complaint" is to the best of my knowledge and belief, a true and accurate translation from English to Simplified Chinese.

Angela Lo

3 Park Avenue, 38th floor

New York, NY 10016

Sworn to before me this

June 28th , 2016

Signature, Notary Public

ALITASHA YOUNGER
Notary Public - State of New York
No. 01YO6335137
Qualified in KING County
Commission Expires Dec 28, 2019

Stamp, Notary Public